## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

---

LEROY TENNART, DEON TENNART, EDDIE
HUGHES on his own behalf and on behalf of his minor
child GODAVARI HUGHES, ELCIDE HARRIS,
ZACHARY HILL, and THOMAS HUTCHERSON.

Plaintiffs,

v.

CITY OF BATON ROUGE; PARISH OF EAST BATON
ROUGE; MELVIN LEE "KIP" HOLDEN; SID J.
GAUTREAUX III, Sheriff of East Baton Rouge Parish;
CARL DABADIE, JR., Chief of the Baton Rouge Police
Department;   COL.   MICHAEL   EDMONSON,
Superintendent of the Louisiana State Police; MIKE
CAZES, Southern District Coordinator of the Louisiana
Sheriffs' Association Emergency Task Force; LOUISIANA
SHERIFFS' ASSOCIATION; JONATHAN MIGUES;
TIMOTHY BROWNING; ERIC MURPHY; DOUG
BARRON; MARCUS THOMPSON; CHRISTOPHER
JOHNSON; T. DORSEY; GLENN HUTTO; MICHAEL
RARICK; BARRON BRYANT; SONDRA HALL; GINA
HEDRICK; TRAVIS NORMAN; DARREN HUNT;
CARL MAYO; REAB SIMONEAUX, Jr.; BRADLEY
LAWRENCE; ADAM CHENEY; JAMES CROCKETT;
BRPD Officer PATRICK; Baton Rouge Police Department
OFFICER DOES 1-100; East Baton Rouge Sheriff Office
DEPUTY ROES 1-100; and Louisiana State Police
TROOPER MOES 1-100.

Defendants.

Case No. 17-cv-179

Jury Trial Demanded

---

# CIVIL RIGHTS COMPLAINT

## I. NATURE OF THE ACTION

On July 5, 2016, officers of the Baton Rouge Police Department tasered, tackled, and shot

Alton Sterling, a Black father of five and resident of Baton Rouge, Louisiana. O v e r  t h e

f o l l o w i n g  w e e k ,  Black members of the Baton Rouge community came together to voice

anger and disappointment at the killing of Mr. Sterling and the aggressive and racist policing they had endured for decades. People gathered on the streets, sidewalks, and medians of Baton Rouge to protest. The protests were spontaneous and peaceful. The protesters were law-abiding.

1.      Despite protesters' peaceful aims, Defendants entered into and executed a conspiracy to deny members of the Black community of Baton Rouge their right to grieve, express their anger, and demand equal protection from law enforcement. In furtherance of this conspiracy, Defendants arrested protesters without just cause, solely to suppress the protests and deny the protesters' right to free expression. Defendants' actions were particularly aimed to suppress dissent of Black citizens of Baton Rouge.

2.      To this end, as the protests began, the Defendants created a plan to intimidate the protesters through the use of violent, militarized police tactics, which included the use of batons, riot shields, armored vehicles, and armed officers. The Defendants set out to arrest the protesters without probable cause, using the pretext that the protesters had violated a state law proscribing obstruction of highways and public roads. The Defendants sought to disrupt the peaceful protests by utilizing pre-determined tactics to disrupt crowds of peaceful, law-abiding protestors.

3.      On July 8 and 9, 2016, the Defendants implemented that plan and arrested Plaintiffs on the false grounds that they had obstructed highways and public roads in Baton Rouge. Plaintiffs had no intention of obstructing the highway, and never did so. Rather, their purpose was to protest in a peaceful manner.

4.      Plaintiffs were detained in the East Baton Rouge Parish Prison and the juvenile jail, subjected to harsh detention conditions, and labeled as criminals without just cause. Shortly after the release of the Plaintiffs and other protesters, the East Baton Rouge District Attorney publicly announced that he would not file bills of information against any of the protestors charged only with

obstructing a highway, evidence that these charges were unwarranted. This action seeks to hold the Defendants liable for the unjust and racially discriminatory arrests they conducted solely to quash peaceful protests against the pattern of racist law enforcement by the City of Baton Rouge/Parish of East Baton Rouge.

## II. JURISDICTION AND VENUE

5.      Plaintiffs bring this action under 42 U.S.C. §§ 1983 and 1985(3), to vindicate their rights guaranteed by the First, Fourth, and Fourteenth Amendments to the United States Constitution. Plaintiffs also bring supplemental state-law claims. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, and 1367.

6.      This case seeks remedies under 28 U.S.C. §§ 2201, 2202 and 42 U.S.C. §§ 1983, 1985(3), and 1988.

7.      Venue in this Court is proper pursuant to 28 U.S.C. § 1391.

## III. PARTIES

### A. Plaintiffs

8.      Plaintiff LEROY TENNART is a Black adult resident and citizen of Baton Rouge, Louisiana who was arrested on July 9, 2016, near the intersection of Goodwood Boulevard and Airline Highway for "simple obstruction of a highway of commerce" while lawfully protesting the shooting death of Mr. Alton Sterling and racist policing in Baton Rouge.

9.      Plaintiff DEON TENNART is a Black adult resident and citizen of Baton Rouge, Louisiana who was arrested on July 9, 2016, near the intersection of Goodwood Boulevard and Airline Highway for "simple obstruction of a highway of commerce" while lawfully protesting the shooting death of Mr. Alton Sterling and racist policing in Baton Rouge.

10.    EDDIE HUGHES III is a Black adult resident and citizen of Louisiana. He is the father and natural guardian of GODAVARI HUGHES. EDDIE HUGHES was arrested on July 9, 2016, on Airline Highway for "simple obstruction of a highway of commerce" while lawfully protesting the shooting death of Mr. Alton Sterling and racist policing in Baton Rouge.

11.    GODAVARI HUGHES is a Black minor resident and citizen of Louisiana who is represented in this action by her father and natural guardian EDDIE HUGHES III. GODAVARI HUGHES was arrested on July 9, 2016, on Airline Highway for "simple obstruction of a highway of commerce" while lawfully protesting the shooting death of Mr. Alton Sterling and racist policing in Baton Rouge.

12.    Plaintiff ELCIDE HARRIS is a Black adult resident and citizen of East Baton Rouge Parish, Louisiana who was arrested on July 8, 2016, near the intersection of Goodwood Boulevard and Airline Highway for "simple obstruction of a highway of commerce" while lawfully protesting the shooting death of Mr. Alton Sterling and racist policing in Baton Rouge.

13.    Plaintiff ZACHARY HILL is a Black adult resident and citizen of Baton Rouge, Louisiana who was arrested on July 9, 2016, near the intersection of Goodwood Boulevard and Airline Highway for "simple obstruction of a highway of commerce" while lawfully protesting the shooting death of Mr. Alton Sterling and racist policing in Baton Rouge.

14.    Plaintiff THOMAS HUTCHERSON is a Black adult resident and citizen of Baton Rouge, Louisiana who was arrested on July 9, 2016, near the intersection of Goodwood Boulevard and Airline Highway for "simple obstruction of a highway of commerce" while lawfully protesting the shooting death of Mr. Alton Sterling and racist policing in Baton Rouge.

**B. Defendants**

15.     Defendant CITY OF BATON ROUGE is a political subdivision of the State of Louisiana. The city's governing authority is consolidated with the government of EAST BATON ROUGE PARISH. For this reason, the consolidated government is referred to as "CITY/PARISH" throughout this complaint.

16.     Defendant EAST BATON ROUGE PARISH is a political subdivision of the State of Louisiana. The Parish's governing authority is consolidated with the government of the CITY OF BATON ROUGE. For this reason, the consolidated government is referred to as "CITY/PARISH" throughout this complaint.

17.     Defendant MELVIN "KIP" HOLDEN is an adult resident of the Middle District of Louisiana. Defendant HOLDEN was, at all relevant times, the duly elected Mayor-President of the CITY/PARISH. Defendant HOLDEN was responsible for the supervision, administration, policies, practices, procedures, and customs for the CITY/PARISH and the City's police department. He was responsible for the hiring, training, discipline, supervision, and control of the BRPD officers who are defendants herein, including Defendant CARL DABADIE**.** He is sued in his individual capacity and in his official capacity as former Mayor-President of the City/Parish.

18.     Defendant SID J. GAUTREAUX III is the Sheriff of East Baton Rouge Parish and is an adult resident of the Middle District of Louisiana. The office of Sheriff is an autonomous political subdivision of the State of Louisiana. Defendant GAUTREAUX was responsible for the supervision, administration, policies, practices, procedures, and customs of the East Baton Rouge Sheriff's Office ("EBRSO"). He was responsible for the hiring, training, discipline, supervision, and control of the EBRSO command staff, supervisors, and deputies. He is sued in his individual and official capacities.

19.     Defendant CARL DABADIE JR. is an adult resident of the Middle District of Louisiana. He is the Chief of the Baton Rouge Police Department. Defendant DABADIE was and is responsible for the supervision, administration, policies, practices, customs, and procedures of the BRPD, as well as the hiring, training, supervision, discipline, and control of police personnel under his command, including the BRPD defendants named herein. He is sued in his individual and official capacities.

20.     Defendant COL. MICHAEL EDMONSON is an adult resident of the Middle District of Louisiana. Defendant EDMONSON is the Superintendent of the Louisiana State Police ("LSP"). Defendant EDMONSON was responsible for the supervision, administration, policies, practices, customs, operations, training, staff, and operation of the LSP. He is sued in his individual capacity only.

21.     Defendant Sheriff MIKE CAZES is an adult resident of the Middle District of Louisiana. He is the Southern District Coordinator of the Louisiana Sheriffs' Association Emergency Taskforce. Defendant CAZES is sued in his individual capacity only.

22.     Defendant LOUISIANA SHERIFFS' ASSOCIATION ("LSA") is a nonprofit corporation comprised of the 64 sheriffs of Louisiana, along with as many as 14,000 deputy sheriffs. LSA is headquartered in and therefore domiciled in the Middle District of Louisiana. Defendant GAUTREAUX was the President of the LSA at the time of the protests and Plaintiffs' arrests. On information and belief, the LSA's Emergency Task Force actively coordinated the law enforcement response to the protests of the shooting of Mr. Alton Sterling.

23.     Defendant JONATHAN MIGUES is an adult resident of Louisiana. He is a BRPD Corporal who was the arresting and reporting officer of record for the arrest of Plaintiff ELCIDE HARRIS.

24.     Defendant TIMOTHY BROWNING is an adult resident of Louisiana. He is a BRPD officer who approved the initial report of Defendant MIGUES, despite the fact the report contained no indication that Plaintiff ELCIDE HARRIS had engaged in any conduct comprising the offense of obstruction of a highway of commerce. Defendant ERIC MURPHY is an adult resident of Louisiana. He signed a pre-printed, boilerplate affidavit of probable cause for Plaintiff ELCIDE HARRIS'S arrest. Defendant DOUG BARRON is an adult resident of Louisiana. He is a BRPD officer who acted as Ex-officio notary for the affidavit of probable cause for Plaintiff ELCIDE HARRIS'S arrest. Defendant BARRON notarized Defendant MURPHY'S affidavit.

25.     Defendant MARCUS THOMPSON is an adult resident of Louisiana. He is a BRPD officer who wrote the report of Plaintiff ZACHARY HILL'S arrest. Defendant CHRISTOPHER JOHNSON is an adult resident of Louisiana. He is a BRPD officer who approved Defendant THOMPSON'S report of the arrest of Plaintiff Hill. Defendant T. DORSEY is an adult resident of Louisiana. He is a BRPD officer who swore out an affidavit of arrest for Plaintiff HILL.

26.     Defendant GLENN HUTTO is an adult resident of Louisiana. BRPD officer and Ex-officio Notary who notarized Defendants DORSEY'S and CROCKETT'S probable-cause affidavits for the arrests of Plaintiffs ZACHARY HILL and LEROY TENNART.

27.     Defendant MICHAEL RARICK is an adult resident of Louisiana. He is a BRPD Lieutenant who was the arresting officer, affiant of probable cause, Ex-officio Notary, and reporting officer for the arrest of Plaintiff EDDIE HUGHES.

28.    Defendant BARRON BRYANT is an adult resident of Louisiana. He is a BRPD officer who approved Defendant RARICK'S reporting of the arrest of Plaintiff EDDIE HUGHES.

29.    Defendant SONDRA HALL is an adult resident of Louisiana. She is a BRPD officer who authored the police report for the arrest of Plaintiff GODAVARI HUGHES.

30.    Defendant GINA HEDRICK is an adult resident of the Middle District of Louisiana. She is a BRPD officer and supervisor who approved Defendant HALL's report of the arrest of Plaintiff GODAVARI HUGHES.

31.    Defendant TRAVIS NORMAN is an adult resident of Louisiana. He is a BRPD officer who was the affiant for Plaintiff HUTCHERSON'S affidavit of probable cause for arrest. Defendant NORMAN also completed the initial report of Plaintiff HUTCHERSON'S arrest.

32.    Defendant DARREN HUNT is an adult resident of Louisiana. He is a BRPD officer who approved Defendant NORMAN'S initial report of the arrest of Plaintiff HUTCHERSON and the initial report of the arrest of Plaintiff LEROY TENNART.

33.    Defendant CARL MAYO is an adult resident of Louisiana. He is a BRPD officer and Ex-officio notary who notarized Defendant NORMAN'S affidavit of probable cause for the arrest of Plaintiff HUTCHERSON.

34.    Defendant REAB SIMONEAUX is an adult resident of the Middle District of Louisiana. He is a BRPD officer who wrote the false report of Plaintiff DEON TENNART'S arrest.

35.    Defendant BRADLEY LAWRENCE is an adult resident of Louisiana. He is a BRPD officer and the affiant on the affidavit of probable cause for the arrest of Plaintiff DEON TENNART.

36.    Defendant ADAM CHENEY is an adult resident of Louisiana. He is a BRPD officer who approved Defendants SIMONEAUX and LAWRENCE'S false report of the arrest of Plaintiff DEON TENNART.

37.    Defendant KAMA ROUSSELL is an adult resident of Louisiana. He is a BRPD officer who co-authored the false report of Plaintiff LEROY TENNART'S arrest.

38.    Defendant JAMES CROCKETT is an adult resident of Louisiana. He is a BRPD officer who co-authored the false report of Plaintiff LEROY TENNART'S arrest.

39.    Defendant BRPD Officer PATRICK is an adult resident of Louisiana. He is a BRPD officer who arrested Plaintiff EDDIE HUGHES III.

40.    Defendants OFFICER DOES 1–100 are persons presently unknown to Plaintiffs after diligent search and inquiry. OFFICER DOES 1–100 serve as Officers of the BRPD and were involved in the suppression of dissent through the use of excessive force, intimidation, and illegal arrest of protesters in Baton Rouge on July 8–10, 2016.

41.    Defendants DEPUTY ROES 1–100 are persons presently unknown to Plaintiffs after diligent search and inquiry. DEPUTY ROES 1–100 serve as Deputies of the East Baton Rouge Parish Sheriff's Office and were involved in the suppression of dissent through the use of excessive force, intimidation, and illegal arrest of protesters in Baton Rouge on July 8–10, 2016.

42.    Defendants TROOPER MOES 1–100 are persons presently unknown to Plaintiffs after diligent search and inquiry. TROOPER MOES 1–100 serve as Troopers of the Louisiana State Police and were involved in the suppression of dissent through the use of excessive force, intimidation, and illegal arrest of protesters in Baton Rouge on July 8–10, 2016.

43.    After diligent search and inquiry, Plaintiffs are currently unaware of the extent of the policy-making authority held by specific law enforcement officers who were physically

present for the arrests and incarceration of the Plaintiffs. For this reason, Plaintiffs sue the Defendants listed in paragraphs 24–43 above in both their individual and official capacities.

44.     All of the Defendants named in this complaint acted under color of state law at all relevant times.

## IV.   FACTUAL ALLEGATIONS

### A.   The Custom and Practice of Racist Policing in Baton Rouge

45.     Long prior to Alton Sterling's murder and the ensuing protests in July 2016, relations between Baton Rouge's law enforcement agencies and the Baton Rouge community had badly deteriorated. Law enforcement relations with the Black community of Baton Rouge have been marked by episodes of tension and violence for generations, particularly including the alleged killings of two Black students by EBRSO deputies at a protest on the campus of Southern University in 1972. The law enforcement response to the protests of July 2016 must be seen in this historical context.

46.     The failure of the City/Parish to hire a proportionate number of Black Baton Rouge residents as BRPD officers has created a police force that is separated from the communities they seek to protect. Since 1980, the City of Baton Rouge has been under a consent decree intended to remedy racially discriminatory hiring practices of a class of Louisiana police and fire departments, including the BRPD. While nearly thirty municipal defendants in that case have reached compliance with the consent decree and been dismissed from the case, the City of Baton Rouge has not reached compliance—nearly four decades after the consent decree took effect.

47.     According to the 2010 U.S. Census, the City of Baton Rouge is 54.5% Black and 39.4% White. However, the BRPD is 30% Black and 67% White. Moreover, nearly half of all

BRPD officers live outside of East Baton Rouge Parish, and only one-fifth (1/5) live within the City of Baton Rouge.

48. Discriminatory practices by the BRPD have long extended beyond the Department's employment practices into the Department's interactions with the community. In September of 2005, the population of Baton Rouge swelled as many residents of New Orleans, a majority Black city, sought refuge from Hurricane Katrina and the resultant flood. The Michigan State Police and New Mexico State Police both sent troopers to assist the BRPD in policing the city's rapidly growing population.

49. Within three days of the troopers' arrival, both state police agencies had ordered their troopers to cease operations with BRPD after the troopers witnessed and complained of egregious misconduct and potentially criminal actions by BRPD officers. A spokeswoman for the Michigan State Police told a reporter that "troopers observed Baton Rouge police officers engage in actions that were an affront to their sense of dignity and respect."

50. Members of both the Michigan State Police and the New Mexico State Police shared observations and concerns that were compiled in a formal letter of complaint to the BRPD. One Trooper reported that "I personally believe that most of the Baton Rouge Police Department are good officers that are being directed by their supervisors to crack down on the public."

51. Examples of Baton Rouge police officers' antagonism toward Black people as alleged by the out-of-state troopers included multiple instances of excessive force against Black people, including minors, through the use of tasering, hitting, choking, and pepper spraying of residents, without warning or threat to the safety of officers or civilians; searches of Black

individuals and their vehicles without reasonable suspicion or probable cause; and possibly falsifying information against Black individuals in police reports.

52.    In an attempt to support officers of the BRPD in the face of the allegations of racial animus and racially discriminatory policing in September 2005, Defendant Mayor HOLDEN, publicly stated, "If there's a blame to be placed on aggressive enforcement, blame it on me."

53.    The Baton Rouge Police Department, under the direction of Defendant HOLDEN and predecessors in office of Defendant DABADIE, also resisted efforts of media and public interest advocates to gain information regarding these post-Katrina abuses, as part of an ongoing effort to cover up and conceal race-based officer misconduct, and to promote the police code of silence.

54.    As part of the effort to cover up and conceal allegations of race-based officer misconduct and to promote the police code of silence, the City/Parish and the BRPD actively resisted public records requests and a Public Records Law enforcement action filed by The Advocate newspaper seeking access to the Internal Affairs Division investigative report in 2006. Defendant DABADIE's predecessor in office authorized a meritless countersuit to delay and thereby shield investigation records from public view, while imposing high costs on the newspaper.

55.    In addition to repeated allegations of excessive force and unconstitutional arrests, which both precede and continue after the out-of-state troopers' complaints, it has been reported that BRPD officers disproportionately arrest Black residents of Baton Rouge on drug charges. A 2017 report by Together Baton Rouge, a coalition comprised of churches and community-based organizations, studied publicly available arrest data for the years 2011–16. The report concluded

that while rates of drug use are similar in every zip code in Baton Rouge, residents of the poorest zip codes, whose populations tend to be overwhelmingly Black, are arrested at grossly disproportionate rates. The study classified four zip codes, all in North Baton Rouge, the majority-Black section of the city, as "high enforcement areas" and noted that they were "90% black, twice as poor, use drugs slightly <u>less</u> frequently and have <u>five times as many arrests for drug possession</u>" as low-enforcement, majority-White zip codes.

56.    In 2011, then-BRPD Chief Dewayne White publicly stated that ten percent of the department's officers failed to exercise basic levels of professionalism, and that "it's become so ingrained" in the minds of some officers that they "believe that everybody they come across or most people they come across with that color of skin is probably a criminal." Chief White described the impact that racially discriminatory policing has on the community: "When the question is raised with an African-American congregation or a constituency, whether they trust the Police Department, no one raises their hand. That, in itself, is indicative of a problem, and we have got to win the trust of that community." Defendant Mayor HOLDEN fired Chief White in 2013. White and his attorney have alleged that HOLDEN micromanaged BRPD during Chief White's tenure, and that, a month prior to his firing, HOLDEN verbally ordered White to discuss all personnel and disciplinary matters with the Mayor's Office prior to taking any action.

57.    Defendant DABADIE was hired in the wake of Chief White's dismissal. HOLDEN, DABADIE and the City/Parish maintained the post-Katrina pattern and practice of ratifying, permitting and encouraging racist policing in BRPD by (a) denying the prevalence of racist attitudes among white BRPD officers; (b) refusing to investigate the prevalence of such attitudes; (c) resisting the disclosure of the results of investigations into racism in BRPD; and (d) filing suits and countersuits to retaliate against critics of BRPD.

58.    The racial animus decried by former Chief White was later laid bare by the publication in September 2014 of a series of racist text messages sent by a BRPD officer to a civilian.  In the messages, the officer, a fifteen-year veteran of the department, referred both to Black colleagues and civilians with racial epithets, and stated, *inter alia*, "I wish someone would pull a Ferguson on them and take them out. I hate looking at those African monkeys at work . . . I enjoy arresting those thugs with their saggy pants."

59.    The officer was placed on administrative leave by BRPD and resigned before any disciplinary action was taken against him by the Department. On information and belief, no action was taken by HOLDEN, DABADIE or the City/Parish to determine the extent of similar racist attitudes among other BRPD officers. Defendant DABADIE stated publicly that there was no need to do so, because the issue was confined to the lone officer.

60.    The response of Defendants HOLDEN, DABADIE and the City/Parish to the racist text messages betrayed a strategy to cover up the prevalence of racist attitudes among White BRPD officers. Alternatively, the response of Defendants HOLDEN, DABADIE and the City/Parish amounted to conscious disregard of the prevalence of racist attitudes among White BRPD officers.

61.    In addition to racially discriminatory policing, the Baton Rouge Police Department, under the direction of Defendants HOLDEN and DABADIE, implements a policy, practice or custom of using excessive force against arrestees.

62.    Among the multiple lawsuits in recent years seeking to hold BRPD accountable for its policy, practice or custom of excessive uses of force, allegations have included: (a) a 2007 arrest on a complaint of "loud music" with pepper spray and force that caused the rupture of the arrestee's bladder; (b) a 2008 arrest for smoking marijuana that fractured the skull of the arrestee,

causing internal bleeding and permanent brain damage; (c) a 2011 incident in which an officer instructed a man, who advised the officer he was intoxicated, to move a vehicle away from the scene of the arrest; when the drunk driver crashed the car, the officer shot him to death and shot a bystander in the arm; (d) a 2014 incident in which BRPD officers strip-searched a visitor to a home which was being searched by the officers, then kicked the visitor with such force that his head slammed into the floor, knocking several teeth out of his mouth; (e) a 2015 incident in which two members of the news media were handcuffed, and one arrested, for taking pictures of an arrest; (f) a 2016 incident in which a sixteen-year-old was held down by multiple officers while one officer repeatedly punched him in the head; and (g) the shooting death of Alton Sterling in July 2016.

63.    In recent years, suits against the City/Parish for BRPD's excessive uses of force and unconstitutional arrests have resulted in sizeable yearly settlements by the Parish Attorney. For example, the City/Parish paid $372,434 to settle such cases in 2015, $581,286 in 2014, and $437,112 in 2011.

64.    At no time has the BRPD ever undertaken to address the problems of racial profiling and overt racial animus on the part of members of the BRPD, even though there is evidence that some officers hold such animus. Instead the BRPD, Chief DABADIE and Mayor HOLDEN chose to consciously disregard and cover up the prevalence of racist attitudes among BRPD officers.

65.    The long history of police mistreatment of residents of the City/Parish, and particularly its Black residents, has been and continues to be an issue of great public concern. Mr. Sterling's death at the hands of BRPD officers gave prominence and sustained local and national media attention to these longstanding issues. Plaintiffs joined spontaneous gatherings in

the days following Mr. Sterling's death to address – through lawful protest – historical and ongoing injustices at the hands of the Defendants.

66.    Similar to BRPD, the East Baton Rouge Sheriff's Office has its own history, extending decades before the July 2016 protests, of excessive force and unconstitutional arrests, particularly against Black residents.    More recently, allegations of excessive force and unconstitutional arrest leveled against EBRSO and Defendant GAUTREAUX have included multiple instances of excessive force through the inappropriate use of tasers, unconstitutional use of mace, and punching and kicking arrestees without justification.    These allegations are documented in the following cases: *Davis v. East Baton Rouge Sheriff's Office*, Civil Case No. 08-00708 (M.D. La.) (resolved in private settlement); *Martinez v. Gautreaux*, Civil Case No. 10-00847 (M.D. La.) (resolved in a private settlement); *Plaisance v. East Baton Rouge Sheriff's Office*, Civil Case No. 16-00365 (M.D. La.) (ongoing).

67.    During Defendant EDMONSON's tenure, the Louisiana State Police have also exhibited excessive force and unconstitutional arrest targeted at Black residents. While LSP does not typically patrol municipalities, a pattern of unconstitutional excessive force and illegal arrest has rapidly emerged in the brief time that Defendant EDMONSON has directed LSP in the provision of policing services in the majority-Black City of New Orleans.

68.    Suits filed against the LSP since early 2013 allege that members of LSP, under the direction of Defendant EDMONSON, have: (a) physically and verbally abused two Black teenagers without provocation or lawful justification, desisting only when one of the teen's mother, a New Orleans Police officer, arrived and intervened; (b) pulled over, shoved to the ground, kicked, and threatened with firearms internationally renowned musician Shamarr Allen while searching for a Black drug dealer – apparently based solely on Allen's race; (c)

manhandled, tased, and verbally and physically assaulted Michael Baugh, a Black barber, causing significant injury, apparently based on his being of the same race as four suspects (Baugh matched no other part of the suspects' description).

69.     Defendant EDMONSON chose not to order a thorough investigation into these practices when they came to light; his inaction condones the falsification of information and the intimidation of witnesses to LSP troopers' unconstitutional conduct. The LSP internal investigation into the LSP attack on the teenagers concluded that all of the troopers involved in the incident had acted appropriately, a conclusion that both the Mayor of New Orleans and the Superintendent of the New Orleans Police Department publicly criticized based on publicly available video of the incident. LSP went on to file a disciplinary complaint against Newman's mother with the NOPD for intervening on behalf of her son and his friend, and Defendant EDMONSON personally wrote a letter to the Superintendent of the NOPD requesting an investigation into the mother's actions.

70.     The continuing pattern, custom and practice of  the use of excessive force and illegal arrests targeting Black residents by the City/Parish, BRPD, and EBRSO, as well as Defendants HOLDEN, DABADIE, GAUTREAUX, and EDMONSON, was a motivating factor for the Defendants unconstitutional treatment of Plaintiffs as well as the rest of the protestors in July of 2016.

### B. Baton Rouge Area Residents Protest Police Violence after the Killing of Alton Sterling by the BRPD.

71.     The killing of Alton Sterling was documented on video, which showed Mr. Sterling being forcibly restrained on the ground and then shot. Mr. Sterling's death provoked local, national and international outrage.

72.     By the evening of July 6, 2016, Baton Rouge residents, a vast majority of whom were Black, gathered for what became daily and nightly vigils and peaceful protests at various locations throughout the city.

73.     Between July 6 and 10, 2016, thousands of people protested throughout Baton Rouge. Some paid their respects in front of the Triple S Food Mart where Mr. Sterling was killed. Others marched to and from the State Capitol. Many, including Plaintiffs, protested on a sizeable grassy lot adjacent to the intersection of Airline Highway and Goodwood Boulevard in Baton Rouge, across the street from the headquarters of the BRPD. Protesters chanted and held signs. Some of the protesters' chants and signs were specific to Mr. Sterling; others decried the history and pattern of brutal and racialized policing in Baton Rouge, of which Mr. Sterling's killing was the latest, particularly egregious example.

74.     The majority of these protesters were Black residents of Baton Rouge and the surrounding parishes. Many of them chose to protest because of their personal experiences or the experiences of their loved ones with law enforcement, and particularly members of the BRPD and EBRSO, which left them hurt or afraid. National television and internet audiences closely followed the protests and the Defendants' response to the protests.

### C. The Defendants' Planned and Coordinated Effort to Suppress Dissent Through Unconstitutional Law Enforcement in July 2016.

75.     In response to the large and growing protests and the national spotlight on protesters' nonviolent, lawful resistance, Defendants, led by Defendants HOLDEN, DABADIE, EDMONSON, GAUTREAUX and CAZES, developed and implemented a strategy, motivated by racial animus, to silence this peaceful and lawful exercise of First Amendment rights through intimidation, excessive force, and illegal arrests and detention. The Livingston Parish Sheriff's Office, the Ascension Parish Sheriff's Office (members of the Emergency Task Force of the

Louisiana Sheriff's Association), and other law enforcement agencies not currently known to Plaintiffs, joined Defendants in this endeavor.

76.     Some or all of the Defendants named in the preceding paragraph, along with other high ranking members of the EBRSO, gathered at the Office of Homeland Security and Emergency Preparedness of Louisiana Governor John Bel Edwards on several occasions between July 8 and 10, 2014 in order to formulate and implement their agreement to suppress the protests.

77.     Defendant HOLDEN implemented the City/Parish's Emergency Operations Plan ("EOP") through the Mayor's Office of Homeland Security & Emergency Preparedness ("MOHSEP").  Under the terms of the EOP, Defendant HOLDEN is ultimately responsible for emergency responses, but Defendant GAUTREAUX and the EBRSO "coordinate all law enforcement activities in the Parish" in the case of an emergency, which is defined to include "civil disturbances." The municipal police departments of the Parish, including the BRPD, are to participate in the law enforcement response, under the direction of the EBRSO.

78.     Pursuant to the EOP, all law enforcement operations were coordinated and directed from the EBRSO Emergency Operations Center throughout the duration of the protests.

79.     Defendant GAUTREAUX was the president of the Louisiana Sheriff's Association ("LSA") during the protests. GAUTREAUX, in combination with Defendant CAZES, the Southern District Coordinator of LSA's Emergency Task Force, arranged for the presence of approximately 200 additional deputies from surrounding sheriffs' offices to supplement local law enforcement's response to the protests.

80.     Pursuant to the Defendants' plan, numerous law enforcement agencies contributed personnel and resources to create a massive police presence to confront those

engaging in peaceful protest and to suppress the rights of Black citizens and residents of Baton Rouge to petition the government for redress of grievances,

81.    The Defendants' well-coordinated plan implemented the following objectives: (a) to create an intimidating law enforcement response that was militarized, in furtherance of which police personnel wore and used riot gear and carried rifles, shields, and/or batons while confronting the protesters; (b) to effectuate the maximum number of arrests of innocent protesters, so as to send a message to Black citizens and residents of Baton Rouge that dissent would not be tolerated; (c) to target certain protesters for arrest, based on these protesters' supposed group affiliations (in particular, affiliation with Black political and social organizations) and/or Defendants' belief that they were "leaders" of the spontaneous protests; (d) to book protesters *en masse* on false criminal charges and to maximize the time those arrested spent in custody as punishment for defying law enforcement; and (e) to ensure officers used excessive physical force to effectuate these illegal arrests.

82.    Between July 8 and 10, 2016, Baton Rouge area law enforcement officers and their agents, including BRPD, EBRSO, LSP, and deputy sheriffs of surrounding parishes, including but not limited to the currently unknown Officer DOES, Deputy ROES and Trooper MOES, put this plan into action. In furtherance of the above objectives, the Defendants unlawfully arrested approximately 200 protesters as they engaged in peaceful protest protected by the First Amendment. Plaintiffs were among those arrested.

### D. The Unconstitutional Arrests and Confinement of the Plaintiffs

#### 1. Leroy and Deon Tennart

83.    Plaintiff LEROY TENNART is a heavy machine operator who lives in Baton Rouge with his family. He is the father of Plaintiff DEON TENNART who is a welder and also lives in Baton Rouge.

84.    LEROY TENNART arrived at the protest at Airline Highway and Goodwood Boulevard at approximately 7 p.m. on July 9, 2016. He was joined by his wife Veronica and Plaintiff DEON TENNART. LEROY TENNART chose to participate in the protest because he and other Black people he knows have been treated poorly by Baton Rouge law enforcement officers since his youth, and he believes that lawful and peaceful protest can have a significant impact on the way law enforcement officers treat Black people in the United States. DEON TENNART had never participated in a protest prior to July 9, 2016, and he wanted to join his father in demanding equal treatment for Black people from law enforcement officers.

85.    At the protest location, members of the BRPD, LSP, EBRSO, currently unknown Officer DOES, Deputy ROES and Trooper MOES, and, on information and belief, members of the Ascension Parish Sheriff's Office and Livingston Parish Sheriff's Office stood in the street, blocking traffic on Airline Highway. Some officers used and wore "riot gear," including body armor, shields, masks, and batons. Some officers carried rifles. Protesters stood in the grassy lot adjacent to Airline Highway and Goodwood Boulevard, chanting and holding signs.

86.    LEROY and DEON TENNART stood on the neutral ground[1] of Goodwood Boulevard near its intersection with Airline Highway for about 30 minutes after they arrived.

---

[1] Outside of Southeast Louisiana, "the neutral ground" is commonly called a median.

They were told by Officer DOES and Deputy ROES that protesters would not be arrested as long as they stayed on the grass.

87.     Without warning, scores of Defendants, including but not limited to the currently unknown Officer DOES, Deputy ROES and Trooper ROES, wearing riot gear, some with rifles, began marching down Airline Highway and around the corner onto Goodwood Boulevard. The protesters on the neutral ground began chanting "Black lives matter" and "No justice, no peace" as the officers marched. LEROY TENNART heard someone yell "Left face stop!" Some or all of the Defendants, including but not limited to the currently unknown Officer DOES, Deputy ROES and Trooper MOES, stopped and faced the protesters in the neutral ground.

88.     The Defendant officer DOES, ROES, and MOEs then marched toward the protesters on the neutral ground and began yelling, "Move!" Defendant DOEs, ROEs, and MOEs began pushing protesters into the street with their batons.

89.     LEROY TENNART was pushed entirely off the neutral ground and into the street. As soon as his foot made contact with the cement of the highway he was slammed to the ground and tackled by approximately eight or nine defendant officer DOEs, ROEs, and/or MOEs. He was then handcuffed, dragged across the street and placed in a van.

90.     DEON TENNART was standing on the sidewalk, not on the roadway, near a grassy lot across from BRPD headquarters in the company of his mother when he was struck in the face with a shield by an unknown officer (Officer DOE 1) and then tackled to the ground by DOE 1 and other officers. He was handcuffed and forced across the street to the BRPD headquarters and suffered injuries as a result.

91.     Despite the fact that neither plaintiff was on the roadway during the protests, both DEON TENNART and LEROY TENNART were each charged with Simple Obstruction of a Highway in violation of La. R.S. § 14:97.

92.     DEON TENNART and LEROY TENNART were transported from the BRPD headquarters to the East Baton Rouge Parish Prison where they were confined for nearly 40 hours in uncomfortable, unsanitary conditions, and without proper bedding. During the intake process, LEROY TENNART informed EBRSO personnel that he suffers from chronic hypertension. He was denied proper medication throughout his confinement. Both DEON and LEROY missed work during their unlawful confinement.

93.     There was no basis to arrest, confine or charge LEROY TENNART or DEON TENNART. Neither had committed any crime.

94.     The BRPD Incident Reports authored by Defendant BRPD Officers KAMA ROUSSELL and JAMES CROCKETT (as to LEROY TENNART) and Defendant Corporal REAB SIMONEAUZ, Jr. and Defendant Officer BRADLEY LAWRENCE (as to DEON TENNART) contain blatantly false statements that purport to justify the arrests—including that DEON and LEROY "stood their ground," "walked into the roadway," and/or "refused to move" from the roadway.  These reports were approved by Defendant BRPD Officers DARREN HUNT and ADAM CHENEY, with full knowledge of their falsity.

95.     To support the baseless charges against LEROY TENNART and DEON TENNART, Defendant Officers CROCKETT and LAWRENCE signed boilerplate Affidavits of Probable Cause—the same boilerplate that was proffered as support for 87 of the arrests at the Airline and Goodwood location. The Affidavits contain no details whatsoever as to the Plaintiffs' alleged crime and are inconsistent with what actually took place during the protests.

23

96.    On July 15, 2016, the East Baton Rouge District Attorney announced that his office would refuse the charges against LEROY and DEON TENNART.

### 2.  Eddie and Godavari Hughes

97.    Plaintiff EDDIE HUGHES III was born and raised in Baton Rouge. He is a librarian at Southern University, a historically Black university in Baton Rouge. Mr. HUGHES believes that civic engagement through First Amendment activity is critical to ending unconstitutional law-enforcement violence and intimidation against civilians, particularly Black civilians. He is the father of Plaintiff GODAVARI HUGHES, a high school student who, at the time of the events complained of, was 16 years of age. Ms. HUGHES had recently become interested in political movements for social change, and especially in the exercise of First Amendment-protected protest activities. Proud of his daughter's commitment to civic engagement and growing passion for social justice, Mr. HUGHES regularly took his daughter to lawful, peaceful protests like the one at Airline and Goodwood.

98.    EDDIE and GODAVARI HUGHES arrived at the protest at the intersection of Airline Highway and Goodwood Boulevard at approximately 7:00 p.m. on July 9, 2016.

99.    The HUGHES family was part of a group of protesters who began to march along Airline Highway in the direction of Old Hammond Highway. As the protesters approached Old Hammond Highway, a group of law enforcement officers in riot gear blocked their path and began marching toward the protesters, eventually crossing the curb and advancing toward the protesters on the grass.

100.    Defendant East Baton Rouge Sheriff's Deputy JANE ROE 1 approached GODAVARI HUGHES where she stood on the grass, not in the roadway, and ordered her to the ground. GODAVARI complied with these instructions, dropping to her knees while crying and

repeatedly stating she was only sixteen years old. GODAVARI's hands were bound behind her back with plastic zip-ties and she was escorted onto a bus.

101.    EDDIE HUGHES was arrested by Defendant BRPD Officer PATRICK as he stood on the grass, not in the roadway. His hands were similarly bound and he was escorted to the same bus.

102.    Despite the fact that neither Plaintiff was on the roadway during the protests, EDDIE and GODAVARI HUGHES were each charged with Simple Obstruction of a Highway in violation of La. R.S. § 14:97. EDDIE HUGHES was transported from BRPD headquarters to the East Baton Rouge Parish Prison where he was confined for 22 hours in uncomfortable, unsanitary conditions, and without proper bedding.

103.    GODAVARI HUGHES was detained at the East Baton Rouge Juvenile Detention Center. She was alone and afraid throughout her confinement. On information and belief, the policy of the Juvenile Detention Center requires that child detainees can only be released if a parent or guardian personally appears at the jail. EDDIE HUGHES is GODAVARI's only local parent.  When EDDIE was finally released from the Parish Prison, the Juvenile Detention Center had closed for the night. GODAVARI therefore had to remain in custody until the following morning. Her confinement lasted for approximately 36 hours.

104.    There was no basis to arrest, confine or charge EDDIE HUGHES or GODAVARI HUGHES. Neither had committed any crime.

105.    The BRPD Incident Reports authored by Defendant BRPD Lieutenant MICHAEL RARICK (as to EDDIE HUGHES) and SONDRA HALL (as to GODAVARI HUGHES) are devoid of narrative information based on first-hand knowledge to establish probable cause for an arrest. These inadequate reports were approved by Defendant BRPD Officers BARRON

BRYANT and GINA HEDRICK, with full knowledge that they lacked first-hand information to support an arrest.

106.    To support the baseless charges against EDDIE HUGHES, Defendant Officer RARICK signed a boilerplate Affidavit of Probable Cause that likewise contained no details whatsoever of the purported crime. Instead, the Affidavit contains patently false assertions that EDDIE HUGHES repeatedly "entered the roadway" and was taken into custody when he ignored verbal orders to "exit the lanes of travel."

107.    On July 15, 2016, the East Baton Rouge District Attorney announced that his office would refuse the charges against EDDIE and GODAVARI HUGHES.

### 3.    Elcide Harris

108.    Plaintiff ELCIDE HARRIS is a 49-year-old man who has been a resident of Baton Rouge for nearly fifteen years.  He is disabled.

109.    On the night of July 8, 2016, between 7 and 8 p.m., Mr. HARRIS parked his car in the parking lot of the PetSmart store on Airline Highway between Goodwood and Florida Boulevards.

110.    He then walked down Airline Highway and joined a group of protesters on the neutral ground of Airline Highway in front of the BRPD Headquarters. Mr. HARRIS came to that location to protest the many incidents of Baton Rouge law enforcement violence, illegal arrest, and intimidation he has experienced, witnessed, and learned of in the time he has lived in Baton Rouge, and to demand consequences for Baton Rouge law enforcement's bad behavior and illegal conduct.

111.    Some or all of the Defendants, including but not limited to the currently unknown Officer DOES, Deputy ROES and Trooper MOES lined up in the road, wearing riot gear, some

of them carrying rifles. These Defendants, without cause, and in furtherance of the conspiracy to silence the protest of Black citizens and residents, ordered the protesters to disperse.

112.    Since he was parked on the opposite side of the street, behind the line of police officers, Mr. HARRIS approached Officer JOHN DOE 2 and asked how he should get to his car. DOE 2 told Mr. HARRIS to cross the street. As Mr. HARRIS stepped into the street, some of the currently unknown Officer DOES, Deputy ROES and Trooper MOES converged upon him and seized him. Mr. HARRIS was frisked by Defendant Officer JOHN DOE 3, who squeezed Mr. HARRIS's genitals while doing so.

113.    Despite the fact that he entered the road only upon an officer's instruction, ELCIDE HARRIS was charged with Simple Obstruction of a Highway in violation of La. R.S. § 14:97.

114.    ELCIDE HARRIS was transported from the BRPD headquarters to the East Baton Rouge Parish Prison where he was confined for approximately 22 hours in uncomfortable, unsanitary conditions, and without proper bedding. Mr. HARRIS informed medical staff of his medical conditions and the names of his required medications. He received none of these medications during his confinement.

115.    There was no basis to arrest, confine or charge ELCIDE HARRIS. He had not committed any crime.

116.    To support the baseless charge against Mr. HARRIS, Defendant Officer ERIC MURPHY signed a boilerplate Affidavit of Probable Cause—a pre-printed form identical to 87 other affidavits filed against fellow protesters. Although Defendant MURPHY signed the Affidavit, his name appears nowhere in the report of Mr. HARRIS's arrest. That report was completed by Defendant MIGUES and reads, in its entirety:    "On July 8, 2016[,] I, Cpl. J.

27

Migues was on security detail at the 9000 block [of] Airline Hwy near B.R.P.D. Headquarters. A protest was taking place at the intersection of Airline Hwy at Goodwood Blvd. Elcide Jones [sic] was arrested for simple obstruction of a highway of commerce. Case cleared." In fact, Mr. HARRIS did not obstruct a highway of commerce at any time. The Affidavit completed by Defendant MIGUES is false.

117.    On July 15, the East Baton Rouge District Attorney announced that his office would refuse the charge against ELCIDE HARRIS.

### 4.    Zachary Hill

118.    Plaintiff ZACHARY HILL is a 32-year-old man, a resident of Baton Rouge, and a landscaper.

119.    On the afternoon of July 9, 2016, Mr. HILL attended the protests and joined a march that ended at the BRPD Headquarters on Airline Highway. Mr. HILL came to that location to participate in protest, to voice his opposition to racist policing in Baton Rouge and elsewhere, and to demand reform.

120.    Mr. HILL and his fellow protesters were confronted with a line of law enforcement including but not limited to the currently unknown Officer DOES, Deputy ROES and Trooper MOES from BRPD, EBRSO, and LSP. Most of them dressed in riot gear and carrying shields and batons. Some carried rifles.

121.    Mr. HILL tried to act as a mediator between the law enforcement officers and other protesters to defuse tensions.

122.    At or around 4 p.m., law enforcement officers began arresting protesters, targeting those who appeared to be leaders of the protest. Three members of the BRPD, EBRSO, and/or

LSP, without provocation, tackled Mr. HILL to the ground and handcuffed him. Mr. HILL was not a leader of the protest.

123.    Mr. HILL's arrest was effected with excessive force, causing Mr. HILL to suffer a contusion on his foot, bruised knuckles, and a scratch to his head.

124.    While Mr. HILL awaited transport to East Baton Rouge Parish Prison, Deputy ROES 2, 3, and 4 required all arrestees suspected of being members of the New Black Panther Party to participate in a "cheek swab." ROES 2, 3, and 4 disregarded Mr. HILL's statement that he was not affiliated with this political party and forced him to provide a cheek swab.

125.    ZACHARY HILL was charged with Simple Obstruction of a Highway in violation of La. R.S. § 14:97.

126.    Mr. HILL was placed in a holding cell in the 19th Judicial District Court and detained there for two to three hours before being moved to the East Baton Rouge Parish Prison where he was confined for close to 24 hours in uncomfortable, unsanitary conditions, and without proper bedding. Mr. HILL informed the nurse during intake at the Parish Prison that he was epileptic and required medication three times per day to avoid seizures. He was never provided with his necessary medications.

127.    There was no basis to arrest, confine or charge ZACHARY HILL. He had not committed any crime.

128.    To support the baseless charge against Mr. HILL, Defendant Corporal DORSEY signed a boilerplate Affidavit of Probable Cause that included recitals identical to those in the Affidavits for 87 other arrestees. The boilerplate in the Affidavit was inconsistent with the events leading to Mr. HILL's unjustified arrest.

129. The officer who authored Mr. HILL's arrest report, Defendant MARCUS THOMPSON, did not arrest Mr. Hill and had no knowledge of the circumstances leading to his detention. THOMPSON had been assigned to the "prisoner processing area" and wrote of Mr. Hill's arrest: "The Mobile Field Force officers brought the listed arrestee's [*sic*] B/M Harold Maze and B/M Zachary Hill to the processing table and turned the individual over to the processing team. I completed the necessary paperwork and the arrestee's [*sic*] were booked into EBR Parish prison for the listed charge(s) . . . ."

130. On July 15, 2016, the East Baton Rouge District Attorney announced that his office would refuse the charge against ZACHARY HILL.

### 5. Thomas Hutcherson

131. Plaintiff THOMAS HUTCHERSON is a forty-four-year-old resident of Baton Rouge. Mr. HUTCHERSON was born and raised in Baton Rouge. He is a teacher at a local elementary school.

132. Mr. HUTCHERSON arrived at the protest at the intersection of Airline Highway and Goodwood Boulevard between 6 and 6:30 p.m. on July 9, 2016. Mr. HUTCHERSON came to that location to participate in protest the racist police violence and the routine harassment he and others had suffered by Baton Rouge area law enforcement. Out of concern about the possible response of law enforcement to the protests, Mr. HUTCHERSON recorded the protests and law enforcement's response using his cell phone.

133. At around 7 p.m., some or all of the Defendants, including but not limited to the currently unknown Officer DOES, Deputy ROES and Trooper MOES, dressed in riot gear began marching down Goodwood. At that time, Mr. HUTCHERSON was standing on the west side of

Goodwood, in front of the BRPD Headquarters and across the street from a Shell Gas Station/Circle K complex. Mr. HUTCHERSON was not in the roadway.

134.    Mr. HUTCHERSON was instructed by some of the Officer DOES, Deputy ROES and/or Trooper MOES to move across the roadway to the gas station on the other side of Goodwood Blvd.

135.    Mr. HUTCHERSON attempted to comply with this instruction. As he was doing so, some of the Officer DOES, Deputy ROES and/or Trooper MOES in riot gear grabbed Mr. HUTCHERSON by the back of his shirt collar and yanked him backward, violently charged Mr. HUTCHERSON, contacted him with a riot baton, pushed Mr. HUTCHERSON, and caused him to fall and hit the back of his head on the pavement.

136.    Some of the Officer DOES, Deputy ROES and/or Trooper MOES then converged on Mr. HUTCHERSON, flipping him onto his stomach and cuffing his wrists.

137.    Despite the fact that he was not on the roadway during the protests, Mr. HUTCHERSON was charged with Simple Obstruction of a Highway in violation of La. R.S. § 14:97.

138.    Mr. HUTCHERSON was transported from BRPD headquarters to the East Baton Rouge Parish Prison where he was detained for approximately 24 hours in uncomfortable, unsanitary conditions and without proper bedding. Mr. HUTCHERSON has a history of heart problems, stroke, high blood pressure, and high cholesterol. He takes multiple medications on a daily basis to manage these conditions. Mr. HUTCHERSON informed Sheriff's personnel at the Parish Prison of his medical conditions, the medications he was taking, and the fact that he had hit the back of his head after being tackled by the arresting officers. Mr. HUTCHERSON was provided none of his necessary medications, nor was he provided with medical assistance despite

informing several Deputy ROES and other EBRSO personnel that he believed he might be suffering from a concussion as a result of his violent arrest.

139.    There was no basis to arrest, confine or charge THOMAS HUTCHERSON. He had not committed any crime.

140.    The Affidavit of Probable Cause for Mr. HUTCHERSON'S arrest is a pre-printed form, identical in content to 87 other affidavits of arrestees that day. The Affidavit is false.

141.    The report of Mr. HUTCHERSON'S arrest identifies him as a person arrested for refusing to vacate the roadway "despite being issued several clear verbal commands ordering [him] to do so." This false account is contradicted both by video evidence recorded by Mr. HUTCHERSON and widely available news footage of his arrest.

142.    On July 15, 2016, the East Baton Rouge District Attorney announced that his office would not file a bill of information against Mr. HUTCHERSON.

**E. The Municipal Policies and Practices of the City/Parish, the Baton Rouge Police Department and the East Baton Rouge Sheriff's Office Caused the Violations of Plaintiffs' Constitutional Rights.**

143.    The policies and practices of the City/Parish, the BRPD, and the East Baton Rouge Sheriff's Office were a motivating force behind and a contributing cause of the constitutional violations that Plaintiffs suffered.

144.    The BRPD and the EBRSO employed the following well-settled, inter-related *de facto* and explicit policies and practices to suppress the Plaintiffs' exercise of their First Amendment rights and to otherwise violate Plaintiffs' constitutional rights:

A.    racially discriminatory policing, including the targeting of Black citizens with excessive force and unconstitutional arrest; the criminalizing and shaming of

individuals who criticize law enforcement; and the disparate treatment of citizens based on race, as outlined in paragraphs 46 through 71 above;

B.    the control, frustration, and termination of organized protest and dissent through the targeting for arrest, detention, abuse, and denigration of perceived protest "leaders" and, in particular, individuals who criticize the police;

C.    failing to create and implement clear, understandable policies for the benefit of sworn police personnel regarding how to respond constitutionally to mass demonstrations and spontaneous protest;

D.    failing to create and implement clear, understandable policies for the benefit of sworn police personnel regarding the importance of protecting and respecting the exercise of First Amendment rights through assembly and protest;

E.    failing to train sworn personnel on the importance of protecting and respecting the exercise of First Amendment rights through assembly and protest;

F.    failing to sufficiently distinguish in written policies regarding "Special Events" and "Civil Disorder" between unlawful "civil disorder" or "riot," on the one hand, and the exercise of the constitutionally protected right of free speech, regardless of compliance with burdensome permitting processes, on the other hand;

G.    the use of riot gear—*i.e.*, military armaments—such as shields, helmets with facemasks, body armor, batons, rifles, and military vehicles without just cause and in order to frighten and intimidate those who wish to peacefully assemble to voice their concerns on issue of public importance, thereby creating an atmosphere of tension;

H.     failing to discipline sworn personnel who use excessive force, engage in racist policing, prepare false reports, falsely arrest citizens, and/or violate First Amendment rights, thereby creating a culture of impunity in which officers who commit such misconduct learn that they will suffer no adverse consequences;

I.     tacitly approving and supporting a police code of silence, whereby officers are expected to protect and shield other officers who are accused of misconduct, including excessive force, racist policing, preparation of false reports, false arrest of citizens, and/or violations of First Amendment rights;

J.     allowing a widespread practice of excessive force, directed particularly at Black citizens and residents, to continue unabated, despite notice of the pattern and the full knowledge of policymakers;

K.     failing to create and implement policies and failing to train sworn personnel regarding how to identify the crime of Simple Obstruction of a Highway of Commerce and apply the statute in a manner that respects the First Amendment rights of Black citizens and residents of Baton Rouge;

L.     failing to create and implement a "street closure" permitting process to enable those who wish to engage in demonstrations on matters of immediate public importance to obtain a permit on an emergency basis (*i.e.*, with waiver of the 45 day notice requirement);

M.     imposing onerous financial conditions on those who seek to engage in protest— *i.e.*, requiring proof of $1 million in liability insurance coverage and a receipt for rental of barricades.

145.    The individual Defendants, including but not limited to the currently unknown Officer DOES, Deputy ROES and Trooper MOES, acting on the instructions and with the approval of Defendants HOLDEN, DABADIE, GAUTREAUX, and EDMONSON arrested Plaintiffs pursuant to one or more of the policies listed in the preceding paragraph.

146.    At all pertinent times herein, Defendants HOLDEN, DABADIE, and GAUTREAUX, were aware that the policies, procedures, practices, customs, and usages they established for the CITY/Parish, BRPD, and EBRSO would result in violations of constitutional rights. These defendants ignored that risk and acted unreasonably, intentionally, and with knowing disregard for Plaintiffs' constitutional rights as described above.

147.    The policies and practices of the CITY/PARISH, BRPD, and EBRSO listed in paragraph 145 above were implemented and applied intentionally with knowing disregard for the rights of Plaintiffs.

148.    The policies and practices of the CITY/PARISH, BRPD, and EBRSO listed in paragraph 145 were implemented by the Defendants, working in concert and motivated by racial animus, to suppress the right of Black citizens and residents of Baton Rouge to petition the government for redress of grievances.

**F.  Damages.**

149.    Each of the Plaintiffs has been damaged as a result of the Defendants' actions alleged herein.  The Plaintiffs have all suffered physical pain and extreme emotional distress and anguish as a result of being brutally arrested, detained and imprisoned, not on suspicion of committing a crime, but solely for exercising his or her right to lawful protest under the First Amendment.

150.    Each suffered shame, humiliation and embarrassment from being handcuffed, imprisoned, and treated as a criminal in front of community members, loved ones, employers, and the media, as their unlawful arrests were viewed not only by those in attendance at the protests, but also by viewers of local and national television and Internet broadcasts of the protests. Moreover, their names were included in the East Baton Rouge District Attorney's Office press release when that Office made the decision to refuse the charges against these plaintiffs and nearly 100 other arrestees.

151.    Plaintiffs LEROY TENNART, DEON TENNART, THOMAS HUTCHERSON, EDDIE HUGHES, and ZACHARY HILL suffered significant financial damage, as a result of missing work due to being incarcerated on the Defendants' trumped up criminal charges. Plaintiffs ZACHARY HILL, THOMAS HUTCHERSON, and LEROY TENNART also suffered additional physical damage from being subject to unreasonable force during their arrests, and denied necessary medical care and medication while in the physical custody of Defendant GAUTREAUX and East Baton Rouge Parish.

152.    GODAVARI HUGHES, a minor, was deprived of the care and support of her father, EDDIE HUGHES, while they were both unlawfully incarcerated on the Defendants' false charges. As a juvenile, she has suffered in particular from emotional distress as a result of the Defendants' brutal police tactics.

153.    Each plaintiff continues to suffer deep psychological pain as a result of the Defendants' actions.

154.    Each plaintiff remains fearful of law enforcement and of being subjected to random acts of state-condoned violence in the future, either during lawful protests or solely by

virtue of being members of Baton Rouge's Black communities, due to the Defendants' on-going racist police policies.

## COUNT ONE

### 42 U.S.C. § 1983 CLAIM FOR CIVIL CONSPIRACY TO VIOLATE CIVIL RIGHTS OF ALL PLAINTIFFS (ALL PLAINTIFFS; DEFENDANTS HOLDEN, GAUTREAUX, DABADIE, CAZES, AND EDMONSON)

155.    Plaintiffs, ELCIDE HARRIS, ZACHARY HILL, EDDIE HUGHES, GODAVARI HUGHES, THOMAS HUTCHERSON, DEON TENNART, and LEROY TENNART incorporate the factual allegations of the preceding paragraphs.

156.    Each of the individual Defendants, acting in concert with one another and other yet-unknown co-conspirators, conspired by concerted action to accomplish an unlawful purpose by unlawful means.

157.    Each of the individual Defendants took concrete steps to enter into an agreement in July 2016 to unlawfully detain, arrest, and imprison the Plaintiffs, knowing they lacked probable cause to do so, and for the purpose of impeding Plaintiffs from exercising their First Amendment rights to protest by engaging in non-disruptive speech in support of an issue of pressing public importance.

158.    In furtherance of this conspiracy, each of the Defendants committed specific overt acts, misusing their police powers for the purpose of unlawfully silencing the Plaintiffs. They accomplished this goal by using excessive force to unlawfully effect the Plaintiffs' arrests, fabricating evidence against the Plaintiffs, and approving trumped up charges against them, which resulted in their unlawful imprisonment.

159.    In the implementation of the conspiracy, the officers, deputies and troopers of each of the law enforcement agencies led by Defendants HOLDEN, DABADIE,

GEAUTREAUX and EDMONSON employed the customs and policies of racially discriminatory policing set forth above in paragraphs 46-71 and 144-49.

160.    Defendant GAUTREAUX also deliberately denied necessary medical care to some of the Plaintiffs (ZACHARY HILL, THOMAS HUTCHERSON, and LEROY TENNART), in furtherance of the conspiracy described above.

161.    As a direct and proximate result of the Defendants' conspiracy, Plaintiffs suffered damages, including bodily injury, pain, suffering, mental distress, anguish, humiliation, loss of liberty, loss of income, and legal expenses, as set forth more fully above.

162.    Each individual Defendant is therefore liable for the violation of Plaintiffs' rights by any other individual Defendant.

## COUNT TWO

### 42 U.S.C. 1985(3) CLAIM FOR RACIALLY-MOTIVATED CIVIL CONSPIRACY TO DENY BLACK CITIZENS AND RESIDENTS THE EQUAL PROTECTION OF THE LAWS AND EQUAL PRIVILEGES AND IMMUNITIES UNDER THE LAW, INCLUDING THE RIGHT TO PETITION THE GOVERNMENT FOR REDRESS OF GRIEVANCES (ALL PLAINTIFFS; DEFENDANTS HOLDEN, GAUTREAUX, DABADIE, CAZES, AND EDMONSON)

163.    Plaintiffs, ELCIDE HARRIS, ZACHARY HILL, EDDIE HUGHES, GODAVARI HUGHES, THOMAS HUTCHERSON, DEON TENNART, and LEROY TENNART incorporate the factual allegations of the preceding paragraphs.

164.    Each of the individual Defendants, acting in concert with one another and other yet-unknown co-conspirators, conspired by concerted action to accomplish an unlawful purpose by unlawful means, as described in Count One, above.

165.    The purpose of this conspiracy was to deprive of equal protection of the laws, as guaranteed to them by Fourteenth Amendment, those Black citizens and residents who engaged in protest and to deny them the privileges and immunities of liberty and the right to petition the

government for the redress of grievances guaranteed by the First, Fourth and Fourteenth Amendments.

166.    The Defendants conspired with racial animus toward the Plaintiffs and other Black citizens and residents of Baton Rouge who were protesting the shooting death of Alton Sterling, a Black man, at the hands of Baton Rouge police. The conspiratorial agreement was effectuated as part of a long-standing pattern of racially discriminatory and racially targeted policing in the Baton Rouge area.

167.    As a direct and proximate result of the Defendants' racially motivated conspiracy, Plaintiffs suffered damages, including bodily injury, pain, suffering, mental distress, anguish, humiliation, loss of liberty, loss of income, and legal expenses, as set forth more fully above.

168.    Each individual Defendant is therefore liable for the violation of Plaintiffs' rights by any other individual Defendant.

## COUNT THREE

### 42 U.S.C. § 1983 CLAIMS FOR FALSE DETENTION, ARREST, AND IMPRISONMENT IN VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS (ALL PLAINTIFFS; ALL DEFENDANTS)

169.    Plaintiffs, ELCIDE HARRIS, ZACHARY HILL, EDDIE HUGHES, GODAVARI HUGHES, THOMAS HUTCHERSON, DEON TENNART, and LEROY TENNART incorporate the factual allegations of the preceding paragraphs.

170.    The actions by Defendants in falsely detaining, arresting, and imprisoning Plaintiffs without reasonable suspicion or probable cause violated Plaintiffs' Fourth Amendment rights to be free from unreasonable search and seizure, pursuant to 42 U.S.C. § 1983.

171.    The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice and knowing disregard for Plaintiffs' clearly established constitutional rights.

172.    The actions of the Defendants were the direct and proximate cause of the violations of Plaintiffs' Fourth Amendment rights, bodily injury, pain, suffering, mental distress, anguish, humiliation, loss of liberty, loss of income, and legal expenses, as set forth more fully above.

## COUNT FOUR

## 42 U.S.C. § 1983 CLAIMS FOR MANUFACTURING EVIDENCE AND KNOWING USE OF THAT EVIDENCE TO ATTEMPT TO OBTAIN THE INSTITUTION OF PROSECUTION ALL PLAINTIFFS WITHOUT PROBABLE CAUSE IN VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS (ALL PLAINTIFFS; ALL DEFENDANTS)

173.    Plaintiffs ELCIDE HARRIS, ZACHARY HILL, EDDIE HUGHES, GODAVARI HUGHES, THOMAS HUTCHERSON, DEON TENNART, and LEROY TENNART reallege the factual allegations of the preceding paragraphs.

174.    As previously set forth in detail, Defendants falsely detained, arrested, and charged Plaintiffs with the crime of Simple Obstruction of a Highway in violation of La. R.S. 14:97, using the state criminal process to do so, based on manufactured evidence.

175.    At all pertinent times, Plaintiffs had a constitutional right under the Fourth and Fourteenth Amendments to due process of law and to be free from unlawful charging and institution of criminal prosecution against them based on manufactured evidence.

176.    None of the Defendants had probable cause to believe that Plaintiffs had committed any offense, and Defendants were therefore wholly unjustified in authoring incident reports and/or swearing and/or notarizing affidavits to support any charge against Plaintiffs.

177.    Defendants, acting individually and together, knowingly manufactured evidence in the form of falsified police reports and affidavits in order to punish and intimidate Plaintiffs for the lawful exercise of their First Amendment rights to assemble and to free speech, and to stifle public criticism of the Baton Rouge Police Department.

178.    The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice and knowing disregard for Plaintiffs' clearly established constitutional rights.

179.    The actions of the Defendants were the direct and proximate cause of the violations of Plaintiffs' Fourth and Fourteenth Amendment rights, suffering, mental distress, anguish, humiliation, loss of liberty, loss of income, and legal expenses, as set forth more fully above.

## COUNT FIVE

## 42 U.S.C. § 1983 CLAIMS FOR EXCESSIVE USE OF FORCE (PLAINTIFFS HARRIS, HILL, HUTCHERSON, DEON TENNART, LEROY TENNART; ALL DEFENDANTS)

180.    Plaintiffs ELCIDE HARRIS, ZACHARY HILL, THOMAS HUTCHERSON, DEON TENNART, and LEROY TENNART reallege the factual allegations of the preceding paragraphs.

181.    The Defendants employed excessive and unreasonable force, or caused excessive and unreasonable force to be employed, in effectuating the arrests of Plaintiffs, as specifically alleged above, in violation of Plaintiffs' rights under the Fourth Amendment.

182.    The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice and knowing disregard for Plaintiffs' clearly established constitutional rights.

183.    The actions of the Defendants were the direct and proximate cause of the violations of Plaintiffs' Fourth Amendment rights, bodily injury, pain, suffering, mental distress, anguish, humiliation, loss of liberty, loss of income, and legal expenses, as set forth more fully above.

## COUNT SIX

## 42 U.S.C. § 1983 CLAIMS FOR RETALIATORY ARREST IN VIOLATION OF FIRST AMENDMENT RIGHTS (ALL PLAINTIFFS; ALL DEFENDANTS)

184.    Plaintiffs ELCIDE HARRIS, ZACHARY HILL, EDDIE HUGHES, GODAVARI HUGHES, THOMAS HUTCHERSON, DEON TENNART, and LEROY TENNART reallege the factual allegations of the preceding paragraphs.

185.    Plaintiffs were engaged in lawful First Amendment activity on the public streets and sidewalks of the City of Baton Rouge from July 8, 2016, to July 10, 2016. Plaintiffs were acting reasonably within time, manner, and place restrictions and were not provided any alternative channels for their expression.

186.    Defendants lacked probable cause to arrest Plaintiffs.

187.    The Defendants arrested Plaintiffs or caused Plaintiffs to be arrested in retaliation for their exercise of First Amendment rights, including in particular, their vocal criticism of racially discriminatory policing and police violence on the part of law enforcement.

188.    Alternatively, the Defendants' arrests of Plaintiffs, even if not in retaliation, still constituted a violation of Plaintiffs' First Amendment rights to engage in spontaneous and non-disruptive speech in a public way, on a matter of pressing public importance.

189.    The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice and knowing disregard for Plaintiffs' clearly established constitutional rights.

190.    The actions of the Defendants were the direct and proximate cause of the violations of Plaintiffs' First, Fourth and Fourteenth Amendment rights, bodily injury, pain, suffering, mental distress, anguish, humiliation, loss of liberty, loss of income, and legal expenses, as set forth more fully above.

## COUNT SEVEN

### 42 U.S.C. § 1983 CLAIM FOR FAILURE TO INTERVENE
### (ALL PLAINTIFFS; ALL DEFENDANTS)

191.    Plaintiffs ELCIDE HARRIS, ZACHARY HILL, EDDIE HUGHES, GODAVARI HUGHES, THOMAS HUTCHERSON, DEON TENNART, and LEROY TENNART reallege the factual allegations of the preceding paragraphs.

192.    During the events described above, the Defendants stood by without intervening to prevent the violation of Plaintiffs' constitutional rights under the First, Fourth and Fourteenth Amendments, even though they had the opportunity and duty to do so.

193.    The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice and knowing disregard for Plaintiffs' clearly established constitutional rights.

194.    As a direct and proximate result of the Defendants' failure to intervene, Plaintiffs suffered damages, including bodily injury, pain, suffering, mental distress, anguish, humiliation, loss of liberty, loss of income, and legal expenses, as set forth more fully above.

## COUNT EIGHT

### FACIAL CHALLENGE TO LA. R.S. § 14:97 (ALL PLAINTIFFS)

195.    Plaintiffs ELCIDE HARRIS, ZACHARY HILL, EDDIE HUGHES, GODAVARI HUGHES, THOMAS HUTCHERSON, DEON TENNART, and LEROY TENNART reallege the factual allegations of the preceding paragraphs.

196.    Plaintiffs were arrested for alleged violation of La. R.S. § 14:97.

197.    La. R.S. § 14:97, is both overbroad and vague, criminalizing all assembly in public streets. In the twelve month period prior to July 2016, EBRSO made 20 arrests under the statute. BRPD made 44 such arrests. On the weekend of July 8–10, they made nearly 200 arrests under the statute.

198.    A substantial number of R.S. 14:97's applications are unconstitutional, judged in relation to the statute's limited legitimate sweep. The statute thus violates the First Amendment and is unconstitutional on its face.

199.    Plaintiffs are contemporaneously giving notice to the Attorney General of Louisiana regarding this constitutional challenge to a Louisiana statute.

## COUNT NINE

## AS-APPLIED CHALLENGE TO LA. R.S. § 14:97 (ALL PLAINTIFFS)

200.    Plaintiffs ELCIDE HARRIS, ZACHARY HILL, EDDIE HUGHES, GODAVARI HUGHES, THOMAS HUTCHERSON, DEON TENNART, and LEROY TENNART reallege the factual allegations of the preceding paragraphs.

201.    Plaintiffs were arrested for alleged violation of La. R.S. § 14:97.

202.    As applied in the arrests of Plaintiffs and others in Baton Rouge in July 2016, La. R.S. § 14:97, is both overbroad and vague, criminalizing all assembly in public streets. The statute is so broad as to criminalize "any act . . . in a road . . . which will render movement thereon more difficult." This criminalizes all marches, demonstrations, or picketing in the roadway.

203.    The Defendants' application of La. R.S. § 14:97 to detain Plaintiffs or cause Plaintiffs' detention was unconstitutional and violated Plaintiffs' First and Fourteenth Amendment rights.

## COUNT TEN

### 42 U.S.C. § 1983 CLAIM FOR DELIBERATE INDIFFERENCE TO MEDICAL NEEDS (PLAINTIFFS ZACHARY HILL, THOMAS HUTCHERSON, AND LEROY TENNART; DEFENDANTS GAUTREAUX AND EAST BATON ROUGE PARISH)

204. Plaintiffs ZACHARY HILL, THOMAS HUTCHERSON, and LEROY TENNART incorporate the factual allegations of the preceding paragraphs.

205. Defendants GAUTREAUX and the EAST BATON ROUGE SHERIFF'S OFFICE were deliberately indifferent to the medical needs of ZACHARY HILL, THOMAS HUTCHERSON, and LEROY TENNART while they were in custody at the East Baton Rouge Parish Prison. All three required medical attention for injuries sustained during their arrests and the provision of medication for preexisting medical conditions. Defendants GAUTREAUX, East Baton Rouge Parish, and their agents were aware of Plaintiffs' medical needs yet intentionally failed to provide medical care or medication during their detention. These Defendants' actions and inactions violated the rights of ZACHARY HILL, THOMAS HUTCHERSON, and LEROY TENNART under the Eighth and Fourteenth Amendments.

206. The actions of the Defendants were the direct and proximate cause of the violations of Plaintiffs' Eighth and Fourteenth Amendment rights, bodily injury, pain, suffering, mental distress, anguish, and medical expenses, as set forth more fully above.

## COUNT ELEVEN

### MONELL CLAIM FOR MUNICIPAL LIABILITY FOR VIOLATION OF PLAINTIFFS' CIVIL RIGHTS (ALL PLAINTIFFS; ALL DEFENDANTS IN THEIR OFFICIAL CAPACITIES)

207. Plaintiffs, ELCIDE HARRIS, ZACHARY HILL, EDDIE HUGHES, GODAVARI HUGHES, THOMAS HUTCHERSON, DEON TENNART, and LEROY TENNART incorporate the factual allegations of the preceding paragraphs.

208.    Defendants named in this Count, acting individually and together, under color of law, acted to violate Plaintiffs' rights as set forth in the preceding claims.

209.    The City/Parish, Baton Rouge Police Department, and Defendants HOLDEN, DABADIE, and GAUTREAUX have developed and maintained policies, practices, procedures, customs, and usages exhibiting deliberate indifference to the constitutional rights of citizens and residents of the City/Parish, including but not limited to those policies, practices, procedures, customs, and usages described above, and in particular in paragraphs 46-71 and 144-49, which caused the violation of Plaintiffs' rights as described herein and the resultant damages suffered.

210.    The City/Parish, Baton Rouge Police Department, and Defendants HOLDEN, DABADIE, and GAUTREAUX had the power to prevent or aid in the prevention of the wrongs done and conspired to be done as described herein, yet failed or refused to do so, in violation of 42 U.S.C. § 1983.

211.    The actions and omissions of the defendants as described herein were done with knowing disregard for the constitutional rights of the Plaintiffs. The Defendants have acted maliciously, willfully, wantonly, and in reckless disregard of Plaintiffs' rights.

212.    The actions of the Defendants were the direct and proximate cause of the violations of Plaintiffs' First, Fourth and Fourteenth Amendment rights, bodily injury, pain, suffering, mental distress, anguish, humiliation, loss of liberty, loss of income, and legal expenses, as set forth more fully above.

213.    Moreover, the actions of all Defendants were directed, condoned, and/or ratified by HOLDEN, DABADIE, and GAUTREAUX, final policymakers for the City/Parish and the EBRSO.

214.    As a direct and proximate result of the Defendants' actions, Plaintiffs suffered damages, including bodily injury, pain, suffering, mental distress, anguish, humiliation, loss of liberty, loss of income, and legal expenses, as set forth more fully above.

## COUNT TWELVE

### SUPPLEMENTAL STATE LAW CLAIMS FOR VIOLATIONS OF THE FREE SPEECH PROTECTIONS OF THE LOUISIANA CONSTITUTION (ALL PLAINTIFFS; ALL DEFENDANTS)

215.    Plaintiffs, ELCIDE HARRIS, ZACHARY HILL, EDDIE HUGHES, GODAVARI HUGHES, THOMAS HUTCHERSON, DEON TENNART, and LEROY TENNART incorporate the factual allegations of the preceding paragraphs.

216.    Article I, Sections 7 and 9 of the Louisiana Constitution, protects freedom of speech and the right of assembly. Defendants' actions in arresting and detaining Plaintiffs as described above interfered with their exercise of these fundamental rights, as guaranteed by Louisiana's Constitution.

## COUNT THIRTEEN

### SUPPLEMENTAL STATE LAW CLAIMS FOR VIOLATIONS OF THE RIGHT TO PRIVACY AND RIGHTS OF THE ACCUSED (ALL PLAINTIFFS; ALL DEFENDANTS)

217.    Plaintiffs, ELCIDE HARRIS, ZACHARY HILL, EDDIE HUGHES, GODAVARI HUGHES, THOMAS HUTCHERSON, DEON TENNART, and LEROY TENNART incorporate the factual allegations of the preceding paragraphs.

218.    Defendants' seizure of Plaintiffs, as described above, was unreasonable and without probable cause in violation of Article I, § 5 of the Louisiana Constitution. The failure to promptly inform Plaintiffs of the charges against them also violates Article I, § 13 of the Louisiana Constitution.

## COUNT FOURTEEN

### SUPPLEMENTAL STATE LAW CLAIMS FOR INTENTIONAL TORTS, INCLUDING INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS, ASSAULT, BATTERY, AND FALSE IMPRISONMENT (ALL PLAINTIFFS; ALL DEFENDANTS)

219.    Plaintiffs, ELCIDE HARRIS, ZACHARY HILL, EDDIE HUGHES, GODAVARI HUGHES, THOMAS HUTCHERSON, DEON TENNART, and LEROY TENNART incorporate the factual allegations of the preceding paragraphs.

220.    Named defendants and Defendant DOES, ROES, and MOES intended to inflict a harmful or offensive contact upon Plaintiffs in the process of arresting them. As the arrests and detention were unjustified by legal authority, Defendants have committed the intentional torts of assault, battery, false arrest and imprisonment. Defendants' militarized response to peaceful and lawful protests, and their mass arrest of Plaintiffs amounts to extreme and outrageous conduct that caused Plaintiffs severe emotional distress. Defendants knew or should have known that such distress would be the outcome of their actions and therefore are liable for intentional infliction of emotional distress.

## COUNT FIFTEEN

### SUPPLEMENTAL STATE LAW CLAIMS FOR NEGLIGENT INJURY (ALL PLAINTIFFS; ALL DEFENDANTS)

221.    Plaintiffs incorporate the factual allegations of all preceding paragraphs.

222.    Defendants owed a duty of care to Plaintiffs to conduct lawful arrests, supported by probable cause, and free from the use of excessive force. Defendants' arrest and detention of Plaintiffs violated the duty of care owed to Plaintiffs and was a cause-in-fact of Plaintiffs' injuries.

## V. Jury Demand

223.    Plaintiffs demand trial by jury.

## VI.    Prayer For Relief

WHEREFORE, Plaintiffs ELCIDE HARRIS, ZACHARY HILL, EDDIE HUGHES, GODAVARI HUGHES, THOMAS HUTCHERSON, DEON TENNART, and LEROY TENNART pray that this Court award them the following relief:

A.   Compensatory damages in an amount sufficient to compensate them for the physical and emotional pain and suffering caused by the Defendants actions as alleged herein.

B.   Punitive damages against each of the individual defendants in amounts sufficient to deter and punish each of them for their willful, wanton, and race-based misconduct.

C.   The return of any and all personal items seized from Plaintiffs, as well as the complete destruction of any and all samples taken from Plaintiffs, analysis performed on Plaintiffs or samples collected from Plaintiffs, including but not limited to cheek swabs and finger prints, and the complete destruction of any other documents, objects, and/or records generated as a result of Plaintiffs' illegal arrests and detention.

D.   Attorneys' fees pursuant to 42 U.S.C. § 1988; and

E.   Such further and additional relief as this Court may deem proper and just.

Respectfully submitted,

/s/ James W. Craig_____
James W. Craig, La Bar No. 33687
Co-Lead Counsel

/s/ Eric A. Foley_____
Eric A. Foley, La. Bar No. 34199

Roderick & Solange MacArthur Justice Center
4400 S. Carrollton Avenue
New Orleans LA 70119
(504) 620-2259 (p) / (504) 208-3133 (f)
jim.craig@macarthurjustice.org
eric.foley@macarthurjustice.org

/s/Gideon T. Carter III_____
Gideon T. Carter, III, La. Bar No. 14136
Co-Lead Counsel
PO Box 80264
Baton Rouge LA 70898-0264
(225) 214-1546 (p) / (225) 341-8874 (f)
gideontcarter3d@gmail.com

/s/ S. Mandisa Moore-O'Neal_____
S. Mandisa Moore O'Neal, La. Bar No. 35256
1824 Oretha Castle Haley Blvd.
New Orleans LA 70113
(504) 931-8482 (p)
smandisa85@gmail.com

/s/ Emily Faye Ratner_____
Emily Faye Ratner, La. Bar No. 35289
7214 St. Charles Ave, Campus Box No. 913
New Orleans, LA 70118
(504) 864-7861 (p) / (504) 861-5986 (f)
msemilyfaye@gmail.com

/s/ Mauricio Sierra_____
Mauricio Sierra, La. Bar No. 35560
The Sierra Law Firm, LLC
7214 St. Charles Ave.
Campus Box 913
New Orleans, LA 70118
(504) 864-7860 (p)
msierra1@gmail.com