UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

LEROY TENNART, et al.,

        Plaintiffs,

  v.

CITY OF BATON ROUGE, et al.,

        Defendants.

Case No. 17-cv-179-JWD-EWD

**PLAINTIFFS' MEMORANDUM AND RULE 56(d) REQUEST FOR DISCOVERY IN OPPOSITION TO PRE-DISCOVERY MOTION FOR SUMMARY JUDGMENT FILED BY LOUISIANA SHERIFFS' ASSOCIATION, MIKE CAZES, AND CHUCK HURST**

      Although discovery has not commenced in this action, three Defendants, the Louisiana Sheriffs' Association ("LSA"), Sheriff Mike Cazes, and Chuck Hurst (for purposes of this opposition, "LSA Defendants") have filed a motion for summary judgment (ECF No. 98). Plaintiffs oppose the motion for two basic reasons. First, the LSA Defendants' motion and attachments are insufficient to demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law" as required by Fed. R. Civ. P. 56(a). Moreover, LSA Defendants have moved for summary judgment prior to the initial Rule 16 scheduling conference[1] and thus before Plaintiffs have had any opportunity to propound discovery. Therefore, in accordance with Fed. R. Civ. P. 56(d), Plaintiffs should be granted an opportunity for discovery in order to properly contest the evidence (however meager) presented by Defendants.

---

[1] Plaintiffs have moved for a setting of the initial scheduling conference (ECF No. 102); the date for that conference has not yet been set.

I.    FACTUAL AND PROCEDURAL SUMMARY

In July 2016, Plaintiffs, along with hundreds of Black residents of the Baton Rouge area and others who marched in solidarity with them, participated in protests in the wake of the killing of Alton Sterling by an officer of the Baton Rouge Police Department ("BRPD"). It was announced at the time that the law enforcement response to the protests was coordinated by multiple law enforcement agencies, and by the Louisiana Sheriffs' Association, which supplied deputies to assist BRPD and East Baton Rouge Sheriff's Office ("EBRSO"). Contemporary statements by Governor Edwards further support Plaintiffs' contention that LSA Defendants colluded with Baton Rouge law enforcement agencies during the protests. On July 10, 2016, Governor Edwards spoke at a press conference concerning the protests:

> [I]t's so important that we have standing behind me folks who are from the Sheriff's departments from around the state because the Sheriff's Association has a task force that exists exactly for this purpose. Sid Gautreaux, the Sheriff of East Baton Rouge Parish has called upon the task force to respond in this situation. He's coordinating with them very closely, and what this allows to happen is not only do we have extra law enforcement officers on this on the streets here in Baton Rouge but the folks from the Baton Rouge Police Department and from the East Baton Rouge Sheriff's Office can rest and actually recuperate a little bit so that they can quickly return in good order back to the protests....[2]

Each of the Plaintiffs were arrested and detained on false charges. They filed the present action seeking redress for violations of rights guaranteed to them by the U.S. Constitution and state law. Along with suing the City of Baton Rouge, law enforcement agencies, and members of law enforcement agencies whose officers participated in the suppression of protests in 2016, Plaintiffs also brought claims against the Louisiana Sheriffs' Association and two of its officials: West Baton

---

[2] Governor John Bel Edwards, Remarks at Press Conference (July 10, 2016) (transcript available at http://gov.louisiana.gov/assets/docs/Transcripts/Security-PC-Transcript.docx.pdf, last accessed 12/20/17) (video available at https://www.youtube.com/watch?v=11xaahhmhIE&t=140s)

2

Rouge Sheriff Mike Cazes, who was and is Southern District Coordinator of the LSA's Emergency Task Force, and Chuck Hurst, who was and is Director of the LSA's Task Force and Homeland Security Services. (Third Amended Complaint,[3] ECF No. 56 ¶¶ 25–27.)

Plaintiffs alleged that these parties were co-conspirators, acting in concert with members of the BRPD, EBRSO, Louisiana State Police, and other law enforcement agencies to suppress the First Amendment rights of Black citizens and their allies. (*Id.* ¶¶ 273–75.) Plaintiffs alleged that the aims of the conspiracy were to:

> (a) create an intimidating law enforcement response that was militarized, in furtherance of which police personnel wore and used riot gear and carried rifles, shields, and/or batons while confronting the protesters;
>
> (b) effectuate the maximum number of arrests of innocent protesters, so as to send a message to Black citizens and residents of Baton Rouge that dissent would not be tolerated;
>
> (c) target certain protesters for arrest, based on these protesters' supposed group affiliations (in particular, affiliation with Black political and social organizations) and/or Defendants' belief that they were "leaders" of the spontaneous protests;
>
> (d) book protesters *en masse* on false criminal charges and to maximize the time those arrested spent in custody as punishment for defying law enforcement;
>
> (e) ensure officers used excessive physical force to effectuate these illegal arrests;
>
> (f) insulate individual officers from accountability, criticism or consequence for their role in Defendants' scheme by encouraging and/or allowing officers to cover the names and badge numbers on their uniforms with opaque tape and to refuse to give their names or badge numbers when asked directly by civilians; and
>
> (g) discourage individuals from protesting in the future through a display of militarized police violence and intimidation.

(*Id.* ¶ 280.)

---

[3] Referred to as "Complaint" below.

In particular, Plaintiffs alleged that LSA Defendants coordinated with the other Defendants by arranging for the presence of an additional 200 Sheriff's deputies from surrounding parishes to respond to the protests.

LSA Defendants premise their summary judgment motion on the following flawed arguments: (1) LSA Defendants could not have been co-conspirators in a race-based conspiracy under § 1985(3) because the history of racially-biased policing detailed in the Complaint did not explicitly incorporate a history of racial bias by the LSA Defendants (ECF No. 98-2 at 11); (2) the Complaint supposedly fails to allege that the conspiracy injured Plaintiffs (*id.*); and (3) LSA Defendants are entitled to qualified immunity on the grounds that their actions in coordinating Sheriff's office responses did not directly cause the Plaintiffs' injuries (*id.* at 14–17).

LSA Defendants have moved for summary judgment prior to the Rule 16 scheduling conference and thus before Plaintiffs have had any opportunity to propound discovery.

## II. STANDARD OF REVIEW

Summary judgment is appropriate if the moving party shows, by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" that there is "no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(c)(1)(A), (a). The court must construe the facts and evidence in the light most favorable to the nonmoving party. *Haverda v. Hays Cnty.*, 723 F.3d 586, 591 (5th Cir. 2013).

Where a summary judgment motion challenges the sufficiency of the pleadings, those challenges are reviewed under the familiar motion to dismiss standard deriving from Rule 12(b)(6). *Zastrow v. Houston Auto Imports Greenway, Ltd.*, 789 F.3d 553, 559 (5th Cir. 2015). All well-

pleaded facts will be accepted as true and viewed in the light most favorable to the plaintiff. *Id.*

Summary judgment should be "used sparingly . . . where motive and intent play leading roles, the proof is largely in the hands of the alleged conspirators, and hostile witnesses thicken the plot." *Poller v. Columbia Broad. Sys., Inc.*, 368 U.S. 464, 473 (1962) (antitrust case); *Tyler v. Vickery*, 517 F.2d 1089, 1093 (5th Cir. 1975) (applying *Poller* in civil rights class action); *see also Adickes v. Kress & Co.*, 398 U.S. 144, 176 (1970) ("The existence or nonexistence of a conspiracy is essentially a factual issue that the jury, not the trial judge, should decide.") (Black, J. concurring); *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1265 (5th Cir. 1991) ("When state of mind is an essential element of the nonmoving party's claim, it is less fashionable to grant summary judgment because a party's state of mind is inherently a question of fact which turns on credibility. . . . [W]e have emphasized repeatedly that cases which turn on the moving party's state of mind are not well-suited for summary judgment.")

A moving party's reliance on "statements of conclusions of law or ultimate fact cannot shift the summary judgment burden to the nonmovant." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1221 (5th Cir. 1985); *see also Anderson v. Tupelo Reg'l Airport Auth.*, 568 Fed. Appx. 287, 293 (5th Cir. 2014) (applying *Galindo*).

### III. THE SUMMARY JUDGMENT MOTION FAILS TO ESTABLISH THAT LSA DEFENDANTS ARE "ENTITLED TO JUDGMENT AS A MATTER OF LAW"

Plaintiffs will first address LSA Defendants' arguments challenging the sufficiency of the pleadings before addressing LSA Defendants' assertion of uncontested facts.

#### A. LSA Defendants' Challenges to the Sufficiency of the Complaint Fail Under the Motion to Dismiss Standard of Rule 12(b)(6).

Where, as here, a summary judgment motion challenges the sufficiency of the pleadings, the motion is reviewed under the standard for a motion to dismiss pursuant to Rule 12(b)(6), and

5

all well-pleaded facts are viewed in the light most favorable to the plaintiff and accepted as true. *Zastrow*, 789 F.3d. at 559 (5th Cir. 2015). LSA Defendants' motion cannot be sustained under this standard.

### 1. LSA Defendants' liability as co-conspirators under § 1985(3) is not contingent on pleading a history of racial animus demonstrated by Defendants.

LSA Defendants argue that Plaintiffs have alleged a history of racial animus on behalf of the BRPD and EBRSO, but have not made similar allegations against LSA Defendants. LSA Defendants' first argument fails because although 42 U.S.C. § 1985(3) requires a showing that the conspiracy was motivated by racial animus, it does not require Plaintiffs to allege a <u>history</u> of racial animus on the part of every co-conspirator.

A claim of conspiracy by persons to violate civil rights under § 1985(3) requires a conspiracy to deprive a person or persons of equal protection of the laws, an act in furtherance of the conspiracy, and the deprivation of a right or privilege. *Deubert v. Gulf Fed. Sav. Bank*, 820 F.2d 754, 757 (5th Cir. 1987). The Fifth Circuit also requires that the conspiracy be "motivated by racial animus." *Id.*

The Complaint pleads specific facts alleging the participation of the LSA Defendants in the conspiracy:

> In response to the protests and the national spotlight on protesters' nonviolent, lawful resistance, Defendants, led by Defendants HOLDEN, DABADIE, EDMONSON, GAUTREAUX, ARD, HURST and CAZES, developed and implemented a strategy, motivated by racial animus, to silence this peaceful and lawful exercise of First Amendment rights. Defendants colluded to accomplish this through the use of intimidation, excessive force, illegal arrests, illegal detention, denigration, and criminalization. The Livingston Parish Sheriff's Office, the Ascension Parish Sheriff's Office (both members of the Emergency Task Force of the Louisiana Sheriff's Association), and other law enforcement agencies not currently known to Plaintiffs joined Defendants in this endeavor.

6

>In multiple policy-making venues before and during the time in which they arrested and detained Plaintiffs, Defendants reached agreement on their coordinated response to peaceful protests. The entities that facilitated Defendants' collusion included but were not limited to: the Governor's Office of Homeland Security and Emergency Preparedness ("GOHSEP"), the Mayor's Office of Homeland Security and Preparedness ("MOHSEP"), and the Louisiana Sheriffs' Association ("LSA").
>
>Defendants HOLDEN, DABADIE, EDMONSON, GAUTREAUX, CAZES, HURST, DOES, MOES, ROES, or their agents, along with other high ranking members of other law enforcement entities, gathered at GOHSEP on several occasions between July 6 and 10, 2016, in order to formulate and implement their agreement to suppress the protests.

(ECF No. 56 ¶¶ 273-75)

>Defendant GAUTREAUX was the president of the LSA during the protests. GAUTREAUX, in combination with Defendant CAZES, the Southern District Coordinator of LSA's Emergency Task Force, and Defendant HURST, Director of the LSA's Task Force and Homeland Security services, arranged for the presence of approximately 200 additional deputies from surrounding sheriffs' offices to supplement local law enforcement's response to the protests.

(*Id.* ¶ 277.)

>Pursuant to the Defendants' plan, numerous law enforcement agencies contributed personnel and resources to create a massive police presence to confront those engaging in peaceful protest and to suppress the rights of Black citizens and residents of Baton Rouge to petition the government for redress of grievances.

(*Id.* ¶ 279.)

Thus, Plaintiffs have alleges that Cazes, Hurst, and Sheriff Gautreaux (then-president of the LSA) colluded with other law enforcement officials to suppress the exercise of First Amendment rights by Black citizens of Baton Rouge and their allies. (ECF No. 56 ¶¶ 273, 399–401.) Plaintiffs explicitly allege that the conspiracy among the LSA Defendants and other law enforcement agencies was motivated by racial animus. (*Id.* ¶ 273.)

A demonstrated history of racial animus is not a necessary predicate for one's participation in a conspiracy that is motivated by racial animus, and Defendants point to no legal authority to support this assertion. It is sufficient to allege, as the Complaint does, that the conspiracy was

motivated by racial animus, and the LSA Defendants knowingly participated in the conspiracy. Plaintiffs sufficiently allege that LSA Defendants acted in furtherance of a conspiracy that implemented the racialized customs, practices, and usages of other Defendants, and that thereby violated the Plaintiffs' rights.

### 2. LSA Defendants and Their Co-conspirators Acted in Furtherance of a Conspiracy to Violate Plaintiffs' Rights

LSA Defendants argue that the Complaint did not specifically allege that the conspiracy *per se* was the cause of Plaintiffs' injuries. (ECF No. 98-2 at 11.) According to LSA Defendants, Plaintiffs "allege that the cause of the alleged violations were the *de facto* policies based on racial animus that were born out of the particular law enforcement agencies' unique histories and developed over decades." (*Id.*)

This argument fundamentally misapprehends the Complaint. It is correct that Plaintiffs allege that the policies, customs, and practices of the City, EBRSO, and BRPD were "a moving force behind and a contributing cause of" Plaintiffs' injuries. (ECF No. 56 ¶ 372.) But Plaintiffs further allege that these policies "were implemented by Defendants, **working in concert and motivated by racial animus**, to suppress the right of Black citizens and residents of Baton Rouge to petition the government for redress of grievances." (*Id.* ¶ 377; emphasis added.)

Plaintiffs further allege, at length, how the aims of the conspiracy (ECF No. 56 ¶ 280) and the overt acts of the co-conspirators and their agents in furtherance of the conspiracy injured Plaintiffs (*id.* ¶¶ 282–368). In particular, Plaintiffs allege that LSA Defendants "arranged for the presence of approximately 200 additional deputies from surrounding Sheriff's offices to supplement local law enforcement's response to the protests." (*Id.* ¶ 277.)

8

Moreover, Louisiana's "mutual aid" statute makes clear that "the personnel of the responding agency shall report to and shall work under the direction and supervision of the senior officer of the requesting agency on duty at the time that the request for aid is made . . . . During the emergency, the responding agency shall be considered the agent of the requesting agency." La. R.S. § 33:2337(2).

Thus, LSA Defendants were well aware that any agencies or individual officers responding to their call would be working under the direction of BRPD and EBRSO and would serve as BRPD and EBRSO's agents. And LSA's then-President, Sheriff Gautreaux, while making the call for assistance from LSA's membership, was also the final policymaker for one of the law enforcement agencies (EBRSO) with a history of racialized policing. Moreover, Defendant Cazes, head of the LSA Emergency Task Force, is the Sheriff in the jurisdiction adjoining East Baton Rouge Parish, and can hardly have been unaware of the allegations of racially discriminatory policing across the river from his own parish.

In short, the Complaint alleges that LSA Defendants, acting in concert, consultation, and coordination with the other Defendants, provided law enforcement officers assistance in implementing the racialized policing practices and customs of the City, EBRSO, BRPD, and LSA. (*Id.* ¶¶ 273, 277.) That is more than sufficient to demonstrate a causal link between LSA's participation in the conspiracy and the harms suffered by the Plaintiffs.

Under long-established principles of conspiracy law, each conspirator is liable for the actions of all co-conspirators performed in furtherance of the conspiracy. RESTATEMENT (SECOND) OF TORTS § 876 (1979); *see also Hale v. Townley*, 45 F.3d 914, 920 (5th Cir. 1995) ("A conspiracy may be charged under section 1983 as the legal mechanism through which to impose liability on all of the defendants without regard to who committed the particular act . . . .")

9

There is no contradiction here. The Complaint alleges that the Defendants each played a role in a conspiracy to suppress the voices of Black residents of Baton Rouge and their allies by assisting in the implementation of the racialized law enforcement practices, policies and customs of the City, BRPD and EBRSO to silence the voices of Black residents of Baton Rouge and their allies.

Second, even if the conspiracy allegations were somehow inconsistent with allegations regarding the racially discriminatory customs, policies, and practices of the Baton Rouge law enforcement co-conspirators, this would not be fatal to Plaintiffs' claims. It is black-letter law that inconsistent claims do not render a pleading insufficient:

> (2) **Alternative Statements of a Claim or Defense**. A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient.
>
> (3) **Inconsistent Claims or Defenses**. A party may state as many separate claims or defenses as it has, regardless of consistency.

Fed. R. Civ. P. 8(d); *see also Leal v. McHugh*, 731 F.3d 405, 414 (5th Cir. 2013) (citing Rule 8 and holding "[E]ven if Appellants' factual allegations were somehow inconsistent . . . they do not render a right to recovery elusive.")

### 3. LSA Defendants' Motion Does Not Demonstrate That Qualified Immunity Applies to Them

LSA Defendants assert the affirmative defense of qualified immunity on the limited basis that the overt acts through which they participated in the conspiracy were not, in a vacuum, violative of constitutional rights. (ECF No. 98-2 at 16 (arguing that LSA Defendants

"clearinghouse activity" of referring requests for assistance to Sheriff's departments does not violate the Constitution).)

Plaintiffs first note that a genuine issue of material fact exists as to whether LSA Defendants are government actors such that they may plead a qualified immunity defense. Plaintiffs require additional discovery to determine the extent and nature of LSA Defendants' collusion with law enforcement agencies. This is further reason that this motion should be denied or deferred and Plaintiffs granted the opportunity to engage in discovery necessary to address LSA Defendants' motion, as is more fully argued in the following section. *See Hinojosa v. Johnson*, 277 Fed. App'x 370, 378 (5th Cir. 2008) (overturning district court's grant of summary judgment and noting that plaintiff "should have been permitted discovery tailored to uncover 'those facts necessary to rule on the immunity defense'"); *Estate of Sorrells v. City of Dallas*, 192 F.R.D. 203, 207–09 (N.D. Tex. 2000) (granting discovery on police officers' assertion of qualified immunity to excessive-use-of-force claim and stating "defendants first raised the issue in a fact-intensive motion for summary judgment. They now hide behind the shield of qualified immunity to deny access to evidence solely within their control while using that same evidence against plaintiffs. Limiting discovery in these circumstances is inherently unfair.")

Second, Plaintiffs' theories of liability against LSA Defendants are based upon their participation in a conspiracy with other law enforcement agencies named as Defendants. Plaintiffs allege that LSA Defendants' actions were taken in furtherance of a racially motivated conspiracy that caused Plaintiffs' injuries. Additionally, if LSA Defendants are government actors, they may be held liable as co-conspirators under § 1983 regardless of whether the conspiracy was racially motivated. *See Pfannstiel v. City of Marion*, 918 F.2d 1178, 1187 (5th Cir. 1990) (overruled on other grounds by *Martin v. Thomas*, 973 F.2d 449 (5th Cir. 1992)) (holding that elements of § 1983

11

conspiracy claim are "(1) the existence of a conspiracy involving state action and (2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy"); *Wong v. Stripling*, 881 F.2d 200, 201–04 (5th Cir. 1989) (contrasting elements of claims under §§ 1983 and 1985(3)); *Salts v. Moore*, 107 F. Supp. 2d 732, 739–40 (N.D. Miss. 2000) (contrasting elements of conspiracy under §§ 1983 and 1985).

In sum, the facial legality of LSA Defendants' acts does not excuse them from liability. Taking as true all of Plaintiffs' well-pleaded facts, the Court should deny this challenge or, as argued below, allow sufficient discovery before ruling on LSA Defendants' motion.

### B. The Affidavits are Riddled With Conclusory Statements of Law and of Ultimate Fact Which Cannot Form the Basis of Summary Judgment

The conclusory, ultimate facts and conclusions of law alleged by the LSA Defendants' affidavits cannot support a motion for summary judgment. The affidavits are riddled with conclusions of law and ultimate or conclusory facts that require testing through discovery. "[A]ffidavits setting forth ultimate or conclusory facts and conclusions of law are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985). The following statements contained within the affidavits of Defendants Cazes, Hurst, and/or Gautreaux contain conclusions of law and ultimate or conclusory facts, and therefore cannot be considered in the Court's determination of the Motion for Summary Judgment:

- "Neither the LSA nor the LSA Emergency Task Force employs or directs emergency responders or deputy sheriffs as peace officers." (ECF Nos. 98-3 ¶ 5; 98-4 ¶ 5; 98-5 ¶ 4);
- "The LSA in its own right has no law enforcement authority or duty conveyed by law." (ECF Nos. 98-3 ¶ 7; 98-4 ¶ 7; 98-5 ¶ 6);
- "The LSA has no authority to convey any law enforcement authority upon its officers or staff" (ECF Nos. 98-3 ¶ 8; 98-4 ¶ 8; 98-5 ¶ 6);

12

- "[Hurst] has no authority to formulate or implement public safety activities and has no authority to develop or direct a public safety or law enforcement response to any situation or to agree to use peace officers to suppress the protected speech of protesters" (ECF 98-4 ¶ 9);

- "Neither [the LSA Defendants], nor any other officer, employee or member of the LSA in any capacity as such, had any role in the planning, coordinating, directing, instructing, controlling, or otherwise actively participating in the law enforcement response to the Baton Rouge Protests" (ECF Nos. 98-3 ¶ 12; 98-4 ¶ 14; 98-5 ¶ 9);

- "The LSA itself had no role in the planning, directing, or otherwise actively participating in the law enforcement response to the July 2016 Baton Rouge Protests" (ECF 98-3 ¶ 13; ECF 98-4 ¶15, ECF 98-5 ¶ 10);

- "Deputy Sheriffs derive their law enforcement authority solely from their respective employing Sheriffs" (ECF 98-3 ¶ 14);

- "The law enforcement authority of deputy sheriffs originates with their respective employing Sheriffs" (ECF No. 98-5 ¶ 11);

- "The staff of the LSA has no law enforcement authority and has no supervisory relationship with any law enforcement agency" (ECF Nos. 98-3 ¶ 15; 98-5 ¶ 12);

- "[Defendants Cazes and Hurst] did not conspire with anyone to deprive protesters of their constitutional rights[.]" (ECF Nos. 98-3 ¶ 16; 98-4 ¶ 16).

Plaintiffs object[4] to the consideration of these conclusions of law and ultimate/conclusory facts as improper evidence to support a motion for summary judgment. In the absence of these conclusory or ultimate facts and conclusions of law, the Court is left with no basis for its summary judgment determination.

### C. LSA Defendants' Affidavits Themselves Demonstrate the Existence of Genuine Issues of Material Fact Which Preclude Summary Judgment.

LSA Defendants support their Summary Judgment motion with affidavits from Mike

---

[4] An objection is the proper mechanism for challenging the admissibility of material submitted in support of a summary judgment motion; a motion to strike is not necessary. Fed. R. Civ. P. 56, Notes of Advisory Committee on 2010 amendments; *Bayou Indus. Sales, LLC v. Petro-Valve, Inc.,* No. CV 15-00283-BAJ-RLB, 2017 WL 5180321, at *7 (M.D. La. Nov. 8, 2017)

Cazes, Chuck Hurst, and Sid Gautreaux. LSA Defendants rely upon these affidavits as the basis for their statements of "uncontested material facts," in which they deny any role in the conspiracy alleged by Plaintiffs. LSA Defendants' own affidavits and Statements of Uncontested Material Facts illustrate precisely why summary judgment is inappropriate at this early stage and on this thin record.

LSA Defendants' affidavits demonstrate the existence of at least two genuine issues of material fact regarding the roles of Defendant Cazes and former LSA President Gautreaux in the conspiracy. Defendant Cazes's Affidavit includes the following paragraph:

> The deputy sheriffs he [Cazes] provided in response to the request for assistance made by the East Baton Rouge Parish Sheriff's Office through the LSA Emergency Task Force, while so assigned were under the direction and supervision of the East Baton Rouge Parish Sheriff's Office[.]

(ECF No. 98-3 ¶ 17.)

Significantly, this paragraph does not appear in the Affidavit of Defendant Hurst (ECF No. 98-4) despite the fact that, according to Defendant Cazes, Defendant Hurst is the LSA officer who relayed Defendant Gautreaux's request to other Sheriffs. (ECF No. 98-3 ¶ 10.) The most logical reading of this paragraph from Defendant Cazes's affidavit is thus that Defendant Cazes, who serves not only as the Director of the Louisiana Sheriffs' Association Southern District Emergency Task Force but also as the Sheriff of West Baton Rouge Parish (ECF No. 98-3 ¶¶ 1, 3), deployed West Baton Rouge Parish Sheriff's deputies to assist in the law enforcement response to protests in July of 2016.

However, that interpretation of Defendant Cazes's affidavit is contradicted by his own spokesman, Col. Richie Johnson, in his capacity as representative of Sheriff Cazes, custodian of records for the West Baton Rouge Parish Sheriff's Office. Col. Johnson responded to a public

records request by Plaintiffs' counsel in October 2016 by stating "the West Baton Rouge Sheriff's Office did not participate in any law enforcement functions in East Baton Rouge Parish during the dates you requested [between July 7–12, 2016]."[5]

Plaintiffs' counsel relied on this statement by Defendant Cazes's representative in their pre-filing investigation to determine the defendants and claims in this case. It now appears, based on Defendant Cazes's affidavit, that his office may have previously misrepresented the involvement of its employees and LSA Emergency Task Force members to Plaintiff's counsel.

In the alternative, Defendant Cazes's affidavit could be read to mean that, in his role as Task Force Director, he "provided" deputies from other sheriffs' offices to the EBRSO. This would conflict with paragraph 16 of his affidavit, stating that "his only involvement with the agencies that responded to the protestors was to refer the request of the East Baton Rouge Sheriff for assistance to other Sheriffs." (ECF No. 98-3 ¶ 16.) Therefore a genuine issue of material fact exists as to the meaning of this statement in Defendant Cazes's affidavit, which cannot be resolved without document and deposition discovery.

Defendant Gautreaux's Affidavit raises a similarly significant question. In his Affidavit, Defendant Gautreaux states that "No officer, employee or member of the LSA in any capacity, had any role in the planning, coordinating, directing, instructing, controlling, or otherwise actively participating in the law enforcement response to the Baton Rouge Protests[.]" (ECF No. 98-5 ¶ 9.)

However, at all times relevant to the Complaint, Defendant Gautreaux was himself the President of the LSA. (ECF No. 56 ¶ 27.) As Sheriff of East Baton Rouge Parish, Defendant Gautreaux actively participated in the planning, coordinating, directing, instructing, and

---

[5] Exhibit 1, Declaration of James W. Craig, at Exhibits A (Public Records Request to WBRSO) and B (Response from WBRSO).

15

controlling of the law enforcement responses to the protests, as Plaintiffs have detailed at length in their Complaint.[6] Notably, the Affidavits of Defendants Cazes (ECF No. 98-3 ¶ 12) and Hurst (ECF No. 98-4 ¶ 14) include the same or substantially similar statements, further calling into question the credibility of the evidence Defendants have submitted.

Moreover, the affidavits contain factual allegations that are clearly erroneous and/or contradicted by prior statements of the entities under the supervision of LSA Defendants. Indeed, if the statements in the affidavits are accepted at face value, it now appears that among the factual questions in dispute is the timing of Defendant Gautreaux's request to the Louisiana Sheriffs' Association for assistance. Each of the affidavits submitted by LSA Defendants as well as these Defendants' Statements of Uncontested Material Facts state that "[i]n June of 2016," Defendant Gautreaux "made a request" "for assistance with anticipated crowd control needs associated with anticipated protests arising out of an earlier shooting death that involved the City of Baton Rouge Police Department." ECF Nos. 98-3 ¶ 9 (Affidavit of Mike Cazes); 98-4 ¶ 12 (Affidavit of Chuck Hurst); 98-5 ¶ 7 (Affidavit of Sid Gautreaux); 98-1 ¶ 7 (LSA Defendants' Statements of Uncontested Material Facts).

This is a problematic assertion. Alton Sterling's death at the hands of a BRPD officer took place on July 5, 2016. (ECF No. 56 ¶ 1.) Thus, based on Plaintiffs' allegations, Defendant Gautreaux could not have made the request for assistance at issue in June of 2016. Plaintiffs expect Defendants will concede that this particular contested fact is due to erroneous drafting by counsel. That, however, does not rescue their motion. All three affiants reviewed, signed and swore to the

---

[6] Moreover, the LSA is a nonprofit comprised of the 64 sheriffs of Louisiana, along with as many as 14,000 deputy sheriffs. (ECF No. 56 ¶ 27.) It is beyond Plaintiffs' ability to know at this juncture whether additional members of the LSA played the role that Defendant Gautreaux claims they did not, and Defendant Gautreaux's Affidavit raises sufficient credibility issues that cannot be sufficiently determined without discovery.

truth of this chronology, although they each should have personal knowledge that the protests, and the killing that sparked them, occurred the month after they swear in their affidavits that the request was made. Clearly, more reliable evidence should be developed prior to any decision by this court on summary judgment.

## IV. LSA DEFENDANTS' PRE-DISCOVERY MOTION IS PREMATURE; PLAINTIFFS REQUIRE DISCOVERY AS PERMITTED BY RULE 56(D).

Under Rule 56(d), a court may deny or defer a summary judgment motion if the nonmovant "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d) (formerly codified at Rule 56(f)). Motions under Rule 56(d) are "broadly favored and should be liberally granted" due to their role in protecting litigants from premature summary judgment motions before nonmovants have had an opportunity to gather evidence that would adequately oppose the motion. *Am. Family Life Assur. Co. v. Biles*, 714 F.3d 887, 894 (5th Cir. 2013). This district has held that it is axiomatic that a party must have a "full and fair opportunity to discover information essential to its opposition to summary judgment." *Darville v. Turner Indus. Group, LLC.*, No. 13-625-BAJ-SCR, 2015 WL 2357248 at 4 (M.D. La. May 15, 2015).

As of the date of submission of this memorandum, the discovery period in this case has not even started. The attached declaration of Plaintiffs' counsel, James W. Craig, details the facts which are essential to Plaintiffs' opposition to LSA Defendants' summary judgment motion.[7]

The factual questions in dispute here include questions of motive and intent, which are facts normally in the exclusive control of defendants. The circumstances surrounding LSA Defendants' provision of aid to EBRSO and BRPD, the extent of their participation in strategic

---

[7] Exhibit 1.

17

meetings at the Governor's Office of Homeland Security and Emergency Preparedness (GOHSEP) and the Mayor's Office of Homeland Security and Emergency Preparedness (MOHSEP), and the content of LSA Defendants' internal and external communications concerning the protests are all germane to this inquiry. These facts are key to establishing intent and are, without the benefit of discovery, unknowable to Plaintiffs.

The Declaration of James W. Craig describes the essential facts sought by Plaintiffs through discovery in order to fully oppose LSA Defendants' Motion for Summary Judgment. The basic topics needed in such discovery (as discussed at length in the Declaration) include:

- The knowledge of the LSA (through its officers and employees), Cazes, and Hurst regarding: (a) The racially biased policies, practices and customs of Defendants City/Parish, BRPD, and EBRSO as alleged in the Complaint; (b) The planning of the law enforcement response to the July 2016 protests by Defendants Holden, Dabadie, Gautreaux, and Edmonson, through MOHSEP, GOHSEP or other means; and (c) The implementation of the law enforcement response to the July 2016 protests by Defendants Holden, Dabadie, Gautreaux, and Edmonson, through MOHSEP or other means.

- The participation of the LSA (through its officers and employees), Cazes and Hurst in the planning and implementation of the Defendants and their co-conspirators' unlawful plan to violate the constitutional rights of Black residents of the Baton Rouge area and their allies.

- The control and direction exercised by the LSA (through its officers and employees), Cazes and Hurst over the actions of individual law enforcement officers (both Defendants and others) and their respective agencies;

- The veracity of the statements made in the Affidavits of Cazes, Hurst and Gautreaux, in particular those statements which are conclusory, contradictory and/or nonsensical.

V. **CONCLUSION**

In light of Defendants' insufficient affidavits and given the pre-discovery posture of this case, Plaintiffs invoke the provisions of Fed. R. Civ. P. 56(d) and request that the Court either deny LSA Defendants' motion or defer ruling until Plaintiffs have been allowed a reasonable time to conduct discovery in order to adduce facts to adequately contest LSA Defendants' evidence.

Respectfully submitted, this the 22nd day of December, 2017.

| | |
|---|---|
| */s/ Gideon T. Carter III* | */s/ James W. Craig* |
| Gideon T. Carter, III, | James W. Craig, La. Bar No. 33687 |
| La. Bar No. 14136 | Co-Lead Counsel |
| Co-Lead Counsel | Roderick & Solange MacArthur |
| PO Box 80264 | Justice Center |
| Baton Rouge LA 70898-0264 | 4400 S. Carrollton Avenue |
| (225) 214-1546 (p) / (225) 341-8874 (f) | New Orleans LA 70119 |
| gideontcarter3d@gmail.com | (504) 620-2259 (p) / (504) 208-3133 (f) |
| | jim.craig@macarthurjustice.org |
| | |
| */s/ Eric A. Foley* | */s/ S. Mandisa Moore-O'Neal* |
| Eric A. Foley, La. Bar No. 34199 | S. Mandisa Moore O'Neal |
| Roderick & Solange MacArthur | La. Bar No. 35256 |
| Justice Center (see above) | 1824 Oretha Castle Haley Blvd. |
| eric.foley@macarthurjustice.org | New Orleans LA 70113 |
| | (504) 931-8482 (p) |
| | smandisa85@gmail.com |
| | |
| */s/ Emily Faye Ratner* | */s/ Mauricio Sierra* |
| Emily Faye Ratner, La. Bar No. 35289 | Mauricio Sierra, La. Bar No. 35560 |
| 7214 St. Charles Ave, | The Sierra Law Firm, LLC |
| Campus Box No. 913 | 7214 St. Charles Ave. |
| New Orleans, LA 70118 | Campus Box 913 |
| (504) 864-7861 (p) / (504) 861-5986 (f) | New Orleans, LA 70118 |
| msemilyfaye@gmail.com | (504) 864-7860 (p) |
| | msierra1@gmail.com |

ATTORNEYS FOR PLAINTIFFS

## **CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing was filed using the Court's CM/ECF filing system, which will provide electronic notice to all counsel of record.

This the 22nd day of December, 2017.

*/s/ James W. Craig*_____