UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| LEROY TENNART, et al.,<br><br>                Plaintiffs,<br><br>v.<br><br>CITY OF BATON ROUGE, et al.,<br><br>                Defendants. | Case No. 17-cv-179-JWD-EWD |

**MEMORANDUM IN OPPOSITION TO THE EBRSO AND LPSO DEFENDANTS'
MOTION TO STAY DISCOVERY**

Plaintiffs submit this Memorandum in Opposition to the Motion to Stay Discovery[1] filed by defendants East Baton Rouge Sheriff Sid J. Gautreaux, defendant employees of the East Baton Rouge Parish Sheriff's Office,[2] and defendant AIX Group, doing business as Nova Casualty Company ("NOVA") (all of whom are referred to collectively as "EBRSO defendants"); and the Motion to Stay Discovery[3] filed by defendants Livingston Parish Sheriff Jason Ard and defendant employees of the Livingston Parish Sheriff's Office[4] (all of whom are referred to collectively as "LPSO defendants").

    I.       **INTRODUCTION**

---

[1] ECF 118.
[2] Todd Martin, Jeffrey Sabella, Troy Banks, Kenneth Tiner, Robert Stone, Steve Young, Gregory Warren, Blair Nicholson, James Cooper, Willie Stewart, Evelena Banks, Shannon Broussard, Calvin Pruter, David Eric, Harry Howard, William Jenkins, Michael Allison, David Philpot, Anthony Smith, John DePedro, Dustin Sellars, Thomas Weimer, William Lawhun, Marshall Menou, Nicholas Schiro, Matthew Wolfe, James Broussard, Jason Ransome, Jared Wilson, James Jamison, Benjamin Friedman, Roderick Brown, Brandon McCall, Casey Lillie, Jesse Hale, Jeremy Heine, Gregory Dale Dicharry, Cline Breland, Larry James, Jason Jones, Robert Dixon, Todd Morris, Leroy Griffin, and Bryan White.
[3] ECF 123.
[4] Alden Thomasson, Danny Perkins, Donnie Robinson, Lance Landry, Brandon Ashford, Jason Harris, Chad McGovern, Calvin Bowden, Frank Rizzuto, Tom Martin, Travis Harris, Jonathan Crozier, Cory Winburn, Mia Terrell, Jeff Beatty, Jeremy McCullen, Tim Ard, Eric Rogers, Kyle Hotard, Carl Childers, David Everhart, Jacob Bourgeois, T.J. Morgan, Trey Roberts, Brandon Tullos, Dustin Brown, Dustin Covington, and Richard Hagan.

On January 24, 2018 the EBRSO defendants filed a Motion to Dismiss[5] as well as a Motion to Stay Discovery[6] pending the outcome of their Motion to Dismiss. On January 25, 2018, the LPSO defendants filed a Motion to Stay Discovery[7] pending the outcome of their Motion to Dismiss,[8] which was also filed that day. Asserting qualified immunity, the LPSO defendants request that all discovery related to the claims against the LPSO defendants be stayed until the Court's resolution of the Motions to Dismiss.[9] The EBRSO defendants request that all discovery *in the case* be stayed until the Court's resolution of the Motions to Dismiss.[10] Defendants Louisiana Sheriff's Association, Mike Cazes, and Chuck Hurst have previously filed a Motion for Summary Judgment,[11] which Plaintiffs have opposed.[12] That motion is presently pending before the Court. No other defendants in this case have filed motions to dismiss or motions to stay discovery.

## II.  LAW AND ARGUMENT

### A. *General Principles*

The general rule is well settled in this jurisdiction that "an assertion of qualified immunity shields a government official from discovery that is 'avoidable or overly broad.'"[13] When a defendant asserts qualified immunity, the court must determine whether "the plaintiff's pleadings assert facts which, if true, would overcome the defense of qualified immunity."[14] If the court concludes that the plaintiff has met her burden, the court may then "allow the discovery

---

[5] ECF 117.
[6] ECF 118.
[7] ECF 123.
[8] ECF 122.
[9] ECF 123-1, 5.
[10] ECF 117-1, 1-2.
[11] ECF 98.
[12] ECF 107.
[13] Ruling and Order, *Wilson v. Sharp*, No. 17-cv-84-SDD-EWD, *2, 2017 WL 4685002 (M.D. La. Oct. 18, 2017) (citing *Lion Boulos v. Wilson*, 834 F. 2d 504, 507 (5th Cir. 1987)).
[14] *Wicks v. Miss. State Emp't Services*, 41 F. 3d 991, 994 (5th Cir. 1995).

necessary to clarify those facts upon which the immunity defense turns."[15] The Fifth Circuit has thus established "a careful procedure under which a district court may defer its qualified immunity ruling when factual development is necessary to ascertain the availability of the qualified immunity defense."[16]

A district court may therefore "elect the defer-and-discover approach 'when the defendant's immunity claim turns at least partially on a factual question' that must be answered before a ruling can issue."[17]

**B.** *Considerations Requiring Limited Discovery in Multiple Officer Cases Prior to Adjudicating a Motion to Dismiss Based on Qualified Immunity*

As *Hinojosa* demonstrates, the Fifth Circuit approves the granting of limited discovery prior to adjudication of a motion to dismiss raising qualified immunity, where the plaintiff alleges injury from the actions of multiple law enforcement officers but cannot, as of the filing of her complaint, identify the specific actions taken by any particular officer. Hinojosa died of complications from heatstroke while incarcerated at Garza West Unit of the Texas Department of Criminal Justice. His mother filed a §1983 complaint against, among others, the executive director of the department and the director and deputy director of the department's correctional institutions division. Those three defendants moved to dismiss the complaint on grounds of qualified immunity, arguing, as EBRSO and LPSO do here, that the complaint failed to allege with specificity how they were involved in any decisions regarding the decedent's housing or medical needs. The district court deferred ruling on the qualified immunity defense and ordered discovery "limited to the personal knowledge and personal conduct of each Defendant as it relates to Albert Hinojosa and the circumstances leading to his death." *Id*. at 663.

---

[15] *Id*. at 995.
[16] *Zapata v. Melson*, 750 F. 3d 481, 485 (5th Cir. 2014).
[17] *Hinojosa v. Livingston*, 807 F.3d 657, 670 (5th Cir. 2015) (Citing *Lion Boulos*, 834 F.2d at 507).

On appeal, the Fifth Circuit affirmed the district court. The court of appeals summarized its opinions on the subject of limited discovery in the qualified immunity context:

> This court has established a careful procedure under which a district court may defer its qualified immunity ruling if further factual development is necessary to ascertain the availability of that defense. First, the district court must determine that the plaintiff's pleadings assert facts which, if true, would overcome the defense of qualified immunity. Thus, a plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity. When reviewing a complaint that meets this standard, the district court may defer its qualified immunity ruling and order limited discovery if the court remains unable to rule on the immunity defense without further clarification of the facts.

*Id*. at 664. Holding that the complaint met that standard, the *Hinojosa* Court affirmed the district court's deferral of its ruling on qualified immunity and grant of limited discovery.

Likewise, the district court in this circuit allowed limited discovery where, because of the circumstances of his arrest, a plaintiff in a § 1983 excessive-use-of-force claim against seven police officers was unable to identify which of the officers had actually Tased him.[18] Defendant officers argued that the "[p]laintiff's approach of suing every officer who responded to the scene is insufficient to state viable claims against individual officers" and sought to dismiss the claim on a 12(b)(6) motion. *Id.* at 860. The plaintiff responded that "the reason that Plaintiffs cannot identify specifically who engaged in which acts is that Defendants have not yet provided investigation materials that would shed some light on these issues." *Id.*

The court denied the defendant officers' motion to dismiss, stating:

> [D]efendants' contention that the plaintiffs' allegations of fact are insufficient to survive their Rule 12(b)(6) motion to dismiss all of the officers . . . take the principle requiring plaintiffs to identify individual conduct attributable to each officer too far. At this early stage of a case, successful Rule 12(b)(6) motions based on plaintiffs' failure to plead their claims with factual specificity are

---

[18] *Khansari v. City of Houston*, 14 F. Supp. 3d 842 (S.D. Tex. 2014).

> typically directed at claims asserted against policymakers who are named as defendants absent any allegation about their specific role in formulating or implementing a challenged policy. . . . Here, however, the court is not dealing with allegations against policymakers. At issue are allegations that a number of individual officers had direct involvement in using or failing to prevent the use of excessive force against plaintiff Corey Khansari.
>
> . . . .
>
> While defendants correctly argue that the plaintiffs' allegations lack factual specificity needed to deny their assertions of qualified immunity, lack of such factual specificity at this stage of the case does not provide a basis on which to grant or deny defendants' motion to dismiss for failure to state a claim. *See Huff v. Refugio County Sheriff's Department,* 2013 WL 5574901, *2 (S.D. Tex. Oct. 9, 2013) (Costa, J.).
>
> . . . .
>
> Absent further clarification of the facts to show which, if any, officers other than Officer Rutherford deployed their tasers against Corey, or which, if any, of the other officers had an opportunity to prevent, but chose not to prevent, the use of excessive force against Corey Khansari, the court is not able to rule on the defendant officers' assertions of qualified immunity to the plaintiffs' claims for the use or failure to prevent the use of excessive force against Corey. Limited discovery will be able to flesh out the remaining details of which officer or officers tasered Corey or wrongfully failed to prevent their fellow officers from tasering Corey.[19]

Courts in other circuits have similarly refused to permit dismissal of a §1983 complaint at the Rule 12(b)(6) stage when confronted with this problem. In *Dubner v. City and Cnty. of San Francisco*, 266 F.3d 959 (9th Cir. 2001), a photographer attending a protest alleged that she was unlawfully arrested, yet she could not identify her arresting officers. She obtained a police report of her arrest, but the city had a practice of not listing the actual arresting officer on its police reports. The trial court dismissed Ms. Dubner's claim for her inability to positively identify the officers who had arrested her. In reversing that decision the Ninth Circuit found it significant that:

> Dubner did everything she possibly could to identify the arresting officers. She obtained a copy of the arrest report and, assuming the officers listed were in fact

---
[19] *Khansari*, 14 F. Supp. 3d at 860–61.

the arresting officers, named them in her suit. During discovery, she asked the City and County for "[e]ach and every document authored or maintained by you (including your agencies, departments and employees) relating to this case in any way, including but not limited to all correspondence, personal notes, notebooks, memoranda, diaries, calendars, and summaries of facts." The City responded by objecting to the request and stating that it "has already produced all non-privileged, responsive documents to plaintiff in its possession with its initial disclosures." At that point, Dubner could reasonably assume she had named the right officers or the City would come forward with the name of the officers who actually arrested her. By shifting the burden of production to the defendants, we prevent this exact scenario where police officers can hide behind a shield of anonymity and force plaintiffs to produce evidence that they cannot possibly acquire.[20]

Other courts, while not going so far as to shift the burden of proof to the tortfeasor police officers, are reluctant to dismiss such claims and, like the courts in *Khansari* and *Hinojosa*, allow plaintiffs discovery on the identity of the unknown police officers who have injured them. Thus the Eleventh Circuit reversed a grant of qualified immunity to law enforcement agents who had argued for dismissal because of insufficient pleading of which agent had struck the plaintiff.[21] Noting that plaintiff's allegation that an unidentified agent struck him and that defendant agents were all present at the time, the Eleventh Circuit ruled that the plaintiff could "pursue discovery to uncover the identity of the agent who allegedly struck him."[22]

Further support for this proposition is found in a recent Seventh Circuit decision in which a plaintiff brought a § 1983 suit against officers for damage to his home during a search.[23] The plaintiff hadn't been allowed to witness the search and thus could not identify which of the ten officers involved in the search had damaged his property. The court of appeals upheld summary judgment in the officers' favor but noted, "Had Colbert faced a motion to dismiss, where district

---

[20] *Dubner*, 266 F.3d at 965.
[21] *Saunders v. Duke*, 766 F.3d 1262, 1268 n.2 (11th Cir. 2014),
[22] *Id.*
[23] *Colbert v. City of Chicago*, 851 F.3d 649 (7th Cir. 2017).

courts take all well-pleaded allegations as true, his theory of the case that the four named officers were responsible for the alleged damage may have been sufficient."[24]

The court went on to note that, even at the summary judgment stage, the plaintiff could have overcome his inability to pinpoint the personal responsibility of each officer by alleging "that the named officers participated in something akin to a 'conspiracy of silence among the officers' in which defendants refuse to disclose which of their number has injured the plaintiff."[25] Such allegations of conspiracy "to conceal the identities of those responsible for the damage . . . might well provide an avenue for relief that sufficiently constructs the necessary causal connection between the official and some wrongdoing, regardless of whether the plaintiff was able to observe the search."[26]

This case presents similar facts to *Hinojosa, Khansari*, and the other cited authorities. Plaintiffs face a process in which law enforcement agencies have concealed the identities of those officers responsible for the violations of their rights. Attempts were made to identify the exact identities of the officers, deputies or troopers who effected the seizure of each of the Plaintiffs, but only more general information – the identity of deputies who were on duty in Baton Rouge on the dates of the protest – were provided by the EBRSO and LPSO defendants.

In particular, on October 13, 2016, Plaintiffs' counsel sent public records requests to EBRSO[27] and LPSO,[28] requesting information to clarify the role these agencies or their deputies played in the response to the July 2016 protests.[29] These requests sought: arrest reports, internal and external communications during pertinent dates; written policies and procedures for protests,

---

[24] *Id.* at 657.
[25] *Id.* at 658.
[26] *Id.* at 659.
[27] Exhibit A.
[28] Exhibit B.
[29] See Declaration of Eric Foley (Exhibit C).

rallies and other First Amendment-protected activities; training materials and the existence of any mutual aid agreements or other such contracts.

On December 2, 2016, an attorney representing LPSO responded that records did not exist for most of the information requested.[30] On January 9, 2017, an attorney representing EBRSO identified records responsive to the request.[31] None of these records, however, identified all deputies or other EBRSO officials who were involved in the response to the July 8-10 protests.[32] The same attorney representing EBRSO sent an email on January 27, 2017, stating EBRSO had no additional records responsive to Counsel's request.[33]

On June 9, 2017, Plaintiffs' counsel sent LPSO another public records request,[34] this time requesting records identifying which deputies were assigned to Baton Rouge within the pertinent dates; duty rosters and assignment sheets of those deployed to Baton Rouge; location of deployed deputies; and records of participation in coordination and information sharing meetings.[35] LPSO responded with a list of deputies who were assigned on pertinent dates, but no more information about where in Baton Rouge they were assigned or anything else requested.[36]

Also on June 9, 2017, Counsel sent another request to EBRSO,[37] this time for detailed personnel status records for all deputies deployed to the protests; duty rosters and assignment sheets for deputies deployed; and supporting information and names of those involved in coordination and information sharing meetings.[38] On June 26, 2017, EBRSO produced more detailed information of deputy names and number of overtime hours worked during pertinent

---

[30] Letter from Eric Pittman (Exhibit D).
[31] Letter from Rachel Abadie (Exhibit E).
[32] Foley Decl.
[33] Exhibit F.
[34] Exhibit G.
[35] See Declaration of David Hogan (Exhibit H).
[36] Letter from Eric Pittman (Exhibit I).
[37] Exhibit J.
[38] See Declaration of Olivia Woollam (Exhibit K).

dates, as well as timesheets.[39] Those documents did not, however, disclose which deputies were present at which times of day at the protest locations.[40]

At the same time, on June 15, 2017, Plaintiffs filed a Motion to Conduct Pre-Rule 26(f) Conference Expedited Discovery Regarding Identities of Fictitious Defendants, as a further means of identifying specific individuals.[41] Plaintiffs alleged:

> As of the filing of this motion, Plaintiffs remain uncertain as to the identities of all of their individual arresting officers and other officers who committed violations of Plaintiffs' rights. Many of the unnamed defendants were dressed in riot gear in which name tags were not visible. In some instances, name tags seemed to be purposefully obscured or were simply not worn. The arrest procedure employed by Defendants from July 8–10, 2016, further contributes to Plaintiffs' uncertainty about the identities of their arresting officers. In many cases, arrestees were initially seized by one or more officers, passed to another group of officers in a holding area, and then passed along a chain of custody with multiple other officers before finally being booked. When asked by some of the Plaintiffs to identify themselves, officers refused to respond.
>
> For these reasons, the arresting officers identified in Plaintiffs' arrest reports and affidavits of probable cause for arrest are frequently not the same as the officers who actually detained and, in some cases, injured Plaintiffs through excessive uses of force. Plaintiffs' initial arrest reports do not explicitly identify the arresting officer.[42]

In particular, Plaintiffs asked the Court "to allow issuance of narrow Rule 45 subpoenas for depositions under Rule 30(b)(6) and the production of employee rosters containing the names of: (1) Officers, Deputies, or Troopers responding to protests in Baton Rouge on July 8–10, 2016; (2) the BRPD, EBRSO, LSP, and LSA personnel in the chain of command of the protest response (for example, incident commanders); and (3) the law enforcement personnel assigned to the command headquarters or Emergency Operations Centers of the Governor's Office of

---

[39] *Id.*
[40] *Id.*
[41] ECF 4-1.
[42] *Id.* at 2-3.

Homeland Security and Emergency Preparedness (GOHSEP), the Mayor's Office of Homeland Security and Emergency Preparedness (MOHSEP), and the LSA Emergency Taskforce."[43]

Plaintiffs stated clearly that they could not fully identify all names without discovery and requested limited discovery to learn this information. Magistrate Judge Wilder-Doomes' Order describes exactly the situation that would exist if the order were not granted:

> Plaintiffs explained during the June 27, 2017 hearing that, if required to amend based on the documentation they have received thus far (including overtime records showing officers, deputies, and troopers responding to the protest), they would have to name hundreds of additional defendants and thereafter reduce such list to those who actually participated in these particular Plaintiffs' arrests. Absent early identification of the unknown individual defendants, Plaintiffs will be faced with two untenable options – either allow certain claims to potentially prescribe, or name multiple (likely unnecessary) individuals based on the documentation received thus far via Plaintiffs' public records requests.[44]

Thus, the Court granted the motion in part, namely to issue *Subpoena Duces Tecum* to learn name, job title and rank of law enforcement officers who actually detained and arrested the Plaintiffs.[45] With respect to the subpoena duces tecum issued to EBRSO,[46] counsel for EBRSO responded that there were no documents responsive to the subpoena.

Facing the risk of prescription against unnamed officers, Plaintiffs were required to take the course of action noted by Magistrate Judge Wilder-Doomes in the Order granting issuance of the subpoenas -- to name as Defendants all EBRSO and LPSO deputies listed in the records which disclosed the names of deputies on-duty in Baton Rouge on the days of the Plaintiffs' arrests.

---

[43] *Tennart*, ECF 4 at 3.
[44] *Tennart*, ECF 30 at 8.
[45] *Tennart*, ECF 30 at 10.
[46] *Tennart*, ECF 35.

These facts fit perfectly into the scenario set forth in the above-cited precedent. Plaintiffs' Complaint alleges the responsibility of particular officers or officials, or groups of officers or officials known to be on duty at the time of their arrests. It lists the groups of law enforcement officers or officials, by name, as disclosed in the documents provided to Plaintiffs' counsel by Defendant Ard, custodian of records held by LPSO, and Defendant Gautreaux, custodian of records held by EBRSO in their public records responses, and pleads specifically the actions that these groups of officers or officials committed in furtherance of the conspiracy to silence dissent.

For these reasons, if this Court believes the Complaint is not sufficiently specific in alleging actions by each individual defendant, it should, as in *Khansari* and *Hinojosa*, defer ruling on the motions to dismiss and permit the Plaintiffs to take limited discovery from the Defendants.

C. *Discovery From the Non-Moving Defendants Should Not Be Stayed*

Plaintiffs understand the EBRSO defendants' motion to request that *all discovery in this case* be stayed pending the outcome of their Motion.[47] The EBRSO defendants cite no law to support that position. Plaintiffs oppose this request.

Apart from the EBRSO and LPSO defendants, no other defendants in this case have filed a motion to dismiss on the grounds of qualified immunity, or moved to stay discovery in this proceeding. When faced with a similar circumstance, a judge in the Eastern District of Louisiana concluded that "[w]ithout some clear legal authority, the Court finds that it is unjust for all parties to enjoy the benefits of the stay for those claiming qualified immunity."[48] That court's reasoning is particularly salient where, as here, some defendants (Louisiana Sheriff's

---

[47] *See, e.g.,* ECF 118-1, 1 ("Because Defendants have asserted the defense of qualified immunity in their Motion to Dismiss, all discovery in this case should be stayed until after this Court's consideration of the Motion to Dismiss.")
[48] *O'Dwyer v. Louisiana*, 582 F. Supp. 2d 789, 791 (E.D. La. 2008).

Association, Mike Cazes, and Chuck Hurst) have filed a motion for summary judgment that included evidence solely within the purview of the defendants,[49] and Plaintiffs have responded to that motion by requesting the opportunity to propound discovery so that they may properly contest the defendants' evidence, pursuant to Fed. R. Civ. P. 56(d).[50]

Moreover, some defendants in this case are not entitled to qualified immunity under any circumstances. This is particularly true of Defendant City of Baton Rouge-Parish of East Baton Rouge ("City/Parish"). "The doctrine of qualified immunity protects 'individuals acting within the bounds of their official duties, not the governing bodies on which they serve.'"[51] Because "[a] municipality is not entitled to qualified immunity,"[52] Plaintiffs "should be allowed to conduct discovery in order to pursue [their] claims against" the City/Parish.[53]

It is not novel to the courts of this circuit to permit a plaintiff to conduct discovery against a municipality while awaiting the outcome of pending motions to dismiss, and after motions to stay discovery have been granted as to other defendants.[54] Permitting Plaintiffs to conduct discovery against City-Parish as well as the many defendants who have not filed motions to dismiss or motions to stay discovery will allow Plaintiffs to continue to prosecute their case while the court weighs the significant issues inherent in the qualified immunity arguments raised by a comparatively small number of defendants.

---

[49] ECF 123-3, 123-4, 123-5.
[50] ECF 107, 1.
[51] *Gilbert v. City of Dallas*, No. 99-cv-1463, *2, 2000 WL 748153 (N.D. Tex. 2000) (quoting *Minton v. St. Bernard Parish School Board*, 803 F. 2d 129, 133 (5th Cir. 1986)).
[52] *Estate of Sorrells v. City of Dallas*, 192 F.R.D. 203, 210 (N.D. Tx. 2000) (citing *Owen v. City of Independence, Missouri,* 445 U.S. 622, 638, 100 S.Ct. 1398, 1409, 63 L.Ed.2d 673 (1980); *Lynch v. Cannatella,* 810 F.2d 1363, 1371–72 (5th Cir.1987)).
[53] *Estate of Sorrells v. City of Dallas*, 192 F.R.D. 203, 210 (N.D. Tex. 2000) (citing *Beck v. Taylor County,* 1998 WL 682265 at *1 (N.D.Tex. Sept. 29 1998) (Fitzwater, J.); *Gauglitz v. City of Dallas,* 1997 WL 786246 at *2 n. 3 (N.D. Tex. Dec. 15, 1997) (Fish, J.). *See also Batiste v. Colonial Sugars, Inc.,* 1995 WL 491153 *1 (E.D.La.1995), *appeal dism'd,* 101 F.3d 701 (5th Cir.1996)).
[54] *See, e.g.*, *Buckner v. City of Victoria*, 2008 WL 4057929 (S.D. Tex., Aug. 26, 2008); *Lomax v. City of New Orleans*, No. 04-0461, 2004 WL 1586539 (E.D. La. July 14, 2004); *Buffin v. Bowles*, 99-cv-1386, 2000 WL 575216 (N.D. Tex., May 11, 2000).

III.    **CONCLUSION**

Wherefore, Plaintiffs request that the Motions of the EBRSO and LPSO defendants to Stay Discovery be denied. This Court should allow Plaintiffs limited discovery from these defendants as to their location and roles in the law enforcement response to the protests that resulted in the alleged violation of Plaintiffs' rights. This Court should also allow full discovery from all defendants who have not moved to dismiss on grounds of qualified immunity.

Respectfully Submitted, this the 15th day of March, 2018.

| */s/ Gideon T. Carter III* | */s/ James W. Craig* |
|---|---|
| Gideon T. Carter, III, La. Bar No. 14136<br>Co-Lead Counsel<br>PO Box 80264<br>Baton Rouge LA 70898-0264<br>(225) 214-1546 (p) / (225) 341-8874 (f)<br>gideontcarter3d@gmail.com | James W. Craig, La. Bar No. 33687<br>Co-Lead Counsel<br>Roderick & Solange MacArthur Justice Center<br>4400 S. Carrollton Avenue<br>New Orleans LA 70119<br>(504) 620-2259 (p) / (504) 208-3133 (f)<br>jim.craig@macarthurjustice.org |
| */s/ Eric A. Foley* | */s/ S. Mandisa Moore-O'Neal* |
| Eric A. Foley, La. Bar No. 34199<br>Roderick & Solange MacArthur Justice Center (see above)<br>eric.foley@macarthurjustice.org | S. Mandisa Moore O'Neal, La. Bar No. 35256<br>1824 Oretha Castle Haley Blvd.<br>New Orleans LA 70113<br>(504) 475-8046 (p)<br>smandisa85@gmail.com |
| */s/ Emily Faye Ratner* | */s/ Mauricio Sierra* |
| Emily Faye Ratner, La. Bar No. 35289<br>7214 St. Charles Ave,<br>Campus Box No. 913<br>New Orleans, LA 70118<br>(504) 864-7861 (p) / (504) 861-5986 (f)<br>msemilyfaye@gmail.com | Mauricio Sierra, La. Bar No. 35560<br>The Sierra Law Firm, LLC<br>7214 St. Charles Ave.<br>Campus Box 913<br>New Orleans, LA 70118<br>(504) 864-7860 (p)<br>msierra1@gmail.com |

ATTORNEYS FOR PLAINTIFF

## **CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing was filed using the Court's CM/ECF filing system, which will provide electronic notice to all counsel of record.

This the 15th day of March, 2018.

/s/  Mauricio Sierra