**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

LEROY TENNART, et al.,

                Plaintiffs,

        v.                                               Case No. 17-CV-179-JWD-EWD

CITY OF BATON ROUGE, et al.,

                Defendants.

**PLAINTIFFS' MEMORANDUM AND RULE 56(d) REQUEST FOR DISCOVERY IN**
**OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
**FILED BY CERTAIN LSP TROOPERS**

Although limited written discovery has commenced in this action, forty[1] Louisiana State

Police ("LSP") troopers named as Defendants (for purposes of this opposition, "LSP Movants"

or "Defendants") have filed a motion for summary judgment (Mot. Summ. J., ECF No. 205).

Plaintiffs oppose the motion for two reasons. First, LSP Movants have moved for summary

judgment prior to the initial Rule 16 scheduling conference and the Rule 26(f) conference, thus

before issuance of a discovery scheduling order and before Plaintiffs' opportunity to depose LSP

Movants. In accordance with Fed. R. Civ. P. 56(d), Plaintiffs should be granted an opportunity

for discovery in order to properly contest the evidence presented by these Defendants.

---

[1]Steven Bunch, Murry Buquet, Louis Calato, Kevin Cannatella, Samuel Capaci, Brittany Caughlin, Justin Chiasson, Scott Coco, Brian Coghlan, William Cook, Joseph Dessens, Ian Dollins, Robert Downs, David Easley, Trey Elliott, III, Chad Guidry, Aaron Guilliams, Glenn Hale, Joseph Hall, Steven Hammons, Joseph Hasselback, Jeffrey Holley, Richard Horton, Jonathan James, Chris Jordan, Christopher Kelley, John Kelly, Caleb Kennedy, Tyler Latiolas, Blake Lemoine, Martin Mayon, Jr., Huey McCartney, Todd Christopher McConnell, Todd Michael McConnell, James McGehee, Murphy Paul, Joey Schouest, Reginald Taylor, Burnell Thompson, III, and Francis Woods. Not all of the Louisiana State Trooper Defendants named in the Complaint have joined the present motion.

Second, LSP Movants' motion and attachments are insufficient to demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law" as required by Fed. R. Civ. P. 56(a).

## I.   FACTUAL AND PROCEDURAL SUMMARY

In July 2016, Plaintiffs, along with hundreds of Black residents of the Baton Rouge area and others who marched in solidarity with them, participated in protests in the wake of the killing of Alton Sterling by an officer of the Baton Rouge Police Department ("BRPD"). It was announced at the time that the law enforcement response to the protests was coordinated by multiple law enforcement agencies, and including the participation of numerous LSP troopers.

Contemporary statements by Governor Edwards further support Plaintiffs' contention that LSP Defendants colluded with Baton Rouge law enforcement agencies during the protests. On July 10, 2016, Governor Edwards spoke at a press conference concerning the protests:

> While we're here in Baton Rouge and primarily we have the Baton Rouge Police Department and the Baton Rouge Sheriff's Office who are responding and providing for law and order here in Baton Rouge the fact of the matter is we have state troopers involved, we have folks from different sheriff's offices around the state of Louisiana. ….[2]

Scores of protesters, including Plaintiffs, were arrested for violations of La. R.S. § 14:97, "simple obstruction of a highway of commerce," although, in Plaintiffs' cases, there was no probable cause for the charge. Instead, the arrests were made with pre-printed, boilerplate affidavits of probable cause, demonstrating that the arrests of protesters for this manufactured offense had been planned in advance. At least eighty-seven (87) of these pre-printed forms were used in arresting protesters – all claiming that the arrestee was in the roadway and was taken into

---

[2] Governor John Bel Edwards, Remarks at Press Conference (July 10, 2016) (transcript available at http://gov.louisiana.gov/assets/docs/Transcripts/Security-PC-Transcript.docx.pdf, last accessed 12/20/17) (video available at https://www.youtube.com/watch?v=11xaahhmhIE&t=140s) (emphasis added).

custody only after ignoring several verbal orders to "exit the lanes of travel." (ECF No. 56 at 42 ¶ 293 (Leroy and Deon Tennart), 45 ¶ 305 (Eddie Hughes), 57 ¶¶ 366–67 (Thomas Hutcherson).)

The method used by the Defendants to make these warrantless arrests under false charges was designed to mask the identities of the officers involved. A large assembly of BRPD officers, Sheriff's deputies, and LSP Troopers would line up facing the protesters, in full militarized riot gear with helmets, masks, body armor, and long guns. (*Id.* at 40 ¶¶ 284–87 (Leroy and Deon Tennart), 43 ¶¶ 297–98 (Eddie and Godavari Hughes), 45–46 ¶¶ 310–11 (Christopher and Brachell Brown), 51 ¶ 338 (Elcide Harris), 55 ¶ 359 (Thomas Hutcherson).) At some point, a subset of the group of officers, deputies and troopers would charge toward the protesters. (*See, e.g.*, *id.* at 40 ¶ 287.) As each protester was grabbed by one or more law enforcement officers, the protester would be handcuffed or zip-tied and then walked by "Mobile Field Force officers" to the "prisoner processing area for the protest events" where the paperwork for the arrest would be filled in with the name and other identifying information of each arrestee. (*Id.* at 49 ¶ 330.) Thus, the arrest reports for the Plaintiffs name only the person(s) who processed their arrest but frequently do not name all of the people who physically seized and restrained them. (*Id.* at 41–42 ¶ 293 (Leroy and Deon Tennart), 44 ¶ 304 (Eddie Hughes), 49 ¶ 330 (Christopher Brown), 49–50 ¶¶ 332–33 (Brachell Brown), 52 ¶ 343 (Harris), 54 ¶¶ 354–55 (Zachary Hill).)

Each of the Plaintiffs were arrested and detained on false charges. They filed the present action seeking redress for violations of rights guaranteed to them by the U.S. Constitution and state law, suing the LSP Defendants, City of Baton Rouge, the Louisiana Sheriffs' Association, law enforcement agencies, and individual officers who participated in the suppression of protests in 2016. (ECF No. 56.)

Plaintiffs alleged that these parties were co-conspirators, acting in concert with members of the BRPD, EBRSO, Louisiana State Police, and other law enforcement agencies to suppress the First Amendment rights of Black citizens and their allies. (*Id.* ¶¶ 273–75.) Plaintiffs alleged that the aims of the conspiracy were to:

> (a) create an intimidating law enforcement response that was militarized, in furtherance of which police personnel wore and used riot gear and carried rifles, shields, and/or batons while confronting the protesters;
>
> (b) effectuate the maximum number of arrests of innocent protesters, so as to send a message to Black citizens and residents of Baton Rouge that dissent would not be tolerated;
>
> (c) target certain protesters for arrest, based on these protesters' supposed group affiliations (in particular, affiliation with Black political and social organizations) and/or Defendants' belief that they were "leaders" of the spontaneous protests;
>
> (d) book protesters *en masse* on false criminal charges and to maximize the time those arrested spent in custody as punishment for defying law enforcement;
>
> (e) ensure officers used excessive physical force to effectuate these illegal arrests;
>
> (f) insulate individual officers from accountability, criticism or consequence for their role in Defendants' scheme by encouraging and/or allowing officers to cover the names and badge numbers on their uniforms with opaque tape and to refuse to give their names or badge numbers when asked directly by civilians; and
>
> (g) discourage individuals from protesting in the future through a display of militarized police violence and intimidation.

(*Id.* ¶ 280.)

In particular, Plaintiffs alleged that LSP Defendants were among the law enforcement officers who unlawfully arrested them. (*Id.* at 41 ¶ 288, 45 ¶ 311, 53 ¶ 349, 55 ¶ 361.)

The law enforcement officers involved in the execution of the plan, including the LSP Movants, fall into five categories. First, some officers were responsible for coordinating the activities of other officers in the field. The LSP Defendants allegedly performing these duties are:

Glenn Hale, Joseph Hall, Caleb Kennedy, Blake Lemoine, and Murphy Paul. (ECF No. 56 at 23 ¶¶ 200–040.)

Second, during the time immediately preceding and through the arrests of the Plaintiffs, a Mobile Field Force (MFF), formed of scores of law enforcement officers from multiple agencies, including LSP Movants, assembled and marched together in full militarized riot gear with helmets and long guns to the protest sites and faced the protesters. (*Id.* at 40 ¶¶ 284–87 (Leroy and Deon Tennart), 43 ¶¶ 297–98 (Eddie and Godavari Hughes), 45 ¶ 310–11 (Christopher and Brachell Brown), 51 ¶ 338 (Elcide Harris).)  At different points during the weekend, a third category of officers, subsets of the mobile field force group, would charge toward the protesters, seize them, and restrain them with zip-ties. (*See, e.g.*, *id.* at 43 ¶¶ 298–99.)

The arrested protesters would be taken to the "prisoner processing area for the protest events," staffed by law enforcement officers who form a fourth category: Officers who had not been present at the immediate scene of the protests but would fill in portions of pre-printed paperwork for the arrests. (*Id.* at 49–50 ¶ 330.) The protester would ultimately be taken to the East Baton Rouge Parish Prison, where she would be in the custody of Sheriff Gautreaux and EBRSO deputies.

All five of these categories of officers – the officers responsible for coordinating the activities of their subordinates, the MFF members, the subset of MFF officers seizing protesters, the officers working at the processing stations, and the EBRSO jailers – provided essential support and assistance to the implementation of the plan devised by their superiors.

The Third Amended Complaint alleges that 46 of the Defendants are LSP troopers (ECF No. 56 at 21–23 ¶¶ 160–204), each of whom were on duty and physically present during Plaintiffs' arrests. For the reasons stated above, Plaintiffs do not currently know which of these Defendants

were in the MFF that marched forward to confront the protesters, which of them were in the subset of the MFF which charged forward and seized Plaintiffs, and which were performing support services at the processing stations.

Prior to filing the present suit, undersigned counsel conducted a thorough investigation in an effort to identify the law enforcement officers who had violated Plaintiffs' rights. As part of this investigation, Eric Foley submitted a public records request to LSP on October 13, 2016.[3] Following a mandamus action in state court to obtain responses to this records request, counsel for LSP produced on June 9, 2017, responsive documents that included 480 pages of LSP trooper timesheets for the period spanning July 4–17, 2016. (*Id.*)

Plaintiffs filed this suit on March 24, 2017. The Court granted pre-Rule 26 discovery to Plaintiffs in an attempt to obtain the identities of fictitious defendants. (ECF No. 30.) In response, attorneys for LSP Movants stated "No LSP member recalled any involvement with any of your clients. **LSP made no arrests during the action**."[4] Plaintiffs filed the Third Amended Complaint on July 19, 2017. (ECF No. 56.) All LSP Defendants filed responsive pleadings on November 2 and December 11, 2017. (ECF Nos. 93; 105.)[5]  In November 2017, Louisiana Sheriff's Association Defendants moved for summary judgment. (ECF No. 98.) In a January 2018 status conference, the Court "clarified that discovery is not open in [this] case at this juncture." (ECF No. 111 at 5.)

---

[3] Ex. 1, Eric Foley Dec.

[4] Ex. 3 (emphasis added); *cf*. Chris Jordan Decl., ECF No. 205-3 ("On July 9, 2016, I was on duty, stationed at Airline & Goodwood. I did detain, arrest or assist in the detention or arrest of certain protesters but they are not plaintiffs in these suits.")

[5] Rather than filing a motion to dismiss on qualified immunity grounds, the LSP Defendants chose to file an Answer and Defenses.

In January of 2018, East Baton Rouge Sherriff's Office Defendants and Livingston Parish Sheriff's Office Defendants filed Motions to Dismiss and Motions to Stay Discovery, pending resolution of their assertions of qualified immunity. (ECF Nos. 117; 118; 122; 123.) Following oral argument on these pending dispositive motions, the Court ordered that Plaintiffs could proceed with "limited discovery" against EBRSO, LPSO, and LSA Defendants. (ECF Nos. 172–74.) The Court noted in December 2018 that discovery against other parties, including LSP Defendants, would also be limited to written discovery pending resolution of the EBRSO and LPSO motions to dismiss. (ECF No. 190 at 2 n.1.) Plaintiffs propounded written discovery on LSP Defendants on July 15, 2019.

LSP Movants point to the lack of individualized allegations against the movants. (ECF No. 205-1 at 5–6.) As this Court's prior rulings recognize, it would be perverse for law enforcement officers and their agencies to escape liability for violations of citizens' constitutional rights solely because those culpable officers have colluded to preserve their anonymity. Along with their co-conspirators in other law enforcement agencies, LSP Movants construct a convenient escape route in which arresting and supporting officers actively maintained their anonymity throughout the arrest process, then demand dismissal of claims challenging those arrests because Plaintiffs—without the benefit of full discovery—have no means of identifying the particular officers who harmed them. Similarly, Plaintiffs have alleged that LSP Movants participated in a largely opaque process of decision-making and coordination of the law enforcement response to the protests.

Apart from this gesture at sufficiency of the pleadings, LSP Movants premise the bulk of their summary judgment motion on the assertions that they: (1) did not participate in Plaintiffs' arrests; (2) they did not order the Plaintiffs' arrests; (3) other certain LSP Movants are entitled to

summary judgement because, although they were on-duty, they were not deployed to the protest location at issue here; and (4) still other certain LSP Movants are entitled to summary judgment because they were not on-duty on July 9, 2016. (ECF No. 205-1 at 3.)

The majority of LSP Movants' declarations state that they were "not involved in any detentions, arrests, custody transfers, processing, or jailing of protestors, and gave no orders regarding the arrest, transfer, processing or jailing of any protestors." (*See, e.g.*, ECF No. 205-3 at 1 ¶ 9.) They also state that "At no point during the July 8, 9, and 10, 2016 timespan did I plan, participate in, supervise, or call for the detention or arrest of any protestor." (*Id.* at 2 ¶ 11.)

Notably, LSP Movants have moved for summary judgment before Plaintiffs have had an opportunity to depose Defendants. Furthermore, despite the assertions in LSP Movants' declarations, existing public records create a genuine issue of material fact as to whether LSP Movants were on-duty and at protest locations on July 9, 2016. Therefore, LSP Movants' motion for summary judgment should be denied, or, in the alternative, deferred until discovery can be completed.

## II.    STANDARD OF REVIEW

Summary judgment is appropriate if the moving party shows, by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" that there is "no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(c)(1)(A), (a). The court must construe the facts and evidence in the light most favorable to the nonmoving party. *Haverda v. Hays Cty.*, 723 F.3d 586, 591 (5th Cir. 2013).

Where a summary judgment motion challenges the sufficiency of the pleadings, those

challenges are reviewed under the familiar motion to dismiss standard deriving from Rule 12(b)(6). *Zastrow v. Houston Auto Imports Greenway, Ltd*., 789 F.3d 553, 559 (5th Cir. 2015). All well-pleaded facts will be accepted as true and viewed in the light most favorable to the plaintiff. *Id.*

Summary judgment should be "used sparingly . . . where motive and intent play leading roles, the proof is largely in the hands of the alleged conspirators, and hostile witnesses thicken the plot." *Poller v. Columbia Broad. Sys., Inc.*, 368 U.S. 464, 473 (1962) (antitrust case); *Tyler v. Vickery*, 517 F.2d 1089, 1093 (5th Cir. 1975) (applying *Poller* in civil rights class action); *see also Adickes v. Kress & Co.*, 398 U.S. 144, 176 (1970) ("The existence or nonexistence of a conspiracy is essentially a factual issue that the jury, not the trial judge, should decide.") (Black, J. concurring); *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1265 (5th Cir. 1991) ("When state of mind is an essential element of the nonmoving party's claim, it is less fashionable to grant summary judgment because a party's state of mind is inherently a question of fact which turns on credibility. . . . [W]e have emphasized repeatedly that cases which turn on the moving party's state of mind are not well-suited for summary judgment.")

A moving party's reliance on "statements of conclusions of law or ultimate fact cannot shift the summary judgment burden to the nonmovant." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1221 (5th Cir. 1985); *see also Anderson v. Tupelo Reg'l Airport Auth.*, 568 Fed. App'x 287, 293 (5th Cir. 2014) (applying *Galindo*).

### III.    ARGUMENT

#### A. Plaintiffs Require Discovery as Permitted by Rule 56(d) and LSP Movants' Motion Should Be Denied.

Plaintiffs seek the denial or deferral of LSP Movants' motion under Rule 56(d) so that they may be allowed the opportunity to fully engage in discovery against all LSP Defendants,

including these Movants. Under Rule 56(d), a court may deny or defer a summary judgment motion if the nonmovant "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d) (formerly codified at Rule 56(f)). Motions under Rule 56(d) are "broadly favored and should be liberally granted" due to their role in protecting litigants from premature summary judgment motions before nonmovants have had an opportunity to gather evidence that would adequately oppose the motion. *Am. Family Life Assur. Co. v. Biles*, 714 F.3d 887, 894 (5th Cir. 2013); *see also Union City Barge Line, Inc. v. Union Carbide Corp.*, 823 F.2d 129, 136 (5th Cir. 1984) ("Technical, rigid scrutiny of a Rule 56(f) motion is inappropriate.").

This District Court has held that it is axiomatic that a party must have a "full and fair opportunity to discover information essential to its opposition to summary judgment." *Darville v. Turner Indus. Group, LLC.*, No. 13-625-BAJ-SCR, 2015 WL 2357248, at 4 (M.D. La. May 15, 2015). When summary judgment is resisted on the basis of incomplete discovery, the nonmoving party must show "(1) why he needs additional discovery, and (2) how the additional discovery will likely create a genuine issue of material fact." *Chenevert v. Springer*, 431 Fed. App'x 284, 287 (5th Cir. 2011) (citing *Stearns Airport Equip. Co. v. FMC Corp.*, 170 F.3d 518, 534–35 (5th Cir.1999)). Dilatory pursuit of discovery may weigh against grant of continuance, but the continuance should be granted "almost as a matter of course." *Wichita Falls Office Assocs. v. Banc One Corp.*, 978 F.2d 915, 919 n.4 (5th Cir. 1992) (reversing District Court's denial of continuance even where party opposing summary judgment did not propound discovery until 9 months after summary judgment motion filed, discovery cut-off "had been pushed back a number of times," and opposing party delayed discovery pending negotiations with a third party that could affect nature of the litigation). The *Wichita* panel further noted that 56(d) serves "to

provide non-movants with a much needed tool to keep open the doors of discovery in order to adequately combat a summary judgment motion." *Id.* at 919.

LSP Movants argue that further discovery should not be allowed both because "qualified immunity is available" and "there are no facts in dispute that would warrant any further discovery." (ECF No. 205-1 at 25.)

First, this Court has already affirmed that the facts alleged in Plaintiffs' Complaint regarding EBRSO and LPSO deputies' conduct were sufficient to justify limited discovery into the applicability of the qualified immunity defense to Fourth Amendment claims of unlawful arrest, excessive force, retaliatory arrest, and failure to intervene; i.e., determining which of the individual officers were involved in those alleged constitutional violations. (*See* ECF Nos. 172, 173; Tr. Oral Rulings vol. 1 at 16, Sept. 7, 2018.) Plaintiffs alleged that LSP Movants engaged in the same conduct as EBRSO and LPSO deputies. (ECF No. 56 41 ¶ 288, 45 ¶ 311, 53 ¶ 349, 55 ¶ 361.) Thus, the assertion of qualified immunity is not, in this instance, a bar to a deferral or denial of LSP Movants' summary judgment motion under Rule 56(d).

As of the date of submission of this memorandum, the discovery period in this case has not ended. Indeed, no discovery cut-off has been set. The attached declaration of Plaintiffs' counsel, Eric Foley, details the facts which are essential to Plaintiffs' opposition to LSP Movants' summary judgment motion.[6]

The factual questions in dispute here include questions of duty status, deployment, assignment, motive and intent, which are facts normally in the exclusive control of defendants. The circumstances surrounding LSP Movants' duty assignments on July 9, 2016, proximity to Plaintiffs at the time of their arrests, and the content of LSP Movants' internal and external

---

[6] Ex. 1.

communications concerning the protests are all germane to this inquiry. These facts are key to establishing intent and are, without the benefit of discovery, unknowable to Plaintiffs.

The Foley Declaration describes the essential facts sought by Plaintiffs through discovery in order to fully oppose this Motion for Summary Judgment. The basic topics needed in such discovery (as discussed at length in the Declaration) include:

- Precise descriptions of LSP Movants' activities, locations, and schedules on July 9, 2016;
- Resolution of inconsistencies in LSP Movants' duties and locations as reflected in their declarations and their time sheets;
- LSP Movants' proximity to arrests of protesters.

Under Rule 56(d), the LSP Movants' motion for summary judgment should be denied because Plaintiffs have not had the opportunity to fully contest LSP Movants' assertions through depositions, nor have Plaintiffs had sufficient opportunity to propound discovery.

### B. LSP Movants' Declarations Demonstrate the Existence of Genuine Issues of Material Fact Which Preclude Summary Judgment.

LSP Movants support their Summary Judgment motion with their own declarations. (ECF No. 205-3.) LSP Movants assert that certain officers[7] were not involved in Plaintiffs' arrests. (ECF No. 205-1 at 3.) Defendants likewise assert that eight[8] such officers were on-duty but not deployed to any protest location, and that ten[9] other officers were not even on-duty. (*Id.*) However, LSP Movants' own Declarations and Statements of Uncontested Material Facts illustrate precisely why summary judgment is inappropriate at this early stage and on this thin

---

[7] *See* note 1, *supra*.
[8] Louis Calato, Tilden "Trey" Elliot, Glenn Hale, Stephen Hammons, Jeffrey Holley, Martin Mayon, Huey McCartney, and Murphy Paul.
[9] Kevin Cannatella, William Cook, Joseph Dessens, Aaron Guilliams, Joseph Hall, Todd Christopher McConnell, Todd Michael McConnell, Joey Schouest, Reginald Taylor, and Burnell Thompson.

record.

**1.    Which Troopers Were Present and On-Duty When Plaintiffs Were Arrested?**

First, a genuine issue of material fact exists as to whether the LSP troopers discussed in LSP Movants' Motion for Summary judgment were on-duty and present at any protest location. In this connection, Plaintiffs require additional discovery to determine the extent and nature of LSP Movants' deployment and assignments on July 9, 2016. This is further reason that this motion should be denied or deferred and Plaintiffs granted the opportunity to engage in discovery necessary to address LSP Movants' motion, as discussed in the previous section. *See Hinojosa v. Johnson*, 277 Fed. App'x 370, 378 (5th Cir. 2008) (overturning district court's grant of summary judgment and noting that plaintiff "should have been permitted discovery tailored to uncover 'those facts necessary to rule on the immunity defense'"); *Estate of Sorrells v. City of Dallas*, 192 F.R.D. 203, 207–09 (N.D. Tex. 2000) (granting discovery on police officers' assertion of qualified immunity to excessive-use-of-force claim and stating "defendants first raised the issue in a fact-intensive motion for summary judgment. They now hide behind the shield of qualified immunity to deny access to evidence solely within their control while using that same evidence against plaintiffs. Limiting discovery in these circumstances is inherently unfair.")

Defendants note that their motion for summary judgment is being filed specifically to "narrow down the LSP trooper defendants" to those who were actually involved in violating Plaintiffs' rights. (ECF No. 205-1 at 4.) However, timesheets from the pay period beginning July 4, 2016, and ending July 17, 2016, demonstrate the existence of genuine issues of material fact regarding the duty status and deployment of certain officers. The declarations of Defendants Cook, Hale, Hall, Mayon, McConnell, Taylor, and Thompson demonstrate the existence of

genuine issues of material fact:

- William Cook declares that "On July 9, 2016, I was not on duty and at home." (ECF No. 205-3 at 18.) His timesheet for that day shows two hours billed as "Assist BRPD." (Ex. 2 at 10.)

- Glen Hale declares that "On July 9, 2016, I was not present at any protest location." (ECF No. 205-3 at 32.) His timesheet, however, reflects 10 hours of "BRPD Assistance." (Ex. 2 at 19.)

- Joseph Hall states "On July 9, 2016, I was not on duty." (ECF No. 205-3 at 34.) His timesheet for that day, however, records 17 hours of "MFF" duty on that day. (Ex. 2 at 20.)

- Martin Mayon declares he was not on-duty on July 9, 2016. (ECF No. 205-3 at 54.) However, timesheets from July 9, 2016 indicate Martin Mayon logged 6 hours with the comment "Mobile Field Force Called Out Assisting BRPD With Protestors for the Shooting." (Ex. 2 at 32.)

- Todd Christopher McConnell declares that he was not on duty on July 9, 2016. (ECF No. 205-3 at 61.) Yet his timesheet records him logging 24 hours of MFF Deployment on that date. (Ex. 2 at 34.)

- Reginald Taylor declares that he was not on duty on July 9, 2016. (ECF No. 205-3 at 71.) His timesheet, however, reflects that he logged 24 hours of duty time for "SWAT Detail." (Ex. 2 at 37.)

- Burnell Thompson asserts that he was not on-duty on July 9, 2016. (ECF No. 205-3 at 73.) However, timesheets from July 9, 2016 indicate Burnell Thompson logged 12 "Regular hours MFF." (Ex. 2 at 38.)

These discrepancies demonstrate the existence of genuine issues of material fact and make plain Plaintiffs' need for additional discovery to contest LSP Movants' factual assertions. Accordingly, Defendants Cook, Hale, Hall, Mayon, McConnell, Taylor, and Thompson are not entitled to summary judgment.

### 2. Do Lt. Col. Paul, Trooper Caleb Kennedy, or Trooper Steven Bunch Have Additional Bases of Conspirator or Policy-maker Liability?

Defendant Murphy Paul was stationed at the "Emergency Operations Center," which may refer to the meeting locations of MOHSEP or GOHSEP, in Baton Rouge on July 9, 2016. (ECF No. 205-3 at 67.) He further asserts that he was not involved in any detentions, arrests, custody

transfers, processing, or jailing or any protestors. However, to the extent that Chief Paul—then Lt. Col. Paul—was functioning as a final policymaker or otherwise was aware of and acted in furtherance of a conspiracy, claims against him should not be dismissed. Similarly, Troopers Steven Bunch and Caleb Kennedy declare that they were stationed at MOHSEP on July 9, 2016. (ECF No. 205-3 at 1, 52.) In that venue, these troopers would have had an even greater likelihood of participating in policymaking discussions and entering into the conspiracy that Plaintiffs have alleged. Further discovery is needed to ascertain the decisions made by these Defendants with regard to the deployment orders given to LSP Movants who were at protest locations. In particular, this discovery is needed to contest the Defendants' motion for summary judgment on the conspiracy counts.

### 3. Did Some of the Troopers, While Not arresting Plaintiffs, Assist Those Who Did? Could They Have Intervened to Stop Plaintiffs' Unlawful Arrests?

The remaining LSP Movants assert they were not involved in and did not provide any assistance to other Defendants in the Plaintiffs' arrests. Given the inconsistent statements by the above officers claiming to be off-duty while nevertheless logging time on July 9, 2016, it is apparent that Plaintiffs require additional discovery to ascertain whether such Defendants were in proximity to Plaintiffs' arrests such that they may be liable for a failure to intervene.

Moreover, for the officers who admit to being present at or near locations of protester arrests,[10] more reliable evidence should be developed prior to any decision by this court on summary judgment. There is significant ambiguity around the troopers' use of "Headquarters" or "HQ" in their declarations. Is that a reference to BRPD headquarters at the epicenter of the protests, or to the LSP's sprawling campus, significantly removed from the site of Plaintiffs'

---

[10] Troopers Buquet, Calato, Capaci, Caughlin, Dollins, Easley, Hasselbeck, Jordan, Chris Kelley, Latiolais.

arrests on July 9, 2016? For example, Christopher Kelley's declaration states, "I was on duty, stationed at Headquarters, and I was in the area of some protesters." (ECF No. 205-3 at 48.) This could mean that that "Headquarters" as used by the LSP Movants is in fact BRPD Headquarters, which would call into question whether the troopers were in sufficient proximity to Plaintiffs' arrests and failed to intervene—despite LSP Movants' assertions that they were "not involved" in arrests. (*Cf.* Hasselbeck Decl., *id.* at 38 ¶ 9 ("I was on duty stationed at State Police Headquarters and at Baton Rouge Police Headquarters.")) Plaintiffs should be granted further discovery, including depositions, to pinpoint exactly where the officers were located, what their duties were on scene, and other relevant facts to their involvement in and knowledge of Plaintiffs' arrests.

### C.  Defendants are not Entitled to Judgment as a Matter of Law.

Accepting all well pleaded facts as true and viewing them in the light most favorable to Plaintiffs, LSP Movants are not entitled to judgment as a matter of law.

### 1.    Conspiracy Claims [Counts 1, 2, and 11]

LSP Movants argue that they are entitled to summary judgment on Plaintiffs' conspiracy claims because (1) allegations of racial bias or animus are not attributable to LSP Movants, and (2) they took no action in furtherance of the conspiracy.[11]

Plaintiffs allege that LSP Movants' actions were taken in furtherance of a racially motivated conspiracy that caused Plaintiffs' injuries, under 42 U.S.C. § 1985. Additionally, Plaintiffs claim that LSP Movants may be held liable as co-conspirators under § 1983 regardless of whether the conspiracy was racially motivated. *See Pfannstiel v. City of Marion*, 918 F.2d

---

[11] At the outset, Plaintiffs recognize that the Court previously dismissed conspiracy claims against individual EBRSO and LPSO Defendants, against whom Plaintiffs had made the same allegations as they made against LSP Defendants. (ECF Nos. 172, 173; Tr. Oral Rulings Vol. 1, Sept. 7, 2018 at 33.)

1178, 1187 (5th Cir. 1990) (holding that elements of § 1983 conspiracy claim are "(1) the existence of a conspiracy involving state action and (2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy") *abrogated on other grounds by Martin v. Thomas*, 973 F.2d 449 (5th Cir. 1992); *Wong v. Stripling*, 881 F.2d 200, 201–04 (5th Cir. 1989) (contrasting elements of claims under §§ 1983 and 1985(3)); *Salts v. Moore*, 107 F. Supp. 2d 732, 739–40 (N.D. Miss. 2000) (contrasting elements of conspiracy under §§ 1983 and 1985).

First, the Declarations cannot support a motion for summary judgment on the conspiracy claims because they rely solely on a boilerplate conclusion of law that ends each of the declarations: "I have never conspired with anyone to violate any person's civil rights." Declarations containing "conclusions of law are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985). Each of the LSP Movants' Declarations contains, as its final paragraph, a conclusion of law. (*See, e.g.,* ECF No. 134-2, p. 1 at ¶ 12 ("I have never conspired with anyone to violate any person's civil rights.").)

Next, LSP Movants assert they could not be part of any conspiracy because Plaintiffs do not allege any history of racial animus on the part of the LSP. However, a <u>history</u> of racial animus is not a necessary predicate for one's participation in a <u>current</u> conspiracy that is motivated by racial animus. LSP Movants point to no legal authority to support their assertion. Plaintiffs maintain that they have alleged enough facts to raise a reasonable expectation that discovery will reveal evidence of an illegal agreement. Therefore, LSP Movants' Motion for Summary Judgment should be denied. As discussed above, Plaintiffs require additional discovery

to adequately contest these assertions by LSP Movants' that they did not conspire to violate any person's civil rights.

### 2.    Fourth Amendment Claims for Unlawful Arrest, Manufacturing Evidence, and Excessive Use of Force [Counts 3, 4, 5]

LSP Movants are not entitled to summary judgment on the Fourth Amendment Claims as a matter of law. Construing the evidence in the light most favorable to Plaintiffs, there are genuine issues of material fact with regard to which officers falsely imprisoned and used excessive force against Plaintiffs. Given the discrepancies in the LSP Movants' Declarations, as described above, and Plaintiffs' insufficient opportunity to depose LSP Movants and propound discovery, LSP Movants' Motion for Summary Judgment should be denied.

### 3.    Retaliatory Arrest [Count 6]

LSP Movants are not entitled to summary judgment on Plaintiffs' retaliatory arrest claim. Construing the evidence in the light most favorable to Plaintiffs, there are genuine issues of material fact with regard to which officers participated in Plaintiffs' arrests and their motivation for doing so. Like their arguments for Count 3, above, LSP Movants' argument on the merits of Count 5 is that they were not personally involved in Plaintiffs' arrests and detention. Given the discrepancies in the LSP Movants' Declarations, as described above, and the Plaintiffs' insufficient opportunity to depose Defendants and propound discovery, LSP Movants' Motion for Summary Judgment should be denied.

### 4.    Failure to Intervene [Count 7]

This Court should deny LSP Movants' motion for summary judgment on Plaintiffs' Failure to Intervene claim. "[A]n officer may be liable under § 1983 under a theory of bystander liability where the officer (1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to

act."[12] Citing *Whitley*, this District Court found a failure to intervene claim to be actionable six months prior to Plaintiffs' arrests.[13]

In *Dotson v. Edmonson*,[14] the district court denied summary judgment on qualified immunity with respect to an allegedly false arrest in October 2015 on grounds that the principles of *Whitley*[15] clearly established that "a non-arresting officer may be liable for the false arrest of a civilian where the non-arresting officer has knowledge that the arrest is made without probable cause, has a reasonable opportunity to prevent the harm, and chooses not to act."[16] *Whitley* and *Dotson* stand for the proposition that the clearly established law for purposes of a failure to intervene claim is based on the failure to stop "a violation of an individual's constitutional rights" by another officer – not the artificially narrower question of whether the right involved is the right to be free from excessive force or the right to be free from arrests without probable cause.

---

[12] *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013) (citing *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995)).

[13] *McCall v. Poret*, No. 15-194, 2016 WL 802176, at *5 (M.D. La. Jan. 22, 2016) ("The plaintiff alleges that he was, without provocation, sprayed with a chemical agent, pushed against his cell wall, and struck in the head with a portable radio by defendants Poret and Butler, while defendants Smith and Barton were present but took no intervening action. The plaintiff thereafter sought medical attention. To the extent the defendants are asserting qualified immunity as to these claims,5 the defendants' motion should be denied"); *report and recommendation adopted*, *McCall v. Poret*, No. 15-194, 2016 WL 881971 (M.D. La., Mar. 1, 2016).

[14] No. 16-15371, 2018 WL 501512, at *8 (E.D. La. Jan. 22, 2018)

[15] *Whitley* and *Dotson* stand for the proposition that the clearly established law for purposes of a failure to intervene claim is based on the failure to stop "a violation of an individual's constitutional rights" by another officer – not the artificially narrower question of whether the right involved is the right to be free from excessive force, the right to be free from arrests without probable cause, or the right to be free from entry on one's land without permission.

[16] Similarly, in *Wilkerson v. Seymour*, 736 F.3d 974, 979-80 (11th Cir. 2013) the Eleventh Circuit interpreted *Jones v. Cannon*, 174 F.3d 1271, 1283-84 (11th Cir. 1999) as standing for the proposition that, "where an officer was present during an arrest and knew that the arresting officer had no reasonable basis for arguable probable cause, the non-arresting officer could be liable under § 1983 if he was sufficiently involved in the arrest." In *Wilkerson* and *Jones*, the Eleventh Circuit interpreted the clearly established law supporting the "failure to intervene" claim at the same generality as that applied by the Fifth Circuit in *Whitley* and the district court in *Dotson*.

Moreover, the Fifth Circuit has established that a bystander-liability or failure-to-intervene claim is not limited to people within the same law enforcement agency, but applies to people across agencies.[17] Every LSP Defendant actually on the scene at the time, whether in the Mobile Field Force, the "processing stations," or coordinating the activities—like Lt. Col. Paul, Trooper Bunch, and Trooper Kennedy at MOHSEP assisting in the direction of the Troopers—had an opportunity to stop Plaintiffs' unlawful arrests.

Construing the evidence in the light most favorable to Plaintiffs, there are genuine issues of material fact with regard to which officers participated in Plaintiffs' arrests. LSP Movants argue that the Defendants subject to this motion for summary judgment were not present at the scene, and thus, cannot be held liable for failure to intervene. Given the discrepancies in the Defendants' Declarations, as described above, and the Plaintiffs' insufficient opportunity to depose Defendants and propound discovery, LSP Movants' Motion for Summary Judgment on the failure to intervene claim should be denied.

### 5.    *Monell* Claim for Municipal Liability [Count 10]

Plaintiffs do not assert any official capacity claims against the LSP Defendants. (ECF No. 1 ¶ 240 ("The Defendants listed or referred to in Paragraphs 159–207 above are sued in their individual capacity only.") States are not amenable to suit in federal court. *See* U.S. Const. Amend. XI; *Hans v. Louisiana*, 134 U.S. 1, 17 (1890). The Louisiana State Police is an entity of the state and is shielded from liability by sovereign immunity. Thus, Plaintiffs allege no *Monell* official-capacity liability against LSP Movants.

---

[17] *Hale v. Townley,* 45 F.3d 914, 919 (5th Cir. 1995) (citing *Harris v. Chanclor*, 537 F.2d 203, 205-06 (5th Cir. 1976).

**6.    Supplemental State Law Claims [Counts 12-17]**

Finally, this Court should deny LSP Movants' motion for summary judgment on

Plaintiffs' Supplemental State Law Claims. The arguments made above with regard to Plaintiffs'

federal claims apply with equal force to their state law counterparts. Given the discrepancies in

the LSP Movants' Declarations, as described above, and the Plaintiffs' insufficient opportunity to

depose LSP Movants and propound discovery, the Motion for Summary Judgment should be

denied.

**IV.    CONCLUSION**

In light of LSP Movants' contradictory declarations and given the limited discovery

posture of this case, Plaintiffs invoke the provisions of Fed. R. Civ. P. 56(d) and requests that the

Court either deny LSP Movants' motion or defer ruling until Plaintiffs have been allowed a

reasonable time to conduct discovery in order to adduce facts to adequately contest LSP

Movants' evidence.


Respectfully submitted, this the 16th day of July, 2019.


| | |
|---|---|
| */s/ Gideon T. Carter III* | */s/ James W. Craig* |
| Gideon T. Carter, III, | James W. Craig, La. Bar No. 33687 |
| La. Bar No. 14136 | Co-Lead Counsel |
| Co-Lead Counsel | Roderick & Solange MacArthur |
| PO Box 80264 | Justice Center |
| Baton Rouge LA 70898-0264 | 4400 S. Carrollton Avenue |
| (225) 214-1546 (p) / (225) 341-8874 (f) | New Orleans LA 70119 |
| gideontcarter3d@gmail.com | (504) 620-2259 (p) / (504) 208-3133 (f) |
| | jim.craig@macarthurjustice.org |

| | |
|---|---|
| */s/ Eric A. Foley* | */s/ S. Mandisa Moore-O'Neal* |
| Eric A. Foley, La. Bar No. 34199 | S. Mandisa Moore O'Neal |
| Roderick & Solange MacArthur | La. Bar No. 35256 |
| Justice Center (see above) | 1824 Oretha Castle Haley Blvd. |
| eric.foley@macarthurjustice.org | New Orleans LA 70113 |
| | (504) 931-8482 (p) |
| | smandisa85@gmail.com |
| | |
| */s/ Emily Faye Ratner* | */s/ Mauricio Sierra* |
| Emily Faye Ratner, La. Bar No. 35289 | Mauricio Sierra, La. Bar No. 35560 |
| 7214 St. Charles Ave, | The Sierra Law Firm, LLC |
| Campus Box No. 913 | 7214 St. Charles Ave. |
| New Orleans, LA 70118 | Campus Box 913 |
| (504) 864-7861 (p) / (504) 861-5986 (f) | New Orleans, LA 70118 |
| msemilyfaye@gmail.com | (504) 864-7860 (p) |
| | msierra1@gmail.com |

ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was filed using the Court's CM/ECF filing system, which will provide electronic notice to all counsel of record.

This the 16th day of July, 2019.

*/s/ Eric A. Foley*