UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| LEROY TENNART, *et al.*,<br><br>    Plaintiffs,<br><br>v.<br><br>CITY OF BATON ROUGE, *et al.*,<br><br>    Defendants. | Case No. 3:17-CV-00179-JWD-EWD<br><br>JUDGE JOHN W. DEGRAVELLES<br><br>MAG. ERIN WILDER-DOOMES |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION
TO LPSO DEFENDANTS' MOTION TO DISMISS**

**I. Introduction: Plaintiffs' Substantially Narrowed Claims against Sheriff Ard and Eleven Individual Members of the Livingston Parish Sheriff's Office Meet the Standard Set by this Court's September 6, 2018 Order.**

This Court is again presented with a motion to dismiss Plaintiff's case against Livingston Parish Sheriff Jason Ard and certain Livingston Parish Sheriff's Office deputies and supervisors.[1] However, in the Fourth Amended Complaint now before the Court, Plaintiffs have substantially narrowed their claims against these defendants. Plaintiffs Brachell Brown and Christopher Brown continue to assert claims against Sheriff Jason Ard in his official capacity only[2] and against Lt. Tom Martin, Lt. Travis Harris, Cpl. Jonathan Crozier, Deputy David Eberhart, Deputy Jacob Bourgeois, Deputy T.J. Morgan, Deputy Trey Roberts, Deputy Brandon Tullos, Deputy Dustin Brown, Deputy Dustin Covington, and Deputy Richard Hagen in their individual capacities.[3]

---

[1] ECF Nos. 253 (motion), 253-1 (memorandum in support).
[2] ECF No. 56 at ¶28.
[3] Fourth Amended Complaint, ECF No. 56, ¶¶ 218, 219, 220, 229, 230, 231, 232, 233, 234, 235, and 236. These defendants will be referred to below as "Individual LPSO Defendants."

1

Brachell and Christopher Brown allege that the eleven Individual LPSO Defendants are liable to them for their failure to intervene and prevent their unconstitutional arrests and the unconstitutional uses of force against them by other law enforcement officials. Brachell and Christopher Brown further allege that Sheriff Ard participated in the meetings which established the conspiracy to violate the rights of protesters, in particular Black resident protesters of law enforcement misconduct in Baton Rouge, and that the Individual LPSO Defendants participated in furtherance of the conspiracy, thus establishing liability on the two conspiracy claims (Counts I and II) against Sheriff Ard in his official capacity.[4] All other claims against Sheriff Ard and Livingston Parish Sheriff's Office personnel have been dismissed by operation of this Court's prior order[5] and the filing of the Fourth Amended Complaint.[6]

The question before the Court is two-fold: first, have Brachell Brown and Christopher Brown added sufficient detail in their allegations against the remaining Individual LPSO Defendants; and second, have these Plaintiffs cured the deficiencies noted by the Court in their official-capacity claims Sheriff Ard?

On the claims against the Individual LPSO Defendants, this Court held:

> As to Brachell and Christopher Brown, while <u>the Plaintiffs have adequately pled enough to overcome qualified immunity</u>, the Court cannot determine at this time whether any of the Individual LPSO Deputies are entitled to qualified immunity. Thus, the Court will defer ruling on each Plaintiff's claims to allow limited written discovery on the narrow issue of <u>which Individual LPSO Deputies (if any) were involved in the alleged constitutional violations</u>.[7]

---

[4] ECF No. 56 at ¶¶ 28, 208, 273-81, 389-403.
[5] ECF No. 173.
[6] *Compare* Fourth Amended Complaint (ECF No. 56, ¶¶ 208-236) with Third Amended Complaint (ECF No. 49-1, ¶¶ 208-236). Plaintiffs agree with LPSO that all claims against the following LPSP Defendants are dismissed: Maj. Alden Thomasson, Sgt. Denny Perkins, Lt. Donnie Robinson, Lt. Lance Landry, Sgt. Brandon Ashford, Lt. Jason Harris, Capt. Chad McGovern, Sgt. Calvin Bowden, Lt. Frank Rizzuto, Cory Winburn, Mia Terrell, Jeffrey Beatty, Jeremy McCullen, Tim Ard, Eric Rogers, Kyle Hotard, and Carl Childers. *Id*. at ¶¶ 209-17, 221-28.
[7] ECF No. 173 (Order on LPSO Motion to Dismiss, September 6, 2018) at 1 (emphasis added).

Each of the eleven Individual LPSO were members of LPSO's Tactical Team, which was stationed on Airline Highway between Old Hammond Highway and Interstate 12 at the time of the unconstitutional arrests and uses of excessive force against Brachell and Christopher Brown.[8] As shown in a video described in the Fourth Amended Complaint, each of these individual LPSO Defendants were standing in formation in proximity to the arrests and uses of force against Brachell and Christopher Brown.[9] The Browns submit that these specific allegations are sufficient to meet the terms of the September 6, 2018 Order.

With respect to the allegations against Sheriff Ard in his official capacity, the issue is whether the revisions in the Fourth Amended Complaint, alleging Sheriff Ard's participation in the conspiracy meetings, together with the specific allegations of participation in constitutional violations by the eleven Individual LPSO Defendants, sufficiently plead a claim against the Sheriff in his official capacity for conspiracy to violate Christopher Brown and Brachell Brown's constitutional rights under 42 U.S.C. §§ 1983 and 1985(3).

The Fourth Amended Complaint supplies additional allegations in compliance with this Court's earlier ruling granting, without prejudice, Sheriff Ard's prior motion to dismiss. Additionally, with the more specific allegations added with respect to the eleven Individual LPSO Defendants, Plaintiffs Brachell and Christopher Brown have alleged acts taken by LPSO in furtherance of the conspiracy agreed to by Sheriff Ard. Thus, as will be discussed more completely below, the narrowed claims against Sheriff Ard in his official capacity are sufficiently pled to withstand the renewed motion to dismiss.

---

[8] Id.
[9] Id.

## II. Claims Not at Issue

In accordance with this Court's prior rulings, and with the benefit of limited discovery, the only claims remaining against the eleven Individual LPSO Defendants involve their failure to intervene to prevent or stop the constitutional violations committed by other law enforcement officers against Brachell Brown and Christopher Brown. Those claims are Counts VII (Federal claim for failure to intervene) and XVII (state law claim for negligence) of the Fourth Amended Complaint. And the only claims against Sheriff Ard, Counts I (Section 1983 civil conspiracy) and II (Section 1985(3) conspiracy), are alleged in his official capacity. All other claims against LPSO Defendants originally sued in this case are dismissed by virtue of this Court's prior rulings.

## III. The Fourth Amended Complaint States a Claim Against the Eleven Individual LPSO Defendants for Failing to Intervene to Prevent or Stop the Unconstitutional Arrests of, and Unconstitutional Use of Excessive Force Against, Brachell Brown and Christopher Brown.

The allegations in the Fourth Amended Complaint, which this Court accepts as true for purposes of LPSO Defendants' Motion, describe a brutal, unprovoked attack on Brachell Brown and Christopher Brown:

> At around 10 p.m., BRACHELL and CHRISTOPHER were among a group of protesters walking along the grass next to Airline Highway. As the group crossed Gwenadele Avenue, BRACHELL turned around and saw law enforcement officers throwing protesters to the ground and brandishing firearms at protesters. Multiple unknown officers, including some or all of Defendants listed in Paragraphs 33-241, rushed the siblings from behind. As two officers grabbed BRACHELL from behind, CHRISTOPHER wrapped Brachell in his arms. The officers tackled Brachell and Christopher to the ground while other officers brandished firearms. One officer shot CHRISTOPHER with a Taser, delivering three separate electrical shocks while other officers watched. Multiple officers then converged upon BRACHELL and CHRISTOPHER, pinning them to the ground. An officer pushed his knee into BRACHELL's back, and officers then bound both siblings' wrists with plastic zip ties.

4

> While she was pinned to the ground, BRACHELL held her head up to avoid her face being smashed into the concrete, but still suffered a broken blood vessel in her left eye as a result of the attack. In addition to the injuries from the Taser, CHRISTOPHER suffered abrasions to his legs as officers lifted him up from the ground.
>
> Prior to BRACHELL and CHRISTOPHER being tackled to the ground from behind, no law enforcement officer ever instructed them to stop, get on the ground, or do anything else.
>
> Officers ripped the barbed Taser leads from CHRISTOPHER's side instead of allowing medical personnel to remove them. This caused physical pain and profuse bleeding that compounded the pain CHRISTOPHER had already experienced as a result of the original Tasing. CHRISTOPHER also experienced pain and numbness in his left arm, which persisted for the following four months.
>
> Unknown officers then picked up BRACHELL and CHRISTOPHER and escorted them to a waiting bus containing other arrested protesters. The officers pulled the siblings in a rough and fast fashion, leaving them off balance for the duration of the walk to the bus.[10]

During this exact time, the eleven Individual LPSO Defendants were in such close proximity to the assault on the Brown siblings that these Defendants are visible in a video of the Brown's arrests. Thus, as to Lt. Tom Martin, the Fourth Amended Complaint alleges:

> In July 2016, Defendant MARTIN was a Lieutenant with LPSO's Tactical Team. He was on duty and physically present between 6 p.m. and midnight on July 9, 2016 on Airline Highway between Old Hammond Highway and Interstate 12. Defendant MARTIN was physically present and on duty at the exact location and time of Plaintiffs BRACHELL BROWN and CHRISTOPHER BROWN's arrests, in the vicinity of Airline Highway and Gwenadele Avenue. **Defendant MARTIN was standing in formation with the LPSO Tactical Team shown in one of the videos taken of Plaintiffs BRACHELL BROWN and CHRISTOPHER BROWN's arrests and the use of force deployed against them**. Defendant MARTIN had an opportunity to intervene and stop the unconstitutional arrests of, and uses of excessive force against, Plaintiffs CHRISTOPHER and BRACHELL BROWN, but failed to do so.[11]

---

[10] ECF No. 56 (Fourth Amended Complaint), ¶¶ 311-15.
[11] ECF No. 56 (Fourth Amended Complaint), ¶ 218 (emphasis added).

5

LPSO Defendants correctly observe that this same language is used for Defendants Harris, Crozier, Everhart, Bourgeois, Morgan, Roberts, Tullos, Brown, Covington, and Hagen.[12] That is because all eleven were standing in formation at the same place and the same time. Thus, as to each of the Individual LPSO Defendants, Plaintiffs have alleged:

a) They were on duty and physically present on July 9, 2016 in the vicinity of the arrests of Brachell Brown and Christopher Brown;

b) They were physically present and on duty <u>at the exact location and time</u> of Brachell Brown and Christopher Brown's arrests;

c) They were standing in formation with the LPSO Tactical Team shown in one of the videos taken of Brachell Brown and Christopher Brown's arrests and the use of force deployed against them;

d) They had an opportunity to intervene and stop the unconstitutional arrests of, and uses of excessive force against Brachell Brown and Christopher Brown and failed to do so.[13]

This Court explained the principles governing a law enforcement officer's "bystander liability" for failing to intervene to protect the constitutional rights of a person:

> "[A]n officer may be liable under § 1983 under a theory of bystander liability where the officer "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013) (citations omitted). "However, liability will not attach where an officer is not present at the scene of the constitutional violation." *Id*. (citations omitted). "In resolving whether a plaintiff has sufficiently alleged a bystander liability claim we also consider whether an officer 'acquiesce[d] in' the alleged constitutional violation." *Id*. at 647 (citations omitted). Although bystander liability "most often applies in the context of excessive force claims, other constitutional violations also may support a theory of bystander liability." *Id*. at 646 n. 11 (citations omitted).[14]

---

[12] ECF No. 56 (Fourth Amended Complaint) at ¶¶ 218-20, 229-36.
[13] As the Individual LPSO Defendants note, the state law claims of the Fourth Amended Complaint "mirror the federal ones." ECF No. 253-1 (LPSO Mem. in Supp.) at 18, quoting ECF No. 173 (Order on LPSO Motion to Dismiss). In this case, the claims of negligence under state law in Claim XVII "mirror" the claims for failure to intervene in Count VII. To that extent, Sheriff Ard is vicariously liable in his official capacity as the employer of the Individual LPSO Defendants.
[14] ECF No. 171 (Notice Regarding Oral Argument, August 31, 2018) at 9.

Because, as the Court noted, liability for failure to intervene "will not attach where an officer is not present at the scene of the constitutional violation," Plaintiffs limited their claims to the eleven Individual LPSO Defendants who were not only on the scene at the time of Brachell Brown and Christopher Brown's arrests, but, as alleged in the Fourth Amended Complaint, were depicted in the video of those arrests.

In *Rodgers v. Jefferson Parish Sheriff's Office*, No. 15-2642, 2016 WL 8262051 (E.D. La. Dec. 22, 2016), *report and recommendation adopted*, 2017 WL 661258 (E.D. La. Feb. 17, 2017)., the Court clarified, "For the duty to intervene to arise, '[t]he officer must have a *reasonable opportunity to realize* the excessive nature of the force and realistic opportunity to stop it.'"[15] This interpretation of the knowledge requirement for bystander liability was established by the Fifth Circuit in *Hale v. Townley*.[16] The Fifth Circuit is not alone in recognizing that this is an objective standard.[17] Questions of whether an officer should have known of a violation or had sufficient opportunity to intervene are for the jury to resolve.[18]

---

[15] *Rodgers*, 2016 WL 8262051, *9 (quoting *Nowell v. Acadian Ambulance Serv.*, 147 F. Supp. 2d 495, 507 (W.D. La. 2001) (emphasis added)).

[16] *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995) ("Viewing the allegations and summary judgment evidence most favorably to Hale, the summary judgment evidence raises a fact issue as to whether Fant had a reasonable opportunity to realize the excessive nature of the force and to intervene to stop it."); *see also Ling v. City of Garland*, 3:05-CV-1754-P (N.D. Tex. Feb. 23, 2007), 2007 WL 9712235 at *6 (denying summary judgment on failure to intervene claim, holding that whether an officer had sufficient time to intercede or was capable of preventing the harm being caused by another officer is an issue of fact for the jury unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise).

[17] *See Richman v. Sheahan*, 512 F.3d 876, 885 (7th Cir. 2008) ("The other officer, provided he knew *or should have known* what the first officer had done, would be liable along with the first officer as a participant in the conduct giving rise to the peril."); *Abdullahi v. City of Madison*, 423 F.3d 763, 774 (7th Cir. 2005) ("[a]n officer who is present and fails to intervene to prevent other law enforcement officers from infringing the constitutional rights of citizens is liable under § 1983 if that officer *had reason to know* . . . that any constitutional violation has been committed by a law enforcement official.") (emphasis added); *Anderson v. Brannen*, 17 F.3d 552, 557 (2d Cir. 1994) ("An officer who fails to intercede is liable for the preventable harm caused by the actions of the other officers where that officer observes or has reason to know . . . that any constitutional violation has been committed by a law enforcement official.").

[18] *Hale*, 45 F.3d at 919 (holding that whether officer had reasonable opportunity to realize excessive nature of force used and to intervene to stop it were questions for trier of fact); *Anderson*, 17 F.3d at 557.

Applying these principles, and contrary to the Individual LPSO Defendants' position, numerous courts have held less detailed factual allegations sufficient to state a claim for bystander liability against a law enforcement officer. For instance, in a case where the complaint alleged the excessive force incident was sudden and unexpected, and never explicitly alleged that the bystander defendant had a reasonable opportunity to intervene, the Court denied a motion to dismiss and held the plaintiff "has plead facts sufficient to raise a right to relief above the speculative level."[19] Similarly, in *Coleman v. Lee*, No. 15-2365, 2017 WL 424884 (W.D. La. Jan. 30, 2017), a motion to dismiss was denied under the following circumstances:

> Coleman alleged that Officer Combs and Officer Shaver were in the immediate vicinity when Officer Lee body slammed him onto the concrete floor of the porch; slammed his head on the floor; and repeatedly kicked him in his head and lower body area. In light of these factual allegations, the Court would like the benefit of discovery before considering whether Officer Shaver and Officer Combs had a reasonable opportunity to realize the claimed excessive force and to intervene to stop it. Thus, the Motion to Dismiss must be DENIED because Coleman has plead specific facts sufficient to raise a right to relief above the speculative level.[20]

None of these cases require the level of detail that the Individual LPSO Defendants assert is necessary. The LPSO Defendants concoct a requirement under which a plaintiff must be able to specify "the duration of the arrest and use of force, the proximity of the officers to the arrest, and whether the officers witnessed the events that precipitated the arrest and use of force."[21] The cases cited by LPSO do not support this premise. *Calvi v. Knox County*, 470 F.3d 422 (1st Cir. 2006), was a case alleging excessive force in handcuffing a person with a hand deformity; the court of appeals affirmed a grant of summary judgment in favor of bystander officers *after* discovery.

---

[19] *Taylor v. City of Shreveport*, No. 07-1817, 2009 WL 2762710 at *3 (W.D. La. Aug. 27, 2009).
[20] *Coleman*, 2017 WL 424884, *3; *see also Hollins v. City of Columbia, Miss.*, 2019 WL 3307056 at *6-7 (S.D. Miss. July 23, 2019) (denying motion to dismiss for failure to state a claim)
[21] ECF No. 253-1 (Individual LPSO Defendants' Memorandum) at 11.

8

LPSO Defendants also cite *Garrett v. Crawford*, Civil Action No. SA-15-CV-261-XR, 2016 WL 843391 (W.D. Tex. Mar. 1, 2016), in which the Court considered two allegations of bystander liability in the face of excessive force. One, that plaintiff was pinned on the ground after arrest, was dismissed because the allegations did not amount to excessive force. The Court made no finding that the plaintiff's bystander liability claim failed for lack of sufficient detail as to proximity and ability to intervene, but rather held that "as the Court has concluded that no excessive force was alleged by Garrett in relation to the pin, he has failed to state a claim for failure to intervene as to this particular incident, as well."[22] With respect to the second claim, failing to intervene to stop the use of a taser against the plaintiff, the district court denied the motion to dismiss.[23] Plaintiff alleged the tasing lasted "a minute," which the Court found to be sufficient time for the bystander officers to intervene.

While the Brown Plaintiffs did not allege an exact duration of the unconstitutional arrests and uses of force they endured, they described a series of events that allow more than enough time for the Individual LPSO Defendants to respond. Similarly, in *Taplette v. LeBlanc*, No. NO. 18-853-EWD (CONSENT), 2019 WL 1560444 (M.D. La. Apr. 10, 2019), plaintiff alleged that the bystander defendant, a corrections supervisor, both personally assaulted him and also held him while other corrections officers did the same. Id. at 2. The Court held that this stated a claim for bystander liability. Id. at *6.

The only case cited by the Individual LPSO Defendants that actually dismissed a complaint for failing to state a bystander liability claim involved two short incidents of hand-to-body contact by an officer who escorted the plaintiff out of his vehicle. The Court held that the specific

---

[22] *Id*. at *6.
[23] *Id*. at *9-10.

9

allegations of that complaint ruled out the possibility that other officers on the scene could have seen the brief interaction.[24] That is a very different factual scenario from that presented in the Fourth Amended Complaint.

Plaintiffs undertook their duty to identify the LPSO Defendants who had an opportunity to prevent the unconstitutional arrests of, and uses of force against, Christopher Brown and Brachell Brown. The only individual defendants remaining in the Fourth Amended Complaint were part of a unit that, as the Fourth Amended Complaint alleges, is shown in a video that depicts the arrests of Brachell Brown and Christopher Brown.[25] The allegations of the Fourth Amended Complaint provide the detail required by this Court to state a plausible claim of bystander liability against these Individual LPSO Defendants.

### IV. Qualified Immunity is Not Available on the Failure to Intervene Claims Under Fifth Circuit Jurisprudence

The Individual LPSO Defendants next attempt to seek dismissal under the doctrine of qualified immunity. This Court described the general application of the doctrine of qualified immunity in its Notice Regarding Oral Argument:

> "In determining whether an official enjoys immunity, we ask (1) whether the plaintiff has demonstrated a violation of a clearly established federal constitutional or statutory right and (2) whether the official's actions violated that right to the extent that an objectively reasonable person would have known." *Gobert* [*v. Caldwell*, 463 F.3d 339], 345 [(5th Cir. 2006)], (*citing Hope v. Pelzer*, 536 U.S. 730, 122 S. Ct. 2508 (2002)).[26]

---

[24] *Montgomery v. Hollins*, No. 3:18-cv-1954-M-BN, 2019 WL 2424053 at *4 (N.D. Tex. May 8, 2019), *report and recommendation adopted*, 2019 WL 2422493 (N.D. Tex. 2019).
[25] ECF No. 56 at 52 ¶ 218 ("Defendant Martin was standing in formation with the LPSO Tactical Team shown in one of the videos taken of Plaintiffs . . . .")
[26] ECF No. 171 (Notice Regarding Oral Argument) at 5.

This Court has already held that, subject to identifying individual LPSO Defendants' actions, Christopher Brown and Brachell Brown have pled sufficient allegations to avoid dismissal on qualified immunity grounds.[27] Moreover, as the Fifth Circuit held in *Hamilton v. Kindred*, 845 F.3d 659, 663 (5th Cir. 2017), as of 2012 – four years before the arrests and use of force against Christopher Brown and Brachell Brown – it was clearly established in the Fifth Circuit that an officer could be liable as a bystander in a case involving excessive force if he knew a constitutional violation was taking place and had a reasonable opportunity to prevent the harm."[28]

The Individual LPSO Defendants do not even cite *Hamilton*, a controlling Fifth Circuit authority on the qualified immunity question. Plaintiffs submit that it is dispositive of the issue.

### V. The Fourth Amended Complaint States a Claim for Relief Against Sheriff Ard in His Official Capacity.

As before, Sheriff Ard asserts that Plaintiffs have not shown a policy or custom of LPSO that imposes liability on the Sheriff in his official capacity for his participation in the conspiracy. To be sure, municipal liability under *Monell v. Dep't of Social Servs*.[29] exists where a plaintiff proves the existence of an unconstitutional official policy, a custom or practice, or deliberate indifference to the known or obvious consequences that constitutional violations will result from a facially innocuous policy.[30]

But *Monell* liability can arise from a single decision or act of the final policymaker.[31] Thus, a single unconstitutional act or decision by a local governmental entity's final policymaker can subject that governmental entity to liability under Section 1983 if that act or decision is within the

---

[27] ECF No. 173 (Order on LPSO Motion to Dismiss, September 6, 2018) at 1.
[28] *Hamilton v. Kindred*, 845 F.3d 659, 663 (5th Cir. 2017).
[29] 436 U.S. 658 (1978).
[30] *Piotrowski v. City of Houston*, 237 F.3d 567, 578-79 (5th Cir. 2001) (internal quotations omitted).
[31] *Gelin v. Housing Auth. of New Orleans*, 456 F.3d 525, 527 (5th Cir. 2006).

11

sphere of the final policymaker's authority, and the policymaker's action reflects an intentional, deliberate decision.[32] In this case, Plaintiffs have pled that Sheriff Ard's decision to join the conspiracy and use the resources of the LPSO to further the conspiracy's aim. Those allegations, as discussed below, are sufficient to cure the deficiencies found by the Court in its order granting, without prejudice, Sheriff Ard's previous motion to dismiss.

Specifically, in its rulings on the conspiracy claims against Sheriff Ard, this Court held:

> Plaintiffs have failed to state a claim against Sheriff Ard (a) for individual constitutional violations, for lack of personal participation, and (b) for conspiracy under § 1983 and § 1985(3), for failing to adequately plead the time, place, or circumstances of Ard's alleged agreement with the other upper-level defendants.[33]

Plaintiffs were, however, granted leave to amend their complaint to cure these failures,[34] and have done so in the Fourth Amended Complaint.

The elements of a conspiracy claim under § 1983 are "(1) the existence of a conspiracy involving state action and (2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy."[35] The deprivation must itself be a violation of § 1983.[36] An official who would have qualified immunity for the underlying violation of a federal right under § 1983 is also immune to liability for their participation in a conspiracy to violate that right.[37]

The elements of a conspiracy under § 1985(3) differ slightly in form from those of a § 1983 conspiracy, requiring "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges

---

[32] *Bennett v. Pippin*, 74 F.3d 578, 586 (5th Cir. 1996); *Jackson v. Bexar County*, No. 15-509, 2016 WL 8802259 (W.D. Tex. Apr. 5, 2016).
[33] ECF No. 173 (Order on LPSO Motion to Dismiss) at 2.
[34] *Id*. at 3.
[35] *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1187 (5th Cir. 1990).
[36] *Id.* at 622.
[37] *Morrow v. Washington*, 672 Fed. App'x 351 (5th Cir. 2016).

and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States."[38] The second prong has been interpreted by the Fifth Circuit to require that the conspiracy be motivated by racial animus.[39] But "racial animus" does not require proof of racial hatred or personal prejudice.[40]

As this Court pointed out in its pre-argument notice, with respect to conspiracy claims, the Supreme Court and Fifth Circuit do not require Plaintiffs to meet "a probability requirement at the pleadings stage; [plausibility] simply calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of illegal agreement . . . [The facts] [must raise] a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action."[41]

Evidence of a conspiracy under § 1983, as with most conspiracies, will be by circumstantial evidence: "Absent the testimony of a coconspirator, it is unlikely that direct evidence of a conspiratorial agreement will exist."[42] In weighing circumstantial evidence of the conspiratorial agreement, "[t]he easiest situation in which to draw the inference of agreement is where the parties are on the scene together at the same time performing acts in support of one another."[43]

Applying these principles in its ruling dismissing Plaintiffs' claims in Counts I and II of the Third Amended Complaint against Sheriff Ard, this Court noted the difference between the allegations made against Sheriff Ard and other final policy-maker defendants:

---

[38] *United Broth. of Carpenters and Joiners of Am. v. Scott*, 463 U.S. 825, 828–29 (1983).
[39] *See, e.g.*, *Lockett v. New Orleans*, 607 F.3d 992, 1002 (5th Cir. 2010).
[40] *See Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 228 (1995) (invidious racial discrimination does not require malignant intent toward the race being discriminated against).
[41] *Jabary v. City of Allen*, 547 F. App'x 600, 610 (5th Cir. 2013) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007)). See ECF No. 171 (Notice Regarding Oral Argument) at 10 (citing *Twombly* and *Jabary*).
[42] *Hampton v. Hanrahan*, 600 F.2d at 621 (7th Cir. 1979).
[43] *Halberstam v. Welch*, 705 F.2d 472, 481 (D.C. Cir. 1983).

> Thus, unlike the allegations against Sheriff Gautreaux, Sheriff Ard is not alleged to have partaken in any meetings on specific days at GOHSEP. Thus . . . **Plaintiffs have failed to allege the time, place, and circumstances in which Ard agreed to enter into the alleged conspiracy**.[44]

This Court concluded that the allegations of the Third Amended Complaint failed to include sufficient detail regarding the "times, places, and other circumstances" elements that this Court found necessary in pleading conspiracy claims under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2013) and *Jabary v. City of Allen*, 547 Fed. App'x 600, 610 (5th Cir. 2013):

> *Twombly* thus confirms the conclusions drawn from *Jabary*. Again, there has to be, "conduct consciously undertaken," and "some setting suggesting the agreement," to constitute a "circumstance pointing toward a meeting of the minds." *Twombly*, 550 U.S. at 557. The court simply does not see that in the Third Amended Complaint they have done so with respect to Sheriff Ard; and thus, I will dismiss the claims of conspiracy against Sheriff Ard.[45]

The Fourth Amended Complaint addressed this point, by adding more specific allegations about the time, place and circumstances in which Sheriff Ard agreed to participate in the conspiracy to silence dissent in Baton Rouge:

> Defendant JASON ARD is the Sheriff of Livingston Parish and is an adult resident of Louisiana. . . . **Defendant ARD assigned supervising officers and deputies from LPSO to support, assist, and act in concert with the other Defendants in the suppression of the free speech and free expression of Black Baton Rouge citizens and residents and Louisianans from outside the parish who protested** the killing of Mr. Alton Sterling and the racially discriminatory policing practices of Defendants HOLDEN, DABADIE, and GAUTREAUX. **ARD thereby permitted and directed the individual LPSO Deputy Defendants to act as East Baton Rouge Deputy Sheriffs in furtherance of a conspiracy to violate the civil rights of protesters. . . . .**[46]

---

[44] Tr. of Oral Rulings, Vol. II, Sept. 10, 2018, at 29:7-12 (emphasis added).
[45] Tr. of Oral Rulings, Vol. II, Sept. 10, 2018, at 33:7-16.
[46] ECF No. 56 (Fourth Amended Complaint), ¶28 (emphasis added).

In response to the protests and the national spotlight on protesters' nonviolent, lawful resistance, **Defendants, led by Defendants** HOLDEN, DABADIE, EDMONSON, GAUTREAUX, **ARD**, HURST and CAZES, **developed and implemented a strategy, motivated by racial animus, to silence this peaceful and lawful exercise of First Amendment rights**. Defendants colluded to accomplish this through the use of intimidation, excessive force, illegal arrests, illegal detention, denigration, and criminalization. The Livingston Parish Sheriff's Office, the Ascension Parish Sheriff's Office, the Calcasieu Parish Sheriff's Office (members of the Emergency Task Force of the Louisiana Sheriff's Association), and other law enforcement agencies not currently known to Plaintiffs joined Defendants in this endeavor.[47]

Defendants HOLDEN, DABADIE, EDMONSON, GAUTREAUX, CAZES, HURST, **ARD**, and/or their agents, along with other high-ranking members of other law enforcement entities, **gathered at MOHSEP and GOHSEP on several occasions between July 6 and 10, 2016, in order to formulate and implement their agreement to suppress the protests**. The **collusion between Defendants HOLDEN, DABADIE, EDMONSON, GAUTREAUX, CAZES, HURST, and ARD also included** telephone calls, email correspondence, and other means to coordinate the implementation of their strategy, motivated by racial animus, to silence the peaceful and lawful exercise of First Amendment rights by, among other things, intimidation, excessive force, illegal arrests, illegal detention, denigration, and criminalization.[48]

Defendant HOLDEN implemented the City/Parish's Emergency Operations Plan ("EOP") through MOHSEP. Under the terms of the EOP and BRPD's and EBRSO's internal policies, Defendants HOLDEN, GAUTREAUX, DABADIE, **ARD**, and their agents **coordinated law enforcement response** to emergencies, which are defined to include "civil disturbances."[49]

**Defendant ARD,** by committing LPSO officers to assist in the response to the protests in Baton Rouge after consulting with GAUTREAUX, CAZES, and/or HURST**, took affirmative action in furtherance of the collusion and agreement set forth in paragraphs 273-277 above.** ARD thereby ratified the customs, usages, and policies of the other Defendants for use by the LPSO officers.[50]

---

[47] *Id*. at ¶ 273 (emphasis added).
[48] *Id*. at ¶ 275 (emphasis added).
[49] *Id*. at ¶ 276 (emphasis added).
[50] *Id*. at ¶ 278 (emphasis added).

In this connection, it is significant that Sheriff Ard resisted discovery regarding his participation in the conspiracy. Plaintiffs' proposed Interrogatory No. 2 asked the Sheriff to:

> Identify any briefings, meetings, or similar gatherings of officers and/or officials you attended on July 9, 2016, at which protests or arrests in the areas defined in Interrogatory No. 1 were discussed, and for each such briefing or meeting:
>
> a. Identify the time, place, and location of the briefing or meeting;
>
> b. Identify (by name, badge or identification number, rank, and agency) any and all law enforcement officers who led or spoke at the briefing or meeting;
>
> c. Describe the content of the matters discussed at the meeting or briefing;
>
> d. Identify any documents or information shown at, or distributed during, the meeting or briefing, including, but not limited to, operational orders.[51]

Sheriff Ard objected as follows:

> Sheriff Ard objects to Interrogatory No. 2 in that all official capacity claims against him by all plaintiffs have been dismissed and therefore no discovery is permitted for the reasons set forth above in the General Objections. Sheriff Ard further objects to Interrogatory No. 2 because it is not relevant to "the narrow issue of which Individual LPSO Deputies (if any) were involved in the alleged constitutional violations" and is overly broad as it goes beyond the scope of Judge deGravelles' ruling. Specifically, **Interrogatory No. 2 is seeking information pertaining to plaintiffs' conspiracy claims**. All of plaintiffs' conspiracy claims against all LPSO Defendants, including Sheriff Ard, have been dismissed.[52]

Thus, without more complete discovery on meetings in which it is alleged Sheriff Ard participated, Plaintiffs pled the times, places and circumstances of the Sheriff's commitment to the conspiracy in the same terms that this Court had already deemed sufficient with respect to Sheriff Gautreaux.

---

[51] ECF No. 197-3 (LPSO Response to Plaintiffs' Proposed Discovery) at 31.
[52] *Id*. at 31-32 (emphasis added).

16

And just as, in the case of Sheriff Gautreaux, Plaintiffs pled specific conduct by the Sheriff and his office which were overt acts in support of the conspiracy and were a moving force for the violations of Plaintiffs constitutional rights, so too, in the Fourth Amended Complaint, have Plaintiffs Brachell Brown and Christopher Brown sufficiently pled actions taken by Sheriff Ard and his office that were a moving force in the constitutional harms suffered by the Brown siblings.[53]

Thus, Plaintiffs Brachell Brown and Christopher Brown have sufficiently pled their claims against Sheriff Ard, in his official capacity, for conspiracy to violate their civil rights pursuant to §§ 1983 and 1985(3).

### VI. Conclusion

Plaintiffs Brachell Brown and Christopher Brown request that this Court deny the motion to dismiss as to the following claims:

> Claim I against Sheriff Ard in his official capacity;
>
> Claim II against Sheriff Ard in his official capacity;
>
> Claim VII against the eleven Individual LPSO Defendants in their individual capacity; and
>
> Claim XVII against the eleven Individual LPSO Defendants in their individual capacity and against Sheriff Ard in his official capacity under state law vicarious liability.

This Court's prior ruling on LPSO's motion to dismiss disposes of all claims of any Plaintiffs other than Brachell Brown and Christopher Brown against any LPSO Defendants, and it also disposes of all claims of Christopher Brown and Brachell Brown not included above.

---

[53] *See supra* Section III.

Respectfully submitted, this the second day of March 2020.

| | |
|---|---|
| */s/ Gideon T. Carter III* | */s/ James W. Craig* |
| Gideon T. Carter, III, La. Bar No. 14136 | James W. Craig, La. Bar No. 33687 |
| Co-Lead Counsel | Co-Lead Counsel |
| PO Box 80264 | Roderick & Solange MacArthur |
| Baton Rouge LA 70898-0264 | Justice Center |
| (225) 214-1546 (p) / (225) 341-8874 (f) | 4400 S. Carrollton Avenue |
| gideontcarter3d@gmail.com | New Orleans LA 70119 |
| | (504) 620-2259 (p) / (504) 208-3133 (f) |
| | jim.craig@macarthurjustice.org |
| | |
| */s/ Eric A. Foley* | */s/ S. Mandisa Moore-O'Neal* |
| Eric A. Foley, La. Bar No. 34199 | S. Mandisa Moore O'Neal, La. Bar No. 35256 |
| Roderick & Solange MacArthur | 8818 Jeanette Street |
| Justice Center (see above) | New Orleans LA 70118 |
| eric.foley@macarthurjustice.org | (504) 475-8046 (p) |
| | smandisa85@gmail.com |
| | |
| */s/ Emily Faye Ratner* | */s/ Mauricio Sierra* |
| Emily Faye Ratner, La. Bar No. 35289 | Mauricio Sierra, La. Bar No. 35560 |
| 7214 St. Charles Ave, | The Sierra Law Firm, LLC |
| Campus Box No. 913 | 7214 St. Charles Ave. |
| New Orleans, LA 70118 | Campus Box 913 |
| (504) 864-7861 (p) / (504) 861-5986 (f) | New Orleans, LA 70118 |
| msemilyfaye@gmail.com | (504) 864-7860 (p) |
| | msierra1@gmail.com |

*/s/ Hannah A. Lommers-Johnson*
Hannah A. Lommers-Johnson
La. Bar No. 34944
Roderick & Solange MacArthur
Justice Center (see above)
hannah.lommersjohnson@macarthurjustice.org

ATTORNEYS FOR PLAINTIFFS

18