# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF LOUISIANA

LEROY TENNART, *et al.*,

         Plaintiffs,

v.

CITY OF BATON ROUGE, *et al.*,

         Defendants.

Case No. 3:17-CV-00179-JWD-EWD

JUDGE JOHN W. DEGRAVELLES

MAG. ERIN WILDER-DOOMES

## PLAINTIFFS' MEMORANDUM IN OPPOSITION
## TO EBRSO DEFENDANTS'MOTION TO DISMISS

### I.  Introduction: Plaintiffs Have Limited the EBRSO Defendants, and Specified Specific Claims Against them, in the Fourth Amended Complaint.

After the limited discovery permitted by the Court, Plaintiffs, Leroy Tennart *et al.* filed their substituted Fourth Amended Complaint,[1] which deleted the claims of thirteen Defendants who were employees of the East Baton Rouge Sheriffs' Office ("EBRSO").[2] Sheriff Gautreaux (in his individual and official capacities),[3] thirty law enforcement officers employed by EBRSO ("the Individual EBRSO Defendants"),[4] and EBRSO's insurance carrier (AIX Group)[5] remain in the case. These defendants (collectively "EBRSO Defendants") have filed a second motion to dismiss.[6]

---

[1] ECF No. 56 (Fourth Amended Complaint).
[2] *Id*. at ¶¶ 113 (Kenneth Tiner), 116 (Gregory Warren), 121 (Evelena Banks), 122 (Shannon Broussard), 125 (Harry Howard), 126 (William Jenkins), 129 (Anthony Smith), 130 (John DePedro), 142 (Roderick Brown), 147 (Gregory Dale Dicherry), 150 (Larry James), 152 (Robert Dixon), 153 (Todd Morris).
[3] *Id*. at 22.
[4] *Id*. at ¶¶ 109 (Todd Martin), 111 (Jeffrey Sabella), 112 (Troy Banks), 114 (Robert Stone), 115 (Steve Young), 117 (Blair Nicholson), 118 (James Cooper), 119 (Willie Stewart), 123 (Calvin Prater), 124 (Eric David), 127 (Michael Allison), 128 (David Philpot), 131 (Justin Sellars), 132 (Thomas Weimer), 133 (William Lawhun), 134 (Marshall Menou), 136 (Matthew Wolfe), 137 (James Broussard), 138 (Jason Ransome), 139 (Jared Wilson), 140 (James Jamison), 141 (Benjamin Friedman), 143 (Brandon McCall), 144 (Casey Lillie), 145 (Jesse Hale), 146 (Jeremy Heine), 149 (Cline Breland), 151 (Jason Jones), 154 (Leroy Griffin, Jr.), 155 (Bryan White).
[5] *Id*. at 29.
[6] ECF No. 256 (motion); ECF No. 256-1 (memorandum).

### A.     *Remaining Claims and Remaining EBRSO Defendants*

The starting place for the Court's analysis is separating out the specific claims Plaintiffs have re-alleged against particular EBRSO Defendants.

#### 1.  Conspiracy and Municipal Liability Claims (Counts I, II, X, XI, XVII)

The Fourth Amended Complaint sufficiently alleges the following claims for relief by all Plaintiffs against Sheriff Gautreaux in his individual and official capacity: § 1983 claim for conspiracy to violate their civil rights (Count I), § 1985 (3) claim for racially-motivated civil conspiracy to deny Black citizens and residents the equal protection of the laws and equal privileges and immunities under the law (Count II), § 1983 *Monell* claim for municipal liability for violation of Plaintiffs' civil rights (Count X), state law claim for civil conspiracy to violate Plaintiffs' rights (Count XI), and state law negligence claim (Count XVII).

#### 2.  Failure to Intervene Claims (Count VII):

The bystander liability claims asserted by each Plaintiff against the remaining Individual EBRSO Defendants are as follows:

- *Plaintiffs Leroy Tennart, Deon Tennart, and Thomas Hutcherson:* Defendants Sid Gautreaux, III (individual capacity), Jeffrey Sabella, Troy Banks, Robert Stone, Steve Young, Blair Nicolson, James Cooper, Willie Stewart, Calvin Prater, Michael Allison, David Philpot, Dustin Sellars, Thomas Weiner, William Lawhun, Marshall Menou, Nicholas Schiro, James Broussard, Jason Ransome, Jared Wilson, James Jamison, Benjamin Friedman. Brandon McCall, Casey Lillie, Jesse Hale, Jeremy Heine, Cline Breland, Leroy Griffin, Jr., Bryan White, Eric David, Matthew Wolfe, and Jason Jones.

- ***Plaintiff Zachary Hill:*** Defendants Sid Gautreaux, III (individual capacity), Jeffrey Sabella, Troy Banks, Robert Stone, Steve Young, Blair Nicolson, James Cooper, Willie Stewart, Calvin Prater, Michael Allison, David Philpot, Dustin Sellars, Thomas Weiner, William Lawhun, Marshall Menou, Nicholas Schiro, James Broussard, Jason Ransome, Jared Wilson, James Jamison, Benjamin Friedman. Brandon McCall, Casey Lillie, Jesse Hale, Jeremy Heine, Cline Breland, Leroy Griffin, Jr., and Bryan White.

- ***Plaintiffs Eddie Hughes and Godavari Hughes:*** Defendants Todd Martin, Jeffrey Sabella, Thomas Weimer, Benjamin Friedman, Casey Lillie, Jeremy Heine, and Cline Breland.

- ***Plaintiffs Brachell Brown and Christopher Brown:*** Defendants Jeffrey Sabella, Thomas Weimer, Benjamin Friedman, Casey Lillie, Jeremy Heine, and Cline Breland.

**B.**     ***Claims Previously Dismissed by this Court and Not Re-alleged in Fourth Amended Complaint.***

Having reviewed the Court's Order on EBRSO's first motion to dismiss,[7] Plaintiffs have concluded that they cannot allege facts to overcome the Court's rulings with respect to the remaining claims alleged in the Third Amended Complaint. For purposes of preservation of their claims and arguments, Plaintiffs do not abandon the arguments made by them in opposition to EBRSO's first motion to dismiss, but have not re-alleged the following claims against any of the EBRSO Defendants:

- Count III (Fourth Amendment claim for false arrest and detention);

---

[7] ECF No. 172.

- Count IV (Fourth and Fourteenth Amendment Claim for manufacturing evidence);

- Count V (Fourth and Fourteenth Amendment claim of excessive use of force);

- Count VI (First and Fourteenth Amendment claim for retaliatory arrest);

- Count VIII (as-applied challenge to La. R.S. § 14:97);

- Count IX (Fourteenth Amendment claim for deliberate indifference to medical needs);

- Count XII (violation of free expression protections of Louisiana Constitution);

- Count XIII (violation of right to privacy, right to be left alone, and the rights of the accused under the Louisiana Constitution);

- Count XIV (state law intentional torts);

- Count XV (state law abuse of process); and

- Count XVI (state law abuse of rights).

These Counts remain as pled against other Defendants in this action.

**C.**      ***Defendants Previously Dismissed by the Court Against Whom No Claims are Re-Alleged in the Fourth Amended Complaint.***

As set forth above, Plaintiffs cannot allege facts against thirteen of the EBRSO Defendants sufficient to meet the standards set forth by the Court in its Order on EBRSO Defendants first motion to dismiss.[8] For purposes of preservation of their claims and arguments, Plaintiffs do not abandon the arguments made by them in opposition to EBRSO's first motion to dismiss, but have not re-alleged any claims against the following EBRSO Defendants: Kenneth Tiner, Gregory

---

[8] *Id.*

4

Warren, Evelena Banks, Shannon Broussard, Harry Howard, William Jenkins, Anthony Smith, John DePedro, Roderick Brown, Gregory Dale Dicharry, Larry James, Robert Dixon, and Todd Morris.

## II. Proceedings Related to EBRSO Motions to Dismiss

Plaintiffs originally filed this civil action on March 23, 2017.[9] EBRSO Defendants moved to dismiss the Third Amended Complaint in January 2018.[10] In September 2018, the Court granted the motion to dismiss as to the following claims against the Individual EBRSO Defendants:

> IT IS FURTHER ORDERED that, with respect to the claims against the Individual EBRSO Deputies in their individual capacity, (a) all claims against Gregory Dale Dicharry, Robert Dixon, and Todd Morris are DISMISSED, as these EBRSO Defendants were not present during any of the arrests or uses of force; (b) all of Eddie Hughes' claims are DISMISSED for failure to state a viable claim; (c) each Plaintiff's claims for manufacturing evidence and deliberate indifference to medical needs (to the extent asserted) are DISMISSED, for failure to state a viable claim; (d) Godavari Hughes and Elcide Harris' claims for excessive force (to the extent asserted) are DISMISSED, for failure to state a viable claim.[11]

On all other claims against the Individual EBRSO Defendants, the Court deferred its ruling pending limited discovery:

> (e) in all other respects, while the Plaintiffs have adequately pled enough to overcome qualified immunity, the Court cannot determine at this time whether any of the Individual EBRSO Deputies are entitled to qualified immunity. Thus, the Court will defer ruling on each Plaintiff's claims to allow limited written discovery on the narrow issue of which Individual EBRSO Deputies (if any) were involved in the alleged constitutional violations. The Magistrate Judge will determine what limited discovery will be allowed for this issue.[12]

---

[9] ECF No. 1.
[10] ECF Nos. 117 and 117-1. See also ECF Nos. 137 (Plaintiffs' opposition) and 159 (EBRSO Defendants' reply).
[11] ECF No. 172 at 1-2.
[12] *Id*. at 2.

Similarly, the Court granted dismissal of many of the theories of official-capacity liability against Sheriff Gautreaux,[13] but deferred its ruling pending further discovery on official-capacity liability based on a single decision by the final policy-maker (Sheriff Gautreaux):

> The motion is DEFERRED in that, while Plaintiffs have adequately pled a single policy decision that may have been the moving force of constitutional violations and that was made with deliberate indifference, limited discovery is needed to determine if Plaintiffs can plead an underlying constitutional violation by an EBRSO Deputy, as outlined above.[14]

The Court dismissed all claims against Sheriff Gautreaux in his individual capacity[15] with the exception of the conspiracy claims against him:

> The motion is DEFERRED with respect to the conspiracy claims against Sheriff Gautreaux; while Plaintiffs have adequately alleged an agreement, the Court will defer ruling until limited discovery has been done as to any constitutional violation, as outlined above.[16]

Following this Court's direction, Magistrate Judge Wilder-Doomes wrote that "[t]his limited discovery is intended to determine the identities of individuals who allegedly violated plaintiffs' constitutional rights, and is contemplated to be limited, at least as an initial matter, to written discovery."[17] The parties were required to submit a joint report setting forth "proposed

---

[13] Id. at 2 ("The motion is GRANTED in that (a) Plaintiffs have no official capacity claim for deliberate indifference to medical care, for lack of an underlying constitutional violation; (b) Plaintiffs have failed to adequately plead a claim for a custom of unlawful arrest and excessive force, for lack of prior incidents in sufficient number and kind; (c) Plaintiffs have failed to state a claim for failure to train, supervise, and implement a policy, as Plaintiffs have failed to adequately plead deliberate indifference through either a pattern of similar incidents or the narrow single incident exception; and (d) Plaintiffs have failed to state a claim for ratification liability, as this case does not present the type of extreme situation in which ratification liability attaches").

[14] *Id.* at 3.

[15] *Id.* at 1 ("IT IS FURTHER ORDERED that the claims asserted against Sheriff Gautreaux in his individual capacity are DISMISSED. Plaintiffs have failed to adequately allege personal participation by Gautreaux in the underlying constitutional violations").

[16] *Id.* at 2.

[17] ECF No. 190, Discovery Conference Hearing and Order (Dec. 6, 2018) at 2.

written discovery requests proposed written discovery requests limited to the information necessary to resolve the issues deferred in the pending Motions to Dismiss."[18]

Plaintiffs filed the report on January 18, 2019.[19] As noted in the report, Plaintiff had sent three successive drafts of proposed discovery to counsel for EBRSO Defendants, but those Defendants continued to object to the discovery.[20] In general, "EBRSO Defendants object to the written discovery that goes beyond the narrow issue of which individual EBRSO Deputies, if any, were involved in the arrests of Plaintiffs."[21] In particular, EBRSO Defendants objected to Plaintiffs' Proposed Interrogatory No. 2 and 3 to Sheriff Gautreaux. Those interrogatories sought the following information:

> 2. Identify any briefings, meetings, or similar gatherings of officers and/or officials you attended on July 9, 2016, at which protests or arrests in the areas defined in Interrogatory No. 1 were discussed, and for each such briefing or meeting:
>
>> a. Identify the time, place and location of the briefing or meeting;
>>
>> b. Identify, by name, badge or identification number, rank, and unit (if applicable) any and all law enforcement officers who led or spoke at the briefing or meeting;
>>
>> c. Describe the content of the matters discussed at the meeting or briefing;
>>
>> d. Identify any documents or information shown at, or distributed during, the meeting or briefing, including, but not limited to, operational orders.
>
> 3. Identify any operational order(s) or other document(s) governing or regarding your response to the protests of July 10, 2016, and for each such order or document, identify the author(s) of the document,

---

[18] *Id*. at 3.
[19] ECF No. 197.
[20] *Id*. at ¶¶2-3.
[21] ECF No. 197-3, EBRSO Defendants' Objections to Plaintiffs' Proposed Written Discovery, at 5.

if known, the person or agency under whose authority the document was promulgated, and how you came to receive the document.[22]

EBRSO objected to both of these interrogatories with the same language:

ERBSO Defendants object to Interrogatory No. 2 in that this request is outside the limited discovery ordered by the Court relating to which individual EBRSO deputy, if any, was involved in Plaintiffs' arrests.[23]

ERBSO Defendants object to Interrogatory No. 3 in that this request is outside the limited discovery ordered by the Court relating to which individual EBRSO deputy, if any, was involved in Plaintiffs' arrests.[24]

With identical language, EBRSO Defendants also objected to Plaintiffs' Proposed Request for Production of Documents No. 3, which sought "Any emails, text messages, or other communications (including audio recording of any radio transmissions) related to the law enforcement response to protests in downtown Baton Rouge, Louisiana that occurred on July 10, 2016."[25]

After a discovery conference on January 23, 2019, at which these and other objections were considered, Magistrate Judge Wilder-Doomes entered an order memorializing the Court's position on the limited discovery, which stated, in part:

The undersigned explained that the primary focus of the written discovery at this juncture is to identify which individual officers were involved in the arrests of particular plaintiffs (or, in the case of Ms. Batiste-Swilley, the entry onto plaintiff's property).[26]

---

[22] ECF No. 197-2 (Plaintiffs Proposed Discovery to EBRSO and LPSO Defendants) at 7.
[23] ECF No. 197-3 at 13-14.
[24] *Id*. at 14.
[25] *Id*. at 15.
[26] ECF No. 198, Discovery Hearing Conference Report and Order at 3.

Magistrate Judge Wilder-Doomes further reported that "The parties were strongly encouraged to confer regarding revising the written discovery requests and were instructed to contact the undersigned should they reach an impasse regarding the revisions."[27]

Plaintiff submitted a more limited set of written discovery requests which were propounded to EBRSO Defendants on February 28, 2019. Again, EBRSO Defendants objected to some of this discovery. Sheriff Gautreaux was asked to produce "all audio or video recording in the possession, custody or control of your office depicting or concerning events at the times, dates and locations described in Official Capacity Interrogatory 1(a) and (b)."[28] The Sheriff objected:

> Sheriff Gautreaux objects to this Request for Production of Documents in that it requests information beyond the scope of the limited discovery ordered by this Court to determine which East Baton Rouge Sheriff Office ("EBRSO") Deputies, if any, were involved in the underlying constitutional violations.[29]

Similarly, each Individual EBRSO Defendant objected to Plaintiffs' Request for Production of Documents No. 1(b), which sought: "Any emails, text messages, or other communications (including audio recording of any radio transmissions) related to the protests in Baton Rouge on July 9, 2016 between 4 p.m. and midnight."[30]

At a status conference held on August 7, 2019, Magistrate Judge Wilder-Doomes re-stated that "the tenor of the January 23, 2019 discovery conference was that plaintiffs would conduct

---

[27] *Id*.
[28] Exhibit A, Sheriff Gautreaux's Responses to Plaintiffs' Written Discovery at 2-3, Request for Production No. 3. These locations were: (a) Between 2 p.m. and 9 p.m. on July 9, 2016, within two blocks in any direction of [the] intersection of Airline Highway and Goodwood Blvd. (Leroy and Deon Tennart; Zachary Hill; Thomas Hutcherson); or (b) Between 6 p.m. and midnight on July 9, 2016, on Airline Highway between Goodwood Blvd. and Interstate 12 (Eddie and Godavari Hughes, Christopher and Brachell Brown)." *Id*. at 1.
[29] *Id*. at 3.
[30] See, e.g., Exhibit B, Defendant Casey Lillie's Responses to Plaintiffs' Requests for Production of Documents at 1, Request for Production of Documents No. 1(b).

limited discovery on an expedited basis to determine the identity of the individuals involved in the underlying constitutional violations."[31]

Plaintiffs thereafter requested leave to take depositions of certain EBRSO Defendants.[32] EBRSO Defendants resisted this discovery.[33] The Court granted very limited depositions: "Plaintiffs are granted leave to conduct a total of 7 hours of depositions in Tennart and Smith. This 7-hour period may be divided between the individual EBRSO deputy defendants in both Tennart and Smith at Plaintiffs' counsel's discretion."[34]

From the responses to these interrogatories, requests for production, and depositions, Plaintiffs were able to determine that some EBRSO Deputies were not in the vicinity of their arrests. So, in amending their Complaint on Nov. 14, 2019,[35] Plaintiffs dismissed claims against those 13 EBRSO deputies they had formerly named as Defendants, and against whom they believed they could no longer maintain bystander-liability claims.

### III. Standard of Review

#### A. *The Deferential Standard of Review of the Complaint Under Rule 12(b)(6)*

A motion under Rule 12(b)(6) is viewed with disfavor and rarely granted.[36] When reviewing the complaint to determine its sufficiency, courts "accept all well-pleaded facts as true and view[s] all facts in the light most favorable to the plaintiff."[37]

To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff's complaint must simply "contain sufficient factual matter, accepted as true, to 'state a

---

[31] ECF No. 216, Status Conference Report and Order at 5.
[32] ECF No. 218.
[33] ECF No. 229.
[34] ECF No. 231 at 3.
[35] ECF No. 238.
[36] *See Lowrey v. Tex. A & M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997) (quoting *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982)).
[37] *See Thompson v. City of Waco, Tex.*, 764 F.3d 500, 502 (5th Cir. 2014).

claim to relief that is plausible on its face.'"[38] "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."[39] The standard of "facial plausibility" is met when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[40]

Finally, "[w]hen reviewing a motion to dismiss, a district court 'must consider the complaint in its entirety, as well as other sources ordinarily examined when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'"[41]

## B.    *The motion to dismiss should not be treated as a motion for summary judgment.*

Plaintiffs object to the attempt by EBRSO Defendants to attach evidentiary materials in an attempt to convert their motion to dismiss to a motion for summary judgment. As set forth in detail above, this Court authorized only limited discovery: "the primary focus of the written discovery at this juncture is to identify which individual officers were involved in the arrests of particular plaintiffs (or, in the case of Ms. Batiste-Swilley, the entry onto plaintiff's property)."[42]

On the basis of this limitation, EBRSO Defendants successfully resisted discovery of "Any emails, text messages, or other communications (including audio recording of any radio transmissions) related to the protests in Baton Rouge on July 9, 2016 between 4 p.m. and midnight."[43] Sheriff Gautreaux likewise successfully resisted discovery of "all audio or video

---

[38] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).
[39] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).
[40] *Id.*
[41] *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).
[42] ECF No. 198, Discovery Hearing Conference Report and Order at 3.
[43] See, e.g., Exhibit B, Defendant Casey Lillie's Responses to Plaintiffs' Requests for Production of Documents at 1,

recording in the possession, custody or control of your office depicting or concerning events at the times, dates and locations described in Official Capacity Interrogatory 1(a) and (b)."[44]

It would be manifestly unfair to allow Sheriff Gautreaux and the Individual EBRSO Defendants to: (1) successfully limit discovery to the mere identification of EBRSO Deputies involved in Plaintiffs' arrests, and then (2) seek summary judgment before Plaintiff can secure discovery needed to impeach the statements of Individual EBRSO Defendants on topics beyond mere identification.[45] As noted in *Pustanio*, *supra*, the "limited and incomplete record with respect to the claims asserted in this matter" should lead the Court to decline to convert the motion to dismiss into a motion for summary judgment."

If this Court is inclined to the contrary, Plaintiff requests this Court, pursuant to Fed.R.Civ.P. Rule 56(d), to deny or defer summary judgment. Motions under Rule 56(d) are "broadly favored and should be liberally granted" due to their role in protecting litigants from premature summary judgment motions before nonmovants have had an opportunity to gather evidence that would adequately oppose the motion. *Am. Family Life Assur. Co. v. Biles*, 714 F.3d 887, 894 (5th Cir. 2013). This district has held that it is axiomatic that a party must have a "full and fair opportunity to discover information essential to its opposition to summary judgment."

---

Request for Production of Documents No. 1(b).

[44] Exhibit A, Sheriff Gautreaux's Responses to Plaintiffs' Written Discovery at 2-3, Request for Production No. 3. These locations were: (a) Between 2 p.m. and 9 p.m. on July 9, 2016, within two blocks in any direction of [the] intersection of Airline Highway and Goodwood Blvd. (Leroy and Deon Tennant; Zachary Hill; Thomas Hutcherson); or (b) Between 6 p.m. and midnight on July 9, 2016, on Airline Highway between Goodwood Blvd. and Interstate 12 (Eddie and Godavari Hughes, Christopher and Brachell Brown)." *Id*. at 1.

[45] It is would be even more unfair to allow Sheriff Gautreaux to use sworn discovery materials from the *Geller* case, which counsel for Plaintiffs do not participate in, to seek premature summary judgment against Plaintiffs. See ECF No. 256-3 (Sheriff Gautreaux's Responses to Interrogatories in *Geller v. City of Baton Rouge*, No. 3:17-cv-00324), relied on in EBRSO Defendants' Memorandum, 256-1 at 16-17.

*Darville v. Turner Indus. Group, LLC.*, No. 13-625-BAJ-SCR, 2015 WL 2357248 at 4 (M.D. La. May 15, 2015).

At a minimum, this Court should defer any summary judgment proceedings unless and until the Individual EBRSO Defendants and Sheriff Gautreaux withdraw their objections to Plaintiffs' prior requests for discovery, respond completely to those interrogatories and requests for production of documents, and permit full depositions of each remaining EBRSO Defendant.[46] Questions of whether an officer should have known of a violation or had sufficient opportunity to intervene are questions of fact for the jury to resolve.[47]

### IV. The Allegations of the Fourth Amended Complaint Sufficiently State Claims Against the EBRSO Defendants.

In the Fourth Amended Complaint, Plaintiffs no longer plead that the EBRSO Defendants personally arrested them. Thus, their claims against the individual deputies are for bystander liability / failure to intervene. These claims also form the basis of the conspiracy claims against Sheriff Gautreaux in his individual and official capacities and of the *Monell* claim for his decisions as policymaker. Plaintiffs first address why EBRSO Defendants' arguments against bystander liability for the individual deputies must fail and then turn to why these violations also provide sufficient basis for Plaintiffs' conspiracy and *Monell* claims.

### A. *Plaintiffs have sufficiently pleaded failure-to-intervene claims against the remaining EBRSO Deputies in their individual capacities.*

In its Notice Regarding Oral Argument, this Court explained the principles governing a law enforcement officer's "bystander liability" for failing to intervene to protect the constitutional rights of a person:

---

[46] ECF Nos. 197-2, 197-3, Exhibits A and B.

[47] *Hale*, 45 F.3d at 919 (holding that whether officer had reasonable opportunity to realize excessive nature of force used and to intervene to stop it were questions for trier of fact); *Anderson*, 17 F.3d at 557;

> "[A]n officer may be liable under § 1983 under a theory of bystander liability where the officer "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013) (citations omitted). "However, liability will not attach where an officer is not present at the scene of the constitutional violation." *Id.* (citations omitted). "In resolving whether a plaintiff has sufficiently alleged a bystander liability claim we also consider whether an officer 'acquiesce[d] in' the alleged constitutional violation." *Id.* at 647 (citations omitted). Although bystander liability "most often applies in the context of excessive force claims, other constitutional violations also may support a theory of bystander liability." *Id.* at 646 n. 11 (citations omitted).[48]

Because, as the Court noted, liability for failure to intervene "will not attach where an officer is not present at the scene of the constitutional violation," Plaintiffs limited their claims to the Individual EBRSO Defendants present at the scene of the Plaintiffs' arrests (including Sheriff Gautreaux)[49] on July 9, 2016.

In *Rodgers v. Jefferson Parish Sheriff's Office*, No. 15-2642, 2016 WL 8262051 (E.D. La. Dec. 22, 2016), *report and recommendation adopted*, 2017 WL 661258 (E.D. La. Feb. 17, 2017), the Court clarified, "For the duty to intervene to arise, '[t]he officer must have a *reasonable opportunity to realize* the excessive nature of the force and realistic opportunity to stop it.'"[50] This interpretation of the knowledge requirement for bystander liability was established by the Fifth Circuit in *Hale v. Townley*.[51] The Fifth Circuit is not alone in recognizing that this is an objective

---

[48] ECF No. 171 (Notice Regarding Oral Argument, August 31, 2018) at 9.

[49] ECF No. 56 (Fourth Amended Complaint) at ¶ 22.

[50] *Rodgers*, 2016 WL 8262051, *9 (quoting *Nowell v. Acadian Ambulance Serv.*, 147 F. Supp. 2d 495, 507 (W.D. La. 2001) (emphasis added))

[51] *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995) ("Viewing the allegations and summary judgment evidence most favorably to Hale, the summary judgment evidence raises a fact issue as to whether Fant had a reasonable opportunity to realize the excessive nature of the force and to intervene to stop it."); *see also Ling v. City of Garland*, 3:05-CV-1754-P (N.D. Tex. Feb. 23, 2007), 2007 WL 9712235 at *6 (denying summary judgment on failure to intervene claim, holding that whether an officer had sufficient time to intercede or was capable of preventing the harm being caused by another officer is an issue of fact for the jury unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise).

standard.[52] Questions of whether an officer should have known of a violation or had sufficient opportunity to intervene are for the jury to resolve.[53]

Likewise, In *Dotson v. Edmonson*,[54] the district court denied summary judgment on qualified immunity with respect to an allegedly false arrest in October 2015 on grounds that the principles of *Whitley*[55] clearly established that "a non-arresting officer may be liable for the false arrest of a civilian where the non-arresting officer has knowledge that the arrest is made without probable cause, has a reasonable opportunity to prevent the harm, and chooses not to act."[56]

Applying these principles, and contrary to the Individual EBRSO Defendants' position, numerous courts have held less detailed factual allegations sufficient to state a claim for bystander liability against a law enforcement officer. Thus, in a case where the complaint alleged the excessive force incident was sudden and unexpected, and never explicitly alleged that the bystander defendant had a reasonable opportunity to intervene, the Court denied a motion to

---

[52] *See Richman v. Sheahan*, 512 F.3d 876, 885 (7th Cir. 2008) ("The other officer, provided he knew *or should have known* what the first officer had done, would be liable along with the first officer as a participant in the conduct giving rise to the peril."); *Abdullahi v. City of Madison*, 423 F.3d 763, 774 (7th Cir. 2005) ("[a]n officer who is present and fails to intervene to prevent other law enforcement officers from infringing the constitutional rights of citizens is liable under § 1983 if that officer *had reason to know* . . . that any constitutional violation has been committed by a law enforcement official.") (emphasis added); *Anderson v. Brannen*, 17 F.3d 552, 557 (2d Cir. 1994) ("An officer who fails to intercede is liable for the preventable harm caused by the actions of the other officers where that officer observes or has reason to know . . . that any constitutional violation has been committed by a law enforcement official.")

[53] *Hale*, 45 F.3d at 919 (holding that whether officer had reasonable opportunity to realize excessive nature of force used and to intervene to stop it were questions for trier of fact); *Anderson*, 17 F.3d at 557.

[54] 2018 WL 501512 at *8 (E.D. La. Jan. 22, 2018).

[55] Defendants cite *Perez v. Tedford*, No. SA-13-CV-429, 2013 WL 5740256 (Oct. 22, 2013) for the proposition contrary to *Dotson*. *Perez*, however, does not cite *Whitley* and therefore does not distinguish the general rule cited in that 2013 Fifth Circuit case. *Whitley* and *Dotson* stand for the proposition that the clearly established law for purposes of a failure to intervene claim is based on the failure to stop "a violation of an individual's constitutional rights" by another officer – not the artificially narrower question of whether the right involved is the right to be free from excessive force, the right to be free from arrests without probable cause, or as here, the right to be free from entry on one's land without permission.

[56] Similarly, in *Wilkerson v. Seymour*, 736 F.3d 974, 979-80 (11th Cir. 2013) the Eleventh Circuit interpreted *Jones v. Cannon*, 174 F.3d 1271, 1283-84 (11th Cir. 1999) as standing for the proposition that, "where an officer was present during an arrest and knew that the arresting officer had no reasonable basis for arguable probable cause, the non-arresting officer could be liable under § 1983 if he was sufficiently involved in the arrest." In *Wilkerson* and *Jones*, the Eleventh Circuit interpreted the clearly established law supporting the "failure to intervene" claim at the same generality as that applied by the Fifth Circuit in *Whitley* and the district court in *Dotson*.

dismiss and held the plaintiff "has plead facts sufficient to raise a right to relief above the speculative level."[57]  Similarly, in *Coleman v. Lee*, No. 15-2365, 2017 WL 424884 (W.D. La. Jan. 30, 2017), a motion to dismiss was denied under the following circumstances:

> Coleman alleged that Officer Combs and Officer Shaver were in the immediate vicinity when Officer Lee body slammed him onto the concrete floor of the porch; slammed his head on the floor; and repeatedly kicked him in his head and lower body area. In light of these factual allegations, the Court would like the benefit of discovery before considering whether Officer Shaver and Officer Combs had a reasonable opportunity to realize the claimed excessive force and to intervene to stop it. Thus, the Motion to Dismiss must be DENIED because Coleman has plead specific facts sufficient to raise a right to relief above the speculative level.[58]

The Individual EBRSO Defendants argue that the Fourth Amended Complaint is insufficient because Plaintiffs have failed to allege facts that would comprise EBRSO Defendants' failure to intervene to prevent violations of their rights. They argue that the EBRSO deputies' presence at the scene of the arrests is not enough to create liability. EBRSO Defendants argue that Plaintiffs' claims must fail because they fail to allege that EBRSO Defendants knew that other law enforcement officers' acts were unconstitutional.

EBRSO Defendants' argument here turns on the degree of knowledge required under failure-to-intervene law. Generally, "an officer may be liable under § 1983 under a theory of bystander liability where the officer (1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act."[59]

---

[57] *Taylor v. City of Shreveport*, No. 07-1817, 2009 WL 2762710 at *3 (W.D. La. Aug. 27, 2009).
[58] *Coleman*, 2017 WL 424884, *3; *see also Hollins v. City of Columbia, Miss.*, 2019 WL 3307056 at *6-7 (S.D. Miss. July 23, 2019) (denying motion to dismiss for failure to state a claim)
[59] *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013).

While correctly stating the objective nature of the test in one section of their brief —"the officer had an opportunity to both realize that a constitutional violation was being committed and an opportunity to intervene to stop it"[60]—EBRSO Defendants go on to argue that Plaintiffs must plead that each of the officers had *subjective* knowledge of the constitutional violation. Thus, with respect to SWAT Commander Todd Martin, Defendants argue: "Plaintiffs do not allege any facts to suggest that Todd Martin knew why the arrests were being made by another agency's officer such that he could even know that an individual's constitutional rights were allegedly being violated."[61] In fact, Plaintiffs pleaded that Martin was present at the corner of Goodwood Blvd. and Airline Highway on July 9, 2016, at the same time that the arrests of Plaintiffs Leroy Tennart, Deon Tennart, Thomas Hutcherson, and Zachary Hill were made at that location.[62] They further allege that "Defendant MARTIN witnessed BRPD officers grabbing and pulling protesters who had been in the street and witnessed protesters being handcuffed by BRPD officers."[63] That is exactly the narrowing of the claims which this Court required in its September 2018 ruling,

EBRSO Defendants' assertions to the contrary are refuted by the authorities on which they themselves rely. In *Rodgers*, the Court clarified, "For the duty to intervene to arise, '[t]he officer must have a *reasonable opportunity to realize* the excessive nature of the force and realistic opportunity to stop it.'"[64] This interpretation of the knowledge requirement for bystander liability was established by the Fifth Circuit in *Hale v. Townley*.[65] The Fifth Circuit is not alone in

---

[60] ECF No. 256-1 at 20 (citing *Rodgers v. Jefferson Parish Sheriff's Office*, No. 15-2642, 2016 WL 8262051 (E.D. La. Dec. 22, 2016), *report and recommendation adopted sub nom* 2017 WL 661258)

[61] *See, e.g.*, ECF No. 256-1 at 23.

[62] ECF No. 56 at ¶ 109.

[63] *Id*.

[64] *Rodgers*, 2016 WL 8262051, *9 (quoting *Nowell v. Acadian Ambulance Serv.*, 147 F. Supp. 2d 495, 507 (W.D. La. 2001) (emphasis added))

[65] *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995) ("Viewing the allegations and summary judgment evidence most favorably to Hale, the summary judgment evidence raises a fact issue as to whether Fant had a reasonable opportunity to realize the excessive nature of the force and to intervene to stop it."). Under *Whitley*, the officer in question must have been physically present, but that does not detract from the objective nature of the failure-to-intervene inquiry.

17

recognizing that this is an objective standard.[66] It is worth repeating that questions of whether an officer should have known of a violation or had sufficient opportunity to intervene are for the jury to resolve.[67]

EBRSO Defendants also cite to *Westfall v. Luna* in support of their argument that their officers lacked sufficient knowledge and thus are not liable.[68] *Westfall*, however, does not stand for that proposition. In *Westfall*, a homeowner was arrested for "interference with public duties" when she followed police officers into her home as they attempted to conduct a warrantless search.[69] The Court held that two officers, Melton and Roberson, who had not been physically present at the scene of an arrest could not be held liable on a failure-to-intervene theory for false arrest. The two officers had arrived on the scene *after* their colleagues had already arrested the plaintiff, handcuffed her, and placed her in a squad car.[70]

In fact, *Westfall* upheld a bystander liability theory for a third officer, Anderson, who had been searching the home while the plaintiff was being detained outside. The Court found that there was a factual question as to whether the officers had consent to search the home, without such authority, there would be no probable cause to arrest plaintiff for interfering with the officers.

---

[66] *See Richman v. Sheahan*, 512 F.3d 876, 885 (7th Cir. 2008) ("The other officer, provided he knew *or should have known* what the first officer had done, would be liable along with the first officer as a participant in the conduct giving rise to the peril."); *Abdullahi v. City of Madison*, 423 F.3d 763, 774 (7th Cir. 2005) ("[a]n officer who is present and fails to intervene to prevent other law enforcement officers from infringing the constitutional rights of citizens is liable under § 1983 if that officer *had reason to know* . . . that any constitutional violation has been committed by a law enforcement official.") (emphasis added); *Anderson v. Brannen*, 17 F.3d 552, 557 (2d Cir. 1994) ("An officer who fails to intercede is liable for the preventable harm caused by the actions of the other officers where that officer observes or has reason to know . . . that any constitutional violation has been committed by a law enforcement official.")

[67] *Hale*, 45 F.3d at 919 (holding that whether officer had reasonable opportunity to realize excessive nature of force used and to intervene to stop it were questions for trier of fact); *Anderson*, 17 F.3d at 557.

[68] ECF No. 182-1 at 22 (citing *Westfall v. Luna*, 903 F.3d 534 (5th Cir. 2018)).

[69] *Id.* at 539–41.

[70] *Id.* at 541.

18

"[V]iewing the facts in the light most favorable to Westfall, Anderson had the same information regarding consent as [the officers] who made the arrest, we reverse the district court's judgment."[71]

The Fourth Amended Complaint makes specific allegations about that each EBRSO Deputy who failed to intervene to prevent Plaintiffs' unconstitutional arrests. Rather than pleading in a shotgun manner, Plaintiffs have detailed the identity of each Individual EBRSO Defendant who was present and who failed to intervene as to the specific unconstitutional arrests of each Plaintiff. Every EBRSO deputy on the scene of the arrests had an opportunity to stop the violation of Plaintiffs' constitutional rights. Plaintiff specifically pleaded that the EBRSO defendants were actively involved in the law enforcement activities that led up to and included the violations of their rights.

Given these Defendants' close proximity to these violations and the scale of the law enforcement response, the EBRSO Deputies should have realized that Plaintiffs' arrests were unconstitutional, and had an opportunity to stop those violations It would be nearly impossible for an officer, in as close a proximity to these events as EBRSO Deputies are alleged to have been, not to realize that the mass arrest of peaceful protesters who had not violated any law(including obstruction of a highway of commerce) was under way.

Plaintiffs undertook their duty to seek the identity and location of the Individual EBRSO Defendants who had been sued in this case. The only such individual defendants remaining in the Fourth Amended Complaint were present at the scene at the time and place where Plaintiffs were arrested. Their self-serving statements that they did not "see" any "arrests" should not be given force in the context of a motion to dismiss. The allegations of the Fourth Amended Complaint provide the detail required by this Court to give the Individual EBRSO Defendants notice of the

---

[71] *Id.* at 547.

19

claims against them.

**B.    *Qualified Immunity is Not Available on the Failure to Intervene Claims Under Fifth Circuit Jurisprudence***

The Individual EBRSO Defendants also attempt to seek dismissal under the doctrine of qualified immunity, arguing "a reasonable officer in the Individual EBRSO Deputies position, would have no reason to know that a duty to intervene existed to prevent the alleged constitutional violations."[72] This Court has already held that, "while **the Plaintiffs have adequately pled enough to overcome qualified immunity**, the Court cannot determine at this time whether any of the Individual EBRSO Deputies are entitled to qualified immunity. Thus, the Court will defer ruling on each Plaintiff's claims to allow limited written discovery on the narrow issue of which Individual EBRSO Deputies (if any) were involved in the alleged constitutional violations."[73]

Moreover, the Fifth Circuit has held that as of 2012 – four years before the arrests and use of force against these Plaintiffs – it was clearly established in the Fifth Circuit that an officer could be liable as a bystander in a case involving excessive force if he knew a constitutional violation was taking place and had a reasonable opportunity to prevent the harm."[74]

Given the Court's lengthy oral and written rulings on the previous motion to dismiss and the Fifth Circuit's opinion in *Hamilton*, the only issue to be adjudicated as to the Individual EBRSO Defendants under Rule 12(b)(6) is whether Plaintiffs have sufficiently alleged the grounds for holding them liable for failing to intervene to prevent the Plaintiffs' unconstitutional arrests. Qualified immunity does not add anything to this analysis.

---

[72] ECF No. 256-1 at 70-71.
[73] ECF No. 172 at 2 (emphasis added).
[74] *Hamilton v. Kindred*, 845 F.3d 659, 663 (5th Cir. 2017).

C.   *Claims against Sheriff Gautreaux in his Individual and Official Capacities*

1.  **Official Capacity Claims**

The office of Sheriff in Louisiana is an autonomous political subdivision under the Louisiana Constitution and is thus treated as a municipality for purposes of liability under *Monell v. Dep't of Social Servs*.[75] As this Court recognized in its Order on EBRSO's previous motion to dismiss,[76] *Monell* liability can arise from a single decision or act of the final policymaker.[77] Thus, a single unconstitutional act or decision by a local governmental entity's final policymaker can subject that governmental entity to liability under Section 1983 if that act or decision is within the sphere of the final policymaker's authority, and the policymaker's action reflects an intentional, deliberate decision.[78]

This Court specifically found that "**Plaintiffs have adequately pled a single policy decision** that may have been the moving force of constitutional violations and that was made with deliberate indifference, limited discovery is needed to determine if Plaintiffs can plead an underlying constitutional violation by an EBRSO Deputy, as outlined above."[79]

Thus, EBRSO's argument as to official capacity liability at this stage is limited to the question of whether the Fourth Amended Complaint sufficiently alleges that any individual EBRSO deputy violated Plaintiffs' constitutional rights.[80] As discussed above, Plaintiffs have alleged specific violations of the Individual EBRSO Defendants' duty to intervene to prevent or

---

[75] 436 U.S. 658 (1978)
[76] ECF No. 172 at 3.
[77] *Gelin v. Housing Auth. of New Orleans*, 456 F.3d 525, 527 (5th Cir. 2006).
[78] *Bennett v. Pippin*, 74 F.3d 578, 586 (5th Cir. 1996); *Jackson v. Bexar County*, No. 15-509, 2016 WL 8802259 (W.D. Tex. Apr. 5, 2016).
[79] ECF No. 172 at 3 (emphasis added).
[80] ECF No. 256-1 at 73-74.

interrupt the violations of Plaintiffs' constitutional rights. Plaintiffs' official-capacity claims against Sheriff Gautreaux should not be dismissed.

### 2. Conspiracy Claims (Individual and Official Capacity)

The elements of a conspiracy claim under § 1983 are "(1) the existence of a conspiracy involving state action and (2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy."[81] The deprivation must itself be a violation of § 1983.[82] An official who would have qualified immunity for the underlying violation of a federal right under § 1983 is also immune to liability for their participation in a conspiracy to violate that right.[83]

The elements of a conspiracy under § 1985 (3) differ slightly in form from those of a § 1983 conspiracy, requiring "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States."[84] The second prong has been interpreted by the Fifth Circuit to require that the conspiracy be motivated by racial animus.[85] But "racial animus" does not require proof of racial hatred or personal prejudice.[86]

As this Court pointed out in its pre-argument notice, with respect to conspiracy claims, the Supreme Court and Fifth Circuit do not require Plaintiffs to meet "a probability requirement at the pleadings stage; [plausibility] simply calls for enough fact[s] to raise a reasonable expectation that

---

[81] *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1187 (5th Cir. 1990).
[82] *Id.* at 622.
[83] *Morrow v. Washington*, 672 Fed. App'x 351 (5th Cir. 2016).
[84] *United Broth. of Carpenters and Joiners of Am. v. Scott*, 463 U.S. 825, 828–29 (1983).
[85] *See, e.g.*, *Lockett v. New Orleans*, 607 F.3d 992, 1002 (5th Cir. 2010).
[86] *See Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 228 (1995) (invidious racial discrimination does not require malignant intent toward the race being discriminated against).

discovery will reveal evidence of illegal agreement . . . [The facts] [must raise] a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action."[87]

Evidence of a conspiracy under § 1983, as with most conspiracies, will be by circumstantial evidence: "a plaintiff is not required to provide direct evidence of the agreement between coconspirators. . . Absent the testimony of a coconspirator, it is unlikely that direct evidence of a conspiratorial agreement will exist."[88] In weighing circumstantial evidence of the conspiratorial agreement, "[t]he easiest situation in which to draw the inference of agreement is where the parties are on the scene together at the same time performing acts in support of one another."[89]

Plaintiffs alleged that Sheriff Gautreaux conspired with Defendants Holden, Dabadie, Edmonson, Ard, Cazes, Hurst, and the Louisiana Sheriffs' Association to suppress the protests of July 8–10, 2016. Therefore, although Sheriff Gautreaux is not alleged to have personally effected an arrest, he and his office may be held liable for the resulting constitutional violations committed by a coconspirator or his agent. As the Fifth Circuit has explained, "[t]he contention that a conspiracy existed which deprived the petitioner of rights guaranteed by federal law makes each member of the conspiracy potentially liable for the effects of that deprivation."[90] The Fifth Circuit has specifically noted that "[l]iability does not arise solely because of the individual's own conduct. Some personal conduct may serve as evidence of membership in the conspiracy, but the individual's actions do not always serve as the exclusive basis for liability."[91]

---

[87] *Jabary v. City of Allen*, 547 F. App'x 600, 610 (5th Cir. 2013) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007)). See ECF No. 171 (Notice Regarding Oral Argument) at 10 (citing *Twombly* and *Jabary*).
[88] *Hampton v. Hanrahan*, 600 F.2d at 621 (7th Cir. 1979).
[89] *Halberstam v. Welch*, 705 F.2d 472, 481 (D.C. Cir. 1983).
[90] *Turner v. Upton Cnty., Tex.*, 915 F.2d 133, 137 (5th Cir. 1990) (quoting *Slavin v. Curry*, 574 F.2d 1256, 1263 (5th Cir. 1978)).
[91] *Id*.

EBRSO Defendants cite to *Shaw v. Villanueva*[92] for the proposition that because Gautreaux did not personally commit the underlying constitutional violation, he cannot be liable for the conspiracy that caused it:

> Like in *Shaw*, Plaintiffs do not allege facts to suggest that Sheriff Gautreaux, Holden, Dabadie, Edmonson, Cazes, Hurst or Ard, *themselves* acted in furtherance of a conspiracy to violate their rights. Rather, like in Shaw, Plaintiffs allege that the Conspiracy Defendants' subordinates made the arrests and used excessive force. Therefore, Sheriff Gautreaux is entitled to qualified immunity and the individual capacity Section 1983 and Section 1985 conspiracy claims against Sheriff Gautreaux should be dismissed with prejudice.[93]

This is a misreading of *Shaw*. There, the Fifth Circuit held that a sheriff and his chief deputy could not be held liable for §§ 1983 and 1985 conspiracy claims in which the underlying constitutional violation alleged was a false arrest, for which a magistrate had found probable cause. The Court reasoned that there was no false arrest claim because probable cause had been found by a neutral magistrate, and there was insufficient pleading that the Sheriff or any of his deputies had maliciously withheld information from the magistrate in their warrant application or otherwise misled the magistrate.[94] Instead, the facts as alleged in the complaint showed that a complaining witness had lied in his statement to sheriff's deputies. Absent an allegation that the sheriff or his chief—or deputies working on their orders—had separately withheld information or misled the magistrate or otherwise tampered with his probable cause determination, there could be no underlying constitutional injury; i.e., there was, in fact, probable cause for the arrest. The opinion does not stand for the proposition that a 1983 or 1985 conspiracy can be alleged only with the conspirator's direct participation in the underlying constitutional violation.

---

[92] 918 F.3d 414 (5th Cir. 2019).
[93] ECF No. 256-1 at 15 (emphasis in original).
[94] *Shaw*, 918 F.3d at 417–18.

Contrast *Shaw* with the allegations of the Fourth Amended Complaint. Plaintiffs sufficiently plead that there was an underlying violation of their constitutional rights—failure to intervene to prevent Fourth Amendment violations—by multiple deputies of Sheriff Gautreaux. The Sheriff participated in the plan to arrest peaceful protesters, and his deputies facilitated this order by standing back and allowing it to happen.

### 3. State Law Claims Against Sheriff Gautreaux

As the Court recognized in its prior Order on EBRSO Defendants' motion to dismiss, "[t]hese claims largely mirror the federal claims."[95] The Court went on to rule:

> As to the state law conspiracy claims, the motion is GRANTED as to the Individual EBRSO Deputies (for lack of a meeting of the minds) but DENIED WITHOUT PREJUDICE with respect to Gautreaux, pending the limited discovery outlined above. As to the other alleged torts, the motion is GRANTED as to Gautreaux in his individual capacity for lack of personal involvement but DENIED WITH PREJUDICE as to the Individual EBRSO Deputies and as to Gautreaux for the claims of vicarious liability. The sole exception to this is the abuse of process claims, all of which are DISMISSED.[96]

The Fourth Amended Complaint alleges the involvement of the EBRSO Defendants for failure to intervene to prevent or interrupt the unconstitutional arrests of all Plaintiffs, and excessive uses of force against some of the Plaintiffs. Moreover, because the Individual EBRSO Defendants were acting in the course and scope of their employment, Defendant Gautreaux is liable under the doctrine of *respondeat superior*.[97]

With respect to the negligence claim against Sheriff Gautreaux, it is noteworthy that in the recent case of *Doe v. Mckesson*, 945 F.3d 818, 826-828 (5th Cir. 2019), rehearing en banc denied, 947 F.3d 874 (5th Cir. 2020), the court of appeals held that plaintiff's complaint adequately pled

---

[95] ECF No. 172 at 3.
[96] *Id*.
[97] *LeBrane v. Lewis*, 292 So. 2d 216, 218 (La. 1974).

a state law claim for negligence where the complaint alleged that defendant organized a protest at which it could be reasonably foreseen that injuries would result from the tortious acts of protesters.[98] In this case, the Fourth Amended Complaint alleges that Sheriff Gautreaux participated in planning the law enforcement response to protests in a manner that could be reasonably foreseen to result in constitutional violations.

### V.  Conclusion

In its previous ruling on EBRSO Defendants' motion to dismiss, this Court provided a vehicle for Plaintiffs to identify the actions of specific officers so as to permit more detailed allegations. Plaintiffs have undertaken the significant effort to do so. The Fourth Amended Complaint meets the standard set forth in the jurisprudence and in this Court's previous rulings. Thus, Plaintiffs respectfully request that this Court enter its ruling:

> DENYING the motion to dismiss as to the remaining Individual EBRSO Defendants (including Sheriff Gautreaux) on Count VII, Failure to Intervene; and

> DENYING the motion to dismiss as to Sheriff Gautreaux in his individual and official capacity on Counts I, II, X, XI, and XVII.

Respectfully submitted, this the second day of March, 2020.

| /s/ Gideon T. Carter III | /s/ James W. Craig |
|---|---|
| Gideon T. Carter, III, La. Bar No. 14136 | James W. Craig, La. Bar No. 33687 |
| Co-Lead Counsel | Co-Lead Counsel |
| PO Box 80264 | Roderick & Solange MacArthur |
| Baton Rouge LA 70898-0264 | Justice Center |
| (225) 214-1546 (p) / (225) 341-8874 (f) | 4400 S. Carrollton Avenue |
| gideontcarter3d@gmail.com | New Orleans LA 70119 |
| | (504) 620-2259 (p) / (504) 208-3133 (f) |
| | jim.craig@macarthurjustice.org |

---

[98] Plaintiffs do not adopt the facts actually pled in *Mckesson*, nor do they agree with the characterization of the July 9, 2016 protest in the *Mckesson* plaintiff's complaint. The case is cited to show the breadth of the Louisiana state law tort of negligence in this context.

/s/ Eric A. Foley
Eric A. Foley, La. Bar No. 34199
Roderick & Solange MacArthur
Justice Center (see above)
eric.foley@macarthurjustice.org

/s/ S. Mandisa Moore-O'Neal
S. Mandisa Moore O'Neal, La. Bar No. 35256
8818 Jeanette Street
New Orleans LA 70118
 (504) 475-8046 (p)
smandisa85@gmail.com

/s/ Emily Faye Ratner
Emily Faye Ratner, La. Bar No. 35289
7214 St. Charles Ave,
Campus Box No. 913
New Orleans, LA 70118
(504) 864-7861 (p) / (504) 861-5986 (f)
msemilyfaye@gmail.com

/s/ Mauricio Sierra
Mauricio Sierra, La. Bar No. 35560
The Sierra Law Firm, LLC
7214 St. Charles Ave.
Campus Box 913
New Orleans, LA 70118
(504) 864-7860 (p)
msierra1@gmail.com

/s/ Hannah A. Lommers-Johnson
Hannah A. Lommers-Johnson
La. Bar No. 34944
Roderick & Solange MacArthur
Justice Center (see above)
hannah.lommersjohnson@macarthurjustice.org

ATTORNEYS FOR PLAINTIFFS