## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| LEROY TENNART, *et al.*,<br><br>    Plaintiffs,<br><br>v.<br><br>CITY OF BATON ROUGE, *et al.*,<br><br>    Defendants. | Case No. 3:17-CV-00179-JWD-EWD<br><br>JUDGE JOHN W. DEGRAVELLES<br><br>MAG. ERIN WILDER-DOOMES |

**FIFTH AMENDED COMPLAINT**

**Jury Trial Demanded**

### I. NATURE OF THE ACTION

1.      On July 5, 2016, officers of the Baton Rouge Police Department Tased, tackled, and shot Alton Sterling, a Black father of five and resident of Baton Rouge, Louisiana.  Over the following week,  members of the Baton Rouge community – many of them Black residents – came together to voice anger and disappointment at the killing of Mr. Sterling and the aggressive and racist policing they had endured for decades. People gathered on the streets, sidewalks, and neutral grounds[1] of Baton Rouge to protest. The protests were spontaneous and peaceful. The protesters were law-abiding.

2.      Despite protesters' peaceful aims, Defendants entered into and executed a conspiracy to deny members of the Black community of Baton Rouge their right to grieve, express their anger, and demand equal protection from law enforcement. In furtherance of this conspiracy,

---

[1] Outside of Southeast Louisiana, "the neutral ground" is commonly called a median.

Defendants arrested protesters without just cause, solely to suppress the protests and deny the protesters' right to assemble, to free expression, and to petition the government for redress of grievances. Defendants' actions were particularly aimed to suppress dissent of Black citizens of Baton Rouge.

3.      To this end, as the protests began, Defendants created a plan to intimidate the protesters through the use of violent, militarized police tactics, which included the use of rifles, batons, riot shields, armored vehicles, and armed officers. Defendants set out to arrest the protesters without probable cause, using the pretext that the protesters had violated a state law proscribing obstruction of highways and public roads. Defendants sought to disrupt the peaceful protests by utilizing pre-determined tactics to disrupt crowds of peaceful, law-abiding protesters.

4.      On July 8 and 9, 2016, Defendants implemented that plan and arrested Plaintiffs on the false grounds that they had obstructed highways and public roads in Baton Rouge. Plaintiffs had no intention of obstructing the highway, and never did so. Rather, their purpose was to protest in a peaceful manner, and they did so.

5.      Plaintiffs were detained in the East Baton Rouge Parish Prison and the juvenile jail, subjected to harsh detention conditions, and labeled as criminals without just cause. Shortly after the release of Plaintiffs and other protesters, the East Baton Rouge District Attorney publicly announced that he would not file bills of information against any of the protesters charged only with obstructing a highway, evidence that these charges were unwarranted.

6.      This action seeks to hold Defendants liable for the unjust and racially discriminatory arrests they conducted solely to quash peaceful protests against the pattern of racist law enforcement by the City of Baton Rouge/Parish of East Baton Rouge.

## II.  JURISDICTION AND VENUE

7.     Plaintiffs bring this action under 42 U.S.C. §§ 1983 and 1985(3), to vindicate their rights guaranteed by the First, Fourth, and Fourteenth Amendments to the United States Constitution. Plaintiffs also bring supplemental state-law claims. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, and 1367.

8.     This case seeks remedies under 28 U.S.C. §§ 1920, 2201, 2202 and 42 U.S.C. §§ 1983, 1985(3), and 1988.

9.     Venue in this Court is proper pursuant to 28 U.S.C. § 1391.

## III.  PARTIES

### A.  Plaintiffs

10.     Plaintiff LEROY TENNART is a Black adult resident and citizen of Baton Rouge, Louisiana who was arrested on July 9, 2016, near the intersection of Goodwood Boulevard and Airline Highway for "simple obstruction of a highway of commerce" while lawfully protesting the shooting death of Mr. Alton Sterling and racist policing in Baton Rouge.

11.     Plaintiff DEON TENNART is a Black adult resident and citizen of Baton Rouge, Louisiana who was arrested on July 9, 2016, near the intersection of Goodwood Boulevard and Airline Highway for "simple obstruction of a highway of commerce" while lawfully protesting the shooting death of Mr. Alton Sterling and racist policing in Baton Rouge.

12.     EDDIE HUGHES III is a Black adult resident and citizen of Ascension Parish, Louisiana. He is the father and, at the time of his arrest in July 2016, was the natural guardian of GODAVARI HUGHES. EDDIE HUGHES was arrested on July 9, 2016, on Airline Highway for "simple obstruction of a highway of commerce" while lawfully protesting the shooting death of Mr. Alton Sterling and racist policing in Baton Rouge.

13.     GODAVARI HUGHES was a Black minor resident and citizen of Ascension Parish, Louisiana, when she was arrested on July 9, 2016, on Airline Highway for "simple obstruction of a highway of commerce" while lawfully protesting the shooting death of Mr. Alton Sterling and racist policing in Baton Rouge. Since the initial filing of this suit, GODAVARI HUGHES has reached the age of majority and prosecutes these claims on her own behalf.

14.     Plaintiff BRACHELL BROWN is a Black adult resident of East Baton Rouge Parish, Louisiana, who was arrested on July 9, 2016, at the corner of Gwenadele Ave. and Airline Highway in Baton Rouge for "simple obstruction of a highway" while lawfully protesting the shooting death of Mr. Alton Sterling and racist policing in Baton Rouge.

15.     Plaintiff CHRISTOPHER BROWN is a Black adult resident of East Baton Rouge Parish, Louisiana, who was arrested on July 9, 2016, at the corner of Gwenadele Ave. and Airline Highway in Baton Rouge for "simple obstruction of a highway" while lawfully protesting the shooting death of Mr. Alton Sterling and racist policing in Baton Rouge.

16.     Plaintiff ELCIDE HARRIS was a Black adult resident and citizen of East Baton Rouge Parish, Louisiana, who was arrested on July 8, 2016, near the intersection of Goodwood Boulevard and Airline Highway for "simple obstruction of a highway of commerce" while lawfully protesting the shooting death of Mr. Alton Sterling and racist policing in Baton Rouge. Due to his passing after the filing of Plaintiffs' Complaint in this case, All claims raised by Plaintiff HARRIS are respectfully dismissed.

17.     Plaintiff ZACHARY HILL is a Black adult resident and citizen of Baton Rouge, Louisiana who was arrested on July 9, 2016, near the intersection of Goodwood Boulevard and Airline Highway for "simple obstruction of a highway of commerce" while lawfully protesting the shooting death of Mr. Alton Sterling and racist policing in Baton Rouge.

18.     Plaintiff THOMAS HUTCHERSON is a Black adult resident and citizen of Baton Rouge, Louisiana who was arrested on July 9, 2016, near the intersection of Goodwood Boulevard and Airline Highway for "simple obstruction of a highway of commerce" while lawfully protesting the shooting death of Mr. Alton Sterling and racist policing in Baton Rouge.

**B. Defendants**

19.     Defendant CITY OF BATON ROUGE is a political subdivision of the State of Louisiana. The city's governing authority is consolidated with the government of EAST BATON ROUGE PARISH. For this reason, the consolidated government is referred to as "CITY/PARISH" throughout this complaint. Defendant SHARON WESTON-BROOME is the current Mayor of the City of Baton Rouge. She is sued in her official capacity only.

20.     Defendant EAST BATON ROUGE PARISH is a political subdivision of the State of Louisiana. The Parish's governing authority is consolidated with the government of the CITY OF BATON ROUGE. For this reason, the consolidated government is referred to as "CITY/PARISH" throughout this complaint. Defendant SHARON WESTON-BROOME is the current President of East Baton Rouge Parish. She is sued in her official capacity only.

21.     Defendant MELVIN "KIP" HOLDEN is an adult resident of the Middle District of Louisiana. Defendant HOLDEN was, at all relevant times, the duly elected Mayor-President of the CITY/PARISH. Defendant HOLDEN was responsible for the supervision, administration, policies, practices, procedures, and customs for the CITY/PARISH and the City's police department. He was responsible for the hiring, training, discipline, supervision, and control of the Baton Rouge Police Department ("BRPD") officers who are defendants herein, including Defendant CARL DABADIE**.** He is sued in his individual capacity and in his official capacity as former Mayor-President of the City/Parish.

22.     Defendant SID J. GAUTREAUX III is the Sheriff of East Baton Rouge Parish and is an adult resident of the Middle District of Louisiana. With respect to all claims related to Defendant GAUTREAUX's position as Sheriff of East Baton Rouge Parish, this Court granted his motion to dismiss on August 19, 2020. Doc. 286.

23.     Defendant CARL DABADIE JR. is an adult resident of the Middle District of Louisiana. At all times relevant to the allegations of this Complaint, Defendant DABADIE was the Chief of the Baton Rouge Police Department. Defendant DABADIE was responsible for the supervision, administration, policies, practices, customs, and procedures of the BRPD, as well as the hiring, training, supervision, discipline, and control of police personnel under his command, including the BRPD defendants named herein. Defendant DABADIE was physically present at Airline and Goodwood at the time of the July 9, 2016 protests; he witnessed arrests, and, on information and belief, was in a position to intervene and stop the unconstitutional arrests of, and uses of excessive force against, Plaintiffs LEROY TENNART, DEON TENNART, ZACHARY HILL, and THOMAS HUTCHERSON, and failed to intervene. He is sued in his individual and official capacities.

24.     Defendant COL. MICHAEL EDMONSON is an adult resident of the Middle District of Louisiana. Defendant EDMONSON was at all relevant times the Superintendent of the Louisiana State Police ("LSP"). Defendant EDMONSON was responsible for the supervision, administration, policies, practices, customs, operations, training, staff, and operation of the LSP. Defendant EDMONSON was physically present at Airline and Goodwood at the time of the July 9, 2016 protests; he witnessed arrests, and, on information and belief, was in a position to intervene and stop the unconstitutional arrests of, and uses of excessive force against, Plaintiffs LEROY

TENNART, DEON TENNART, ZACHARY HILL, THOMAS HUTCHERSON, and failed to intervene. He is sued in his individual capacity only.

25.    Defendant Sheriff MIKE CAZES is an adult resident of the Middle District of Louisiana. He is the Southern District Coordinator of the Louisiana Sheriffs' Association Emergency Taskforce. Defendant CAZES is sued in his individual capacity only.

26.    Defendant CHUCK HURST is an adult resident of Louisiana. He is the Director of the Louisiana Sheriffs' Association Task Force and Homeland Security services. Defendant HURST met in person with Defendant GAUTREAUX at which time Defendant GAUTREAUX requested LSA Task Force assistance with anticipated protest activity. Defendant HURST placed the LSA Task Force on standby to respond Defendant GAUTREAUX's request for assistance. Defendant HURST coordinated with Sheriffs who had Mobile Field Force (MFF) teams to respond to Defendant GAUTREAUX's specific request for MFF deployment. Defendant HURST directed recruits to Baton Rouge Police Department Headquarters where they would be sworn in as temporary East Baton Rouge Deputy Sheriffs and assigned a role. Defendant HURST attended meetings at GOHSEP and MOHSEP at which the law enforcement response to the protests were planned and discussed. Defendant HURST is sued in his individual capacity only.

27.    Defendant LOUISIANA SHERIFFS' ASSOCIATION ("LSA") is a nonprofit corporation comprised of the 64 sheriffs of Louisiana, along with as many as 14,000 deputy sheriffs. LSA is headquartered in and therefore domiciled in the Middle District of Louisiana. Defendant GAUTREAUX was the President of the LSA at the time of the protests and Plaintiffs' arrests. On information and belief, the LSA's Emergency Task Force actively coordinated the law enforcement response to the protests of the shooting of Mr. Alton Sterling.

28.    Defendant JASON ARD is the Sheriff of Livingston Parish and is an adult resident of Louisiana. On August 19, 2020, this Court granted Defendant ARD's motion to dismiss. Doc. 286.

29.    Defendant AIX GROUP, doing business as NOVA CASUALTY COMPANY ("NOVA") is an insurance company that, on information and belief, provides insurance to the Louisiana Sheriff's Association and some of its members, including the East Baton Rouge Sheriff's Office. NOVA is domiciled in Connecticut. Its principal business establishment in Louisiana is in Baton Rouge. All claims against AIX Group relating to any actions of the East Baton Rouge Sheriff's Office or its agents, servants, or employees, have been dismissed by this Court's order of August 19, 2020. Doc. 286. To the extent AIX Group insured the LOUISIANA SHERIFF'S ASSOCIATION, it remains a Defendant in this case.

30.    Defendant XYZ Insurance Company is an insurance company presently unknown to Plaintiffs after diligent search and inquiry. XYZ Insurance Company may provide insurance and/or indemnification to individual employees of the Louisiana State Police.

31.    Defendant UVW Insurance Company is an insurance company presently unknown to Plaintiffs after diligent search and inquiry. UVW Insurance Company may provide insurance and/or indemnification to the City of Baton Rouge/Parish of East Baton Rouge and/or its employees.

32.    Defendant RST Insurance Company is an insurance company presently unknown to Plaintiffs after diligent search and inquiry. RST Insurance Company may provide insurance and/or indemnification to the Livingston Parish Sheriff's Office and/or its employees. This Defendant is dismissed pursuant to the Court's Order of August 19, 2020. Doc. 286.

33.    Defendant J. DARREN LEACH is an adult resident citizen of Louisiana. Defendant LEACH was the director of the BRPD Training Academy at all times relevant to this Complaint, and as such was responsible for training all other BRPD Defendants in the appropriate use of force to make arrests during a large assembly of persons exercising their constitutional rights to protest, dissent and assemble. Defendant LEACH was also responsible for training officers in the elements of the statutes of the State of Louisiana and the City/Parish; in particular, the elements of La. R.S. §14:97, Obstruction of a Highway of Commerce. Defendant LEACH was designated by Defendant DABADIE as the lead Incident Commander for the Baton Rouge Police Department's response to the July 2016 protests. In that capacity, Defendant LEACH communicated directions and orders in furtherance of the conspiracy to silence dissent and violate the constitutional rights of Plaintiffs and others to free speech, free association, and assembly, and to petition the government for redress of grievances. Defendant LEACH thereby assisted in coordinating the BRPD's response to the protests at Airline Boulevard when some or all of the Plaintiffs were arrested.  He is sued in his individual and official capacity.

34.    Defendant BRYAN TAYLOR is an adult resident of Louisiana. He is an Incident Commander for the Baton Rouge Police Department and was an assistant Incident Commander on duty during the protests. In that capacity, he assisted in coordinating the BRPD's response to the protests at Airline Boulevard when some Plaintiffs were arrested. Defendant TAYLOR communicated directions and orders in furtherance of the conspiracy to silence dissent and violate the constitutional rights of Plaintiffs and others to free speech, free association, and assembly, and to petition the government for redress of grievances. On information and belief, orders given or communicated by TAYLOR to officers on the scene led directly to the unconstitutional arrests of, and use of excessive force on, some or all of the Plaintiffs. Defendant TAYLOR communicated

directions and orders in furtherance of the conspiracy to silence dissent and violate the constitutional rights of Plaintiffs and others to free speech, free association, and assembly, and to petition the government for redress of grievances. On information and belief, orders given or communicated by TAYLOR to officers on the scene led directly to the unconstitutional arrests of, and use of excessive force on, some or all of the Plaintiffs. He is sued in his individual and official capacity.

35.    Defendant DAVID WALLACE is an adult resident of Louisiana. He is an Incident Commander for the Baton Rouge Police Department and was an assistant Incident Commander on duty during the protests. In that capacity, he assisted in coordinating the BRPD's response to the protests at Airline Boulevard when some Plaintiffs were arrested. Defendant WALLACE communicated directions and orders in furtherance of the conspiracy to silence dissent and violate the constitutional rights of Plaintiffs and others to free speech, free association, and assembly, and to petition the government for redress of grievances. On information and belief, orders given or communicated by WALLACE to officers on the scene led directly to the unconstitutional arrests of, and use of excessive force on, some or all of the Plaintiffs. He is sued in his individual and official capacity.

36.    Defendant KENNETH WAYNE MARTIN is an adult resident of Louisiana. He is an Incident Commander for the Baton Rouge Police Department and was an Incident Commander on duty during the protests. In that capacity, he assisted in coordinating the BRPD's response to the protests at Airline Boulevard when some Plaintiffs were arrested. Defendant MARTIN acted as Incident Commander, when Defendant LEACH was unavailable, for the Baton Rouge Police Department's response to the July 2016 protests. In that capacity, Defendant MARTIN communicated directions and orders in furtherance of the conspiracy to silence dissent and violate

the constitutional rights of Plaintiffs and others to free speech, free association, and assembly, and to petition the government for redress of grievances. Defendant MARTIN thereby assisted in coordinating the BRPD's response to the protests at Airline Boulevard when some or all of the Plaintiffs were arrested.  He is sued in his individual and official capacity.

37.     Defendant DAVID HAMILTON is an adult resident citizen of Louisiana. He is the Deputy Chief of the Baton Rouge Police Department. In that capacity, he assisted in coordinating the BRPD's response to the protests at Airline Boulevard when some Plaintiffs were arrested. Defendant HAMILTON was involved in communicating orders and implementing policies that led directly to the unconstitutional arrests of the Plaintiffs. He is sued in his individual and official capacity.

38.     Defendant NOEL SALAMONI is an adult resident citizen of Louisiana. He is the Commander for the Baton Rouge Police Department's Special Operations Unit. In that capacity, he was responsible for training special operations officers on the use of appropriate, constitutional force during a law enforcement response to a large protest; he was also responsible for training officers in the elements of the statutes of the State of Louisiana and the City/Parish; in particular, the elements of La. R.S. §14:97, Obstruction of a Highway of Commerce. Defendant SALAMONI assisted in coordinating the BRPD's response to the protests at Airline Boulevard when some Plaintiffs were arrested. Defendant SALAMONI was involved in communicating orders and implementing policies that led directly to the unconstitutional arrests of the Plaintiffs. He is sued in his individual capacity.

39.     Defendant JONATHAN MIGUES is an adult resident of Louisiana. He is a BRPD Corporal who was the arresting and reporting officer of record for the arrest of Plaintiff ELCIDE

HARRIS. Due to the death of Mr. Harris and the consequent dismissal of his claims, Defendant MIGUES is dismissed from this civil action.

40.    Defendant TIMOTHY BROWNING is an adult resident of Louisiana. He is a BRPD officer who approved the initial report of Defendant MIGUES, despite the fact that the report contained no indication that Plaintiff ELCIDE HARRIS had engaged in any conduct comprising the offense of obstruction of a highway of commerce. Due to the death of Mr. Harris and the consequent dismissal of his claims, Defendant Browning is dismissed from this civil action.

41.    Defendant ERIC MURPHY is an adult resident of Louisiana. He is an officer with the Baton Rouge Police Department. On July 9, 2016, Defendant MURPHY was on duty and physically present at the intersection of Goodwood Blvd. and Airline Highway in front of BRPD Headquarters. Defendant MURPHY witnessed the detention and arrests of numerous protesters from his location on the grass in front of Headquarters. Defendant Murphy was on duty from the late afternoon of July 9, 2016 until at least the evening. He also signed pre-printed, boilerplate affidavits of probable cause for former Plaintiff ELCIDE HARRIS's arrest. Defendant MURPHY is depicted in a video of the arrest of LEROY TENNART during that time. Defendant MURPHY participated in the unlawful arrest of, and use of excessive force against, LEROY TENNART. In the alternative only, Defendant MURPHY was present in the immediate proximity of LEROY TENNART both immediately before and during the arrest and the use of excessive force against LEROY TENNART, personally saw the arrest and excessive force against LEROY TENNART, knew from the events he witnessed that the arrest and use of force against LEROY TENNART were unjustified and therefore violated Mr. Tennart's constitutional and state-law rights, and failed to intervene to prevent or stop those violations. Further, during this same time at the Goodwood

and Airline intersection, the arrests of Plaintiffs DEON TENNART and THOMAS HUTCHERSON occurred. On information and belief, Defendant MURPHY also participated in the unconstitutional arrests of, and use of excessive force on, Plaintiffs DEON TENNART, THOMAS HUTCHERSON and/or ZACHARY HILL. In addition, Defendant MURPHY was present in the immediate proximity of DEON TENNART and   THOMAS HUTCHERSON both immediately before and during their arrests and the use of excessive force against them, saw the arrest and excessive force against DEON TENNART and THOMAS HUTCHERSON, knew from the events he witnessed that the arrest and use of force against DEON TENNART and THOMAS HUTCHERSON were unjustified and therefore violated Mr. Tennart and Mr. Hutcherson's constitutional and state law rights, and failed to intervene to prevent or stop these violations. This Defendant is sued in an individual capacity only.

42.    Defendant DOUG BARRON is an adult resident of Louisiana. He is an officer with the BRPD. On July 9, 2016, Defendant BARRON was on duty and physically present at the intersection of Goodwood Blvd. and Airline Highway in front of BRPD Headquarters. He acted as Ex-officio notary for the affidavit of probable cause for Plaintiff ELCIDE HARRIS's arrest; in this capacity, Defendant BARRON notarized Defendant MURPHY's affidavit. On information and belief, Defendant BARRON participated in the unconstitutional arrests of, and use of excessive force on, Plaintiffs LEROY TENNART, DEON TENNART, THOMAS HUTCHERSON and/or ZACHARY HILL. In addition, Defendant BARRON had an opportunity to intervene to stop the unconstitutional arrests of, and use of excessive force on, Plaintiffs LEROY TENNART, DEON TENNART, THOMAS HUTCHERSON and ZACHARY HILL and failed to do so. This Defendant is sued in an individual capacity only.

13

43.    Defendant MARCUS THOMPSON is an adult resident of Louisiana. He is a BRPD officer who wrote the report of Plaintiff ZACHARY HILL's arrest. In so doing, Defendant THOMPSON participated in the unconstitutional arrest of Plaintiff HILL. Because he was not presented with facts supporting the existence of probable cause by an officer with personal knowledge of those facts, Defendant THOMPSON knew he had no basis on which to take actions to maintain ZACHARY HILL under arrest. Further, because arrestees were transported from the scene of their original detention to the prisoner processing area by officers other than those who made the initial detention or arrest, Defendant THOMPSON wrote the report alleging facts supporting ZACHARY HILL's arrest without any facts having been communicated to him by any officer with personal knowledge of the existence of any facts supporting the arrest. Thus, Defendant THOMPSON had an opportunity to intervene to stop the unconstitutional arrest of Plaintiff HILL and he failed to do so by not only failing to release him at that point, but also by writing his arrest report despite having no knowledge of any facts supporting the existence of probable cause. This Defendant is sued in an individual capacity only.

44.    Defendant CHRISTOPHER JOHNSON is an adult resident of Louisiana. He is a BRPD officer who approved Defendant THOMPSON's report of the arrest of Plaintiff Hill. In so doing, Defendant JOHNSON participated in the unconstitutional arrest of Plaintiff HILL. Because he was not presented with facts supporting the existence of probable cause by an officer with personal knowledge of those facts, Defendant JOHNSON knew he had no basis on which to take actions to maintain ZACHARY HILL under arrest. Further, because arrestees were transported from the scene of their original detention to the prisoner processing area by officers other than those who made the initial detention or arrest, Defendant JOHNSON approved the report alleging facts supporting ZACHARY HILL's arrest without any facts having been communicated to him

by any officer with personal knowledge of the existence of any facts supporting the arrest. Thus, Defendant JOHNSON had an opportunity to intervene to stop the unconstitutional arrest of Plaintiff HILL, but failed to do so. This Defendant is sued in an individual capacity only.

45.    Defendant TRINA DORSEY is an adult resident of Louisiana. She is a BRPD officer who swore out an affidavit of arrest for Plaintiff HILL. The facts stated in the affidavit of probable cause for the arrest of Plaintiff HILL are false, and Defendant DORSEY knew they were false. In so doing, Defendant DORSEY participated in the unconstitutional arrest of Plaintiff HILL. In the alternative, if Defendant DORSEY did not participate in the original detention of ZACHARY HILL at the protest site, her affidavit of probable cause falsely states that she had personal knowledge of the facts justifying probable cause for ZACHARY HILL's arrest. Further, because arrestees were transported from the scene of their original detention to the prisoner processing area by officers other than those who made the initial detention or arrest, Defendant DORSEY wrote the affidavit alleging facts supporting HILL'S  arrest without any facts having been communicated to him by any officer with personal knowledge of the existence of any facts supporting the arrest. However, Defendant DORSEY did not release, or seek the release of, ZACHARY HILL. Thus, Defendant DORSEY had an opportunity to intervene to stop the unconstitutional arrest of Plaintiff HILL, but failed to do so. This Defendant is sued in an individual capacity only.

46.    Defendant GLENN HUTTO is an adult resident of Louisiana. He is a BRPD officer who drafted and circulated pre-printed affidavits charging unnamed protesters with violations of La. Rev. Stat. §14:97, Obstruction of a Highway of Commerce, without regard to the statutory elements of that charge, and without specific knowledge that any protester would violate that statute in the future. During the protests of July 9, 2016, Defendant HUTTO participated as an Ex-

officio Notary who notarized Defendant DORSEY's and CROCKETT's probable-cause affidavits for the arrests of Plaintiffs ZACHARY HILL and LEROY TENNART. Because he was not presented with facts supporting the existence of probable cause by an officer with personal knowledge of those facts, Defendant HUTTO knew he had no basis on which to take actions to maintain LEROY TENNART and ZACHARY HILL under arrest. Further, because arrestees were transported from the scene of their original detention to the prisoner processing area by officers other than those who made the initial detention or arrest, Defendant HUTTO notarized the affidavit alleging facts supporting the arrests of LEROY TENNART and ZACHARY HILL without any facts having been communicated to him by any officer with personal knowledge of the existence of any facts supporting the arrest. However, Defendant HUTTO did not release, or seek the release of, LEROY TENNART and ZACHARY HILL. As such, Defendant HUTTO had an opportunity to intervene to stop the unconstitutional arrest of LEROY TENNART and ZACHARY HILL, but failed to do so. This Defendant is sued in an individual capacity only.

47.    Defendant MICHAEL RARICK is an adult resident of Louisiana. He is a BRPD Lieutenant who is listed as the arresting officer, affiant of probable cause, Ex-officio Notary, and reporting officer for the arrest of Plaintiff EDDIE HUGHES. The facts stated in the affidavit of probable cause for the arrest of EDDIE HUGHES are false, and Defendant RARICK knew they were false. In so doing, Defendant RARICK participated in the unconstitutional arrest of Plaintiff EDDIE HUGHES. In the alternative, if Defendant RARICK did not participate in the original detention of EDDIE HUGHES at the protest site, his affidavit of probable cause falsely states that he had personal knowledge of the facts justifying probable cause for EDDIE HUGHES's arrest. He then notarized his own affidavit. Further, Defendant RARICK had an opportunity to intervene

to stop the unconstitutional arrest of Plaintiff EDDIE HUGHES, but failed to do so. This Defendant is sued in an individual capacity only.

48.     Defendant BARRON BRYANT is an adult resident of Louisiana. He is a BRPD officer who approved Defendant RARICK's reporting of the arrest of Plaintiff EDDIE HUGHES. In so doing, Defendant BRYANT participated in the unconstitutional arrest of Plaintiff EDDIE HUGHES. Further, because he was not presented with facts supporting the existence of probable cause by an officer with personal knowledge of those facts, Defendant BRYANT knew he had no basis on which to take actions to maintain EDDIE HUGHES under arrest. Further, because arrestees were transported from the scene of their original detention to the prisoner processing area by officers other than those who made the initial detention or arrest, Defendant BRYANT approved the report alleging facts supporting EDDIE HUGHES's arrest without any facts having been communicated to him by any officer with personal knowledge of the existence of any facts supporting the arrest. Thus, Defendant BRYANT had an opportunity to intervene to stop the unconstitutional arrest of Plaintiff EDDIE HUGHES, but failed to do so. This Defendant is sued in an individual capacity only.

49.     Defendant SONDRA HALL is an adult resident of Louisiana. She is a BRPD officer who was on duty during the protests of July 9, 2016. Defendant HALL authored the police report for the arrests of Plaintiff GODAVARI HUGHES and Plaintiff BRACHELL BROWN, and she was the affiant for Plaintiff BRACHELL BROWN's affidavit of probable cause for arrest. The facts stated in these reports and this affidavit were false, and Defendant HALL knew they were false. By submitting these false reports and the false affidavit, Defendant DORSEY participated in the unconstitutional arrests of GODAVARI HUGHES and BRACHELL BROWN. In the alternative, if Defendant HALL did not participate in the original detention of GODAVARI

HUGHES or BRACHELL BROWN, her reports and affidavit of probable cause falsely state that she had personal knowledge of the facts justifying probable cause for these arrests. Further, because arrestees were transported from the scene of their original detention to the prisoner processing area by officers other than those who made the initial detention or arrest, Defendant HALL wrote the reports and affidavit alleging facts supporting the arrests of GODAVARI JUGHES and BRACHELL BROWN without any facts having been communicated to her by any officer with personal knowledge of the existence of any facts supporting the arrest. However, Defendant HALL did not release, or seek the release of, GODAVARI HUGHES or BRACHELL BROWN. Thus, Defendant HALL had an opportunity to intervene to stop the unconstitutional arrest of Plaintiffs GODAVARI HUGHES and BRACHELL BROWN, but failed to do so. This Defendant is sued in an individual capacity only.

50.    Defendant GINA HEDRICK is an adult resident of the Middle District of Louisiana. She is a BRPD officer and supervisor who approved Defendant HALL's reports of the arrest of Plaintiffs GODAVARI HUGHES and BRACHELL BROWN, and Defendant BURNS's report of the arrest of Plaintiff CHRISTOPHER BROWN. In so doing, Defendant HEDRICK participated in the unconstitutional arrests of Plaintiffs GODAVARI HUGHES and BRACHELL BROWN. Because she was not presented with facts supporting the existence of probable cause by an officer with personal knowledge of those facts, Defendant HEDRICK knew there was no basis on which to take actions to maintain GODAVARI HUGHES, BRACHELL BROWN, and CHRISTOPHER BROWN under arrest. Further, because arrestees were transported from the scene of their original detention to the prisoner processing area by officers other than those who made the initial detention or arrest, Defendant HEDRICK approved the reports alleging facts supporting the arrests of GODAVARI HUGHES, BRACHELL BROWN, and CHRISTOPHER

BROWN, without any facts having been communicated to him by any officer with personal knowledge of the existence of any facts supporting the arrest. However, Defendant HEDRICK did not release, nor seek the release of, GODAVARI HUGHES, BRACHELL BROWN, and CHRISTOPHER BROWN. As such, Defendant HEDRICK had an opportunity to intervene to stop the unconstitutional arrest of GODAVARI HUGHES, BRACHELL BROWN, and CHRISTOPHER BROWN, but failed to do so. This Defendant is sued in an individual capacity only.

51.    Defendant TRAVIS NORMAN is an adult resident of Louisiana. He is a BRPD officer who was the affiant for Plaintiff HUTCHERSON'S affidavit of probable cause for arrest. Defendant NORMAN also completed the initial report of Plaintiff HUTCHERSON's arrest. The facts stated in Defendant NORMAN's affidavit are false, and NORMAN knew they were false. By submitting this false affidavit, Defendant NORMAN participated in the unconstitutional arrest of Plaintiff HUTCHERSON. In the alternative, if Defendant NORMAN did not participate in the original detention of THOMAS HUTCHERSON, his affidavit of probable cause falsely stated that he had personal knowledge of the facts justifying probable cause for these arrests. Further, because arrestees were transported from the scene of their original detention to the prisoner processing area by officers other than those who made the initial detention or arrest, Defendant NORMAN wrote the report and affidavit alleging facts supporting Plaintiff HUTCHERSON's arrest without any facts having been communicated to him by any officer with personal knowledge of the existence of any facts supporting the arrest However, Defendant NORMAN did not release, or seek the release of, THOMAS HUTCHERSON. Thus, Defendant NORMAN had an opportunity to intervene to stop the unconstitutional arrest of Plaintiff HUTCHERSON, but failed to do so. This Defendant is sued in an individual capacity only.

52.     Defendant DARREN HUNT is an adult resident of Louisiana. He is a BRPD officer who approved Defendant NORMAN's initial report of the arrest of Plaintiff HUTCHERSON and the initial report of the arrest of Plaintiff LEROY TENNART. In so doing, Defendant HUNT participated in the unconstitutional arrest of Plaintiff HUTCHERSON. Because he was not presented with facts supporting the existence of probable cause by an officer with personal knowledge of those facts, Defendant HUNT knew there was no basis on which to take actions to maintain Plaintiff HUTCHERSON under arrest. Further, because arrestees were transported from the scene of their original detention to the prisoner processing area by officers other than those who made the initial detention or arrest, Defendant HUNT approved the reports alleging facts supporting the arrests of LEROY TENNART and THOMAS HUTCHERSON without any facts having been communicated to him by any officer with personal knowledge of the existence of any facts supporting the arrest However, Defendant HUNT did not release, nor seek the release of, THOMAS HUTCHERSON. As such, Defendant HUNT had an opportunity to intervene to stop the unconstitutional arrest of THOMAS HUTCHERSON, but failed to do so. This Defendant is sued in an individual capacity only.

53.     Defendant CARL MAYO is an adult resident of Louisiana. He is a BRPD officer and Ex-officio notary who notarized Defendant NORMAN's affidavit of probable cause for the arrest of Plaintiff HUTCHERSON. In so doing, Defendant MAYO participated in the unconstitutional arrest of Plaintiff HUTCHERSON. Additionally, because he was not presented with facts supporting the existence of probable cause by an officer with personal knowledge of those facts, Defendant MAYO knew there was no basis on which to take actions to maintain Plaintiff HUTCHERSON under arrest. Further, because arrestees were transported from the scene of their original detention to the prisoner processing area by officers other than those who made

the initial detention or arrest, Defendant MAYO notarized the affidavit alleging facts supporting HUTCHERSON's arrest without any facts having been communicated to him by any officer with personal knowledge of the existence of any facts supporting the arrest However, Defendant MAYO did not release, nor seek the release of, THOMAS HUTCHERSON. As such, Defendant MAYO had an opportunity to intervene to stop the unconstitutional arrest of THOMAS HUTCHERSON, but failed to do so. This Defendant is sued in an individual capacity only.

54.    Defendant REAB SIMONEAUX is an adult resident of the Middle District of Louisiana. He is a BRPD officer who wrote the false report of Plaintiff DEON TENNART's arrest. In so doing, Defendant SIMONEAUX participated in the unconstitutional arrest of Plaintiff DEON TENNART. In the alternative, if Defendant SIMONEAUX did not participate in the original detention of DEON TENNART, his report falsely stated that he had personal knowledge of the facts justifying probable cause for this arrest. Further, because arrestees were transported from the scene of their original detention to the prisoner processing area by officers other than those who made the initial detention or arrest, Defendant SIMONEAUX wrote the report alleging facts supporting DEON TENNART's arrest without any facts having been communicated to him by any officer with personal knowledge of the existence of any facts supporting the arrest However, Defendant SIMONEAUX did not release, or seek the release of, DEON TENNART. Thus, Defendant SIMONEAUX had an opportunity to intervene to stop the unconstitutional arrest of Plaintiff DEON TENNART, but failed to do so. This Defendant is sued in an individual capacity only.

55.    Defendant BRADLEY LAWRENCE is an adult resident of Louisiana. He is a BRPD officer and the affiant on the affidavit of probable cause for the arrest of Plaintiff DEON TENNART. The facts stated in the affidavit of probable cause are false, and Defendant

LAWRENCE knew they were false. In so doing, Defendant LAWRENCE participated in the unconstitutional arrest of Plaintiff DEON TENNART. In the alternative, if Defendant LAWRENCE did not participate in the original detention of DEON TENNART, his affidavit of probable cause falsely stated that he had personal knowledge of the facts justifying probable cause for this arrest. Further, because arrestees were transported from the scene of their original detention to the prisoner processing area by officers other than those who made the initial detention or arrest, Defendant LAWRENCE wrote the probable cause affidavit alleging facts supporting DEON TENNART's arrest without any facts having been communicated to him by any officer with personal knowledge of the existence of any facts supporting the arrest However, Defendant LAWRENCE did not release, or seek the release of, DEON TENNART. Thus, Defendant LAWRENCE had an opportunity to intervene to stop the unconstitutional arrest of Plaintiff DEON TENNART, but failed to do so. This Defendant is sued in an individual capacity only.

56.    Defendant ADAM CHENEY is an adult resident of Louisiana. He is a BRPD officer who approved Defendants SIMONEAUX and LAWRENCE's false report of the arrest of Plaintiff DEON TENNART. In so doing, Defendant CHENEY participated in the unconstitutional arrest of Plaintiff DEON TENNART. Additionally, because he was not presented with facts supporting the existence of probable cause by an officer with personal knowledge of those facts, Defendant CHENEY knew there was no basis on which to take actions to maintain DEON TENNART under arrest. Further, because arrestees were transported from the scene of their original detention to the prisoner processing area by officers other than those who made the initial detention or arrest, Defendant CHENEY approved the report alleging facts supporting DEON TENNART's arrest without any facts having been communicated to him by any officer with personal knowledge of the existence of any facts supporting the arrest However, Defendant

CHENEY did not release, or seek the release of, LEON TENNART. As such, Defendant CHENEY had an opportunity to intervene to stop the unconstitutional arrest of LEON TENNART, but failed to do so. Thus, Defendant CHENEY had an opportunity to intervene to stop the unconstitutional arrest of Plaintiff DEON TENNART, but failed to do so. This Defendant is sued in an individual capacity only.

57.    Defendant KAMA ROUSSELL is an adult resident of Louisiana. He is a BRPD officer who co-authored the false report of Plaintiff LEROY TENNART's arrest, with knowledge that the facts stated therein were false. In so doing, Defendant ROUSSELL participated in the unconstitutional arrest of Plaintiff LEROY TENNART. In the alternative, if Defendant ROUSSELL did not participate in the original detention of LEROY TENNART, his report falsely stated that he had personal knowledge of the facts justifying probable cause for this arrest. Further, because arrestees were transported from the scene of their original detention to the prisoner processing area by officers other than those who made the initial detention or arrest, Defendant ROUSSELL wrote the report alleging facts supporting LEROY TENNART's arrest without any facts having been communicated to him by any officer with personal knowledge of the existence of any facts supporting the arrest However, Defendant ROUSSELL did not release, or seek the release of, LEROY TENNART. Thus, Defendant ROUSSELL had an opportunity to intervene to stop the unconstitutional arrest of Plaintiff LEROY TENNART, but failed to do so. This Defendant is sued in an individual capacity only.

58.    Defendant JAMES CROCKETT is an adult resident of Louisiana. He is a BRPD officer who co-authored the false report of Plaintiff LEROY TENNART's arrest, with knowledge that the facts stated therein were false. In so doing, Defendant CROCKETT participated in the unconstitutional arrest of Plaintiff LEROY TENNART. In the alternative, if Defendant

CROCKETT did not participate in the original detention of LEROY TENNART, his report falsely stated that he had personal knowledge of the facts justifying probable cause for this arrest. Further, because arrestees were transported from the scene of their original detention to the prisoner processing area by officers other than those who made the initial detention or arrest, Defendant CROCKETT wrote the report alleging facts supporting LEROY TENNART's arrest without any facts having been communicated to him by any officer with personal knowledge of the existence of any facts supporting the arrest However, Defendant CROCKETT did not release, nor seek the release of, LEROY TENNART. Thus, Defendant CROCKETT had an opportunity to intervene to stop the unconstitutional arrest of Plaintiff LEROY TENNART, but failed to do so. This Defendant is sued in an individual capacity only.

59.    Defendant BLAINE BURNS is an adult resident of Louisiana. He is a BRPD officer who wrote the report of Plaintiff CHRISTOPHER BROWN's arrest. The facts in Defendant BURNS's report were false, and BURNS knew they were false. In so doing, Defendant BURNS participated in the unconstitutional arrests of Plaintiff CHRISTOPHER BROWN. In the alternative, if Defendant BURNS did not participate in the original detention of CHRISTOPHER BROWN, his report falsely stated that he had personal knowledge of the facts justifying probable cause for this arrest. Further, because arrestees were transported from the scene of their original detention to the prisoner processing area by officers other than those who made the initial detention or arrest, Defendant BURNS wrote the report alleging facts supporting CHRISTOPHER BROWN's arrest without any facts having been communicated to him by any officer with personal knowledge of the existence of any facts supporting the arrest However, Defendant BURNS did not release, nor seek the release of, CHRISTOPHER BROWN. Thus, Defendant BURNS had an

opportunity to intervene to stop the unconstitutional arrest of Plaintiff CHRISTOPHER BROWN, but failed to do so. This Defendant is sued in an individual capacity only.

60.     Defendant CAAN CASTLEBERRY is an adult resident of Louisiana. He is a BRPD officer who acted as Ex-officio notary for the affidavits of probable cause for the arrests of Plaintiffs CHRISTOPHER BROWN and BRACHELL BROWN. Defendant CASTLEBERRY notarized Defendant BURNS's affidavit as to CHRISTOPHER BROWN and Defendant HALL's affidavit as to BRACHELL BROWN. In so doing, Defendant CASTEBERRY participated in the unconstitutional arrest of Plaintiffs CHRISTOPHER BROWN and BRACHELL BROWN. Additionally, because he was not presented with facts supporting the existence of probable cause by an officer with personal knowledge of those facts, Defendant CASTLEBERRY knew there was no basis on which to take actions to maintain CHRISTOPHER BROWN and BRACHELL BROWN under arrest. Further, because arrestees were transported from the scene of their original detention to the prisoner processing area by officers other than those who made the initial detention or arrest, Defendant CASTLEBERRY notarized the affidavits alleging facts supporting the arrests of CHRISTOPHER BROWN and BRACHELL BROWN without any facts having been communicated to him by any officer with personal knowledge of the existence of any facts supporting the arrest However, Defendant CASTLEBERRY did not release, or seek the release of, CHRISTOPHER BROWN or BRACHELL BROWN. As such, Defendant CASTLEBERRY had an opportunity to intervene to stop the unconstitutional arrest of CHRISTOPHER BROWN and BRACHELL BROWN, but failed to do so. Thus, Defendant CASTLEBERRY had an opportunity to intervene to stop the unconstitutional arrests of Plaintiffs CHRISTOPHER BROWN and BRACHELL BROWN, but failed to do so. This Defendant is sued in an individual capacity only.

61.     Defendants described in Paragraphs 62-84 are BRPD officers who, on information and belief, were on duty and present on Airline Highway on July 9, 2016, at the intersection of Airline and Goodwood and/or the intersection of Airline and Gwenadele, at the time when Plaintiffs LEROY TENART, DEON TENNART, EDDIE HUGHES, GADAVARI HUGHES, THOMAS HUTCHERSON, ZACHARY HILL, CHRISTOPHER BROWN, and/or BRACHELL BROWN were subjected to unconstitutional arrests and excessive force. On information and belief, these Defendants were involved in the detention, restraint, arrest, and/or use of excessive force against one or more Plaintiffs. Further, on information and belief these Defendants had an opportunity to intervene to stop the unconstitutional arrests of, and use of excessive force on, these Plaintiffs, but failed to do so. Except as specifically stated below, Plaintiffs have not yet been provided discovery from Defendants CITY/PARISH sufficient to determine the specific roles played by the below listed BRPD officers in the arrests of, and uses of excessive force against, Plaintiffs LEROY TENART, DEON TENNART, EDDIE HUGHES, GADAVARI HUGHES, THOMAS HUTCHERSON, ZACHARY HILL, CHRISTOPHER BROWN, and/or BRACHELL BROWN. They are sued in their individual capacities.

62.     Defendant MARK CUMMINGS is an adult resident of Louisiana.

63.     Defendant BRANDON BLUST is an adult resident of Louisiana.

64.     Defendant SHAWN DELANEY is an adult resident of Louisiana.

65.     Defendant JAMES CRISLER is an adult resident of Louisiana.

66.     Defendant ANDREW DeSALVO is an adult resident of Louisiana.

67.     Defendant SCOTT JOHNSON is an adult resident of Louisiana.

68.     Defendant THEODORE SMITH is an adult resident of Louisiana.

69.     Defendant ALAN HAMILTON is an adult resident of Louisiana.

70.     Defendant JOSH ELLIS is an adult resident of Louisiana.

71.     Defendant BRETT MAGEE is an adult resident of Louisiana.

72.     Defendant FREDRICK THORNTON, Jr. is an adult resident of Louisiana. He was on duty at the intersection of Airline Highway and Goodwood Boulevard during the time Plaintiffs LEROY TENNART, DEON TENNART, THOMAS HUTCHERSON, and ZACHARY HILL were unlawfully arrested. Defendant THORNTON is depicted in a video of the arrest of ZACHARY HILL during that time. Defendant THORNTON participated in the unlawful arrest of, and use of excessive force against, ZACHARY HILL. In the alternative only, Defendant THORNTON was present in the immediate proximity of ZACHARY HILL both immediately before and during the arrest and the use of excessive force against Plaintiff HILL, personally saw the arrest and excessive force against HILL, knew from the events he witnessed that the arrest and use of force against ZACHARY HILL were unjustified and therefore violated HILL's constitutional and state law rights, and failed to intervene to prevent or stop those violations. Further, later on the same day at the Goodwood and Airline intersection, the arrests of Plaintiffs THOMAS HUTCHERSON, LEROY TENNART and DEON TENNART occurred. On information and belief, Defendant THORNTON also participated in the unconstitutional arrests of, and use of excessive force on, Plaintiffs LEROY TENNART, DEON TENNART, and/or THOMAS HUTCHERSON. In the alternative, on information and belief, Defendant THORNTON was present in the immediate proximity of THOMAS HUTCHERSON, LEROY TENNART and DEON TENNART both immediately before and during their arrests and the use of excessive force against them, and saw the arrests and uses of excessive force against LEROY TENNART, DEON TENNART and THOMAS HUTCHERSON, knew from the events he witnessed that the arrest and use of force against THOMAS HUTCHERSON, LEROY TENNART and DEON TENNART

were unjustified and therefore violated their constitutional and state law rights, and failed to intervene to prevent or stop these violations. This Defendant is sued in an individual capacity only.

73.    Defendant HUDSON TABOR is an adult resident of Louisiana.

74.    Defendant WILLIE TURNER is an adult resident of Louisiana.

75.    Defendant SHONA STOKES is an adult resident of Louisiana.

76.    Defendant JAMES CUTRER is an adult resident of Louisiana.

77.    Defendant E.J. LAPERYROUSE is an adult resident of Louisiana.

78.    Defendant RANDALL WIEDMAN is an adult resident of Louisiana.

79.    Defendant LORENZO COLEMAN is an adult resident of Louisiana.

80.    Defendant JASON ACREE is an adult resident of Louisiana. Defendant ACREE is a BRPD officer with a history of using excessive force and violating the constitutional rights of arrestees; notwithstanding this history, Defendants CITY/PARISH, DABADIE, LEACH, TAYLOR, WALLACE, and MARTIN deployed Defendant ACREE to the July 9, 2016 protests. Defendant ACREE was on duty and physically present for the arrests of Plaintiffs BRACHELL BROWN and CHRISTOPHER BROWN. Defendant ACREE participated in the unconstitutional arrests of, and use of excessive force on, Plaintiffs CHRISTOPHER BROWN and BRACHELL BROWN. This use of force included ACREE's shooting CHRISTOPHR BROWN with a Taser. In the alternative only, Defendant ACREE was present in the immediate proximity of CHRISTOPHER BROWN and BRACHELL BROWN both immediately before and during the arrest and the use of excessive force against them, personally saw the arrests and uses of excessive force against CHRISTOPHER BROWN and BRACHELL BROWN, knew from the events he witnessed that the arrest and use of force against CHRISTOPHER BROWN and BRACHELL BROWN were unjustified and therefore violated their constitutional and state law rights, and failed

to intervene to prevent or stop those violations. Thus, Defendant ACREE had an opportunity to intervene and stop the unconstitutional arrests of, and use of excessive force on, CHRISTOPHER BROWN, and BRACHELL BROWN, but failed to do so. He is sued in his individual capacity.

81.    Defendant NICHOLAS COLLINS is an adult resident of Louisiana. Defendant COLLINS was on duty and physically present for the arrest of Plaintiff ZACHARY HILL, as well as for the arrests of Plaintiffs BRACHELL BROWN and CHRISTOPHER BROWN. Defendant COLLINS participated in the unconstitutional arrests of, and use of excessive force on, Plaintiffs ZACHARY HILL, CHRISTOPHER BROWN, and BRACHELL BROWN. In the alternative only, Defendant COLLINS was present in the immediate proximity of ZACHARY HILL, CHRISTOPHER BROWN and BRACHELL BROWN both immediately before and during the arrests and the uses of excessive force against them, personally saw the arrests and uses of excessive force against ZACHARY HILL, CHRISTOPHER BROWN and BRACHELL BROWN, knew from the events he witnessed that the arrest and use of force against ZACHARY HILL, CHRISTOPHER BROWN and BRACHELL BROWN were unjustified and therefore violated their constitutional and state law rights, and failed to intervene to prevent or stop those violations. Thus, Defendant COLLINS had an opportunity to intervene and stop the unconstitutional arrests of, and use of excessive force on, ZACHARY HILL, CHRISTOPHER BROWN, and BRACHELL BROWN, but failed to do so. He is sued in his individual capacity.

82.    Defendant DAVID KENNEDY is an adult resident of Louisiana.

83.    Defendant JESSE BARCELONA is an adult resident of Louisiana.

84.    Defendant JOHN FORD is an adult resident of Louisiana.

85.    The Defendants described in Paragraphs 86-105 are BRPD Officers who, on information and belief, were assigned to the Mobile Field Force ("MFF") during Plaintiffs'

protests and arrests. The MFF were part of the policy, custom, and usage of the CITY/PARISH, DABADIE, TAYLOR, LEECH, MARTIN, and/or WALLACE to use mass mobilization of militarized police tactics to suppress peaceful protests of law enforcement violence by arresting protestors without probable cause in order to remove them from the site of the protests and to intimidate and harass them and other protesters. Except as specifically stated below, Plaintiffs have not yet been provided discovery from Defendants CITY/PARISH sufficient to determine the specific roles played by the below listed BRPD officers in the arrests of, and uses of excessive force against, Plaintiffs LEROY TENART, DEON TENNART, EDDIE HUGHES, GADAVARI HUGHES, THOMAS HUTCHERSON, ZACHARY HILL, CHRISTOPHER BROWN, and/or BRACHELL BROWN.

86.    Defendant BRANDON WOODS is an adult resident of Louisiana.

87.    Defendant LEO WALLACE is an adult resident of Louisiana.

88.    Defendant ALEX ROBEAU is an adult resident of Louisiana.

89.    Defendant BRANDON BETHANY is an adult resident of Louisiana.

90.    Defendant TOMAS QUINTERO is an adult resident of Louisiana.

91.    Defendant WES HALL is an adult resident of Louisiana. Defendant HALL participated in the unlawful arrest of, and use of excessive force against, THOMAS HUTCHERSON. In the alternative only, Defendant HALL was present in the immediate proximity of THOMAS HUTCHERSON both immediately before and during the arrest and the use of excessive force against Plaintiff HUTCHERSON, personally saw the arrest and excessive force against THOMAS HUTCHERSON, knew from the events he witnessed that the arrest and use of force against THOMAS HUTCHERSON were unjustified and therefore violated HUTCHERSON's constitutional and state law rights, and failed to intervene to prevent or stop

those violations. Further, during this same time at the Goodwood and Airline intersection, the arrests of Plaintiffs ZACHARY HILL, LEROY TENNART and DEON TENNART occurred. On information and belief, Defendant HALL also participated in the unconstitutional arrests of, and use of excessive force on, Plaintiffs LEROY TENNART, DEON TENNART, and/or ZACHARY HILL. In the alternative, on information and belief, Defendant HALL was present in the immediate proximity of ZACHARY HILL, LEROY TENNART and DEON TENNART both immediately before and during their arrests and the use of excessive force against them, and saw the arrests and uses of excessive force against LEROY TENNART, DEON TENNART and ZACHARY HILL, knew from the events he witnessed that the arrest and use of force against ZACHARY HILL, LEROY TENNART and DEON TENNART were unjustified and therefore violated their constitutional and state law rights, and failed to intervene to prevent or stop these violations.

92.     Defendant BROCK McMORRIS is an adult resident of Louisiana.

93.     Defendant JARED NEYLAND is an adult resident of Louisiana.

94.     Defendant DERRICK MAGLONE is an adult resident of Louisiana.

95.     Defendant THOMAS PIERCE is an adult resident of Louisiana.

96.     Defendant JULIUS RAYMOND is an adult resident of Louisiana.

97.     Defendant NEIL PORTER is an adult resident of Louisiana.

98.     Defendant ROBIN DUCOTE is an adult resident of Louisiana.

99.     Defendant DEVIN HERNANDEZ is an adult resident of Louisiana.

100.    Defendant DOUG CHUTZ is an adult resident of Louisiana.

101.    Defendant BRANDON FARRIS is an adult resident of Louisiana.

102.    Defendant JOSHUA KIRST is an adult resident of Louisiana.

103.    Defendant CARL ALEXANDER is an adult resident of Louisiana.

104.    Defendant MICHAEL BARROW is an adult resident of Louisiana.

105.    Defendant MARK CARRIE is an adult resident of Louisiana.

106.    Each of the Defendants listed or referred to in Paragraphs 33-105 is a joint tortfeasor under Louisiana Civil Code article 2324 with all Defendants except CITY/PARISH, HOLDEN and DABADIE.

107.    This paragraph, which alleged facts against pseudonymous Defendants OFFICER DOES 1–100, is deleted in this Complaint.

108.    This paragraph, which alleged facts against pseudonymous Defendants OFFICER DOES 1–100, is deleted in this Complaint.

109.    Defendant TODD MARTIN is an adult resident citizen of Louisiana. He is the SWAT Commander for the East Baton Rouge Sheriff's Office. This Defendant is dismissed. Doc. 286.

110.    The Defendants described in Paragraphs 111-46 are EBRSO law enforcement officers who were on duty and physically present on Airline Highway on July 9, 2016, at the intersection of Airline and Goodwood and/or the intersection of Airline and Gwenadele. These Defendants have been dismissed by this Court's Order of August 19, 2020. Doc. 286.

111.    Defendant JEFFREY SABELLA is an adult resident of Louisiana. This Defendant is dismissed. Doc. 286.

112.    Defendant TROY BANKS is an adult resident of Louisiana. This Defendant is dismissed. Doc. 286.

113.    Defendant KENNETH TINER is an adult resident of Louisiana. He was assigned to the Transportation Unit with the East Baton Rouge Sheriff's Office in July 2016. Pursuant to court order, Defendant KENNETH TINER is dismissed.

114.    Defendant ROBERT STONE is an adult resident of Louisiana. This Defendant is dismissed. Doc. 286.

115.    Defendant STEVE YOUNG is an adult resident of Louisiana. This Defendant is dismissed. Doc. 286.

116.    Defendant GREGORY WARREN is an adult resident of Louisiana. He was assigned to the Transportation Unit with the East Baton Rouge Sheriff's Office in July 2016. Pursuant to court order, Defendant GREGORY WARREN is dismissed.

117.    Defendant BLAIR NICHOLSON is an adult resident of Louisiana. This Defendant is dismissed. Doc. 286.

118.    Defendant JAMES COOPER is an adult resident of Louisiana. This Defendant is dismissed. Doc. 286.

119.    Defendant WILLIE STEWART is an adult resident of Louisiana. This Defendant is dismissed. Doc. 286.

120.    This paragraph is duplicative of Paragraph 109 above and is deleted in this version of the Complaint.

121.    Defendant EVELENA BANKS is an adult resident of Louisiana. She is a Lieutenant with the East Baton Rouge Sheriff's Office and was assigned to the Transportation Unit in July 2016. Pursuant to court order, Defendant EVELENA BANKS is dismissed.

122.    Defendant SHANNON BROUSSARD is an adult resident of Louisiana. She is a Deputy with the East Baton Rouge Sheriff's Office. Defendant BROUSSARD is dismissed.

123.    Defendant CALVIN PRATER is an adult resident of Louisiana. This Defendant is dismissed. Doc. 286.

124.    Defendant ERIC DAVID is an adult resident of Louisiana. This Defendant is dismissed. Doc. 286.

125.    Defendant HARRY HOWARD is an adult resident of Louisiana. He is a Deputy with the East Baton Rouge Sheriff's Office and was assigned to the Transportation Unit during the protests. Pursuant to court order, Defendant HARRY HOWARD is dismissed.

126.    Defendant WILLIAM JENKINS is an adult resident of Louisiana. He is a Sergeant with the East Baton Rouge Sheriff's Office. Defendant JENKINS is dismissed.

127.    Defendant MICHAEL ALLISON is an adult resident of Louisiana. This Defendant is dismissed. Doc. 286.

128.    Defendant DAVID PHILPOT is an adult resident of Louisiana. This Defendant is dismissed. Doc. 286.

129.    Defendant ANTHONY SMITH is an adult resident of Louisiana. This Defendant is dismissed. Doc. 286.

130.    Defendant JOHN DePEDRO was an adult resident of Louisiana. He has passed away during the pendency of this action. This Defendant is dismissed.

131.    Defendant DUSTIN SELLARS is an adult resident of Louisiana. This Defendant is dismissed. Doc. 286.

132.    Defendant THOMAS WEIMER is an adult resident of Louisiana. This Defendant is dismissed. Doc. 286.

133.    Defendant WILLIAM LAWHUN is an adult resident of Louisiana. This Defendant is dismissed. Doc. 286.

134.    Defendant MARSHALL MENOU is an adult resident of Louisiana. This Defendant is dismissed. Doc. 286.

135.    Defendant NICHOLAS SCHIRO is an adult resident of Louisiana. This Defendant is dismissed. Doc. 286.

136.    Defendant MATTHEW WOLFE is an adult resident of Louisiana. This Defendant is dismissed. Doc. 286.

137.    Defendant JAMES BROUSSARD is an adult resident of Louisiana. This Defendant is dismissed. Doc. 286.

138.    Defendant JASON RANSOME is an adult resident of Louisiana. This Defendant is dismissed. Doc. 286.

139.    Defendant JARED WILSON is an adult resident of Louisiana. This Defendant is dismissed. Doc. 286.

140.    Defendant JAMES JAMISON is an adult resident of Louisiana. This Defendant is dismissed. Doc. 286.

141.    Defendant BENJAMIN FRIEDMAN is an adult resident of Louisiana. This Defendant is dismissed. Doc. 286.

142.    Defendant RODERICK BROWN is an adult resident of Louisiana. This Defendant is dismissed. Doc. 286.

143.    Defendant BRANDON McCALL is an adult resident of Louisiana. This Defendant is dismissed. Doc. 286.

144.    Defendant CASEY LILLIE is an adult resident of Louisiana. This Defendant is dismissed. Doc. 286.

145.    Defendant JESSE HALE is an adult resident of Louisiana. This Defendant is dismissed. Doc. 286.

146.    Defendant JEREMY HEINE is an adult resident of Louisiana. This Defendant is dismissed. Doc. 286.

147.    Defendant GREGORY DALE DICHARRY is an adult resident of Louisiana. Pursuant to the Court's order, this Defendant is dismissed.

148.    The Defendants described in Paragraphs 149-55 are EBRSO law enforcement officers who, on information and belief, were on duty and physically present during the protests at Airline Boulevard when Plaintiffs were arrested. Pursuant to this Court's Order of August 19, 2020, these Defendants are dismissed. Doc. 286.

149.    Defendant CLINE BRELAND is an adult resident of Louisiana. This Defendant is dismissed. Doc. 286.

150.    Defendant LARRY JAMES is an adult resident of Louisiana. He is a Sergeant with the East Baton Rouge Sheriff's Office. Defendant JAMES was assigned to the Transportation Unit with the East Baton Rouge Sheriff's Office in July 2016. Pursuant to court order, Defendant LARRY JAMES is dismissed.

151.    Defendant JASON JONES is an adult resident of Louisiana. This Defendant is dismissed. Doc. 286.

152.    Defendant ROBERT DIXON is an adult resident of Louisiana. He is a Deputy with the East Baton Rouge Sheriff's Office who, on information and belief, was on duty on July 9, 2016, where he transported prisoners during the protests. Pursuant to the Court's order, this Defendant is dismissed.

153.    Defendant TODD MORRIS is an adult resident of Louisiana. He is a Captain with the East Baton Rouge Sheriff's Office who, on information and belief, was on duty on July 9 and 10, 2016 at the Command Post at Baton Rouge Police Department Headquarters, where he assisted

in the coordination of the EBRSO response to the protests. Pursuant to the Court's order, this Defendant is dismissed.

154.    Defendant LEROY GRIFFIN, Jr. is an adult resident of Louisiana. This Defendant is dismissed. Doc. 286.

155.    Defendant BRYAN WHITE is an adult resident of Louisiana. This Defendant is dismissed. Doc. 286

156.    This paragraph is no longer necessary and is deleted.

157.    This paragraph is no longer necessary and is deleted.

158.    This paragraph is no longer necessary and is deleted.

159.    The Defendants described in Paragraphs 160-99 are Louisiana State Police law enforcement officers who, on information and belief, were on duty and physically present during the protests at Airline Boulevard when Plaintiffs were arrested. Where evidence to the contrary has been discovered, it is noted after the Defendant's name that they are dismissed.

160.    Defendant JACOB BROWN is an adult resident of Louisiana. He was deployed to the protests on July 9, 2016 as part of the LSP Mobile Field Force. In that capacity he was responsible for "passing protesters" from the location of their arrest to another law enforcement officer who would take the arrested protester to the BRPD prisoner processing location. On information and belief, Defendant BROWN participated in the unconstitutional arrests of Plaintiffs LEROY TENNART, DEON TENNART, ZACHARY HILL, and THOMAS HUTCHERSON. In the alternative only, Defendant BROWN was present in the immediate proximity of Plaintiffs LEROY TENNART, DEON TENNART, ZACHARY HILL, and THOMAS HUTCHERSON, both immediately before and during their arrests, personally saw the arrests, knew from the events he witnessed that the arrest and use of force against these Plaintiffs were unjustified and therefore

violated their constitutional and state law rights, and failed to intervene to prevent or stop those violations. Thus, Defendant BROWN had an opportunity to intervene and stop the unconstitutional arrests of Plaintiffs LEROY TENNART, DEON TENNART, ZACHARY HILL, and THOMAS HUTCHERSON, but failed to do so.

161.    Defendant STEVE BUNCH is an adult resident of Louisiana. Defendant BUNCH works for the Louisiana State Police. On July 9, 2016, Defendant BUNCH was on duty at the location of the Mayor's Office of Homeland Security and Emergency Preparedness (MOHSEP). Defendant BUNCH is dismissed.

162.    Defendant MURRAY BUQUET is an adult resident of Louisiana. He is a Sergeant with the Louisiana State Police. In July 2016, Defendant BUQUET was assigned to LSP's Mobile Field Force Team. On July 9, 2016, Defendant BUQUET was on duty in the area of protesters and assigned with an arrest team. Defendant BUQUET actually assisted in one or more arrests on July 9 at the intersection of Airline and Goodwood. On information and belief, Defendant BUQUET participated in the unconstitutional arrests of Plaintiffs LEROY TENNART, DEON TENNART, ZACHARY HILL, and THOMAS HUTCHERSON. In the alternative only, on information and belief, Defendant BUQUET was present in the immediate proximity of Plaintiffs LEROY TENNART, DEON TENNART, ZACHARY HILL, and THOMAS HUTCHERSON, both immediately before and during their arrests, personally saw the arrests, knew from the events he witnessed that the arrest and use of force against these Plaintiffs were unjustified and therefore violated their constitutional and state law rights, and failed to intervene to prevent or stop those violations. Thus, Defendant BUQUET had an opportunity to intervene and stop the unconstitutional arrests of Plaintiffs LEROY TENNART, DEON TENNART, ZACHARY HILL, and THOMAS HUTCHERSON, but failed to do so.

163.    Defendant LOUIS CALATO is an adult resident of Louisiana. Based on this Defendant's Answers to Interrogatories, all claims against him are dismissed.

164.    Defendant KEVIN CANNATELLA is an adult resident of Louisiana. He works for the Louisiana State Police. On July 9, 2016, CANNATELLA was on duty at the LSP Training Academy, and was released from duty after morning briefings. Defendant CANNATELLA is dismissed.

165.    Defendant SAMUEL CAPACI is an adult resident of Louisiana. Based on this Defendant's Answers to Interrogatories, all claims against him are dismissed.

166.    Defendant BRITTANY CAUGHLIN is an adult resident of Louisiana. Based on this Defendant's Answers to Interrogatories, all claims against him are dismissed.

167.    Defendant JASON CHIASSON is an adult resident of Louisiana. He was deployed to the July 9, 2016 protests at the intersection of Airline and Goodwood as a member of the Louisiana State Police SWAT team. Defendant CHIASSON was stationed no farther than five to ten yards from the arrests of protesters. On information and belief, Defendant CHIASSON was present in the immediate proximity of Plaintiffs LEROY TENNART, DEON TENNART, ZACHARY HILL, and THOMAS HUTCHERSON, both immediately before and during their arrests, personally saw the arrests, knew from the events he witnessed that the arrest and use of force against these Plaintiffs were unjustified and therefore violated their constitutional and state law rights, and failed to intervene to prevent or stop those violations. Thus, Defendant CHIASSON had an opportunity to intervene and stop the unconstitutional arrests of Plaintiffs LEROY TENNART, DEON TENNART, ZACHARY HILL, and THOMAS HUTCHERSON, but failed to do so.

168.    Defendant JOHN CLARY is an adult resident of Louisiana. He is a Sergeant with the Louisiana State Police. Defendant CLARY was assigned as a platoon leader in LSP's Mobile Field Force (Troop F). On July 9, 2016, Defendant CLARY's platoon was deployed to the protests at the intersection of Airline and Goodwood. On information and belief, Defendant CLARY was present in the immediate proximity of Plaintiffs LEROY TENNART, DEON TENNART, ZACHARY HILL, and THOMAS HUTCHERSON both immediately before and during their arrests, personally saw the arrests, knew from the events he witnessed that the arrest and use of force against these Plaintiffs were unjustified and therefore violated their constitutional and state law rights, and failed to intervene to prevent or stop those violations. Thus, Defendant CLARY had an opportunity to intervene and stop the unconstitutional arrests of Plaintiffs LEROY TENNART, DEON TENNART, ZACHARY HILL, and THOMAS HUTCHERSON, but failed to do so.

169.    Defendant SCOTT COCO is an adult resident of Louisiana. Based on this Defendant's Answers to Interrogatories, all claims against him are dismissed.

170.    Defendant WILLIAM COOK is an adult resident of Louisiana. On July 9, 2016, Defendant COOK was off duty. Defendant COOK is dismissed.

171.    Defendant BRIAN COGHLAN is an adult resident of Louisiana. Based on this Defendant's Answers to Interrogatories, all claims against him are dismissed.

172.    Defendant MARK DENNIS is an adult resident of Louisiana. He is a Sergeant with the Louisiana State Police. Defendant DENNIS was a supervisor for LSP's Mobile Field Force (Troop F). On July 9, 2016, Defendant DENNIS was deployed to the protests at the intersection of Airline and Goodwood. In that capacity, DENNIS actually gave direction to other law enforcement officers, identifying protesters to be arrested.  On information and belief, Defendant

DENNIS identified Plaintiffs LEROY TENNART, DEON TENNART, ZACHARY HILL, and THOMAS HUTCHERSON for arrest. In the alternative, on information and belief, Defendant DENNIS was present in the immediate proximity of Plaintiffs LEROY TENNART, DEON TENNART, ZACHARY HILL, and THOMAS HUTCHERSON both immediately before and during their arrests, personally saw the arrests, knew from the events he witnessed that the arrest and use of force against these Plaintiffs were unjustified and therefore violated their constitutional and state law rights, and failed to intervene to prevent or stop those violations. Thus, Defendant DENNIS had an opportunity to intervene and stop the unconstitutional arrests of Plaintiffs LEROY TENNART, DEON TENNART, ZACHARY HILL, and THOMAS HUTCHERSON, but failed to do so.

173.    Defendant JOSEPH DESSENS is an adult resident of Louisiana. On July 9, 2016, Defendant DESSENS was deployed to the protests at the intersection of Airline and Goodwood under the direction of Defendant CLARY. On information and belief, Defendant DESSENS was present in the immediate proximity of Plaintiffs LEROY TENNART, DEON TENNART, ZACHARY HILL, and THOMAS HUTCHERSON both immediately before and during their arrests, personally saw the arrests, knew from the events he witnessed that the arrest and use of force against these Plaintiffs were unjustified and therefore violated their constitutional and state law rights, and failed to intervene to prevent or stop those violations. Thus, Defendant DESSENS had an opportunity to intervene and stop the unconstitutional arrests of Plaintiffs LEROY TENNART, DEON TENNART, ZACHARY HILL, and THOMAS HUTCHERSON, but failed to do so.

174.    Defendant IAN DOLLINS is an adult resident of Louisiana. On July 9, 2016, Defendant DOLLINS was deployed to the protests at the intersection of Airline and Goodwood

under the direction of Defendants CLARY and DENNIS. On information and belief, Defendant DOLLINS was present in the immediate proximity of Plaintiffs LEROY TENNART, DEON TENNART, ZACHARY HILL, and THOMAS HUTCHERSON both immediately before and during their arrests, personally saw the arrests, knew from the events he witnessed that the arrest and use of force against these Plaintiffs were unjustified and therefore violated their constitutional and state law rights, and failed to intervene to prevent or stop those violations. Thus, Defendant DOLLINS had an opportunity to intervene and stop the unconstitutional arrests of Plaintiffs LEROY TENNART, DEON TENNART, ZACHARY HILL, and THOMAS HUTCHERSON, but failed to do so.

175.    Defendant ROBERT DOWNS is an adult resident of Louisiana. Based on this Defendant's Answers to Interrogatories, all claims against him are dismissed.

176.    Defendant DAVID EASLEY is an adult resident of Louisiana. He is a Senior Trooper with the Louisiana State Police. In July 2016, Defendant EASLEY was assigned to the LSP SWAT Team (Troop B) under Defendant HASSELBECK. On July 9, 2016, he was present and on duty at Airline and Goodwood Blvd. On information and belief, Defendant EASLEY was present in the immediate proximity of Plaintiffs LEROY TENNART, DEON TENNART, ZACHARY HILL, and THOMAS HUTCHERSON both immediately before and during their arrests, personally saw the arrests, knew from the events he witnessed that the arrest and use of force against these Plaintiffs were unjustified and therefore violated their constitutional and state law rights, and failed to intervene to prevent or stop those violations. Thus, Defendant EASLEY had an opportunity to intervene and stop the unconstitutional arrests of Plaintiffs LEROY TENNART, DEON TENNART, ZACHARY HILL, and THOMAS HUTCHERSON, but failed to do so.

177.    Defendant TREY ELLIOTT III is an adult resident of Louisiana. Based on this Defendant's Answers to Interrogatories, all claims against him are dismissed.

178.    Defendant CHAD GUIDRY is an adult resident of Louisiana. Based on this Defendant's Answers to Interrogatories, all claims against him are dismissed.

179.    Defendant AARON GUILLIAMS is an adult resident of Louisiana. Defendant GUILLIAMS was assigned to the LSP SWAT Team under Defendant HASSELBECK. On July 9, 2016, he was present and on duty at Airline and Goodwood Blvd. On information and belief, Defendant GUILLIAMS was present in the immediate proximity of Plaintiffs LEROY TENNART, DEON TENNART, ZACHARY HILL, and THOMAS HUTCHERSON both immediately before and during their arrests, personally saw the arrests, knew from the events he witnessed that the arrest and use of force against these Plaintiffs were unjustified and therefore violated their constitutional and state law rights, and failed to intervene to prevent or stop those violations. Thus, Defendant GUILLIAMS had an opportunity to intervene and stop the unconstitutional arrests of Plaintiffs LEROY TENNART, DEON TENNART, ZACHARY HILL, and THOMAS HUTCHERSON, but failed to do so.

180.    Defendant STEPHEN HAMMONS is an adult resident of Louisiana. Based on this Defendant's Answers to Interrogatories, all claims against him are dismissed.

181.    Defendant JOSEPH HASSELBECK is an adult resident of Louisiana. He is a Lieutenant with the Baton Rouge State Police and is assigned to LSP SWAT. On July 9, 2016, Defendant HASSELBECK was on duty and physically present as a SWAT supervisor during the evening shift at the intersection of Airline and Goodwood.  Defendant HASSELBECK witnessed detentions and arrests of protesters at that time and location and was no more than ten feet away from the arrests. On information and belief, Defendant HASSELBECK was present in the

immediate proximity of Plaintiffs LEROY TENNART, DEON TENNART, ZACHARY HILL, and THOMAS HUTCHERSON both immediately before and during their arrests, personally saw the arrests, knew from the events he witnessed that the arrest and use of force against these Plaintiffs were unjustified and therefore violated their constitutional and state law rights, and failed to intervene to prevent or stop those violations. Thus, Defendant HASSELBECK had an opportunity to intervene and stop the unconstitutional arrests of Plaintiffs LEROY TENNART, DEON TENNART, ZACHARY HILL, and THOMAS HUTCHERSON, but failed to do so.

182.    Defendant JEFFREY HOLLEY is an adult resident of Louisiana. Based on this Defendant's Answers to Interrogatories, all claims against him are dismissed.

183.    Defendant RICHARD HORTON is an adult resident of Louisiana. Based on this Defendant's Answers to Interrogatories, all claims against him are dismissed.

184.    Defendant JONATHAN JAMES is an adult resident of Louisiana. Based on this Defendant's Answers to Interrogatories, all claims against him are dismissed.

185.    Defendant CHRIS JORDAN is an adult resident of Louisiana. He is a Sergeant with the Louisiana State Police. Based on this Defendant's Answers to Interrogatories, all claims against him are dismissed.

186.    Defendant CHRISTOPHER KELLEY is an adult resident of Louisiana. Based on this Defendant's Answers to Interrogatories, all claims against him are dismissed.

187.    Defendant JOHN KELLY is an adult resident of Louisiana. Based on this Defendant's Answers to Interrogatories, all claims against him are dismissed.

188.    Defendant TYLER LATIOLAS is an adult resident of Louisiana. Based on this Defendant's Answers to Interrogatories, all claims against him are dismissed.

189.    Defendant MATTHEW LEMMONS is an adult resident of Louisiana. He was deployed to the protests on July 9, 2016 as part of the LSP Mobile Field Force. In that capacity he was responsible for "passing protesters" from the location of their arrest to another law enforcement officer who would take the arrested protester to the BRPD prisoner processing location. On information and belief, Defendant LEMMONS participated in the unconstitutional arrests of Plaintiffs LEROY TENNART, DEON TENNART, ZACHARY HILL, and THOMAS HUTCHERSON. In the alternative only, Defendant LEMMONS was present in the immediate proximity of Plaintiffs LEROY TENNART, DEON TENNART, ZACHARY HILL, and THOMAS HUTCHERSON, both immediately before and during their arrests, personally saw the arrests, knew from the events he witnessed that the arrest and use of force against these Plaintiffs were unjustified and therefore violated their constitutional and state law rights, and failed to intervene to prevent or stop those violations. Thus, Defendant LEMMONS had an opportunity to intervene and stop the unconstitutional arrests of Plaintiffs LEROY TENNART, DEON TENNART, ZACHARY HILL, and THOMAS HUTCHERSON, but failed to do so.

190.    Defendant MARTIN MAYON JR. is an adult resident of Louisiana. He works for the Louisiana State Police. On July 9, 2016, he was not on duty and did not deploy. Defendant MAYON is dismissed. Based on this Defendant's Answers to Interrogatories, all claims against him are dismissed.

191.    Defendant HUEY McCARTNEY is an adult resident of Louisiana. He works for the Louisiana State Police. On July 9, 2016, he was only on duty until 11 a.m. and did not deploy. Defendant McCARTNEY is dismissed. Based on this Defendant's Answers to Interrogatories, all claims against him are dismissed.

192.    Defendant TODD McCONNELL is an adult resident of Louisiana. Pursuant to stipulation, this Defendant has been dismissed.

193.    Defendant JAMES McGEHEE is an adult resident of Louisiana. Based on this Defendant's Answers to Interrogatories, all claims against him are dismissed.

194.    Defendant HERMAN NEWELL III is an adult resident of Louisiana. Based on this Defendant's Answers to Interrogatories, all claims against him are dismissed.

195.    Defendant JOEY SCHOUEST is an adult resident of Louisiana. Based on this Defendant's Answers to Interrogatories, all claims against him are dismissed.

196.    Defendant REGINALD TAYLOR is an adult resident of Louisiana. Based on this Defendant's Answers to Interrogatories, all claims against him are dismissed.

197.    Defendant RICHARD WATSON is an adult resident of Louisiana. Based on this Defendant's Answers to Interrogatories, all claims against him are dismissed.

198.    Defendant FRANCIS WOODS is an adult resident of Louisiana. Based on this Defendant's Answers to Interrogatories, all claims against him are dismissed.

199.    Defendant BURNELL THOMPSON III, is an adult resident of Louisiana. He works for the Louisiana State Police. On July 9, 2016, he was not on duty and did not deploy. Defendant THOMPSON is dismissed.

200.    Defendant GLENN HALE is an adult resident of Louisiana. He is a Captain with the Louisiana State Police who, on information and belief, assisted in coordinating the LSP response to the protests at Airline Boulevard when Plaintiffs were arrested. Based on this Defendant's Answers to Interrogatories, all claims against him are dismissed.

201.    Defendant JOSEPH HALL is an adult resident of Louisiana. He is a Louisiana State Police Trooper who, on information and belief, was physically present during the protests at

Airline Boulevard when Plaintiffs were arrested. Based on this Defendant's Answers to Interrogatories, all claims against him are dismissed.

202.    Defendant CALEB KENNEDY is an adult resident of Louisiana. Based on his testimony, all claims against this Defendant are dismissed. He is a Louisiana State Police Trooper who, on information and belief, was assigned to the Mayor's Office of Homeland Security and Emergency Preparedness (MOHSEP), where he assisted in coordinating the LSP response to the protests where Plaintiffs were arrested.

203.    Defendant BLAKE LEMOINE is an adult resident of Louisiana. He is a Louisiana State Police Trooper who, on information and belief, was on duty and physically present during the protests at Airline Boulevard when Plaintiffs were arrested. Based on this Defendant's Answers to Interrogatories, all claims against him are dismissed.

204.    Defendant MURPHY PAUL is an adult resident of Louisiana. He was Lieutenant Colonel of the Louisiana State Police who, on information and belief, assisted in coordinating the LSP response to the protests at Airline Boulevard when Plaintiffs were arrested. Based on this Defendant's Answers to Interrogatories, all claims against him in his individual capacity are dismissed. Defendant PAUL is now the Chief of the Baton Rouge Police Department, and as such is sued in his official capacity as Chief of Police.

205.    Each of the LSP Defendants against whom claims are still pending is a joint tortfeasor under Louisiana Civil Code article 2324 with all Defendants.

206.    This paragraph is deleted.

207.    This paragraph is deleted.

208.    The Defendants described in Paragraphs 209-236 are Livingston Parish Sheriff's Office (LPSO) law enforcement officers who, on information and belief, were on duty during the

protests at Airline Boulevard when some of the Plaintiffs were arrested. Pursuant to this Court's Order of August 19, 2020, these Defendants are dismissed. Doc. 286.

209.    Defendant MAJ. ALDEN THOMASSON is an adult resident of Louisiana. He is a supervising officer in the Livingston Parish Sheriff's Office. This Defendant is dismissed.

210.    Defendant SGT. DENNY PERKINS is an adult resident of Louisiana. He is a supervising officer in the Livingston Parish Sheriff's Office. This Defendant is dismissed.

211.    Defendant LT. DONNIE ROBINSON is an adult resident of Louisiana. He is a supervising officer in the Livingston Parish Sheriff's Office. This Defendant is dismissed.

212.    Defendant LT. LANCE LANDRY is an adult resident of Louisiana. He is a supervising officer in the Livingston Parish Sheriff's Office. This Defendant is dismissed.

213.    Defendant SGT. BRANDON ASHFORD is an adult resident of Louisiana. He is a supervising officer in the Livingston Parish Sheriff's Office. This Defendant is dismissed.

214.    Defendant LT. JASON HARRIS is an adult resident of Louisiana. He is a supervising officer in the Livingston Parish Sheriff's Office. This Defendant is dismissed.

215.    Defendant CAPT. CHAD McGOVERN is an adult resident of Louisiana. He is a supervising officer in the Livingston Parish Sheriff's Office. This Defendant is dismissed.

216.    Defendant SGT. CALVIN BOWDEN is an adult resident of Louisiana. He is a supervising officer in the Livingston Parish Sheriff's Office. This Defendant is dismissed.

217.    Defendant LT. FRANK RIZZUTO is an adult resident of Louisiana. He is a supervising officer in the Livingston Parish Sheriff's Office. This Defendant is dismissed.

218.    Defendant LT. TOM MARTIN is an adult resident of Louisiana. This Defendant is dismissed pursuant to this Court's August 19, 2020 Order. Doc. 286.

219.    Defendant LT. TRAVIS HARRIS is an adult resident of Louisiana. This Defendant is dismissed pursuant to this Court's August 19, 2020 Order. Doc. 286.

220.    Defendant CPL. JONATHAN CROZIER is an adult resident of Louisiana. This Defendant is dismissed pursuant to this Court's August 19, 2020 Order. Doc. 286.

221.    Defendant CORY WINBURN is an adult resident of Louisiana. This Defendant is dismissed.

222.    Defendant MIA TERRELL is an adult resident of Louisiana. This Defendant is dismissed.

223.    Defendant JEFFREY BEATTY is an adult resident of Louisiana. This Defendant is dismissed.

224.    Defendant JEREMY McCULLEN is an adult resident of Louisiana. This Defendant is dismissed.

225.    Defendant TIM ARD is an adult resident of Louisiana. This Defendant is dismissed.

226.    Defendant ERIC ROGERS is an adult resident of Louisiana. This Defendant is dismissed.

227.    Defendant KYLE HOTARD is an adult resident of Louisiana. This Defendant is dismissed.

228.    Defendant CARL CHILDERS is an adult resident of Louisiana. This Defendant is dismissed.

229.    Defendant DAVID EVERHART is an adult resident of Louisiana. This Defendant is dismissed pursuant to this Court's August 19, 2020 Order. Doc. 286.

230.    Defendant JACOB BOURGEOIS is an adult resident of Louisiana. This Defendant is dismissed pursuant to this Court's August 19, 2020 Order. Doc. 286.

231.    Defendant T.J. MORGAN is an adult resident of Louisiana. This Defendant is dismissed pursuant to this Court's August 19, 2020 Order. Doc. 286.

232.    Defendant TREY ROBERTS is an adult resident of Louisiana. This Defendant is dismissed pursuant to this Court's August 19, 2020 Order. Doc. 286.

233.    Defendant BRANDON TULLOS is an adult resident of Louisiana. This Defendant is dismissed pursuant to this Court's August 19, 2020 Order. Doc. 286.

234.    Defendant DUSTIN BROWN is an adult resident of Louisiana. This Defendant is dismissed pursuant to this Court's August 19, 2020 Order. Doc. 286.

235.    Defendant DUSTIN COVINGTON is an adult resident of Louisiana. This Defendant is dismissed pursuant to this Court's August 19, 2020 Order. Doc. 286.

236.    Defendant RICHARD HAGEN is an adult resident of Louisiana. This Defendant is dismissed pursuant to this Court's August 19, 2020 Order. Doc. 286.

237.    This paragraph is deleted.

238.    Except as otherwise indicated, each Defendant against whom claims are still asserted is a joint tortfeasor with every other defendant under Louisiana Civil Code article 2324.

239.    Except as otherwise indicated, each defendant is sued in his or her individual capacity only.

240.    This paragraph is deleted.

241.    All Defendants named and unnamed in this complaint acted under color of state law at all relevant times.

## IV. FACTUAL ALLEGATIONS

### A. The Custom and Practice of Racist Policing in Baton Rouge

242.    Long before Alton Sterling's murder and the ensuing protests in July 2016, relations between Baton Rouge's law enforcement agencies and the Baton Rouge community had badly deteriorated. Law enforcement relations with the Black community of Baton Rouge have been marked by episodes of tension and violence for generations.

#### 1. BRPD's History of Police Misconduct.

243.    As members of the Baton Rouge community, the United States Department of Justice, and others have noted for decades, the City/Parish has long failed to hire a proportionate number of Black officers to the BRPD. The failure of the City/Parish to hire a proportionate number of Black officers, and Black Baton Rouge residents in particular, has created a police force that is separated from the community it seeks to protect. Since 1980, the City of Baton Rouge has been under a consent decree with the Department of Justice intended to remedy racially discriminatory hiring practices of a class of Louisiana police and fire departments, including the BRPD. While nearly thirty municipal defendants in that case have reached compliance with the consent decree and been dismissed from the case, only the City of Baton Rouge and one other municipality have not reached compliance—nearly four decades after the consent decree took effect.

244.    According to the 2010 U.S. Census, the City of Baton Rouge is 54.5% Black and 39.4% White. However, the BRPD is 30% Black and 67% White. Moreover, nearly half of all BRPD officers live outside of East Baton Rouge Parish, and only one-fifth (1/5) live within the City of Baton Rouge.

245.    Discriminatory practices by the BRPD have long extended beyond the Department's employment practices into BRPD's interactions with the community. In September of 2005, the population of Baton Rouge swelled as many residents of New Orleans, a majority Black city, sought refuge from Hurricane Katrina and the resultant flood. The Michigan State Police and New Mexico State Police both sent troopers to assist the BRPD in policing the city's rapidly growing population.

246.    Within three days of the troopers' arrival, both state police agencies had ordered their troopers to cease operations with BRPD after the troopers witnessed and complained of egregious misconduct and potentially criminal actions by BRPD officers. A spokeswoman for the Michigan State Police told a reporter that "troopers observed Baton Rouge police officers engage in actions that were an affront to their sense of dignity and respect."

247.    Members of both the Michigan State Police and the New Mexico State Police shared observations and concerns that were compiled in a formal letter of complaint to the BRPD. One trooper reported that "I personally believe that most of the Baton Rouge Police Department are good officers that are being directed by their supervisors to crack down on the public."

248.    Examples of Baton Rouge police officers' antagonism toward Black people as alleged by the out-of-state troopers included multiple instances of excessive force against Black people, including minors, through the use of Tasing, hitting, choking, and pepper spraying of residents, without warning or threat to the safety of officers or civilians; searches of Black individuals and their vehicles without reasonable suspicion or probable cause; and possibly falsifying information against Black individuals in police reports.

249.    In an attempt to support officers of the BRPD in the face of the allegations of racial animus and racially discriminatory policing in September 2005, Defendant Mayor HOLDEN

publicly stated, "If there's a blame to be placed on aggressive enforcement, blame it on me." This statement by Defendant Mayor HOLDEN ratified and condoned the unconstitutional actions and inactions of the BRPD officers.

250.    BRPD, under the direction of Defendant HOLDEN and predecessors in office of Defendant DABADIE, also resisted efforts of media and public interest advocates to gain information regarding these post-Katrina abuses, as part of an ongoing effort to cover up and conceal race-based officer misconduct, and to promote the police code of silence.

251.    As part of the effort to cover up and conceal allegations of race-based officer misconduct and to promote the police code of silence, the City/Parish and the BRPD actively resisted public records requests and a Public Records Law enforcement action filed by The Advocate newspaper seeking access to the Internal Affairs Division investigative report in 2006. Defendant DABADIE's predecessor in office authorized a meritless suit to delay and thereby shield investigation records from public view, while imposing high costs on the newspaper.

252.    In addition to repeated allegations of excessive force and unconstitutional arrests, both before and after the out-of-state troopers' complaints, it has been reported that BRPD officers disproportionately arrest Black residents of Baton Rouge on drug charges. A 2017 report by Together Baton Rouge, a coalition comprised of churches and community-based organizations, studied publicly available arrest data for the years 2011–16. The report concluded that while rates of drug *use* are similar in every ZIP code in Baton Rouge, residents of the poorest ZIP codes, whose populations tend to be overwhelmingly Black, are arrested at grossly disproportionate rates. The study classified four ZIP codes, all in North Baton Rouge, the majority-Black section of the city, as "high enforcement areas" and noted that they were "90% black, twice as poor, use drugs

slightly *less* frequently and have *five times as many arrests for drug possession*" as low-enforcement, majority-White ZIP codes. (Emphasis in original.)

253.    In 2011, then-BRPD Chief Dewayne White publicly stated that ten percent of the department's officers failed to exercise basic levels of professionalism, and that "it's become so ingrained" in the minds of some officers that they "believe that everybody they come across or most people they come across with that color of skin is probably a criminal." Chief White described the impact that racially discriminatory policing has on the community: "When the question is raised with an African-American congregation or a constituency, whether they trust the Police Department, no one raises their hand. That, in itself, is indicative of a problem, and we have got to win the trust of that community."

254.    Defendant Mayor HOLDEN fired Chief White in 2013. White and his attorney have alleged that HOLDEN micromanaged BRPD during Chief White's tenure. White and his attorney have further alleged that a month prior to his firing, HOLDEN verbally ordered White to discuss all personnel and disciplinary matters with the Mayor's Office prior to taking any action. This order constituted a temporary change in policy specific to the brief remainder of Chief White's tenure, as, on information and belief, the Chief of the BRPD retains authority over hiring and firing decisions without the need for approval by the Mayor, except for this specific instance in which HOLDEN attempted to circumvent Chief White's authority.

255.    Defendant DABADIE was hired in the wake of Chief White's dismissal. HOLDEN, DABADIE and the City/Parish maintained the pattern and practice of ratifying, permitting, and encouraging racist policing in BRPD by, *inter alia*, (a) denying the prevalence of racist attitudes among White BRPD officers; (b) refusing to investigate the prevalence of such attitudes; and (c)

forcing citizens to seek court orders under the Public Records Law—through costly and protracted litigation—before disclosing of the results of investigations into racism in BRPD.

256.    The racial animus decried by former Chief White was later laid bare by the publication in September 2014 of a series of racist text messages sent by a BRPD officer to a civilian.  In the messages, the officer, a fifteen-year veteran of the Department, referred both to Black colleagues and civilians with racial epithets, and stated, *inter alia*, "I wish someone would pull a Ferguson on them and take them out. I hate looking at those African monkeys at work . . . I enjoy arresting those thugs with their saggy pants."

257.    The officer was placed on administrative leave by BRPD and resigned before any disciplinary action was taken against him by the Department. On information and belief, no action was taken by HOLDEN, DABADIE or the City/Parish to determine the extent of similar racist attitudes among other BRPD officers. Defendant DABADIE stated publicly that there was no need to do so, because the issue was confined to the lone officer.

258.    The response of Defendants HOLDEN, DABADIE and the City/Parish to the racist text messages betrayed a strategy to cover up the prevalence of racist attitudes among White BRPD officers. Alternatively, the response of Defendants HOLDEN, DABADIE and the City/Parish amounted to conscious disregard of the prevalence of racist attitudes among White BRPD officers.

259.    In addition to racially discriminatory policing, the BRPD, under the direction of Defendants HOLDEN and DABADIE, implements a policy, practice or custom of using excessive force against arrestees.

260.    In addition to widespread protest and advocacy stemming from the shooting death of Alton Sterling, multiple lawsuits in recent years have sought to hold BRPD accountable for its policy, practice or custom of excessive uses of force, including: (a) the 2007 arrest of Brian

Townsend on a complaint of "loud music" with pepper spray and force that caused the rupture of Townsend's bladder; (b) the violent 2008 arrest of Jon Leigh Shoulders for smoking marijuana, which resulted in Shoulders' skull being fractured and caused internal bleeding and permanent brain damage; (c) the 2011 killing of Carlos Harris, who was shot to death by an officer after Harris crashed a car that he'd been ordered by the officer to remove from the scene of a crime—despite Harris's informing the officer that he was intoxicated; (d) a 2014 incident in which BRPD officers strip-searched Brett Percle, a visitor to a home that was being searched by the officers, then kicked Percle with such force that his head slammed into the floor, knocking several teeth out of his mouth; (e) a 2015 incident in which a reporter and a producer for local media outlet WBRZ were handcuffed, and one arrested, for taking pictures of an arrest; and (f) a 2016 incident in which Ja'Colby Davis, then sixteen years old, was held down by multiple officers while one officer repeatedly punched him in the head.

261.    In recent years, suits against the City/Parish for BRPD's excessive uses of force and unconstitutional arrests have resulted in sizeable yearly settlements by the Parish Attorney. For example, the City/Parish paid $372,434 to settle such cases in 2015, $581,286 in 2014, and $437,112 in 2011.

262.    BRPD has not addressed the problems of racial profiling and overt racial animus by members of the BRPD, despite ample evidence of such racial profiling and animus. Instead, the BRPD, Chief DABADIE and Mayor HOLDEN chose to consciously disregard and cover up the prevalence of racist attitudes among BRPD officers.

## 2.  EBRSO's History of Police Misconduct.

263.    This paragraph is deleted.

264.    This paragraph is deleted.

### 3.  LSP's History of Police Misconduct

265.    During Defendant EDMONSON's tenure, the Louisiana State Police have also exhibited excessive force and unconstitutional arrests targeted at Black residents. While LSP does not typically patrol municipalities, a pattern of unconstitutional excessive force and illegal arrest has rapidly emerged in the time that Defendant EDMONSON has directed LSP in the provision of policing services in municipalities.

266.    Lawsuits and public allegations against the LSP since early 2013 allege that members of LSP, under the direction of Defendant EDMONSON, have: (a) physically and verbally abused two Black teenagers without provocation or lawful justification, desisting only when a mother of one of the teens, who is also a New Orleans Police officer, arrived and intervened; (b) pulled over, shoved to the ground, kicked, and threatened with firearms internationally renowned musician Shamarr Allen while searching for a Black drug dealer — apparently based solely on Allen's race; and (c) manhandled, Tased, and verbally and physically assaulted Michael Baugh, a Black barber, causing significant injury, apparently based on his being of the same race as four suspects (Baugh matched no other part of the suspects' description).

267.    Defendant EDMONSON chose not to order a thorough investigation into these practices when they came to light; his inaction condones the falsification of information and the intimidation of witnesses to LSP troopers' unconstitutional conduct. The LSP internal investigation into the LSP attack on the teenagers concluded that all of the troopers involved in the incident had acted appropriately, a conclusion that both the Mayor of New Orleans and the Superintendent of the New Orleans Police Department publicly criticized based on publicly available video of the incident. According to news reports, LSP went on to file a disciplinary complaint with the NOPD against the mother of one of the teens for intervening on behalf of her

son and his friend. On information and belief, Defendant EDMONSON personally wrote a letter to the Superintendent of the NOPD requesting an investigation into the mother's actions.

268.    As described in the preceding paragraphs, the City/Parish, BRPD, EBRSO, and Defendants HOLDEN, DABADIE, GAUTREAUX, and EDMONSON engaged in a continuing pattern, custom, and practice of the use of excessive force and illegal arrests targeting Black residents. Similarly, these actors engaged in a pattern, custom, and practice of retaliatory intimidation, threats, and disciplinary and legal consequences against critics. These related patterns, customs, and practices were the moving force for the Defendants' unconstitutional treatment of Plaintiffs and other protesters in July of 2016.

### B. Baton Rouge Area Residents Protest Police Violence after the Killing of Alton Sterling by the BRPD.

269.    The killing of Alton Sterling was documented on video, which showed Mr. Sterling being forcibly restrained on the ground and then shot. Mr. Sterling's death provoked local, national, and international outrage.

270.    By the evening of July 6, 2016, Baton Rouge residents, a vast majority of whom were Black, gathered for what became daily and nightly vigils and peaceful protests at various locations throughout the city.

271.    Between July 6 and 10, 2016, thousands of people protested throughout Baton Rouge. Some paid their respects in front of the Triple S Food Mart where Mr. Sterling was killed. Others marched to and from the State Capitol. Many, including Plaintiffs, protested on a sizeable grassy lot adjacent to the intersection of Airline Highway and Goodwood Boulevard in Baton Rouge, across the street from the headquarters of the BRPD. Protesters chanted and held signs. Some of the protesters' chants and signs were specific to Mr. Sterling; others decried the history

and pattern of brutal and racialized policing in Baton Rouge, of which Mr. Sterling's killing was the latest, particularly egregious example.

272.    The majority of these protesters were Black residents of Baton Rouge and the surrounding parishes. Many of them chose to protest because of their personal experiences or the experiences of their loved ones with law enforcement, and particularly members of the BRPD and EBRSO, which left them hurt or afraid. National television and internet audiences closely followed the protests and Defendants' response to the protests.

### C. Defendants' Planned and Coordinated Effort to Suppress Dissent Through Unconstitutional Law Enforcement in July 2016.

273.    In response to the protests and the national spotlight on protesters' nonviolent, lawful resistance, Defendants, led by Defendants HOLDEN, DABADIE, EDMONSON, GAUTREAUX, HURST and CAZES, developed and implemented a strategy, motivated by racial animus, to silence this peaceful and lawful exercise of First Amendment rights. Defendants colluded to accomplish this through the use of intimidation, excessive force, illegal arrests, illegal detention, denigration, and criminalization. The Livingston Parish Sheriff's Office, the Ascension Parish Sheriff's Office, the Calcasieu Parish Sheriff's Office (members of the Emergency Task Force of the Louisiana Sheriff's Association), and other law enforcement agencies not currently known to Plaintiffs joined Defendants in this endeavor.

274.    In multiple policy-making venues before and during the time in which they arrested and detained Plaintiffs, Defendants reached agreement on their coordinated response to peaceful protests, including the use of intimidation, excessive force, illegal arrests, illegal detention, denigration, and criminalization. The entities that facilitated Defendants' collusion included but were not limited to: the Governor's Office of Homeland Security and Emergency Preparedness

("GOHSEP"), the Mayor's Office of Homeland Security and Preparedness ("MOHSEP"), and the Louisiana Sheriffs' Association ("LSA").

275.    Defendants HOLDEN, DABADIE, EDMONSON, GAUTREAUX, CAZES, HURST, and/or their agents, along with other high-ranking members of other law enforcement entities, gathered at MOHSEP and GOHSEP on several occasions between July 6 and 10, 2016, in order to formulate and implement their agreement to suppress the protests. The collusion between Defendants HOLDEN, DABADIE, EDMONSON, GAUTREAUX, CAZES, and HURST also included telephone calls, email correspondence, and other means to coordinate the implementation of their strategy, motivated by racial animus, to silence the peaceful and lawful exercise of First Amendment rights by, among other things, intimidation, excessive force, illegal arrests, illegal detention, denigration, and criminalization.

276.    Defendant HOLDEN implemented the City/Parish's Emergency Operations Plan ("EOP") through MOHSEP. Under the terms of the EOP and BRPD's and EBRSO's internal policies, Defendants HOLDEN, GAUTREAUX, DABADIE, and their agents coordinated law enforcement response to emergencies, which are defined to include "civil disturbances."

277.    Defendant GAUTREAUX was the president of the LSA during the protests. GAUTREAUX, in combination with Defendant CAZES, the Southern District Coordinator of LSA's Emergency Task Force, and Defendant HURST, Director of the LSA's Task Force and Homeland Security services, arranged for the presence of approximately 200 additional deputies from surrounding sheriffs' offices to supplement local law enforcement's response to the protests. These out-of-parish deputies were sworn as temporary East Baton Rouge Deputy Sheriffs for the duration of the protests, and were therefore under the direct command and control of Defendant GAUTREAUX during July 9-10, 2016.

278.   This paragraph is deleted pursuant to this Court's Order of August 19, 2020. Doc. 286.

279.   Pursuant to the Defendants' plan, numerous law enforcement agencies contributed personnel and resources to create a massive police presence to confront those engaging in peaceful protest and to suppress the rights of Black citizens and residents of Baton Rouge to petition the government for redress of grievances.

280.   Defendants' coordinated plan sought to: (a) create an intimidating law enforcement response that was militarized, in furtherance of which police personnel wore and used riot gear and carried rifles, shields, and/or batons while confronting the protesters; (b) effectuate the maximum number of arrests of innocent protesters, so as to send a message to Black citizens and residents of Baton Rouge that dissent would not be tolerated; (c) target certain protesters for arrest, based on these protesters' supposed group affiliations (in particular, affiliation with Black political and social organizations) and/or Defendants' belief that they were "leaders" of the spontaneous protests; (d) book protesters *en masse* on false criminal charges and to maximize the time those arrested spent in custody as punishment for defying law enforcement; (e) ensure officers used excessive physical force to effectuate these illegal arrests; (f) insulate individual officers from accountability, criticism or consequence for their role in Defendants' scheme by encouraging and/or allowing officers to cover the names and badge numbers on their uniforms with opaque tape and to refuse to give their names or badge numbers when asked directly by civilians; and (g) discourage individuals from protesting in the future through a display of militarized police violence and intimidation.

281.   Between July 6 and 10, 2016, Baton Rouge area law enforcement officers and their agents, including BRPD, EBRSO, LSP, LPSO, and deputy sheriffs of surrounding parishes, put

this plan into action. In furtherance of the above objectives, Defendants unlawfully arrested approximately 200 protesters as they engaged in peaceful protest protected by the First Amendment. Plaintiffs were among those arrested.

**D. The Unconstitutional Arrests and Confinement of the Plaintiffs**

    **1. Leroy and Deon Tennart**

282.    Plaintiff LEROY TENNART is a heavy machine operator who lives in Baton Rouge with his family. He is the father of Plaintiff DEON TENNART who is a welder and also lives in Baton Rouge.

283.    LEROY TENNART arrived at the protest at Airline Highway and Goodwood Boulevard at approximately 7 p.m. on July 9, 2016. He was joined by his wife Veronica and Plaintiff DEON TENNART. LEROY TENNART chose to participate in the protest because he and other Black people he knows have been treated poorly by Baton Rouge law enforcement officers since his youth, and he believes that lawful and peaceful protest can have a significant impact on the way law enforcement officers treat Black people in the United States. DEON TENNART had never participated in a protest prior to July 9, 2016, and he wanted to join his father in demanding equal treatment for Black people from law enforcement officers.

284.    At the protest location, members of the BRPD, LSP, EBRSO, and LPSO, as specified in paragraphs 33-241 above, stood in the street, blocking traffic on Airline Highway. Some officers used and wore "riot gear," including body armor, shields, masks, and batons. Some officers carried rifles. Protesters stood in the grassy lot adjacent to Airline Highway and Goodwood Boulevard, chanting and holding signs.

285.    LEROY and DEON TENNART stood on the neutral ground of Goodwood Boulevard near its intersection with Airline Highway for about 30 minutes after they arrived. They

were told by law enforcement officers that protesters would not be arrested as long as they stayed on the grass.

286. Without warning, scores of Defendants, including but not limited to the members of the BRPD, LSP, EBRSO, and LPSO, as specified in paragraphs 33-241 above, wearing riot gear, some with rifles, began marching down Airline Highway and around the corner onto Goodwood Boulevard. The protesters on the neutral ground began chanting "Black lives matter" and "No justice, no peace" as the officers marched. LEROY TENNART heard someone yell "Left face stop!" Some or all of Defendants listed in Paragraphs 33-241, stopped and faced the protesters in the neutral ground.

287. Members of the BRPD, LSP, EBRSO, and LPSO, as specified in paragraphs 33-241 above, then marched toward the protesters on the neutral ground and began yelling, "Move!" These law enforcement officers began pushing protesters into the street with their batons.

288. LEROY TENNART was pushed entirely off the neutral ground and into the street. As soon as his foot contacted the cement of the highway he was slammed to the ground and tackled by approximately eight or nine of the Defendants. He was then handcuffed, dragged across the street and placed in a van.

289. DEON TENNART was standing on the sidewalk, not on the roadway, near a grassy lot across from BRPD headquarters in the company of his mother when he was struck in the face with a shield by an unknown officer and then tackled to the ground by that officer and other officers. He was handcuffed and forced across the street to the BRPD headquarters and suffered injuries as a result.

290.    Despite the fact that neither plaintiff was on the roadway during the protests, both DEON TENNART and LEROY TENNART were each charged with Simple Obstruction of a Highway in violation of La. R.S. § 14:97.

291.    DEON TENNART and LEROY TENNART were transported from the BRPD headquarters to the East Baton Rouge Parish Prison where they were confined for nearly 40 hours in uncomfortable, unsanitary conditions, and without proper bedding. During the intake process, LEROY TENNART informed EBRSO personnel that he suffers from chronic hypertension. He was denied proper medication throughout his confinement. Both DEON and LEROY missed work during their unlawful confinement.

292.    There was no basis to arrest, confine or charge LEROY TENNART or DEON TENNART. Neither had committed any crime. Members of the BRPD, LSP, EBRSO, and LPSO, as specified in paragraphs 33-241 above, had an opportunity to intervene and stop the unconstitutional arrests of, and excessive uses of force on, LEROY TENNART and DEON TENNART, but failed to do so.

293.    The BRPD Incident Reports authored by Defendant BRPD Officers KAMA ROUSSELL and JAMES CROCKETT (as to LEROY TENNART) and Defendant Corporal REAB SIMONEAUX, Jr. and Defendant Officer BRADLEY LAWRENCE (as to DEON TENNART) contain blatantly false statements that purport to justify the arrests—including that DEON and LEROY "stood their ground," "walked into the roadway," and/or "refused to move" from the roadway.  These reports were approved by Defendant BRPD Officers DARREN HUNT and ADAM CHENEY, with full knowledge of their falsity.

294.    To support the baseless charges against LEROY TENNART and DEON TENNART, Defendant Officers CROCKETT and LAWRENCE signed boilerplate Affidavits of

Probable Cause—the same boilerplate that was proffered as support for 87 of the arrests at the Airline and Goodwood location. The Affidavits are entirely inconsistent with the circumstances of LEROY TENNART's and DEON TENNART's arrests.

295.    On July 15, 2016, the East Baton Rouge District Attorney announced that his office would refuse the charges against LEROY and DEON TENNART.

### 2. Eddie and Godavari Hughes

296.    Plaintiff EDDIE HUGHES III was born and raised in Baton Rouge. He is a librarian at Southern University, a historically Black university in Baton Rouge. Mr. HUGHES believes that civic engagement through First Amendment activity is critical to ending unconstitutional law-enforcement violence and intimidation against civilians, particularly Black civilians. He is the father of Plaintiff GODAVARI HUGHES, a high school student who, at the time of the events complained of, was sixteen years of age. GODAVARI had recently become interested in political movements for social change, and especially in First Amendment-protected protest activities. Proud of his daughter's commitment to civic engagement and growing passion for social justice, Mr. HUGHES regularly took his daughter to lawful, peaceful protests like the one at Airline and Goodwood.

297.    EDDIE and GODAVARI HUGHES arrived at the protest at the intersection of Airline Highway and Goodwood Boulevard at approximately 7:00 p.m. on July 9, 2016.

298.    The HUGHES family was part of a group of protesters who began to march along Airline Highway, adjacent to the roadway (but not in the roadway), in the direction of Old Hammond Highway. As the protesters approached Old Hammond Highway, a group of law enforcement officers in riot gear, including some or all of Defendants listed in Paragraphs 33-241,

blocked their path and began marching toward the protesters, eventually crossing the curb and advancing toward the protesters on the grass.

299.    An unknown Defendant EBRSO Deputy approached GODAVARI HUGHES where she stood on the grass, not in the roadway, and ordered her to the ground. GODAVARI complied with these instructions, dropping to her knees while crying and repeatedly stating she was only sixteen years old. GODAVARI's hands were bound behind her back with plastic zip-ties and she was escorted onto a bus.

300.    EDDIE HUGHES was arrested by a Baton Rouge Police Department officer as he stood on the grass, not in the roadway. His hands were similarly bound, and he was escorted to the same bus.

301.    Despite the fact that neither Plaintiff was on the roadway during the protests, EDDIE and GODAVARI HUGHES were each charged with Simple Obstruction of a Highway in violation of La. R.S. § 14:97. EDDIE HUGHES was transported from BRPD headquarters to the East Baton Rouge Parish Prison where he was confined for 22 hours in uncomfortable, unsanitary conditions, and without proper bedding.

302.    GODAVARI HUGHES was detained at the East Baton Rouge Juvenile Detention Center. She was alone and afraid throughout her confinement. On information and belief, the policy of the Juvenile Detention Center requires that child detainees can only be released if a parent or guardian personally appears at the jail. GODAVARI's mother was not in Louisiana at that time. When EDDIE was finally released from the Parish Prison, the Juvenile Detention Center had closed for the night. GODAVARI therefore had to remain in custody until the following morning. Her confinement lasted for approximately 36 hours.

303. There was no basis to arrest, confine or charge EDDIE HUGHES or GODAVARI HUGHES. Neither had committed any crime. .Members of the BRPD, LSP, EBRSO, and LPSO, as specified in paragraphs 33-241 above, had an opportunity to intervene and stop the unconstitutional arrests of EDDIE HUGHES and GODAVARI HUGHES, but failed to do so.

304. The BRPD Incident Reports authored by Defendant BRPD Lieutenant MICHAEL RARICK (as to EDDIE HUGHES) and SONDRA HALL (as to GODAVARI HUGHES) are devoid of narrative information based on a witness's account to establish probable cause for an arrest. These inadequate reports were approved by Defendant BRPD Officers BARRON BRYANT and GINA HEDRICK, with full knowledge that they lacked any reference to first-hand knowledge supporting an arrest.

305. To support the baseless charges against EDDIE HUGHES, Defendant Officer RARICK signed a pre-printed, boilerplate Affidavit of Probable Cause identical to 87 other affidavits filed against fellow protesters that contains patently false assertions that EDDIE HUGHES repeatedly "entered the roadway" and was taken into custody when he ignored verbal orders to "exit the lanes of travel." On information and belief, these affidavits were drafted and circulated by Defendant HUTTO.

306. On July 15, 2016, the East Baton Rouge District Attorney announced that his office would refuse the charges against EDDIE and GODAVARI HUGHES.

### 3. Brachell and Christopher Brown

307. In July 2016, Plaintiff BRACHELL BROWN was a 21-year-old Black woman and resident of Baton Rouge. She was a college student seeking a degree in social work, and she also had a full-time job. BRACHELL chose to protest police violence because she believes that protest

allows community members' voices to be heard so that social injustice will come to an end. BRACHELL is the sister of Plaintiff CHRISTOPHER BROWN.

308.    In July 2016, Plaintiff CHRISTOPHER BROWN was a 23-year-old Black man and resident of Baton Rouge. CHRISTOPHER chose to protest police violence because he had seen news coverage of the protests, and he wanted to add his voice because of the injustices done to Alton Sterling and so many other Black residents of Baton Rouge. He is the brother of Plaintiff BRACHELL BROWN. Both CHRISTOPHER and BRACHELL have spent nearly their entire lives living in and around Baton Rouge.

309.    On the night of July 9, 2016, BRACHELL and CHRISTOPHER attended the protests at Airline Highway. BRACHELL carried a sign on which she had written "Dear Police: We're Not Target Practice #BlackLivesMatter."

310.    Shortly after the siblings arrived, members of the BRPD, LSP, EBRSO, and LPSO, as specified in paragraphs 33-241 above, wearing riot gear and carrying batons and shields stopped traffic on Goodwood Boulevard and marched toward the protesters. The officers repeatedly hit their shields with their batons.

311.    At around 10 p.m., BRACHELL and CHRISTOPHER were among a group of protesters walking along the grass next to Airline Highway. As the group crossed Gwenadele Avenue, BRACHELL turned around and saw law enforcement officers throwing protesters to the ground and brandishing firearms at protesters. Multiple unknown officers, including some or all of Defendants listed in Paragraphs 33-241, rushed the siblings from behind. As two officers. Defendants JASON ACREE and NICHOLAS COLLINS grabbed BRACHELL from behind, CHRISTOPHER wrapped Brachell in his arms. The officers tackled Brachell and Christopher to the ground while other officers brandished firearms. Officer ACREE shot CHRISTOPHER with a

Taser, delivering three separate electrical shocks while other officers watched. Multiple officers then converged upon BRACHELL and CHRISTOPHER, pinning them to the ground. An officer pushed his knee into BRACHELL's back, and officers then bound both siblings' wrists with plastic zip ties.

312.    While she was pinned to the ground, BRACHELL held her head up to avoid her face being smashed into the concrete, but still suffered a broken blood vessel in her left eye as a result of the attack. In addition to the injuries from the Taser, CHRISTOPHER suffered abrasions to his legs as officers lifted him up from the ground.

313.    Prior to BRACHELL and CHRISTOPHER being tackled to the ground from behind, no law enforcement officer ever instructed them to stop, get on the ground, or do anything else.

314.    Officers ripped the barbed Taser leads from CHRISTOPHER's side instead of allowing medical personnel to remove them. This caused physical pain and profuse bleeding that compounded the pain CHRISTOPHER had already experienced as a result of the original Tasing. CHRISTOPHER also experienced pain and numbness in his left arm, which persisted for the following four months.

315.    Unknown officers then picked up BRACHELL and CHRISTOPHER and escorted them to a waiting bus containing other arrested protesters. The officers pulled the siblings in a rough and fast fashion, leaving them off balance for the duration of the walk to the bus.

316.    The bus brought BRACHELL and CHRISTOPHER to BRPD Headquarters where they were separated and booked. While the siblings were being booked, they saw that the nametags and badge numbers of the officers had been covered with opaque tape. BRACHELL asked

questions of several officers, but was told to "Shut up." She asked the names of various officers, but the officers refused to respond.

317.    Despite the fact that BRACHELL and CHRISTOPHER entered Gwenadele Avenue only to cross the street and continue marching along the grass adjacent to Airline Highway, and at no point obstructed traffic while crossing the street, BRACHELL and CHRISTOPHER were charged with Simple Obstruction of a Highway in violation of La. R.S. § 14:97.

318.    Both siblings were then transported to EBRPP in vans in which law enforcement officers had turned on the heat at full power, with the windows up. The mid-summer temperature outside of the vans was already extremely hot. Arrestees on these vans asked the drivers to turn the heat off, but they refused.

319.    After he was booked into EBRPP, CHRISTOPHER received no medical attention for his Taser wounds despite his requests for such assistance and his explicitly pointing out the profuse blood that visibly stained the yellow jersey he was wearing.

320.    CHRISTOPHER was placed in a holding cell with dozens of other protesters who all struggled to fit into the cramped space of the cell in which they were held for hours. A deputy indiscriminately deployed a burst of pepper spray into the cell. CHRISTOPHER and the other detainees were left in this cell for several hours, coughing and crying in reaction to the spray.

321.    BRACHELL was placed into a smaller holding cell with more than twenty other women. Women in the sell began to sing a gospel song, and shortly thereafter, BRACHELL noticed that women in the cell had started to cough. Soon, everyone in the cell was coughing. At that point, BRACHELL noticed that an officer was pepper spraying the men in the nearby holding cell where CHRISTOPHER was. The women quieted their singing out of fear that they would be pepper sprayed next.

322.    BRACHELL was eventually placed in a different part of the jail, where she and four other women were given mattress pads because there were not enough beds to accommodate all of the arrestees. The jail was extremely cold. EBRSO did not provide blankets to BRACHELL and other arrestees, who had to rely on the kindness of other prisoners who were willing to share blankets and towels with them.

323.    CHRISTOPHER was eventually placed with four other arrestees in a four-person cell in a separate part of the jail, in which there were no mats or blankets. The showers in that wing of the jail did not work and the sinks were filthy. On information and belief, the wing of the jail in which Christopher was placed had not been in use for a long period of time, and the conditions of the wing were uncomfortable and unsanitary.

324.    Once CHRISTOPHER was being processed for release from the jail, he was placed in another holding cell. For no clear reason, guards pepper sprayed CHRISTOPHER and the other prisoners in that cell twice before CHRISTOPHER was ultimately released.

325.    CHRISTOPHER was arrested with an iPhone that EBRSO and BRPD did not return to him upon his release or at any point thereafter, despite multiple attempts by CHRISOPHER's mother over a period of months to retrieve the phone.

326.    During BRACHELL's arrest, her iPhone fell to the ground. Officers retrieved the phone, and when the phone was returned to BRACHELL the screen had been cracked.

327.    Due to the injuries to his left arm resulting from his being shot with a Taser by the unknown arresting officers, CHRISTOPHER was unable to begin training for his commercial driver's license. He suffered losses in the form of forfeited tuition and lost potential wages.

328.    BRACHELL and CHRISTOPHER both spent more than thirty-six hours in custody.

329.    There was no basis to arrest, confine or charge BRACHELL BROWN or CHRISTOPHER BROWN. They had not committed any crime. At no point during the arrest of BRACHELL BROWN and CHRISTOPHER BROWN were either of the siblings informed of their Miranda rights by an officer. Members of the BRPD, LSP, EBRSO, and LPSO, as specified in paragraphs 33-241 above, had an opportunity to intervene and stop the unconstitutional arrests of, and excessive uses of force on, CHRISTOPHER BROWN and BRACHELL BROWN, but failed to do so.

330.    The BRPD Incident Report about CHRISTOPHER BROWN's arrest authored by Defendant BRPD Officer BLAINE BURNS states that while Defendant BURNS was assigned to the "prisoner processing area for the protest events," "Mobile Field Force officers" brought CHRISTOPHER to where Defendant BURNS was stationed. The report is devoid of narrative information to establish probable cause for an arrest. This inadequate report was approved by Defendant BRPD Officer GINA HEDRICK, with full knowledge that the report lacked information to support an arrest.

331.    To support the baseless charge against CHRISTOPHER BROWN, Defendant Officer BURNS signed a boilerplate Affidavit of Probable Cause—a pre-printed form identical to 87 other affidavits filed against fellow protesters and which alleges facts that are entirely inconsistent with the facts of CHRISTOPHER's arrest. If Defendant BURNS was in fact stationed at the "prisoner processing area" as his report states, he could not have witnessed CHRISTOPHER's arrest and provides no source in his affidavit for the false facts alleged in the affidavit he signed to establish probable cause for CHRISTOPHER's arrest. Defendant BRPD Officer CAAN CASTLEBERRY notarized the false boilerplate affidavit that Defendant BURNS signed.

332.    The BRPD Incident Report about BRACHELL BROWN's arrest was authored by Defendant BRPD Officer SONDRA HALL. The Narrative of the report is almost identical to the Narrative of the Incident Report for CHRISTOPHER BROWN, and states that while Defendant HALL was assigned to the "prisoner processing area for the protest events," "Mobile Field Force officers" brought BRACHELL to where Defendant HALL was stationed. The report is devoid of narrative information to establish probable cause for an arrest. This inadequate report was also approved by Defendant BRPD Officer GINA HEDRICK, with full knowledge that the report lacked information to support an arrest.

333.    To support the baseless charge against BRACHELL BROWN, Defendant Officer HALL signed a boilerplate Affidavit of Probable Cause—a pre-printed form identical to 87 other affidavits filed against fellow protesters and which alleges facts that are entirely inconsistent with the facts of BRACHELL's arrest. If Defendant HALL was in fact stationed at the "prisoner processing area" as her report states, she could not have witnessed BRACHELL's arrest and provides no source in her affidavit for the false facts alleged in the affidavit she signed to establish probable cause for BRACHELL's arrest. Defendant BRPD Officer CAAN CASTLEBERRY notarized the false boilerplate affidavit that Defendant HALL signed.

334.    On July 15, 2016, the East Baton Rouge District Attorney announced that his office would refuse the charges against BRACHELL BROWN and CHRISTOPHER BROWN.

### 4.    Elcide Harris

335.    Plaintiff ELCIDE HARRIS was a 49-year-old Black man who had been a resident of Baton Rouge for nearly fifteen years.  He was disabled. Due to his passing after the filing of this Complaint, all claims asserted by Plaintiff HARRIS are respectfully dismissed.

336.    This paragraph is deleted.

337.    This paragraph is deleted.

338.    This paragraph is deleted.

339.    This paragraph is deleted.

340.    This paragraph is deleted.

341.    This paragraph is deleted.

342.    This paragraph is deleted.

343.    This paragraph is deleted.

344.    This paragraph is deleted.

**5.    Zachary Hill**

345.    Plaintiff ZACHARY HILL was a 32-year-old Black man, a resident of Baton Rouge, and a landscaper in July 2016.

346.    On the afternoon of July 9, 2016, Mr. HILL attended the protests and joined a march that ended at the BRPD Headquarters on Airline Highway. Mr. HILL came to that location to participate in protest, to voice his opposition to racist policing in Baton Rouge and elsewhere, and to demand reform.

347.    Mr. HILL and his fellow protesters were confronted with a line of law enforcement including members of the BRPD, LSP, EBRSO, and LPSO, as specified in paragraphs 33-241 above. Many of them dressed in riot gear and carrying shields and batons. Some carried rifles.

348.    Mr. HILL tried to act as a mediator between the law enforcement officers and other protesters to defuse tensions.

349.    At or around 4 p.m., law enforcement officers began arresting protesters, targeting those who appeared to be leaders of the protest. Defendant THORNTON, Defendant COLLINS, an additional BRPD officer (either an officer identified in Paragraphs 33–105, or currently

unknown Officer DOES) and three LSP Troopers (either some of the Troopers identified above in Paragraphs 160-207, or currently unknown Trooper MOES), without provocation, tackled Mr. HILL to the ground and handcuffed him. Officer THORNTON and the others arrested Mr. HILL with excessive force, causing Mr. HILL to suffer a contusion on his foot, bruised knuckles, and a scratch to his head. Video and still images depict Mr. HILL face-down on the ground with Defendant THORNTON's knee on his head while he is handcuffed. Video and still images also depict the presence of Defendant COLLINS and unidentified BRPD Officers and LSP Troopers who aided in Mr. HILL'S arrest.

350.    While Mr. HILL awaited transport to East Baton Rouge Parish Prison, three unknown EBRSO deputies required all arrestees suspected of being members of the New Black Panther Party to participate in a "cheek swab." The deputies disregarded Mr. HILL's statement that he was not affiliated with this organization and forced him to provide a cheek swab.

351.    ZACHARY HILL was charged with Simple Obstruction of a Highway in violation of La. R.S. § 14:97.

352.    Mr. HILL was placed in a holding cell in the 19th Judicial District Court and detained there for two to three hours before being moved to the East Baton Rouge Parish Prison where he was confined for close to 24 hours in uncomfortable, unsanitary conditions, and without proper bedding. Mr. HILL informed the nurse during intake at the Parish Prison that he was epileptic and required medication three times per day to avoid seizures. He was never provided with his necessary medications.

353.    There was no basis to arrest, confine, or charge ZACHARY HILL. He had not committed any crime. Members of the BRPD, LSP, EBRSO, and LPSO, as specified in paragraphs

33-241 above, had an opportunity to intervene and stop the unconstitutional arrest of, and excessive use of force on, ZACHARY HILL, but failed to do so.

354.    To support the baseless charge against Mr. HILL, Defendant Corporal DORSEY signed a boilerplate Affidavit of Probable Cause that included recitals identical to those in the Affidavits for 87 other arrestees. The boilerplate language in the Affidavit was inconsistent with the events leading to Mr. HILL's unjustified arrest.

355.    The officer who authored Mr. HILL's arrest report, Defendant MARCUS THOMPSON, did not arrest Mr. Hill and had no knowledge of the circumstances leading to his detention. THOMPSON had been assigned to the "prisoner processing area" and wrote of Mr. Hill's arrest: "The Mobile Field Force officers brought the listed arrestee's [*sic*] B/M Harold Maze and B/M Zachary Hill to the processing table and turned the individual over to the processing team. I completed the necessary paperwork and the arrestee's [*sic*] were booked into EBR Parish prison for the listed charge(s) . . . ."

356.    On July 15, 2016, the East Baton Rouge District Attorney announced that his office would refuse the charge against ZACHARY HILL.

### 6. Thomas Hutcherson

357.    Plaintiff THOMAS HUTCHERSON is a forty-four-year-old Black man and resident of Baton Rouge.  Mr. HUTCHERSON was born and raised in Baton Rouge. He is a teacher at a local elementary school.

358.    Mr. HUTCHERSON arrived at the protest at the intersection of Airline Highway and Goodwood Boulevard between 6 and 6:30 p.m. on July 9, 2016. Mr. HUTCHERSON came to that location to protest the racist police violence and the routine harassment he and others had suffered by Baton Rouge area law enforcement. Out of concern about the possible response of law

enforcement to the protests, Mr. HUTCHERSON recorded the protests and law enforcement's response using his cell phone.

359.    At around 7 p.m., law enforcement officers, including members of the BRPD, LSP, EBRSO, and LPSO, as specified in paragraphs 33-241 above, began marching down Goodwood. At that time, Mr. HUTCHERSON was standing on the west side of Goodwood Blvd., in front of the BRPD Headquarters and across the street from a Shell Gas Station/Circle K complex. Mr. HUTCHERSON was not in the roadway.

360.    Mr. HUTCHERSON was instructed by some of the law enforcement officers to move across the roadway to the gas station on the other side of Goodwood Blvd.

361.    Mr. HUTCHERSON attempted to comply with this instruction. As he was doing so, law enforcement officers, including Defendant WES HALL and members of the BRPD, LSP, EBRSO, and LPSO, as specified in paragraphs 33-241 above, grabbed Mr. HUTCHERSON by the back of his shirt collar and yanked him backward, violently charged Mr. HUTCHERSON, contacted him with a riot baton, pushed Mr. HUTCHERSON, and caused him to fall and hit the back of his head on the pavement.

362.    Other officers, including members of the BRPD, LSP, EBRSO, and LPSO, as specified in paragraphs 33-241 above, then converged on Mr. HUTCHERSON, flipping him onto his stomach and cuffing his wrists.

363.    Despite the fact that he had entered the roadway at the officer's request, Mr. HUTCHERSON was charged with Simple Obstruction of a Highway in violation of La. R.S. § 14:97.

364.    Mr. HUTCHERSON was transported from BRPD headquarters to the East Baton Rouge Parish Prison where he was detained for approximately 24 hours in uncomfortable,

unsanitary conditions and without proper bedding. Mr. HUTCHERSON has a history of heart problems, stroke, high blood pressure, and high cholesterol. He takes multiple medications on a daily basis to manage these conditions. Mr. HUTCHERSON informed Sheriff's personnel at the Parish Prison of his medical conditions, the medications he was taking, and the fact that he had hit the back of his head after being tackled by the arresting officers. Mr. HUTCHERSON was provided none of his necessary medications, nor was he provided with medical assistance despite informing several Deputy ROEs and other EBRSO personnel that he believed he might be suffering from a concussion as a result of his violent arrest.

365.    There was no basis to arrest, confine, or charge THOMAS HUTCHERSON. He had not committed any crime. Members of the BRPD, LSP, EBRSO, and LPSO, as specified in paragraphs 33-241 above, had an opportunity to intervene and stop the unconstitutional arrest of, and excessive use of force on, THOMAS HUTCHERSON, but failed to do so.

366.    The Affidavit of Probable Cause for Mr. HUTCHERSON'S arrest is a pre-printed form, identical in content to 87 other affidavits of arrests made that day. The Affidavit is false.

367.    The report of Mr. HUTCHERSON'S arrest identifies him as a person arrested for refusing to vacate the roadway "despite being issued several clear verbal commands ordering [him] to do so." This false account is contradicted both by video evidence recorded by Mr. HUTCHERSON and widely available news footage of his arrest.

368.    On July 15, 2016, the East Baton Rouge District Attorney announced that his office would not file a bill of information against Mr. HUTCHERSON.

**7.  Additional Law Enforcement Officers Liable for Plaintiffs' Arrests.**

369.    On information and belief, Defendants MARK CUMMINGS, BRANDON BLUST, SHAWN DELANEY, JAMES CRISLER, ANDREW DeSALVO, SCOTT JOHNSON,

THEODORE SMITH, ALAN HAMILTON, JOSH ELLIS, BRETT MAGEE, FREDRICK THORNTON, Jr., HUDSON TABOR, WILLIE TURNER, SHONA STOKES, JAMES CUTRER, E.J. LAPERYROUSE, RANDALL WIEDMAN, LORENZO COLEMAN, JASON ACREE, NICHOLAS COLLINS, DAVID KENNEDY, JESSE BARCELONA, and/or JOHN FORD participated in the unlawful detention, restraint, and/or arrest of each Plaintiff.

370. On information and belief, Defendant BRPD Officers BRANDON WOODS, LEO WALLACE, ALEX ROBEAU, BRANDON BETHANY, TOMAS QUINTERO, WES HALL, BROCK McMORRIS, JARED NEYLAND, DERRICK MAGLONE, THOMAS PIERCE, JULIUS RAYMOND, NEIL PORTER, ROBIN DUCOTE, DEVIN HERNANDEZ, DOUG CHUTZ, BRANDON FARRIS, JOSHUA KIRST, CARL ALEXANDER, MICHAEL BARROW, and/or MARK CARRIE were acting as members of the Mobile Field Force ("MFF") during the protests and arrests of Plaintiffs and, as such, supported, assisted, and acted in concert with the other Defendants in the unlawful detention, restraint, arrest, and/or use of excessive force against Plaintiffs.

371. Some or all of Defendants listed in Paragraphs 33-241, and 369-70 who were present during the protests on Airline Highway during the evening and night of July 9, 2016, supported, assisted, and acted in concert with the other Defendants in the unlawful detention, restraint, arrest, and/or use of excessive force against Plaintiffs.

### E. The Policies and Practices of the City/Parish, the Baton Rouge Police Department and the East Baton Rouge Sheriff's Office Caused the Violations of Plaintiffs' Constitutional Rights.

372. The policies and practices of the City/Parish, the BRPD, and the East Baton Rouge Sheriff's Office were a moving force behind and a contributing cause of the constitutional violations that Plaintiffs suffered.

373.    The BRPD and the EBRSO employed the following well-settled, inter-related *de facto* and explicit policies and practices to violate Plaintiffs' First, Fourth and Fourteenth Amendment rights:

A.    racially discriminatory policing, including the targeting of Black citizens with excessive force and unconstitutional arrest and disparate treatment of citizens based on race in matters other than arrest;

B.    the criminalizing and shaming of individuals who criticize law enforcement;

C.    the control, frustration, and termination of organized protest and dissent through the targeting for arrest, detention, abuse, and denigration of perceived protest "leaders" and, in particular, individuals who criticize the police;

D.    failing to create and implement clear, understandable policies for the benefit of sworn police personnel regarding how to respond constitutionally to mass demonstrations and spontaneous protest;

E.    failing to create and implement clear, understandable policies for the benefit of sworn police personnel regarding the importance of protecting and respecting the exercise of First Amendment rights through assembly and protest;

F.    failing to train sworn personnel on the importance of protecting and respecting the exercise of First Amendment rights through assembly and protest;

G.    failing to supervise personnel to ensure that personnel execute their duties in a constitutional manner and without violating the rights of protesting individuals under the U.S. Constitution, the Constitution of Louisiana, and statutory law;

H.    failing to sufficiently distinguish in written policies regarding "Special Events" and "Civil Disorder" between unlawful "civil disorder" or "riot," on the one hand, and

the exercise of the constitutionally protected right of free speech, regardless of compliance with burdensome permitting processes, on the other hand;

I.      the use of riot gear—i.e., military armaments—such as shields, helmets with facemasks, body armor, batons, rifles, and military vehicles without just cause and in order to frighten and intimidate those who wish to peacefully assemble to voice their concerns on issues of public importance, thereby creating an atmosphere of tension;

J.      failing to discipline sworn personnel who use excessive force, engage in racist policing, prepare false reports, falsely arrest citizens, and/or violate First Amendment rights, thereby creating a culture of impunity in which officers who commit such misconduct learn that they will suffer no adverse consequences;

K.      tacitly approving and supporting a police code of silence, whereby officers are expected to protect and shield other officers who are accused of misconduct, such as excessive force, racist policing, preparation of false reports, false arrest of citizens, and/or violations of First and Fourth Amendment rights and other constitutional and statutory rights;

L.      allowing a widespread practice of excessive force, directed particularly at Black citizens and residents, to continue unabated, despite notice of the pattern and the full knowledge of policymakers;

M.      failing to create and implement policies and failing to train sworn personnel regarding how to identify the crime of Simple Obstruction of a Highway of Commerce and apply the statute in a manner that respects the First Amendment rights of Black citizens and residents of Baton Rouge;

81

N.     failing to create and implement a "street closure" permitting process to enable those who wish to engage in demonstrations on matters of immediate public importance to obtain a permit on an emergency basis (i.e., with waiver of the 45 day notice requirement);

O.     imposing onerous financial conditions on those who seek to engage in protest— e.g., requiring proof of $1 million in liability insurance coverage and a receipt for rental of barricades.

374.    The individual Defendants named or referred to in Paragraphs 33-241 and 369-71, acting on the instructions and with the approval of Defendants HOLDEN, DABADIE, GAUTREAUX, and EDMONSON arrested Plaintiffs pursuant to one or more of the policies listed in the preceding paragraph.

375.    At all pertinent times herein, Defendants HOLDEN, DABADIE, GAUTREAUX, and EDMONSON, knew or should have known that the policies, procedures, practices, customs, and usages established for the CITY/Parish, BRPD, and EBRSO and implemented during the law enforcement response to the protests would result in violations of constitutional rights. These defendants ignored that risk and acted unreasonably, intentionally, and with knowing disregard for Plaintiffs' constitutional rights as described above.

376.    The policies and practices of the CITY/PARISH, BRPD, and EBRSO listed in Paragraphs 242-68, 273-81, and 372-73 above were implemented and applied intentionally with knowing disregard for the rights of Plaintiffs.

377.    The policies and practices of the CITY/PARISH, BRPD, and EBRSO listed in Paragraphs 242-68, 273-81, and 372-73 above were implemented by Defendants, working in

concert and motivated by racial animus, to suppress the right of Black citizens and residents of Baton Rouge to petition the government for redress of grievances.

**F. Damages.**

378.    Each of the Plaintiffs has been damaged as a result of Defendants' actions alleged herein.  Plaintiffs have all suffered physical pain and extreme emotional distress and anguish as a result of being brutally arrested, detained and imprisoned, not on suspicion of committing a crime, but solely for exercising his or her right to lawful protest under the First Amendment.

379.    Each suffered shame, humiliation and embarrassment from being handcuffed, imprisoned, and treated as a criminal in front of community members, loved ones, employers, the media, and viewers of local and national television and Internet broadcasts of the protests. Moreover, their names were included in the East Baton Rouge District Attorney's Office press release when that Office made the decision to refuse the charges against these plaintiffs and nearly 100 other arrestees.

380.    Plaintiffs LEROY TENNART, DEON TENNART, THOMAS HUTCHERSON, EDDIE HUGHES, and ZACHARY HILL suffered significant financial damage, as a result of missing work due to being incarcerated on Defendants' trumped up criminal charges. Plaintiffs ZACHARY HILL, THOMAS HUTCHERSON, and LEROY TENNART also suffered additional physical damage from being subject to unreasonable force during their arrests, and denied necessary medical care and medication while in the physical custody of Defendant GAUTREAUX and East Baton Rouge Parish.

381.    GODAVARI HUGHES, a minor, was deprived of the care and support of her father, EDDIE HUGHES, while they were both unlawfully incarcerated on Defendants' false

charges. As a juvenile, she has suffered in particular from emotional distress as a result of Defendants' brutal police tactics.

382.    Each Plaintiff continues to suffer deep psychological pain as a result of Defendants' actions.

383.    Each Plaintiff remains fearful of law enforcement and of being subjected to random acts of state-condoned violence in the future, either during lawful protests or solely by virtue of being members of Baton Rouge's Black communities, due to Defendants' on-going racist policing policies.

## V. CLAIMS

### DEFENDANTS' JOINT AND SEVERAL LIABILITY ON ALL CLAIMS

384.    Plaintiffs incorporate the factual allegations of the preceding paragraphs.

385.    For Counts One through Seventeen alleged below, all Defendants in each count are liable jointly and severally, or in solido for Plaintiffs' injuries.

386.    First, each of the individual Defendants, acting in concert with one another and other yet-unknown co-conspirators, conspired by concerted action to accomplish an unlawful purpose by unlawful means; among other things, to unlawfully detain, arrest, and imprison the Plaintiffs for the purpose of silencing dissent against police practices. Each of the Defendants committed specific overt acts in support of this conspiracy. Each Defendant is therefore liable for all actions of any other Defendant taken in furtherance of the conspiracy.

387.    Second, the actions of individual Defendants who are BRPD officers or EBRSO or LPSO deputies were taken in the course and scope of their employment. For Counts Eleven through Seventeen, which arise under Louisiana law, Defendants City/Parish and Sheriffs

84

GAUTREAUX and ARD are vicariously liable for actions of their employees, agents, and co-conspirators.

388.    Third, Plaintiffs bring Counts One through Seventeen directly against Defendant insurers Nova, XYZ, and UVW for the actions of their respective insureds in accordance with Louisiana's direct action statute.

### COUNT ONE

### 42 U.S.C. § 1983 CLAIM FOR CIVIL CONSPIRACY TO VIOLATE CIVIL RIGHTS OF ALL PLAINTIFFS

389.    Plaintiffs incorporate the factual allegations of the preceding paragraphs.

390.    Defendants    CITY/PARISH,    HOLDEN,    DABADIE,    GAUTREAUX, EDMONSON, ARD, CAZES, HURST, LOUISIANA SHERIFFS' ASSOCIATION (hereinafter referred to as "the Conspiracy Defendants"), acting in concert with one another and other yet-unknown co-conspirators, conspired to accomplish an unlawful purpose by unlawful means.

391.    Each of these Conspiracy Defendants took concrete steps to enter into an agreement in July 2016 to unlawfully detain, arrest, and imprison Plaintiffs, knowing they lacked probable cause to do so, and for the purpose of impeding Plaintiffs from exercising their First Amendment rights to protest by engaging in non-disruptive speech in support of an issue of pressing public importance.

392.    In furtherance of this conspiracy, each of the Conspiracy Defendants committed specific overt acts, misusing their police powers for the purpose of unlawfully silencing Plaintiffs. They accomplished this goal by giving orders to arrest protesters (including Plaintiffs), using excessive force to unlawfully effect Plaintiffs' arrests, fabricating evidence against Plaintiffs, and approving trumped up charges against them, which resulted in their unlawful imprisonment.

393.     Additionally, the Conspiracy Defendants, whether or not involved in any specific arrest of the Plaintiffs, by their presence at the corner of Airline and Goodwood, or performing support to Defendants and co-conspirators on Airline and Goodwood, implemented the conspiracy by providing support, assistance, and encouragement to those Defendants who actually performed, processed or otherwise participated in the arrests of the Plaintiffs.

394.     In the implementation of the conspiracy, the officers, deputies and troopers of each of the law enforcement agencies led by the Conspiracy Defendants employed the customs, usages and policies of racially discriminatory policing set forth above in Paragraphs 242-68, 273-81, and 372-73.

395.     This paragraph is deleted pursuant to the Court's order.

396.     As a direct and proximate result of Defendants' conspiracy, Plaintiffs suffered damages, including bodily injury, pain, suffering, mental distress, anguish, humiliation, loss of liberty, loss of income, loss or destruction of property, and legal expenses, as set forth more fully above.

397.     Each of the Conspiracy Defendants Defendant is therefore liable for the violation of Plaintiffs' rights by any other Conspiracy Defendant.

## COUNT TWO

### 42 U.S.C. 1985(3) CLAIM FOR RACIALLY-MOTIVATED CIVIL CONSPIRACY TO DENY BLACK CITIZENS AND RESIDENTS THE EQUAL PROTECTION OF THE LAWS AND EQUAL PRIVILEGES AND IMMUNITIES UNDER THE LAW, INCLUDING THE RIGHT TO PETITION THE GOVERNMENT FOR REDRESS OF GRIEVANCES

398.     Plaintiffs incorporate the factual allegations of the preceding paragraphs.

399.     Each of the Conspiracy Defendants (defined in Paragraph 390 above), acting in concert with one another and other yet-unknown co-conspirators, conspired to accomplish an unlawful purpose by unlawful means, as described in Count One, above.

400.    The purpose of this conspiracy was to deprive of equal protection of the laws, as guaranteed to them by Fourteenth Amendment, those Black citizens and residents who engaged in protest and to deny them the privileges and immunities of liberty and the right to petition the government for the redress of grievances guaranteed by the First, Fourth and Fourteenth Amendments.

401.    The Conspiracy Defendants conspired with racial animus toward Plaintiffs and other Black citizens and residents of Baton Rouge who were protesting the shooting death of Alton Sterling, a Black man, at the hands of Baton Rouge police. The conspiratorial agreement was effectuated as part of a long-standing pattern of racially discriminatory and racially targeted policing in the Baton Rouge area.

402.    As a direct and proximate result of the Conspiracy Defendants' racially motivated conspiracy, Plaintiffs suffered damages, including bodily injury, pain, suffering, mental distress, anguish, humiliation, loss of liberty, loss of income, loss or destruction of property, and legal expenses, as set forth more fully above.

403.    Each of the Conspiracy Defendants is therefore liable for the violation of Plaintiffs' rights by any other Conspiracy Defendant.

## COUNT THREE

### 42 U.S.C. § 1983 CLAIMS FOR FALSE DETENTION, ARREST, AND IMPRISONMENT IN VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS

404.    Plaintiffs incorporate the factual allegations of the preceding paragraphs.

405.    To the extent specified in paragraphs 33-241 and 369-71 above, the actions by Defendants in falsely detaining, arresting, and imprisoning Plaintiffs without reasonable suspicion or probable cause violated Plaintiffs' Fourth Amendment rights to be free from unreasonable search and seizure, pursuant to 42 U.S.C. § 1983.

406.    The actions of Defendants were the direct and proximate cause of the violations of Plaintiffs' Fourth Amendment rights, bodily injury, pain, suffering, mental distress, anguish, humiliation, loss of liberty, loss of income, loss or destruction of property, and legal expenses, as set forth more fully above.

## COUNT FOUR

### 42 U.S.C. § 1983 CLAIMS FOR MANUFACTURING EVIDENCE AND KNOWING USE OF THAT EVIDENCE TO ATTEMPT TO OBTAIN THE INSTITUTION OF PROSECUTION OF ALL PLAINTIFFS WITHOUT PROBABLE CAUSE IN VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS

407.    Plaintiffs reallege the factual allegations of the preceding paragraphs.

408.    To the extent specified in paragraphs 33-241 and 369-71 above, Defendants falsely detained, arrested, and charged Plaintiffs with the crime of Simple Obstruction of a Highway in violation of La. R.S. 14:97, using the state criminal process to do so, based on manufactured evidence.

409.    At all pertinent times, Plaintiffs had a constitutional right under the Fourth and Fourteenth Amendments to due process of law, to be free from unlawful charging and institution of criminal prosecution against them based on manufactured evidence, and to be free from the deprivation of liberty without due process of law.

410.    None of Defendants involved in Plaintiffs' arrests as specified in paragraphs 33-241 and 369-71 above, had probable cause to believe that Plaintiffs had committed any offense, and Defendants were therefore wholly unjustified in authoring incident reports and/or swearing and/or notarizing affidavits to support any charge against Plaintiffs.

411.    To the extent specified in paragraphs 33-241 and 369-71 above, Defendants, acting individually and together, knowingly manufactured evidence in the form of falsified police reports

and affidavits in order to punish and intimidate Plaintiffs for the lawful exercise of their First Amendment rights to assemble and to free speech, and to stifle public criticism of the BRPD.

412.    The actions of Defendants were the direct and proximate cause of the violations of Plaintiffs' Fourth and Fourteenth Amendment rights, suffering, mental distress, anguish, humiliation, loss of liberty, loss of income, loss or destruction of property, and legal expenses, as set forth more fully above.

### COUNT FIVE

### 42 U.S.C. § 1983 CLAIMS FOR EXCESSIVE USE OF FORCE

### (PLAINTIFFS HILL, HUTCHERSON, DEON TENNART, LEROY TENNART, CHRISTOPHER BROWN, AND BRACHELL BROWN)

413.    Plaintiffs ZACHARY HILL, THOMAS HUTCHERSON, DEON TENNART, LEROY TENNART, CHRISTOPHER BROWN, and BRACHELL BROWN reallege the factual allegations of the preceding paragraphs.

414.    To the extent specified in paragraphs 33-241 and 369-71 above, Defendants employed excessive and unreasonable force, or caused excessive and unreasonable force to be employed, in arresting Plaintiffs, as specifically alleged above, in violation of Plaintiffs' rights under the Fourth Amendment.

415.    The actions of Defendants were the direct and proximate cause of the violations of Plaintiffs ZACHARY HILL, THOMAS HUTCHERSON, DEON TENNART, LEROY TENNART, CHRISTOPHER BROWN, and BRACHELL BROWN's Fourth Amendment rights, bodily injury, pain, suffering, mental distress, anguish, humiliation, loss of liberty, loss of income, loss or destruction of property, and legal expenses, as set forth more fully above.

## COUNT SIX

### 42 U.S.C. § 1983 CLAIMS FOR RETALIATORY ARREST IN VIOLATION OF FIRST AMENDMENT RIGHTS

416.    Plaintiffs reallege the factual allegations of the preceding paragraphs.

417.    Plaintiffs were engaged in lawful First Amendment activity on the public streets and sidewalks of the City of Baton Rouge from July 8, 2016, to July 10, 2016. Plaintiffs were acting reasonably within time, manner, and place restrictions and were not provided any alternative channels for their expression.

418.    Defendants lacked probable cause to arrest Plaintiffs.

419.    To the extent specified in paragraphs 33-241 and 369-71 above, Defendants arrested Plaintiffs or caused Plaintiffs to be arrested in retaliation for their exercise of First Amendment rights, including in particular, their vocal criticism of racially discriminatory policing and police violence on the part of law enforcement.

420.    Alternatively, Defendants' arrests of Plaintiffs, even if not in retaliation, still constituted a violation of Plaintiffs' First Amendment rights to engage in spontaneous and non-disruptive speech in a public way, on a matter of pressing public importance.

421.    The actions of Defendants were the direct and proximate cause of the violations of Plaintiffs' First, Fourth and Fourteenth Amendment rights, bodily injury, pain, suffering, mental distress, anguish, humiliation, loss of liberty, loss of income, loss or destruction of property, and legal expenses, as set forth more fully above.

## COUNT SEVEN

### 42 U.S.C. § 1983 CLAIM FOR FAILURE TO INTERVENE

422.    Plaintiffs reallege the factual allegations of the preceding paragraphs.

423.    During the events described above, Defendants, to the extent specified in paragraphs 22-24, 33-241 and 369-71 above, stood by without intervening to prevent the violation

of Plaintiffs' constitutional rights under the First, Fourth and Fourteenth Amendments, even though they had the opportunity and duty to do so.

424.    As a direct and proximate result of Defendants' failure to intervene, Plaintiffs suffered damages, including bodily injury, pain, suffering, mental distress, anguish, humiliation, loss of liberty, loss of income, loss or destruction of property, and legal expenses, as set forth more fully above.

### COUNT EIGHT

#### AS-APPLIED CHALLENGE TO LA. R.S. § 14:97

425.    Plaintiffs reallege the factual allegations of the preceding paragraphs.

426.    Plaintiffs were arrested for alleged violation of La. R.S. § 14:97.

427.    As applied in the arrests of Plaintiffs in Baton Rouge in July 2016, La. R.S. § 14:97 criminalizes Plaintiffs' exercise of their rights to freedom of expression and assembly in public streets. Defendants' application of the statute is so broad as to criminalize marches, demonstrations, or picketing in the roadway, sidewalks, neutral ground, and other traditionally public fora.

428.    Defendants' application of La. R.S. § 14:97 to detain Plaintiffs or cause Plaintiffs' detention was unconstitutional and violated Plaintiffs' First and Fourteenth Amendment rights.

### COUNT NINE

#### 42 U.S.C. § 1983 CLAIM FOR DELIBERATE INDIFFERENCE TO MEDICAL NEEDS (DISMISSED BY COURT)

429.    This paragraph is deleted, as this claim has been dismissed by the Court.

430.    This paragraph is deleted, as this claim has been dismissed by the Court.

431.    This paragraph is deleted, as this claim has been dismissed by the Court.

## COUNT TEN

### *MONELL* CLAIM FOR MUNICIPAL LIABILITY FOR VIOLATION OF PLAINTIFFS' CIVIL RIGHTS

432.    Plaintiffs incorporate the factual allegations of the preceding paragraphs.

433.    Defendants acted individually and together, under color of law, to violate Plaintiffs' rights as set forth in the preceding claims.

434.    The City/Parish, BRPD, and Defendants HOLDEN, DABADIE, and GAUTREAUX have developed and maintained policies, practices, procedures, customs, and usages exhibiting deliberate indifference to the constitutional rights of citizens and residents of the City/Parish, including but not limited to those policies, practices, procedures, customs, and usages described above, and in particular in Paragraphs 242-68, 273-81, and 372-73, which caused the violation of Plaintiffs' rights as described herein and the resultant damages suffered.

435.    Defendant ARD ratified the policies, practices, procedures, customs, and usages described above, and in particular in Paragraphs 242-68, 273-81, and 372-73 for use by the LPSO offers listed or described in Paragraphs 209-36 above, when Defendant ARD committed these officers to the response to the Baton Rouge protests in July 2016.

436.    The City/Parish, BRPD, and Defendants HOLDEN, DABADIE, GAUTREAUX and ARD had the power to prevent or aid in the prevention of the wrongs done and conspired to be done as described herein, yet failed or refused to do so, in violation of 42 U.S.C. § 1983.

437.    The actions and omissions of Defendants as described herein were done with knowing disregard for the constitutional rights of the Plaintiffs. Defendants have acted maliciously, willfully, wantonly, and in reckless disregard of Plaintiffs' rights.

438.    The actions of Defendants were the direct and proximate cause of the violations of Plaintiffs' First, Fourth and Fourteenth Amendment rights, bodily injury, pain, suffering, mental

distress, anguish, humiliation, loss of liberty, loss of income, loss or destruction of property, and legal expenses, as set forth more fully above.

439.    Moreover, the actions of all Defendants were directed, condoned, and/or ratified by HOLDEN, DABADIE, and GAUTREAUX, final policymakers for the City/Parish and the EBRSO.

440.    As a direct and proximate result of Defendants' actions, Plaintiffs suffered damages, including bodily injury, pain, suffering, mental distress, anguish, humiliation, loss of liberty, loss of income, loss or destruction of property, and legal expenses, as set forth more fully above.

## COUNT ELEVEN

### SUPPLEMENTAL STATE LAW CLAIMS FOR CIVIL CONSPIRACY TO VIOLATE PLAINTIFFS' RIGHTS

441.    Plaintiffs incorporate the factual allegations of the preceding paragraphs.

442.    The Conspiracy Defendants (as defined in Paragraph 390 above), agreed amongst themselves to violate various rights, set forth more fully in Counts 12–17 below, as guaranteed to Plaintiffs by Louisiana's Constitution and Civil law.

443.    The Conspiracy Defendants, in accordance with their ultimate objective to suppress lawful forms of protest and dissent, entered this agreement with the intent to arrest and detain Plaintiffs in violation of Plaintiffs' rights and otherwise exploit the criminal process.

444.    In furtherance of this agreement, each of the Conspiracy Defendants committed specific overt acts, misusing their police powers for the purpose of unlawfully silencing Plaintiffs. They accomplished this goal by giving orders to arrest protesters (including Plaintiffs), using excessive force to unlawfully effect Plaintiffs' arrests, fabricating evidence against Plaintiffs, and approving trumped up charges against them, which resulted in their unlawful imprisonment.

445.    The individual Defendants, to the extent set forth in paragraphs 33-241 and 369-71, whether or not involved in any specific arrest of the Plaintiffs, by their presence on Airline Boulevard, or performing support to other at that location, implemented the conspiracy by providing support, assistance, training, supervision, and encouragement to those Defendants who actually performed, processed or otherwise participated in the arrests of the Plaintiffs.

446.    Defendants were acting in the course and scope of their employment at all times relevant to this claim.

447.    As a direct and proximate result of the Conspiracy Defendants' conspiracy, Plaintiffs suffered damages, including bodily injury, pain, suffering, mental distress, anguish, humiliation, loss of liberty, loss of income, loss or destruction of property, and legal expenses, as set forth more fully above.

448.    Defendants are subject to solidary liability for the injuries caused to Plaintiffs by acts in furtherance of their conspiracy.

## COUNT TWELVE

### SUPPLEMENTAL STATE LAW CLAIMS FOR VIOLATIONS OF THE FREE EXPRESSION PROTECTIONS OF THE LOUISIANA CONSTITUTION

449.    Plaintiffs incorporate the factual allegations of the preceding paragraphs.

450.    Article I, Section 7 of the Louisiana Constitution, protects freedom of expression. Article I, Section 9 protects freedom of assembly and the right to petition the government for redress of grievances. Defendants' actions in arresting and detaining Plaintiffs as described above interfered with their exercise of these fundamental rights, as guaranteed by Louisiana's Constitution.

451.    Defendants were acting in the course and scope of their employment at all times relevant to this claim.

452.     As a direct and proximate result of Defendants' misconduct, Plaintiffs suffered damages, including bodily injury, pain, suffering, mental distress, anguish, humiliation, loss of liberty, loss of income, loss or destruction of property, and legal expenses, as set forth more fully above.

## COUNT THIRTEEN

### SUPPLEMENTAL STATE LAW CLAIMS FOR VIOLATIONS OF THE RIGHT TO PRIVACY, THE RIGHT TO BE LEFT ALONE, AND THE RIGHTS OF THE ACCUSED

453.     Plaintiffs incorporate the factual allegations of the preceding paragraphs.

454.     The  seizure of Plaintiffs by Defendants (as specified in Paragraphs 33-241 and 369-71 above) was unreasonable and without probable cause, constituting a violation of the right to be left alone and the right to privacy secured by Article I, § 5 of the Louisiana Constitution. The failure to promptly inform Plaintiffs of the charges against them also violates Article I, § 13 of the Louisiana Constitution.

455.     Defendants were acting in the course and scope of their employment at all times relevant to this claim.

456.     As a direct and proximate result of Defendants' misconduct, Plaintiffs suffered damages, including bodily injury, pain, suffering, mental distress, anguish, humiliation, loss of liberty, loss of income, loss or destruction of property, and legal expenses, as set forth more fully above.

## COUNT FOURTEEN

### SUPPLEMENTAL STATE LAW CLAIMS FOR INTENTIONAL TORTS, INCLUDING INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS, ASSAULT, BATTERY, AND FALSE IMPRISONMENT

457.    Plaintiffs incorporate the factual allegations of the preceding paragraphs.

458.    Defendants (as specified in Paragraphs 33-241 and 369-71) intended to inflict a harmful or offensive contact upon Plaintiffs in the process of arresting them. As the arrests and detention were unjustified by legal authority, Defendants have committed the intentional torts of assault, battery, false arrest and imprisonment. Defendants' militarized response to peaceful and lawful protests, and their mass arrest of Plaintiffs amounts to extreme and outrageous conduct that caused Plaintiffs severe emotional distress. Defendants knew or should have known that such distress would be the outcome of their actions and therefore are liable for intentional infliction of emotional distress.

459.    Defendants were acting in the course and scope of their employment at all times relevant to this claim.

460.    As a direct and proximate result of Defendants' misconduct, Plaintiffs suffered damages, including bodily injury, pain, suffering, mental distress, anguish, humiliation, loss of liberty, loss of income, loss or destruction of property, and legal expenses, as set forth more fully above.

## COUNT FIFTEEN

### SUPPLEMENTAL STATE LAW CLAIMS FOR ABUSE OF PROCESS

461.    Plaintiffs incorporate the factual allegations of all preceding paragraphs.

462.    Defendants (as specified in Paragraphs 33-241 and 369-71) abused the legal process by detaining Plaintiffs pursuant to probable cause affidavits and arrest reports that were false. Acting in the course and scope of their employment, Defendants printed boilerplate affidavits to

manufacture probable cause before such probable cause could possibly exist. Defendants then swore and/or notarized affidavits in support of Plaintiffs' arrests despite knowing that the affidavits included false information such that they could not truthfully swear to the existence of probable cause to support the arrests. Defendants also authored and/or approved false, misleading, or otherwise deficient arrest reports related to Plaintiffs' arrests.

463.    These actions by Defendants constitute willful acts in the use of a process not in the regular prosecution of the proceeding. Moreover, in swearing and notarizing these false affidavits, Defendants were motivated by an ulterior purpose, specifically the suppression of Plaintiffs' peaceful and lawful protest of police violence.

464.    Defendants were acting in the course and scope of their employment at all times relevant to this claim.

465.    As a direct and proximate result of Defendants' misconduct, Plaintiffs suffered damages, including bodily injury, pain, suffering, mental distress, anguish, humiliation, loss of liberty, loss of income, loss or destruction of property, and legal expenses, as set forth more fully above.

## COUNT SIXTEEN

### SUPPLEMENTAL STATE LAW CLAIM FOR ABUSE OF RIGHTS

466.    Plaintiffs incorporate the factual allegations of all preceding paragraphs.

467.    Louisiana state law recognizes a cause of action for "abuse of rights" when the holder of a legal right or power exercises it predominantly for the purpose of harming another.

468.    Defendants (as specified in Paragraphs 33-241 and 369-71), acting in the course and scope of their employment, acted under color of law to seize, search, arrest, and/or detain Plaintiffs in violation of rights guaranteed to Plaintiffs by the U.S. Constitution, the Louisiana

Constitution, and Louisiana state law. Defendants exercised the power granted to them by state law—including the power to search, seize, arrest, and detain—exclusively for the purpose of harming Plaintiffs, or with the predominant motive to cause harm to Plaintiffs.

469.    Plaintiffs were protesting lawfully and peacefully, and Defendants thus lacked a serious and legitimate motive to exercise their police powers against Plaintiffs.

470.    Defendants further used the power granted to them as law enforcement officers in a manner that violates moral rules, good faith, and/or elementary fairness.

471.    Defendants exercised their rights for a purpose other than that for which the rights are granted; specifically, Defendants unconstitutionally and unlawfully terminated Plaintiffs' exercise of their rights to, *inter alia*, assemble, participate in the exercise of free speech, and to petition the government for redress of grievances.

472.    As a direct and proximate result of Defendants' misconduct, Plaintiffs suffered damages, including bodily injury, pain, suffering, mental distress, anguish, humiliation, loss of liberty, loss of income, loss or destruction of property, and legal expenses, as set forth more fully above.

### COUNT SEVENTEEN

### SUPPLEMENTAL STATE LAW CLAIMS FOR NEGLIGENT INJURY

473.    Plaintiffs incorporate the factual allegations of all preceding paragraphs.

474.    Defendants (as specified in Paragraphs 33-241 and 369-71) owed a duty of care to Plaintiffs to conduct lawful arrests, supported by probable cause, and free from the use of excessive force. Defendants' arrest and detention of Plaintiffs violated the duty of care owed to Plaintiffs and was a cause-in-fact of Plaintiffs' injuries.

475.    The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice and knowing disregard for Plaintiffs' clearly established constitutional rights.

476.    Defendants were acting in the course and scope of their employment at all times relevant to this claim.

477.    As a direct and proximate result of Defendants' misconduct, Plaintiffs suffered damages, including bodily injury, pain, suffering, mental distress, anguish, humiliation, loss of liberty, loss of income, and legal expenses, as set forth more fully above.

## VI.    JURY DEMAND

478.    Plaintiffs demand trial by jury.

## VII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this Court award them the following relief:

A.  A declaratory judgment that some or all of the customs, usages and/or policies alleged in Paragraphs 242-68, 273-81, and 372-73 above violated the rights of Plaintiffs under the First, Fourth, and Fourteenth Amendments to the United States Constitution.

B.  A declaratory judgment that some or all of the customs, usages and/or policies alleged in Paragraphs 2242-68, 273-81, and 372-73 above violated the rights of Plaintiffs under Article I, §§ 5, 7, and 9 of the Louisiana Constitution of 1974.

C.  A declaratory judgment that Defendants' application of La. R.S. § 14:97 to detain Plaintiffs or cause Plaintiffs' detention was unconstitutional and violated Plaintiffs' First and Fourteenth Amendment rights.

D.  Compensatory damages including an amount sufficient to compensate them for physical and emotional pain and suffering, lost wages, lost income, lost or damaged property caused by Defendants' actions as alleged herein.

E.  Punitive damages against each of the individual defendants in amounts sufficient to deter and punish each of them for their willful, wanton, and race-based misconduct.

F.  Equitable relief in the return of any and all personal items seized from Plaintiffs, as well as the complete destruction of any and all samples taken from Plaintiffs, analysis performed on Plaintiffs or samples collected from Plaintiffs, including but not limited to cheek swabs and finger prints, and any other documents, objects, and/or records generated as a result of Plaintiffs' illegal arrests and detention.

G.  Attorneys' fees, costs, and judicial interest under 42 U.S.C. § 1988, 28 U.S.C. § 1920, and other such lawful authority; and

H.  Such further and additional relief as this Court may deem proper and just.

Respectfully submitted, this the 30th day of November, 2020.

*/s/ Gideon T. Carter III*

Gideon T. Carter, III, La. Bar No. 14136
Co-Lead Counsel
PO Box 80264
Baton Rouge LA 70898-0264
(225) 214-1546 (p) / (225) 341-8874 (f)
gideontcarter3d@gmail.com

*/s/ James W. Craig*

James W. Craig, La. Bar No. 33687
Co-Lead Counsel
Roderick & Solange MacArthur
Justice Center
4400 S. Carrollton Avenue
New Orleans LA 70119
(504) 620-2259 (p) / (504) 208-3133 (f)
jim.craig@macarthurjustice.org

*/s/ Eric A. Foley*

Eric A. Foley, La. Bar No. 34199
Roderick & Solange MacArthur
Justice Center (see above)
eric.foley@macarthurjustice.org

*/s/ S. Mandisa Moore-O'Neal*

S. Mandisa Moore O'Neal, La. Bar No. 35256
8818 Jeanette Street
New Orleans LA 70118
 (504) 475-8046 (p)
smandisa85@gmail.com

*/s/ Hannah A. Lommers-Johnson*

Hannah A. Lommers-Johnson
La. Bar No. 34944
Roderick & Solange MacArthur
Justice Center (see above)
hannah.lommersjohnson@macarthurjustice.org

*/s/ Mauricio Sierra*

Mauricio Sierra, La. Bar No. 35560
The Sierra Law Firm, LLC
7214 St. Charles Ave.
Campus Box 913
New Orleans, LA 70118
(504) 864-7860 (p)
msierra1@gmail.com

*/s/ Emily Faye Ratner*

Emily Faye Ratner, La. Bar No. 35289
7214 St. Charles Ave,
Campus Box No. 913
New Orleans, LA 70118
(504) 864-7861 (p) / (504) 861-5986 (f)
msemilyfaye@gmail.com

ATTORNEYS FOR PLAINTIFFS