UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

LEROY TENNART, ET AL.
                                                  CIVIL ACTION
VERSUS
                                                  NO. 17-179-JWD-EWD
CITY OF BATON ROUGE, ET AL.

*CONSOLIDATED WITH*

NIKOLE SMITH, ET AL.
                                                  CIVIL ACTION
VERSUS
                                                  NO. 17-436-JWD-EWD
CITY OF BATON ROUGE, ET AL.

<u>RULING AND ORDER</u>

I.    INTRODUCTION

This matter comes before the Court on the *Motion for Summary Judgment* filed by the City of Baton Rouge/Parish of East Baton Rouge (the "City"), certain defendants associated with the City named in their official capacity, and current and former Baton Rouge Police Department ("BRPD") officers named in their individual capacity (collectively, "City Defendants"). This motion has been filed in two cases with the same counsel and many of the same City Defendants—*Tennart v. City of Baton Rouge*, No. 17-179-JWD-EWD ("*Tennart*"), and *Smith v. City of Baton Rouge*, No. 17-436-JWD-EWD ("*Smith*"). In the motion (*Tennart*, Doc. 347), Defendants seek dismissal of a host of claims (seventeen in *Tennart* and nineteen in *Smith*) arising from a single protest which took place in Baton Rouge on Saturday, July 9, 2016, on and around Airline Highway in response to Alton Sterling's killing by BRPD officers. (*See Tennart, Fifth Am. Compl.*, Doc. 310; *Smith, Third Am. Compl.*, Doc. 228.)

The eight *Tennart* plaintiffs—Eddie Hughes, Godavari Hughes, Christopher Brown, Brachell Brown, Zachary Hill, Leon Tennart, Deon Tennart, and Tommy Hutcherson—largely (though not completely) oppose the motion. (Doc. 364.)  The two remaining *Smith* plaintiffs— Nikole Smith and Sean Benjamin—do the same. (*Id.*)  The *Tennart* Plaintiffs and remaining *Smith* Plaintiffs are collectively referred to as "Plaintiffs."

City Defendants have filed a reply memorandum. (Doc. 368.)  They have not, however, filed a separate reply to *Plaintiffs' . . . Statement of Additional Uncontested Material Facts* (Doc. 364-1 at 14–40) ("*SAUMF*") in violation of Local Civil Rule 56(d).  Consequently, all of the facts contained in that *SAUMF* are deemed admitted for purposes of this motion. *See* M.D. La. Civ. R. 56(d), (f), & (g).

Oral argument is not necessary.  The Court has carefully considered the law, the facts in the record, and the arguments and submissions of the parties and is prepared to rule.

At the outset, the Court notes that Plaintiffs do not oppose the dismissal of certain claims.  Specifically, Plaintiffs concede that they have no viable claims for (1) Civil Conspiracy under 42 U.S.C. § 1983 (Counts 1 in *Tennart* and *Smith*) and state law (Count 11 in *Tennart* and Count 13 in *Smith*); and (2) a Racially-Motivated Conspiracy under 42 U.S.C. § 1985(d) (Counts Two in both cases).  Plaintiffs also recognize that "only one official-capacity Defendant is required in this case" and that "other official-capacity Defendants are not needed." (Doc. 364 at 21.)  All of these claims are thus deemed waived.  *See Payton v. Town of Maringouin*, No. 18-563, 2021 WL 2544416, at *26 (M.D. La. June 21, 2021) (deGravelles, J.) (collecting authorities on waiver and finding that claims could be dismissed for failure to meaningfully oppose (citations omitted)), *aff'd*, No. 21-30440, 2022 WL 3097846 (5th Cir. Aug. 3, 2022).  Accordingly, Plaintiffs' federal and

state law conspiracy claims and Plaintiffs' claims against all City Defendants in their official capacity (other than the City itself) are **DISMISSED WITH PREJUDICE**.

Likewise, Plaintiffs do not meaningfully oppose the dismissal of certain defendants. Specifically, Plaintiffs admit in their *Response to the Statement of Uncontested Material Facts by the City of Baton Rouge* ("*PRSUF*") (Doc. 364-1) that certain defendants took no part in any arrests and were in no position to intervene to stop constitutional violations. (*Compare* City Defendants' *Statement of Uncontested Facts* ("*SUF*"), ¶¶ 22, 24, 25, Doc. 347-2 (as to Defendants Andrew DeSalvo, Noel Salamoni, and E.J. Laperyouse), *with PRSUF* ¶¶ 22, 24, 25, Doc. 364-1.) Similarly, Plaintiffs have failed to meaningfully oppose the motion as to certain defendants by only partially denying the *SUF*.[1] As a result, the following claims are **DISMISSED WITH PREJUDICE** as waived: (1) all claims by Plaintiffs against Defendants Mark Cummings, James Cutrer, Shawn Delaney, Scott Johnson, Theodore Smith, Shona Stokes, Willie Turner, and Josh Ellis; (2) all claims by Plaintiffs against Defendants Eric Murphy, Brett Magee, and Hudson Tabor, other than for failure to intervene; and (3) all claims by Plaintiffs against Defendant Doug Barron, other than for manufacturing evidence.

Additionally, the undersigned emphasizes at the start that the issues in this case are well-travelled ground for this Court. First, this division has dealt with cases involving another protest that occurred on Sunday, July 10, 2016, in downtown Baton Rouge, in and around the intersection of East Boulevard and France Street. Undersigned issued a wide-ranging 110-page ruling in one

---

[1] *Compare SUF* ¶ 20, Doc. 347-2 (explaining how the following defendants took no part in any arrest and were in no position to intervene: Doug Barron, Eric Murphy, Mark Cummings, James Cutrer, Shawn Delaney, Scott Johnson, David Kennedy, Brett Magee, Theodore Smith, Shona Stokes, Hudson Tabor, and Willie Turner), *with PRSUF* ¶ 20, Doc. 347-2 (opposing dismissal only (1) as to David Kennedy for all claims and (2) as to Eric Murphy, Brett Magee, and Hudson Tabor only for failure to intervene); *see also SAUMF* ¶¶ 21, Doc. 364-1 (opposing dismissal as to Barron for manufacturing evidence); *compare also SUF* ¶ 21, Doc. 347-2 (arguing that James Crisler and Josh Ellis did not arrest anyone and were in no position to intervene), *with PRSUF* ¶ 21, Doc. 347-2 (opposing dismissal of failure to intervene claims against Crisler only), *and Opposition*, Doc. 364 at 34–35 ("Plaintiffs concede that insufficient evidence has been adduced to support claims against Defendant Ellis").

such case in response to a motion for summary judgment filed by other defendants associated with the City. *See Imani v. City of Baton Rouge*, No. 17-439, --- F. Supp. 3d ----, 2022 WL 2760799 (M.D. La. July 14, 2022) (deGravelles, J.). Further, the Court issued a more streamlined ruling following another motion for summary judgment filed by the City Defendants in *Smith* in connection with this downtown protest. *Smith v. City of Baton Rouge*, No. 17-436, 2022 WL 2789221 (M.D. La. July 15, 2022) (deGravelles, J.) ("*Smith I*").

Moreover, the Court has also issued an order on another dispositive motion involving the Airline Highway protest. Specifically, in *Tennart*, defendants associated with the Louisiana State Police ("LSP") obtained summary judgment on all claims against them except certain discrete claims against one particular trooper. *See Tennart v. City of Baton Rouge*, No. 17-179, 2022 WL 4099156 (M.D. La. Sept. 7, 2022) (deGravelles, J.) ("*Tennart I*").

Each of these decisions are critical to this Court's analysis of the instant motion. *Imani* is extremely extensive and provides a comprehensive framework for most of the legal issues (and some of the factual disputes) involved with the current motion. Moreover, the more streamlined *Smith I* ruling demonstrates the overall approach this Court will take. Finally, *Tennart I* highlights the factual differences between the claims in the two protests generally and with respect to Plaintiff Zachary Hill in particular.

With that context established, the remaining claims before the Court are:

(a) False Detention, Arrest, and Imprisonment under § 1983 (Count 3 in both cases), and its equivalent state law claims under the Louisiana Constitution (Count 13 in *Tennart*, Count 15 in *Smith* );

(b) Manufacturing Evidence and Knowing Use of Same to Obtain Prosecution of Plaintiffs Without Probable Cause in violation of the Fourth and Fourteenth Amendments (Counts 4 in both cases);

(c) Fourth Amendment Excessive Force under § 1983 (Count 5 in both cases);

(d) First Amendment Retaliation under § 1983 (Count 6 in both cases), and its equivalent state law claim under the Louisiana Constitution (Count 12 in *Tennart* and Count 14 in *Smith*);

(e) Failure to Intervene under § 1983 (Count 7 in both cases);

(f) As-Applied Challenges to La. R.S. 14:97 (Count 8 as to *Tennart* Plaintiffs and *Smith* Plaintiff Sean Benjamin);

(g) As-Applied Challenges to La. R.S. § 14:329.2 (Count 10 in *Smith* as to Plaintiff Nikole Smith);

(h) *Monell* claims (Count 10 in *Tennart* and 12 in *Smith*);

(i) Certain intentional torts such as Intentional Infliction of Emotional Distress ("IIED"), Assault and Battery, and False Imprisonment (Count 14 in *Tennart* and 16 in *Smith*);

(j) Abuse of Process (Count 15 in *Tennart* and 17 in *Smith*);

(k) Abuse of Rights (Count 16 in *Tennart* and 18 in *Smith*); and

(l) Negligence (Count 17 in *Tennart* and 19 in *Smith*).

(*See SUF* ¶¶ 1–2, Doc. 347-2; *PRSUF* ¶¶ 1–2, Doc. 364-1.)

Having carefully considered the law, the evidence (particularly the *SAUMF* highlighted above and facts detailed in the other rulings), and the briefing, the Court will largely deny the motion.  Construing the evidence in a light most favorable to Plaintiffs and drawing reasonable inferences in their favor, the Court finds that genuine issues of material fact preclude summary judgment as to most of Plaintiffs' claims.  "This case will largely be decided by a jury drawn from the community. And given the fundamental policies implicated by this case—liberty and order— the Court believes this is the best possible outcome." *Imani*, 2022 WL 2760799, at *2.

## II.    RULE 56 STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

More specifically, "[t]he movant bears the initial burden and must identify 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.' " *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted)). "But the movant 'need not *negate* the elements of the nonmovant's case.' " *Id.* (quoting *Boudreaux v. Swift Transp. Co*., 402 F.3d 536, 540 (5th Cir. 2005) (quoting *Little v. Liquid Air Corp*., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc))). That is, "[a] movant for summary judgment need not set forth evidence when the nonmovant bears the burden of persuasion at trial." *Wease v. Ocwen Loan Servicing, L.L.C.*, 915 F.3d 987, 997 (5th Cir. 2019) (citing *Celotex*, 477 U.S. at 323 ("[W]e find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim.") (emphasis in original)).

"The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim." *Id.* (citing *Stahl v. Novartis Pharms. Corp.*, 283 F.3d 254, 263 (5th Cir. 2002)). Further, "[s]ummary judgment must be granted 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which it will bear the burden of proof at trial." *Pioneer*, 767 F.3d at 511 (quoting *Malacara v. Garber*, 353 F.3d 393, 398 (5th Cir. 2003) (internal quotation marks omitted)). Critically, "[i]f the moving party fails to

meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Id.* (quoting *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001) (internal quotation marks omitted)).

If the mover bears his burden of showing that there is no genuine issue of fact, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . The nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (cleaned up). The non-mover's "burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little*, 37 F.3d at 1075 (cleaned up).

Additionally, "[w]hen evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court." *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003) (citing *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998); *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 916 (5th Cir. 1992)). "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Id.* (citing, *inter alia, Ragas*, 136 F.3d at 458). *See also Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1307 (5th Cir. 1988) (it is not necessary "that the entire record in the case . . . be searched and found bereft of a genuine issue of material fact before summary judgment may be properly entered"); *cf. U.S. v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs.").

Ultimately, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.' " *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (citation omitted).

> In resolving the motion, the court may not undertake to evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes; so long as the evidence in the record is such that a reasonable jury drawing all inferences in favor of the nonmoving party could arrive at a verdict in that party's favor, the court must deny the motion. Indeed, even if the moving party comes forward with an abundance of evidence supporting its theory of the case, the nonmoving party may nevertheless defeat the motion by countering with evidence of its own, which, if credited by the fact-finder, would entitle the nonmoving party to a verdict in its favor. Or, the non-moving party can defeat the motion by demonstrating that the evidence tendered by the moving party is itself laced with contradictions of [material] fact.

*Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263–64 (5th Cir. 1991) (cleaned up).

## III.    DISPOSITION OF SPECIFIC CLAIMS

### A.    False Arrest Claims

City Defendants argue that there was probable cause to support each of Plaintiffs' arrests. (Doc. 347-1 at 11–12; *see also Reply*, Doc. 368 at 5–6 (emphasizing that only some probable cause is needed to justify an arrest and that Plaintiffs were arrested near I-12 and near or on Airline Highway, both of which are major roadways).)  Further, City Defendants maintain that qualified immunity shields them if they reasonably but mistakenly concluded that there was probable cause and that they are entitled to this defense here. (Doc. 347-1 at 11.)

In short, the Court largely rejects these arguments and finds that the federal false arrest claims mostly survive.  More specifically, giving the evidence[2] the proper construction and

---

[2] *See SAUMF* ¶¶ 1–2, Doc. 364-1 (describing how Leroy Tennart was pushed by officers from the median of Goodwood Blvd into the street); *id.* ¶ 9 (describing how Deon Tennart was likewise pushed from the same location); Pls. Ex. 18 Video "7-9-16 kdh (1).avi" at 1:14–16 (showing Leroy and Deon Tennart standing in the median of Goodwood Boulevard shortly before Leroy's arrest); Pls. Ex. 19, Video "2016.07.09 0838PM Twitter (Bryn Stole)

drawing the appropriate inferences, a reasonable juror could easily find that City Defendants lacked probable cause to arrest nearly all of the Plaintiffs for any crime, including obstructing a highway or inciting a riot. *See Imani*, 2022 WL 2760799, at *37 (denying defendants' motion for summary judgment in part because, when construing the evidence in a light most favorable to plaintiffs, the City lacked "any description of any specific Plaintiff's illegal activity" and "had no knowledge of which officer saw Plaintiffs commit any crime or what officer seized Plaintiffs"); *cf. Doe v. McKesson*, 2021-00929 (La. 3/25/22), 339 So. 3d 524, 533 (stating, in answering questions certified by the U.S. Fifth Circuit arising from the protest on Airline Highway, that "the blocking of a heavily traveled highway, thereby posing a hazard to public safety," was "the commission of a crime"); *cf. also Tennart I*, 2022 WL 4099156, at *2 (finding, based on videos, pictures, undisputed evidence, and deposition testimony, that "all reasonable jurors would conclude that [LSP officer] Lemmons observed Plaintiff Hill obstructing Airline Highway—an extremely busy U.S. Highway—and that Lemmons thus had probable cause to arrest Hill for violating La. R.S. 14:97, simple obstruction of a highway"). Further, giving this evidence the proper construction, every reasonable officer in these Defendants' position would know, beyond debate, that their conduct was objectively unreasonable under clearly established law.

---

Arrest of Leroy tennart jnp98fNBexCgCtlt mp4" (showing Tennarts' arrest and being inconclusive as to their location at the exact moment of same); *SAUMF* ¶ 17, Doc. 364-1 (stating that Eddie and Godavari Hughes "ma[de] sure to stay in the grass and out of the roadway" and that "[a]t no point, were they obstructing traffic or remaining in the roadway"); *id.* ¶¶ 33–34 (describing how Thomas Hutcherson only crossed Goodwood after an officer ordered him to); Pls. Ex. 55, 2016.07.09 Hutcherson cell phone video mp4 at 1:10-41 (showing Hutcherson only crossed street after being told to by police officers, and then was arrested by another officer as he was crossing); *SAUMF* ¶¶ 40–41, Doc. 364-1 (describing how Chris and Brachell Brown were not on Airline at the time of their arrest but rather crossing Gwenadele, how Gwenadele was stopped, and thus how they were not obstructing traffic); Pl. Ex. 65, Video Bryn Stole on Twitter . . . httpst.coFsnTcK5RHh.mp4 (showing traffic line on Airline to be green, from which the inference can be drawn that the Gwenadele light was red when Chris and Brachell Brown crossed); *SAUMF* ¶¶ 51–52, Doc. 364-1 (stating how Nikole Smith was arrested for inciting a riot even though she was asked by leaders "to make sure everyone stayed out of the roadway" and even though she "recall[ed] how peaceful the crowd was"); *id.* ¶¶ 58–59 (explaining how Sean Benjamin was arrested for Simple Obstruction of a Highway even though he never entered the roadway); Pls. Ex. 75, "2016.07.09 0958PM Live Video_Scene_of #AltonSterling protest at Baton Rouge Police HQ…mp4", at 10:10–20:00 (showing group of protesters on side of highway getting arrested by mass of officers).

The sole exception to this is that the claims of Zachary Hill will be dismissed, as all reasonable jurors would conclude that Hill was obstructing the highway and that there was thus probable cause to arrest him. *See id.* at *2 (explaining how video, pictures, and evidence demonstrated that Hill was obstructing Airline Highway at time of arrest); *SAUMF* ¶¶ 25–27, Doc. 364-1 (describing same facts).

Accordingly, the motion for summary judgment is **GRANTED** in that Plaintiff Zachary Hill's Fourth Amendment false arrest claims against City Defendants is **DISMISSED WITH PREJUDICE**. In all other respects, the motion for summary judgment as to these § 1983 false arrest claims is **DENIED**.

### B. Manufacturing Evidence Claims

City Defendants next contend that the manufacturing evidence claims must be dismissed. (Doc. 347-1 at 12.) These defendants maintain that they relied on their collective experience and fellow officers to execute the affidavits. (*Id.*) Considering the risk posed here and the unprecedented circumstances and number of arrests, City Defendants' conduct was, at worst, a reasonable mistake. (*Id.* at 12–13.) Lastly, these defendants make arguments only as to one specific Plaintiff, Nikole Smith. (*Id.* at 13.)

The Court again disagrees and finds that the manufacturing evidence claims survive summary judgment. Construing the evidence (particularly the facts admitted in the *SAUMF*)[3] in

---

[3] *See SAUMF* ¶ 6, Doc. 364-1 (describing how officer Crockett prepared the pre-printed Affidavit of Probable Cause for Plaintiff Leroy Tennart, how officers Crockett and Roussell prepared the arrest report, and how neither officer was present in videos of the arrest or testified to personally witnessing it); *see id.* ¶¶ 10–11 (describing same of Plaintiff Deon Tennart and Officers Bradley Lawrence and Reab Simoneaux); *id.* ¶¶ 21–22 (describing substantially the same of incident reports and affidavits as to Plaintiffs Eddie and Godavari Hughes and officers Michael Rarick, Sondra Hall, Barron Bryant, and Gina Hedrick); *id.* ¶¶ 29–30 (saying likewise of Plaintiff Hill and Defendants Dorsey and Thompson); *id.* ¶¶ 34–35 (describing discrepancies between officer Norman's arrest report and video of Plaintiff Hutcherson's arrest); Pls. Ex. 56, Video "2016.07.09 TH arrest.mp4" (showing Hutcherson's arrest); Pls. Ex. 57, Video "2016.07.13 wwltv Whos being arrested in Baton Rouge and what they're being charged with (at 1.23).mp4" at 1:23–29 (showing Hutcherson's arrest); *SAUMF* ¶¶ 41–47, Doc. 364-1 (explaining how Defendants Blaine Burns and Sondra Hall swore to probable cause affidavits charging Chris Brown and Brachell Brown, respectively, even

a light most favorable to Plaintiffs and drawing reasonable inferences in their favor, a reasonable juror could find that the named officers "intentionally, or with a reckless disregard for the truth, include[d] a false statement in [the Affidavits of Probable Cause] or omit[ted] a material fact from [them]." *Imani*, 2022 WL 2760799, at *37 (quoting *Nerio v. Evans*, 974 F.3d 571, 577 (5th Cir. 2020)). One such false statement was that there was probable cause to arrest Plaintiffs when a reasonable jury could again find that there was not and that the officers had the personal knowledge to attest to same. *See, supra*. A reasonable juror could also find, beyond debate, that these officers all acted unreasonably under clearly established law. *See Imani*, 2022 WL 2760799, at *37 (denying summary judgment because evidence "reflect[ed] (1) that Defendants have no evidence that Plaintiffs failed to comply with orders or that any Plaintiff engaged in an act of violence, and (2) that, other than the Affidavits of Probable Cause (which many times were made without personal knowledge), the City does not have any description of any specific Plaintiff's illegal activity."). As a result, on the manufacturing evidence claims, the motion is **DENIED**.

### C. Excessive Force

Next, Plaintiffs concede at the outset that there are no claims of excessive force with respect to Eddie Hughes and Nikole Smith. (Doc. 364 at 29.) Thus, to the extent such claims are made, they are **DISMISSED WITH PREJUDICE**.

Turning to the heart of the motion, City Defendants' position is essentially that (1) any injury is *de minimis* and (2) that the "force used does not indicate an intent to cause serious harm

---

though Defendants Jason Arcee and Nicholas Collins effectuated the arrests, and describing falsehoods in Arcee's report (citing, *inter alia*, Pls. Ex. 65, Video Bryn Stole on Twitter . . . . httpst.coFsnTcK5RHh mp4 (showing arrests of these plaintiffs)); *id.* ¶ 52 (describing how Officer Zeitler admitted that the arrest report for Smith was a generic form); *id.* ¶ 59 (again stating that Plaintiff Benjamin's affidavit, signed by Officer Frederick Thornton, was boilerplate, and that the report against him approved by Lt. Robert McGarner, Jr. "support[ed] the baseless charge against Mr. Benjamin").

and would fall under the category of negligence or bad luck" rather than force "applied maliciously and sadistically to cause harm." (Doc. 347-1 at 13–16; *see also Reply*, Doc. 368 (reiterating same).)

In short, City Defendants miss the mark.  As to the first, the *SAUMF* shows that most of the Plaintiffs suffered at least some harm from the uses of force.[4]  But, even more importantly, as to the second, and as this Court explained in *Imani*, "*Any* force found to be objectively unreasonable necessarily exceeds the *de minimis* threshold . . . [A]s long as a plaintiff has suffered 'some injury,' even relatively insignificant injuries and purely psychological injuries will prove cognizable when resulting from an officer's unreasonably excessive force." 2022 WL 2760799, at *43 (quoting *Alexander v. City of Round Rock*, 854 F.3d 298, 309 (5th Cir. 2017) (cleaned up)). City Defendants even quote this standard, (Doc. 347 at 16), despite arguing against it.  Thus, contrary to their contentions, "the key question is whether Plaintiffs suffered objectively unreasonable force." *Imani*, 2022 WL 2760799, at *43.

As in *Imani*, "[a] reasonable jury could find that they did." *Id.*  The court must look at the totality of the circumstances to assess whether the force was excessive, including but not limited to factors such as "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at *42 (quoting *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009)).

---

[4] *See SAUMF* ¶ 5, Doc. 364-1 (explaining how Leroy Tennart "suffered cuts and bruises on his legs;" "had pain all everywhere[] [and] was sore for days;" and "suffered long-term psychological effects"); *id.* ¶ 14 (describing how Deon Tennart will no longer protest because he "can't take another head beating to the ground like that again."); *id.* ¶ 18 (describing how Godavari Hughes cried during her false arrest and repeatedly said she was only sixteen years old); *id.* ¶ 28 (explaining how Hill had a BRPD officer's knee on his head and neck as he was being handcuffed); *id.* ¶ 34 (showing how Hutcherson was violently thrown to the ground and "hit the back of his head on the pavement when he fell"); *id.* ¶¶ 41–43 (describing how Brachell and Chris Brown were thrown to the ground, how Brachell could not breath, and how Chris Brown suffered bleeding, scars, and a loss of feeling his right hand and forehand for about six months following his arrest); *id.* ¶ 59 (stating that Benjamin suffered "significant scrapes and bruising to his skin" and was "bleeding substantially").

Here, the Court finds that, construing the evidence in a light most favorable to Plaintiffs—including the *SAUMF*,[5] the videos in evidence depicting these plaintiffs' arrests,[6] and those facts highlighted in *Tennart I*[7]—and drawing reasonable inferences in their favor, each of these factors weighs in favor of finding excessive force. All of the alleged crimes were minor traffic violations. *See Imani*, 2022 WL 2760799, at *43 (denying summary judgment on excessive force claim in downtown protest in part because "the crimes were all non-violent misdemeanors"). Further, looking at the above-cited evidence, none of these particular plaintiffs posed an immediate danger to officer safety or committed acts of violence. *See id.* (denying summary judgment in part because "no Plaintiff engaged in any act of violence"). Finally, no plaintiff attempted to flee.

---

[5] *See SAUMF* ¶¶ 2–5, Doc. 364-1 (as to Leroy Tennart); *id.* ¶ 9 (Deon Tennart); *id.* ¶ 34 (Hutcherson); *id.* ¶¶ 41–43 (Brachell and Chris Brown); *id.* ¶ 59 (Benjamin).

[6] *See* Pls. Ex. 19, Video "2016.07.09 0838PM Twitter (Bryn Stole) Arrest of Leroy tennart jnp98fNBexCgCtlt mp4 (showing Leroy Tennart being forcibly taken to the ground by a group of officers); Pls. Ex. 20, Video from the Vitamin Q "13638158_208116672922359_1674195895_s mp4 (showing Leroy Tennart being dragged by officers); Pls. Ex. 29, Video "2016.07.09 0837PM Twitter (Bryn Stole) Arrest of Deon Tennart mp4 (showing Deon Tennart being forcibly taken down); Pls. Ex. 56, Video "2016.07.09 TH arrest mp4" (showing Hutcherson being slammed to concrete); Pls. Ex. 57, Video "2016.07.13 wwltv Whos being arrested in Baton Rouge and what they're being charged with (at 1.23).mp4" at 1:23–29 (showing same); Pls. Ex. 65, Bryn Stole on Twitter Numerous arrests down here as deputies force people to move fast down the road, just saw someone get tased. httpst.coFsnTcK5RHh mp4 (showing Brachell Brown and Chris Brown being thrown to ground); Pls. Ex. 89, "2016.07.11 Protests brew…mp4" at 0:07–0:26 (depicting Benjamin's arrest and showing substantial bruising through torn shirt).

[7] Specifically, the Court found that "a reasonable juror could easily conclude that the arresting BRPD officer applied excessive force to Hill, that [LSP officer] Lemmons knew of this violation, and that Lemmons had a reasonable opportunity to intervene to stop it." *Tennart I*, 2022 WL 4099156, at *3. "The Court base[d] this holding on," *inter alia*:

> (1) the videos (Pls.' Ex. 6 ("More than 100 people.... mp4"), at 1:05–1:08 (showing forceable takedown of Hill with Lemmons assisting); Pls.' Ex. 11 (2016.07.09 USA_ Black Lives Matter protesters picket.... mp4), at 0:00–0:10, Doc. 357 (showing Hill restrained on the ground by officers for at least ten seconds); (2) pictures (Pls.' Ex. 10 (RTSH3XY.jpg) (showing a shin or knee on Hill's head), Pls.' Ex. 13 (Zachary Hill arrest.jpg (showing same from different angle), Doc. 357); . . . . and (4) Lemmons' testimony (Lemmons Dep. 62:3–63:2, Doc. 341-3 (testifying that it was never "acceptable to have a knee on a subject's head or neck" and that, if he witnessed such an act, he would "have intervened to stop it")).

*Id.*

Consequently, in all respects not expressly conceded, City Defendants' motion for summary judgment as to the excessive force claims is **DENIED**.

### D. Retaliatory Arrest

City Defendants make two arguments to support dismissal of Plaintiffs' retaliatory arrest claims. (Doc. 347-1 at 17.)  First, City Defendants assert that there was probable cause to effectuate all the arrets. (*Id.*; *see also Reply*, Doc. 368 at 6–7 ("The content of the communication was not the cause for arrest, it was the blockading of Airline Highway and the brazen attempt to seize the interstate, both of which are criminal acts and threats to public safety.").)  Second:

> In the alternative, the public statements of Chief Dabadie and the full support of the City/Parish defendants for the protests at the state capital on July 9 and 10, 2016, undercut the claim that retaliation was a substantial or motivating factor behind the arrests of the plaintiffs. It was not the fact of protesting perceived injustice, or the death of Alton Sterling, that caused the arrests of these plaintiffs, for surely, if that was the motivating force and goal of the City/Parish defendants, the crowds gathered at the state capital would have been far too tempting a target for mass arrest. No, the only logical inference is that the conduct of the protesters at the state capital was not disruptive, tumultuous, or a threat to public safety, such as would warrant arrest.

(Doc. 347-1 at 17.)

The Court rejects both arguments and denies summary judgment on these claims.  Plaintiffs already established questions of fact on the existence of probable cause, so City Defendants' first argument is meritless.

The second fails for a number of reasons.  First, City Defendants' position is illogical, as their respect for civil rights at one protest does not gainsay the possibility of their suppressing speech at a different protest.

Second, even if City Defendants' position was logical, this Court's finding in *Imani*—that a reasonable jury could conclude that the City and other BRPD officers violated protesters' First

Amendment rights at the downtown protest—would tend to negate City Defendants' position. That is to say, if a city's suppression of speech at one protest supports a finding that the city suppressed speech at a different protest (or vice versa), then the *Imani* decision about the downtown protest supports a finding of First Amendment violations at the Airline Highway protest. *See Imani*, 2022 WL 2760799, at *23–25 (denying summary judgment on First Amendment claim for downtown protest because "a reasonable juror could easily conclude that Plaintiffs acted permissibly under [*Cox v. Louisiana*, 379 U.S. 536 (1965) ("*Cox I*") and *Cox v. Louisiana*, 379 U.S. 559 (1965) ("*Cox II*")] through protests that were peaceful, non-violent, and compliant with police officers" and "that the City engaged in viewpoint discrimination through its response to the protests, that the City did not have a compelling governmental interest in making the arrests, and that, even if it did, the City did not use the least restrictive means available to it").

And third, in any event, Plaintiffs present evidence—much of which is described *infra* in the *Monell* section and much of which was highlighted in *Imani*, 2022 WL 2760799, at *10–11, 33 (describing city policies which targeted Alton Sterling protesters based on their viewpoint)— from which a reasonable juror could find (1) that the City engaged in content-based discrimination; (2) that, consequently, "retaliation was 'a substantial or motivating factor behind the arrest[s],'" *Imani*, 2022 WL 2760799, at *33 (quoting *Nieves v. Bartlett*, 139 S. Ct. 1715, 1725 (2019) (cleaned up)); (3) "that Defendants did not show that the arrest[s] would have occurred without that retaliation," *id.*; and (4) that every reasonable officer in their shoes would know, beyond doubt, that their conduct was unlawful under the clearly established law of this circuit and *Cox I* and *Cox II*. Accordingly, City Defendant's motion for summary judgment as to First Amendment retaliation claim is **DENIED**.

### E.  Failure to Intervene

City Defendants next seek dismissal of the failure to intervene claims.  They contend that there is an absence of video evidence on many of these claims but that "the evidence, in general, shows that the force used was brief and minimal." (Doc. 347-1 at 19.)   In argument, City Defendants focus almost entirely on Plaintiffs Zachary Hill and Hutcherson and whether Officers Barcelona, Crisler, and Ellis observed the excessive force applied to them and had a reasonable opportunity to intervene to stop it. (*Id.*)  City Defendants maintain that these officers had no such chance to stop the constitutional harm, so the claims should be dismissed. (*Id.*)

Additionally, in their *SUF*, City Defendants only urge the absence of material fact as to certain officers. (*See SUF*, ¶¶ 20–25, Doc. 347-2.)  More specifically, aside from those officers dismissed above based on waiver, City Defendants' arguments focus exclusively on the following officers: Eric Murphy, David Kennedy, Brett Magee, Hudson Tabor, James Crisler, and Jesse Barcelona. (*See id.*)

Having carefully considered the matter, the Court will deny the motion on these claims. Preliminarily, and again, City Defendants had the "initial burden . . . [to] identify those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Pioneer*, 767 F.3d at 511 (cleaned up).  While City Defendants "need not *negate* the elements of the nonmovant's case," *id.* (cleaned up), they at least needed to "point[] out that the record contains no support for the non-moving party's claim," *Wease*, 915 F.3d at 997. Since, "[i]f the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response," *Pioneer*, 767 F.3d at 511 (cleaned up), the Court will deny the motion as to all defendants except those for whom specific arguments were made. *See also Payton*, 2021 WL

2544416, at *26 (citing, *inter alia*, *United States ex rel. Wuestenhoefer v. Jefferson*, 105 F. Supp. 3d 641, 672 (N.D. Miss. 2015) ("This failure to develop the relevant argument effectively represents a waiver of the point." (citing *United States v. Dominguez–Chavez*, 300 F. App'x 312, 313 (5th Cir. 2008) ("Dominguez has failed to adequately raise or develop his due process and equal protection arguments in his appellate brief, and, thus, they are waived."); *El–Moussa v. Holder*, 569 F.3d 250, 257 (6th Cir. 2009) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in [a] skeletal way, leaving the court to put flesh on its bones."))).

Turning to the heart of the matter, the Court finds that genuine issues of material fact preclude summary judgment on the failure to intervene claims against Defendants Eric Murphy, David Kennedy, Brett Magee, Hudson Tabor, James Crisler, and Jesse Barcelona. That is, construing the evidence (including video, pictures, and deposition testimony)[8] in a light most favorable to Plaintiffs and drawing reasonable inferences in their favor, a reasonable jury could concluded (a) that each of these defendants knew that another officer was violating these plaintiffs' constitutional rights, observed the violations, and had a reasonable opportunity to intervene to stop them, and (b) that their conduct was objectively unreasonable under clearly established law. *See Imani*, 2022 WL 2760799, at *45–46 (describing elements of failure to intervene claim); *see also*

---

[8] *See* Pls. Ex. 19 at 0:10–17 (showing Leroy Tennart being arrested forcibly, surrounded by a number of officers, including Defendants Eric Murphy and David Kennedy); Pls. Ex. 20 at 0:24–30 (showing same); Pls. Ex. 86, Myron Daniels Dep. 148:25–153:18 (identifying Defendants Brett Magee and Hudson Tabor in the cellphone video footage that Plaintiff Hutcherson captured seconds before his arrest); Pls. Ex. 49 Lorenzo Coleman Dep.27:12–28:7 (describing Defendant David Kennedy as participating in Zachary Hill's arrest); *PRSUF* ¶ 21, Doc. 364-1 (showing screen captures of Defendant James Crisler being near Plaintiff Hutcherson's arrest with an opportunity to intervene); James Crisler Dep. 21:2–22:22 (identifying himself in videos of Hutcherson's arrest); *PRSUF* ¶ 23, Doc. 364-1 (showing screen capture depicting Defendant Jesse Barcelona in close proximity to Zachary Hill's arrest (citing Pls. Ex. 45, "More than 100… mp4" at 1:07 (showing Barcelona in profile on the left of the frame); Pls. Ex. 46, 2016.07.09 USA_ Black Lives Matter protesters picket Baton Rouge police HQ-.mp4, at :00–:09).

*Tennart I,* 2022 WL 4099156, at *3 (denying summary judgment to LSP trooper on Plaintiff Hill's failure to intervene claim related to stop BRPD officers' use of excessive force at Airline Highway protest based on videos, pictures, undisputed facts, and deposition testimony). Consequently, as to the failure to intervene claims, City Defendants' motion for summary judgment is **DENIED**.

### F. *Monell* Liability

City Defendants also dispute municipal liability. (Doc. 347-1 at 21.) Preliminarily, the Court previously laid out the relevant law on *Monell* in its August 31, 2018, Notice Regarding Oral Argument (Doc. 171 at 12–18), which was given at the motion to dismiss phase. The Court has also set out these standards elsewhere in reported decisions. *See, e.g., Imani*, 2022 WL 2760799, at *37–39; *Jordan v. Gautreaux*, No. 21-48, --- F. Supp. 3d ----, 2022 WL 895720, at *11–14 (M.D. La. Mar. 25, 2022) (deGravelles, J.). They need not be repeated in full here, though they will be expanded upon below.

Returning to the motion, City Defendants make a number of arguments to justify dismissal of Plaintiff's *Monell* claim. They begin by saying there is no underlying constitutional violation and this precludes the City's liability. Next, these defendants assert that Plaintiffs fail to establish moving force causation; "The situations encountered here, where law enforcement was outnumbered, and caught by surprise, indicates that this was civil disorder, and not a planned or noticed protest." (Doc. 347-1 at 21.) And finally, according to City Defendants, Plaintiffs have not established any policies, and all of their arguments are undermined by the City's cooperation with other protesters that weren't on busy highways. (*Id.* at 21–22.)

Having carefully considered the matter, the Court rejects City Defendants' arguments. First, as is clear from the rest of this opinion, reasonable factfinders could easily find numerous constitutional violations.

Second, a reasonable jury could also conclude that there were underlying policies. As this Court explained in *Imani*:

> As to the first two prongs [of *Monell* liability], "[m]unicipalities can also be liable, in certain situations, for single episodes of conduct that are not part of any pattern of illegality." *Milam v. City of San Antonio*, 113 F. App'x 622, 626 (5th Cir. 2004) (citing *Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 405–06, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997) (summarizing the Court's single-episode cases)). "For example, plaintiffs can hold municipalities liable for single instances of conduct perpetrated by the policymakers themselves; such one-time conduct can represent official 'policy' even though it does not necessarily form part of a plan or rule developed to govern all like occasions." *Id.* (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480–81, 484–85, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986) (finding that court of appeals erred in dismissing petitioner's claim against a county when the prosecutor, the relevant final policymaker, "made a considered decision based on his understanding of the law and commanded the officers forcibly to enter petitioner's clinic," and "[t]hat decision directly caused the violation of petitioner's Fourth Amendment rights.")).

*Imani*, 2022 WL 2760799, at *38.

Here, as in *Imani*, the Court finds that "Plaintiffs have strong evidence against the City on these claims" based on a single policy decision to arrest protesters. *Id.* at *40. Such evidence includes but is not limited to (1) the systematic use of preprinted affidavits (a) which, as in *Imani*, *id.*, were often executed by officers without personal knowledge; (b) which, as explained above, contained false information; and (c) which were used to justify arrests without probable cause, (*see SAUMF* ¶¶ 6, 10, 21, 29, 34–35, 46–47, 52, 59, Doc. 364-1); and (2) reasonable inferences fairly drawn from the City's specific policies and content-based discrimination with respect to the downtown protest, where the City also used as a justification for its conduct proximity to a major highway (there, I-110; here, Airline Highway) and concerns for a riot, *see Imani*, 2022 WL 2760799, at *10–11 (describing policies); *see also id.* at *40 (finding questions of fact on *Monell*

19

claim based on these policies); *supra* (drawing inferences on First Amendment violations from downtown protest).

Additionally, Plaintiffs present evidence of municipal policies through the decisions of BRPD Incident Command on the day of the protest.  By way of background, "[a] city's governing body may delegate policymaking authority (1) by express statement or formal action or (2) it may, by its conduct or practice, encourage or acknowledge the agent in a policymaking role." *Zarnow v. City of Wichita Falls,* 614 F.3d 161, 167 (5th Cir. 2010).  Thus, for example, in *Zarnow*, the Fifth Circuit agreed with the district court that the chief of police had been impliedly delegated policymaking authority. *Id.* at 167–68.  The appellate court based this on certain "General Orders" issued by the chief which each began "It is the policy of this department" and then described relevant regulations. *Id.*  The circuit concluded:

> We agree with the district court that the General Orders promulgated by the police chief sufficed to be the "more" that is needed to prove policymaking authority in these circumstances. On this evidence, the chief of police is the sole official responsible for internal police policy. Others have only marginal involvement with the internal procedures of the police force. The alleged constitutional violation arose from a peculiar interpretation of a "plain view" procedure, which was employed only during police activities.
>
> Although no General Order was ever entered regarding this policy, it appears that the police chief would have been authorized to speak on the City's behalf if such a policy was created. Accordingly, we hold that the City impliedly delegated its policymaking authority to the chief of police.

*Id.* at 168.

Here, Plaintiffs submitted sufficient evidence to create a question of fact that the City delegated policymaking authority to the Incident Commanders.   Specifically, Chief Dabadie testified:

Q. Did you need to be consulted by the incident commander, either Leach or Martin or Taylor, prior to making decisions about deploying officers?

A. Are you asking if they needed to consult with me first?

Q. Yes.

A. No, sir. Lieutenant Leach had full authority to put people where he felt they needed to be placed. As far as my involvement, basically I was just updated, okay, this is what we are doing or this is what we did last night; and those were usually done at the briefings in the mornings.

(Pls. Ex. 1, Dabadie Dep. 108:5–18.)  Moreover, Dabadie never vetoed or countermanded any decisions made by the incident commanders during this protest. (*Id*. at 110:4–8; *see also* Pls. Ex. 2, Leach Dep. 32:20–24 (stating he reported directly to Dabadie); 96:2–17 (stating again he reported directly to Dabadie, that Dabadie could countermand any of his orders, but that Dabadie never changed an order or decision Leach made); Pls. Ex. 3, Martin Dep. 43:20–44:3 (saying that no decisions had to be run by Chief Dabadie and that the Chief  never countermanded any of his orders).  A reasonable factfinder could conclude from all of this that Dabadie had delegated to these individuals his policymaking authority with respect to the City's response to the protest.

With that established, a reasonable jury could then decide, when viewing the evidence in a light most favorable to Plaintiffs and drawing reasonable inferences in their favor, that the moving force of the constitutional violations suffered by Plaintiffs were the result of Incident Command's subsequent orders to direct officers to make arrests of protesters.  (*See SAUMF* ¶¶ 7–8, 12–13, 19–20, 36, 41, 43, 53, 58, Doc. 364-1 (describing orders from Incident Command to arrests protesters and Plaintiffs' arrest following such orders).)  Moreover, all of the evidence highlighted throughout this opinion, when given the proper construction, could lead a jury to find deliberate indifference

on the part of the City.  Consequently, City Defendants' motion for summary judgment as to the

*Monell* claims will be **DENIED**.

### G.  As-Applied Challenges to La. R.S § 14:97 and § 14:329.2

City Defendants next attack the as-applied challenges to the criminal statutes allegedly

violated.  As to La. R.S. § 14:97 (simple obstruction of a highway), City Defendants maintain that

they did not "indiscriminately arrest every protester in the roadway" under this statute "because if

they had, plaintiffs Eddie and Godavari Hughes, and Nikole Smith, who attended the march and

protest at the state capital earlier in the day, would not have been at Airline Highway that night."

(Doc. 347-1 at 20.)  Here, say City Defendants, "[t]he answer, again, is the behavior of the

protesters, and the utilization of La. R. S. § 14:97 is not shown to be overbroad, that it fails to

provide notice as to what conduct it prohibits, or that it authorizes or encourages arbitrary and

discriminatory enforcement." (*Id.*)  As to Nikole Smith's challenge to La. R.S. § 14:329.2 (inciting

a riot), City Defendants argue that the protest satisfied the definition of a riot, so the question is

one of intent; here, Smith was arrested by Officer Zeitler, who believed Smith was trying to stir

up a riot. (*Id.*)  This is strengthened further, City Defendants argue, by the fact that there was

probable cause to arrest her and that, even if there weren't, Zeitler would be entitled to qualified

immunity. (*Id.* at 20–21.)

Plaintiffs respond:

> Plaintiffs[] claim[] that they were arrested because they protested
> the police, not because they were guilty of a crime. Defendants
> designed a system for mass arrests of protesters that
> unconstitutionally applied § 14:97, under which every protester
> present at the anti-police demonstrations following the police killing
> of Alton Sterling was subject to arrest. The application by BRPD of
> La. R.S. § 14:97 to criminalize any participation in the police
> protest, as well as its use of La. R.S. § 14:329.2 to target protest
> leaders who had not broken any law, is an unconstitutional use, and

22

> constitutes retaliation against Plaintiffs for the exercise of their
> speech.

(Doc. 364 at 36.)   Plaintiffs incorporate their arguments on false arrest, First Amendment retaliation, and *Monell* on these two issues. (*Id.* at 35–36.)

Having carefully considered the matter, the Court will deny City Defendants' motion on these claims.  As Plaintiffs argue, the Court has found above that Plaintiffs have presented genuine issues of material fact on their false arrest, freedom of speech, and *Monell* claims.  For the same reasons given there, a reasonable jury could find in favor of Plaintiffs on these as-applied challenges. *See Smith I*, 2022 WL 2789221, at *3 (denying summary judgment on as-applied challenge to La. R.S. 14:97 for downtown protest because, "when viewing the facts in a light most favorable to Plaintiff and drawing reasonable inferences in her favor, Plaintiff could easily prevail under *Cox I* and *Cox II*" (citing *Imani*, 2022 WL 2760799, at *17–25, 31–34)).  Accordingly, as to these constitutional challenges, the motion is **DENIED.**

### H.  Supplemental State Law Claims

City Defendants next seek dismissal of Plaintiffs' supplemental state law claims.  While these arguments have all been reviewed, a lengthy recitation of same is not necessary.  In short, these claims are easily decided, generally for reasons identical to those given in *Imani*, *Smith I*, or *Tennart I*.

More specifically, City Defendants focus first on Plaintiffs' rights to free expression, assembly, and petition and to privacy secured by the Louisiana Constitution, and City Defendants make a variety of assertions. (Doc. 347-1 at 22–24.)  Plaintiffs oppose dismissal, largely relying on their arguments for their § 1983 false arrest and First Amendment retaliation claims. (Doc. 364 at 49–50.)  Again, the Court agrees with Plaintiffs.  *See Imani*, 2022 WL 2760799, at *50 ("Because the Court has denied summary judgment as to Plaintiffs' § 1983 claims, the Court will

likewise deny summary judgment as to the corresponding claims under the Louisiana Constitution" (citing, *inter alia*, *Heaney v. Roberts*, 846 F.3d 795, 802 n.2 (5th Cir. 2017) ("Louisiana's constitutional protection of free speech mirrors that of the First Amendment, so separate determinations of the state and federal claims are unnecessary."); *Bagley v. Kolb*, No. 19-10, 2021 WL 3376830, at *16 (W.D. La. Aug. 3, 2021) ("absent more precise guidance from the Louisiana Supreme Court, the Fourth Amendment standards control the analysis of alleged infringements on the constitutional right to privacy." (cleaned up))). Accordingly, the motion for summary judgment on the Louisiana constitutional claims is **GRANTED IN PART** and **DENIED IN PART** to the same extent at the § 1983 claims discussed above.

Similarly, Plaintiffs' assault, battery, and false imprisonment claims survive. That is to say, because Plaintiffs have viable excessive force and false arrest claims under § 1983, so too do these state law tort claims survive. *See Imani*, 2022 WL 2760799, at *54 ("the Court will deny Defendants' motion [as to the assault and battery claims], largely for the same reasons the federal excessive force claims survive. In short, questions of fact preclude summary judgment."); *see id.* at *55 ("This Court's analysis to Plaintiffs' § 1983 false imprisonment and false arrest claims applies with equal force to the state law claims." (citing, *inter alia*, *Elphage v. Gautreaux*, 969 F. Supp. 2d 493, 515 (M.D. La. 2013) (citations omitted)). As a result, the motion for summary judgment on the state law assault, battery, and false arrest claims is **DENIED**.

Plaintiffs also prevail on the negligence claims, for reasons similar to those given in *Imani*. Again, the *SAUMF* demonstrates facts from which the inferences can be drawn that most of the Plaintiffs suffered at least some harm from the BRPD officers' conduct.[9] The sole exception to

---

[9] *See SAUMF* ¶ 5, Doc. 364-1 (explaining how Leroy "Tennart suffered cuts and bruises on his legs;" "had pain all everywhere[] [and] was sore for days;" and "suffered long-term psychological effects"); *id.* ¶ 14 (describing how Deon Tennart will no longer protest because he "can't take another head beating to the ground like that again."); *id.* ¶ 18 (describing how Godavari Hughes cried during her false arrest and repeatedly said she was only sixteen years old); *id.*

this is Eddie Hughes, who, as referenced above in the excessive force section, suffered no discernable injury. (*See SAUMF* ¶¶ 15–22, Doc. 364-1). "As to the breach element, there are simply too many questions of fact, detailed throughout this ruling, to find in favor of [City] Defendants. A reasonable jury could easily find that these Defendants failed to act as reasonably prudent officers under the circumstances." *Imani*, 2022 WL 2760799, at *56. Accordingly, as to Plaintiff Eddie Hughes, the motion is **GRANTED**, and his negligence claim is **DISMISSED WITH PREJUDICE**. In all other respects on this issue, the motion is **DENIED**.

The IIED claims also survive. "Under Louisiana law, Plaintiff[s] must establish the following to recover for IIED: '(1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct.' " *Imani*, 2022 WL 2760799, at *50 (quoting *White v. Monsanto Co.*, 585 So. 2d 1205, 1209 (La. 1991)). City Defendants assert that they were simply engaged in "ordinary police work under extraordinary circumstances" and that "even assuming that the plaintiffs suffered severe emotional distress, there is no evidence to support an intent by any defendant to traumatize the plaintiffs." (Doc. 347-1 at 26.) The Court disagrees and finds that a reasonable juror could conclude from all of the above evidence (viewed in the appropriate summary judgment light) that each of the IIED elements are satisfied. *Cf. Imani*, 2022 WL 2760799, at *52 (granting summary judgment in downtown protest case on IIED claims

---

¶ 28 (explaining how Hill had a BRPD officer's knee on his head and neck as he is being handcuffed); *id.* ¶ 34 (showing how Hutcherson was violently thrown to the ground and "hit the back of his head on the pavement when he fell"); *id.* ¶¶ 41–43 (describing how Brachell and Chris Brown are thrown to the ground, how Brachell could not breath, and how Chris Brown suffered bleeding, scars, and a loss of feeling his right hand and forehand for about six months following his arrest); *id.* ¶ 54 (stating that Ms. Smith, as a licensed professional, had to notify her licensing agencies for the pending felony charge of "Inciting a Riot" until the prescriptive period terminated); *id.* ¶ 59 (stating that Benjamin suffered "significant scrapes and bruising to his skin" and was "bleeding substantially").

because Plaintiffs presented virtually no evidence of harm, simply the allegations of the complaint and minor injuries as to one plaintiff). Given these questions of material fact on the IIED claims, the motion is **DENIED**.

The abuse of process and abuse of rights claims will be disposed of as in *Smith I*. That is to say, the Court finds that Plaintiffs have no viable abuse of process claim because Plaintiffs have failed to demonstrate that there was a "malicious use of a legal process *after* the process has been instituted." *Smith I*, 2022 WL 2789221, at *3 (quoting *Day v. City of Baton Rouge*, No. 17-328-EWD, slip op. at 44 (M.D. La. Nov. 30, 2020), Doc. 145 (citing *Duboue v. City of New Orleans*, 909 F.2d 129, 132 (5th Cir. 1990))). Here, Plaintiff admits, (*PRSUF* ¶ 10, Doc. 364-1), as in *Day*, that "the District Attorney for East Baton Rouge Parish declined to prosecute Plaintiff and other protestors for alleged violations of La. R.S. § 14:97," *Smith I*, 2022 WL 2789221, at *3 (quoting *Day*, slip op. at 46). Further, while Plaintiff asserts that "Nikole Smith was charged with inciting to riot and had to wait until the prescriptive period ran out before she could be certain she would not be prosecuted," (*PRSUF* ¶ 10, Doc. 364-1), she provides no additional facts to show that any process was maliciously used after process was instituted, (*see id.*; *SAUMF* ¶ 54, Doc. 364-1). As a result, the motion is granted on this issue, and all of Plaintiffs' abuse of process claims are **DISMISSED WITH PREJUDICE**

But, the abuse of rights claims fail for the same reasons given in *Smith I* and *Day*. Specifically, in both decisions, summary judgment was denied on these claims "because there were questions of fact concerning whether Plaintiff was retaliated against in violation of the First Amendment." *Smith I*, 2022 WL 2789221, at *3 (citing *Day*, slip op. at 48). For the same reasons, because Plaintiffs' retaliation claims have survived summary judgment, the motion to dismiss Plaintiffs' abuse of rights claim is **DENIED**.

**IV.    CONCLUSION**

Accordingly,

**IT IS ORDERED** that the *Motion for Summary Judgment* (*Tennart*, Doc. 347) is **GRANTED IN PART** and **DENIED IN PART**, as described herein.

Signed in Baton Rouge, Louisiana, on <u>November 18, 2022</u>.

**JUDGE JOHN W. deGRAVELLES
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**